# Exhibit B

```
 1   THOMAS STEEL
     JEFF BYRNE
 2   STEEL, CLARENCE, BUCKLEY & SNELL
     301 Pennsylvania Avenue
 3   San Francisco, CA 94107
     (415) 920-7100
 4
     Attorneys for Plaintiff
 5
     FRANK W. HUNGER
 6   Assistant Attorney General
     MICHAEL J. YAMAGUCHI
 7   United States Attorney
     GAIL KILLEFER
 8   Assistant United States Attorney
     ANNE L. WEISMANN
 9   MARK T. QUINLIVAN
          U.S. Department of Justice
10        Civil Division; Room 1048
          901 E Street, N.W.
11        Washington, D.C. 20530
          Telephone: (202) 514-3346
12
     Attorneys for Defendants
13

14                UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
15

16   SETH ROSENFELD,                  )
                                      )
17              Plaintiff,            )   Case No. 90-3576 MHP
                                      )   AND
18                                    )   Case No. 85-1709 MHP
     v.                               )   Case No. 85-2247 MHP
19                                    )
                                      )   [PROPOSED] ORDER
20   UNITED STATES DEPARTMENT OF      )
     JUSTICE, and UNITED STATES       )
21   FEDERAL BUREAU OF                )
     INVESTIGATION,                   )
22                                    )   Date:
                Defendants.           )   Hon. Marilyn Hall Patel
23                                    )
     _____)
24

25                          ORDER

26      This matter comes before the Court on the parties Joint

27   Motion for Entry of Settlement Agreement as an Order of Court and

28   to Retain Jurisdiction.  Upon consideration of the foregoing
```

1  motion, and the entire record herein, it is by the Court this 21st

2  day of May 1996

3      ORDERED that the parties' Joint Motion be, and the same

4  hereby is, GRANTED; and it is further

5      ORDERED that the parties' Settlement Agreement, which is

6  attached hereto, is hereby entered as an order of this Court; and

7  it is further

8      ORDERED that the Court will retain jurisdiction over these

9  cases in order to enforce and administer the terms of the

10  agreement and to resolve any fee disputes.

11

12

13

                       MARILYN HALL PATEL

14         UNITED STATES DISTRICT JUDGE

15              MAY 22 1996

16

17

18

19

20

21

22

23

24

25

26

27

28  [PROPOSED] ORDER            - 2 -
      Case Nos. 90-3576 MHP; 85-1709 MHP; 85-2247 MHP

# ORIGINAL



## SETTLEMENT AGREEMENT

Seth Rosenfeld (hereafter "Rosenfeld") and the Federal Bureau of Investigation and the United States Department of Justice (hereafter "Defendants"), through their authorized representatives, hereby agree to the following terms:

1. The terms of this agreement apply to the records at issue in both <u>Rosenfeld</u> v. <u>FBI</u>, District Court Nos. C-85-1709, C-85-2247, Ninth Cir. No. 91-16538 ("<u>Rosenfeld I</u>"); and <u>Rosenfeld</u> v. <u>FBI</u>, District Court No. C-90-3576 ("<u>Rosenfeld II</u>"). This agreement contains the parties' legal obligation regarding the records at issue in both <u>Rosenfeld I</u> and <u>Rosenfeld II</u>.

2. The parties agree that the records at issue in <u>Rosenfeld I</u> and <u>Rosenfeld II</u> shall be disclosed pursuant to the terms of this agreement, except as otherwise expressly indicated. Under this agreement, the disclosures and exemptions from disclosure shall be governed by the law and representative rulings contained in the district court's opinion (incorporating the magistrate's ruling) and the Ninth Circuit's opinion in <u>Rosenfeld I</u> (see 761 F. Supp. 1440 and 57 F.3d 803), and Freedom of Information Act ("FOIA") law generally where the foregoing opinions do not cover a specific matter, EXCEPT as modified by the following terms:

    (a)  (i)  Defendants may withhold the identities of <u>all</u> confidential sources in all of the records at issue, regardless

of whether the records meet the "law enforcement purposes" threshold of Exemption 7 (5 U.S.C. §552(b)(7)), and regardless of whether the FBI previously sought to protect the source under Exemption 7 or Exemption 1 (5 U.S.C. §552(b)(1)), except as provided in Paragraph 2(a)(iii).

(ii)   Under the agreement, "confidential sources" are all sources who were given either express or implied assurances of confidentiality by the FBI.  Claimed confidential sources will be evaluated consistent with the Supreme Court's decision in U.S. Dep't of Justice v. Landano, 113 S. Ct. 2014 (1993) and with the district court's and Ninth Circuit's decisions, except as stated in Paragraphs (2)(a)(i) and 2(a)(iii) of this agreement.  However, the parties agree that, for the purposes of this agreement, all sources who were given symbol numbers by the FBI will automatically be deemed to be confidential sources.

(iii)   Any source who has been previously offi- cially acknowledged by the FBI as a source, or who has publicly testified that he or she was a source of the FBI, will be dis- closed BUT ONLY if the record at issue relates directly to the information in the prior disclosure and both the circumstances and the nature of the information in the record at issue are substantially consistent with the information provided by the

source as revealed by the prior disclosure, and only to the
extent that any such prior disclosure was not made inadvertently.

(b)   Defendants will release the names of local, state,
and foreign police department officers in records dated 1990 or
earlier.

(c)   Defendants will release the names and titles of
commercial and financial institution employees in documents dated
1990 or earlier.

(d)   Defendants will release the names of all FBI
employees in documents dated 1990 or earlier.

(e)   Defendants will release the names of all non-FBI
federal, state, and local government employees in documents dated
1990 or earlier.

(f)   Defendants will release in its entirety all
information (that is not otherwise independently exempt from
disclosure) provided by the sources, except that the information
provided by a confidential source will not be disclosed where it
could reasonably be expected to identify the source from the
circumstances, context, or content of the statements.

(g)  No term in this agreement shall be read to require disclosure of matters properly classified pursuant to Executive Order 12958 or predecessor orders.  Classified information will be reviewed by the FBI pursuant to Executive Order 12958.  Any information withheld by the FBI as classified after such review shall be subject to challenge in the district court and further review as appropriate (see below).

3.  Defendants will also reprocess all of the Rosenfeld I and Rosenfeld II records in accordance with FOIA standards in effect as of the date of this agreement (except as modified by this agreement), including (a) the standard for Exemption 7(D) articulated by the Supreme Court in Landano; (b) the Freedom of Information policies announced by President Clinton and Attorney General Reno on October 4, 1993; and (c) Executive Order 12958.

4.  As part of its reprocessing of records, Defendants will update all of the University of California files responsive to Mr. Rosenfeld's request (see Stipulation and Order, filed October 24, 1995, in Rosenfeld II, at 19 (identifying records responsive to the "University of California" request)) by processing and releasing (subject to the standards set forth above) records dated up to three months prior to the date that reprocessing of the records commences.

4

5.  Defendants agree to reprocess and release the documents at issue (subject to the standards agreed to above) within a total of twelve (12) months of settlement.  The materials relating to Rosenfeld I will be processed first and processing will be completed in two months or less after the date of this agreement.  After the reprocessing of the Rosenfeld I files is complete, Defendants shall process the Rosenfeld II material.  Every two months after the processing of the Rosenfeld I material is complete, the FBI shall issue interim releases of all of the material which has been processed to date.  The FBI shall attempt to issue interim disclosures of at least 15,000 pages, absent exigent circumstances.

6.  (a)  Upon signing this agreement, the parties will file a joint motion in the district court, asking the court to issue an indicative order as to whether it would enter this agreement as an order of the court and would retain jurisdiction over Rosenfeld I and Rosenfeld II in order to enforce and administer the terms of this agreement and to resolve any fee disputes.

(b)  If the district court issues an indicative order, that, upon remand, it will enter this agreement as an order of the court and will retain jurisdiction over Rosenfeld I and Rosenfeld II in order to enforce and administer the terms of this agreement and to resolve any fee disputes, then defendants will promptly dismiss the Petition for a Writ of Certiorari in this

case, filed in the United States Supreme Court on November 22, 1995 (No. 95-804, October Term 1995).

(c)  Upon remand to the district court, the parties will file a joint motion in the district court, asking the court to enter this agreement as an order of the court, and to retain jurisdiction over Rosenfeld I and Rosenfeld II in order to enforce and administer the terms of this agreement, and to resolve any fee disputes.

(d)  The parties stipulate to the referral of these cases to United States Magistrate Judge Phyllis Hamilton.  Upon remand, the parties will jointly ask the district court to appoint Magistrate Judge Hamilton to adjudicate all challenges to the FBI's processing of documents, claims of exemptions, and all issues relating to the disclosure of records under this agreement.

(e)  Before Magistrate Judge Hamilton, Mr. Rosenfeld will be permitted to challenge the specific disclosures (by file, document or by specific exemption within a document), to ensure that the FBI complies with this agreement.  The Magistrate Judge will permit Rosenfeld to file a reasonable number of challenges. The number of challenges will be determined by the Magistrate Judge after obtaining the views of the parties.  If the Magistrate Judge so finds, after reviewing Rosenfeld's challenges

6

(e.g., by examining the parties' declarations and conducting in camera review), that the FBI has not substantially complied with this agreement, the Magistrate Judge will permit additional challenges, and may order other relief as deemed necessary.

(f) The FBI will be permitted to submit additional declarations or other information to support the claimed exemptions. Rosenfeld will be permitted to submit declarations and other information to support his challenges. Specific procedures and time limits will be determined by Magistrate Judge Hamilton.

(g) The parties will ask the court to instruct Magistrate Judge Hamilton to take all reasonable steps to decide the disputed issues expeditiously.

(h) The parties agree that, except as to the materials specified in Paragraph 6(i), Magistrate Judge Hamilton's rulings regarding the processing of documents, claims of exemption, and issues relating to the disclosure of the materials at issue in Rosenfeld I and Rosenfeld II shall be final, nonappealable, and enforceable by the district court.

(i) The parties shall retain their ordinary appeal rights (to the district court and for further review) in regard to any challenge to information withheld under:

7

Exemption (b)(1), as classified pursuant to Executive Order 12958;

Exemption (b)(3), but only insofar as the information is claimed to relate to intelligence sources and methods under 50 U.S.C. § 403(d)(3); and

Exemption (b)(7)(D), but only insofar as the information is withheld under a claimed implied assurance of confidentiality[1] (and defendants agree that they can appeal as to no more than 40 redactions (of the identity and identifying information provided by a claimed source given an implied assurance of confidentiality) pursuant to this (b)(7)(D) subprovision).

The parties will ask the district court to issue a final judgment containing all of its rulings on such challenges, and that final judgment will be subject to the ordinary appeal process. The parties agree that if the district court orders disclosure of such information, the court's disclosure order will be stayed if the Government seeks further review of the court's order. The parties agree that, if any appeal is taken, they will jointly move for expedition of the appeal. Defendants further

---

[1] The appeal rights are not intended to include or relate to symbol sources, which are addressed in Paragraph 2(a)(ii) of this Agreement.

8

agree that the disclosure of material not subject to or implicated by the appeal will not be delayed due to any appeal taken.

(j)  When the processing is completed pursuant to this agreement, and the fee issues are resolved, and all disputes provided for in Paragraph 6(i) are finally resolved (including through appeal), the parties will ask the district court to dismiss the Rosenfeld I and Rosenfeld II actions with prejudice.

7.  (a)  Defendants stipulate that Rosenfeld has "substantially prevailed" in Rosenfeld I and Rosenfeld II, for the purposes of receiving, pursuant to 5 U.S.C. § 552(a)(4)(e), "reasonable attorney fees and other litigation costs reasonably incurred" at the district court level, upon appeal, and through settlement.

(b)  The parties agree that this Settlement Agreement does not waive or otherwise affect the possibility of the entitlement of further fees related to these cases, and that Rosenfeld has not in any way waived his right to seek attorney fees and costs for all work done in these cases, including work done in connection with the fee negotiations (and/or fee motion to the court) and all subsequent phases of the litigation before Magistrate Judge Hamilton, the district court or any other tribunal.

9

(c)   The parties will attempt to negotiate a reasonable fee amount to be paid by Defendants (which may include negotiations over the amount of fees to be paid for work in connection with the fee negotiations).  If the parties cannot agree, the fee request will be resolved by the district court upon motion.

(d)   Defendants agree that Rosenfeld may request attorney fees and costs (and/or file a motion for fees and costs in the district court) prior to the completion of the reprocessing of the records at issue.

(e)   Defendants do not concede that Rosenfeld is a prevailing party for any additional proceedings before Magistrate Judge Hamilton or the district court.  If Rosenfeld seeks attorney fees or costs for this subsequent phase of the litigation, he must file  a supplemental fee request in the district court and demonstrate that he substantially prevailed in that portion of the litigation.

8.   Rosenfeld waives his right to file any future request under the Freedom of Information Act for the records at issue in Rosenfeld I or Rosenfeld II, unless there is a significant change in FOIA law or policy, or a significant new occurrence, that would create a reasonable likelihood that additional information would be released.  If a new FOIA request is filed by Mr.

Rosenfeld for the records at issue in Rosenfeld I or Rosenfeld II, Mr. Rosenfeld agrees that Paragraph 2(a) of this agreement will be binding in regard to the new request.

9. Mr. Rosenfeld requests the following information under the FOIA from the FBI:

> Any and all records at FBIHQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin, on Ronald W. Reagan (date of birth 2/06/11; UC Regent ex officio c. 1966-1978), from the earliest record through January 1, 1979.

The FBI agrees to process this new FOIA request as a priority matter as outlined in Subparagraphs (a) and (b). The processing of this request and any disputes arising under this new FOIA request shall be deemed a separate matter not covered by this agreement and shall not be considered part of the Rosenfeld I or Rosenfeld II cases.

(a) Defendants agree to process (in accordance with FOIA standards in effect as of the date of this agreement) all of the records responsive to this new request that are dated prior to July 1, 1975, and release all non-exempt records, within two months after completing reprocessing of the Rosenfeld I records (pursuant to Paragraph 5 of this agreement).

(b) Defendants agree to process (in accordance with FOIA standards in effect as of the date of this agreement) all of the records responsive to this new request that are dated from

11

July 1, 1975 through January 1, 1979, and release all non-exempt records, at a rate of at least 1,000 pages per month beginning after completion of the reprocessing of the Rosenfeld II records (pursuant to Paragraph 5 of this agreement).

10.   The terms related to the reprocessing and release of information under this agreement shall remain unaffected by any subsequent decisions by the Ninth Circuit or the Supreme Court.

11.   The parties have agreed to terms and principles articulated in this agreement for the sole purpose of settling the Rosenfeld I and Rosenfeld II cases.   The terms of this agreement do not establish any general policy and shall have no precedential or binding effect beyond the scope of this specific agreement.


THOMAS STEEL
Attorney

For Seth Rosenfeld

Dated  1-12-96.


FRANK W. HUNGER
Assistant Attorney General
Civil Division
Department of Justice

For Defendants

Dated  1/11/96.

# Exhibit C

4-694 (Rev. 10-18-94)



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

Mr. Seth Rosenfeld
301 Pennsylvania Avenue
San Francisco, CA  94107

MAY 0 2 1996

Ronald W. Reagan

Subject of Request: _____

FOIPA No. 405,193   /190-33829

Dear Requester:

Enclosed are copies of documents from FBI records. Excisions have been made to protect information exempt from disclosure pursuant to Title 5, United States Code, Section 552 (Freedom of Information Act) and/ or Section 552a (Privacy Act). In addition, where excisions were made, the appropriate exempting subsections have been cited opposite the deletions. Where pages have been withheld in their entirety, a deleted page information sheet has been substituted showing the reasons or basis for the deletion. The subsections cited for withholding information from the enclosed documents are marked below:

**Section 552**

| Section 552 | | Section 552a |
|---|---|---|
| ☒ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☒ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☒ (b)(3) Rule 6(e), FRCP; 26 | ☒ (b)(7)(C) | ☐ (k)(1) |
| ___ U.S.C. 6103 per IRS; | ☒ (b)(7)(D) | ☐ (k)(2) |
| ___ 50 U.S.C. 403(g) | ☒ (b)(7)(E) | ☐ (k)(3) |
| ___ per CIA | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☒ (b)(6) | | ☐ (k)(7) |

(See Form 4-694a, enclosed, for an explanation of these exemptions.)

Pursuant to your request, ___2,199___ pages(s) were reviewed and ___1,935___ page(s) are being released.

During the review of material pertinent to the subject of your request, documents were located which

☒ originated with another Government agency(ies).
These documents were referred to that agency(ies) for review and direct response to you.

☒ contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

[X] If you desire, you may appeal any denials contained herein. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530, within thirty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

[ ] The enclosed material is from the main investigative file(s) in which the subject of your request was the subject of the investigation. There are additional references to the subject(s) of your request in files relating to other individuals, organizations, events or activities. These additional mentions or references have not been reviewed to determine if, in fact, they are identifiable with the subject(s) of your request. Our experience has shown that such references are frequently similar to information contained in the processed main file(s). We will process these references if you now make a specific request for them. However, because of a significant increase in FOIPA requests and an expanding backlog, we have given priority to the processing of main investigative files and can only complete the processing of these additional references as time and resources permit

[X] See additional information which follows.

Sincerely yours,

*J. Kevin O'Brien*

Chief
Freedom of Information-
    Privacy Acts Section
Information Resources Division

Enclosures (13)

2

Mr. Seth Rosenfeld

The enclosed documents are being released pursuant to the Settlement Agreement dated January 4, 1996, pertaining to the litigation titled, <u>Seth Rosenfeld v. United States Department of Justice and Federal Bureau of Investigation.</u>  In accordance with this agreement, this release concerns all records pertaining to Ronald W. Reagan from the earliest record to July 1, 1975, at FBI Headquarters (FBIHQ) and the Los Angeles, Sacramento, San Diego, San Francisco and Washington field offices.  This release consists of documents previously processed for other requesters which have been reprocessed under current FOIA guidelines and additional documents not previously processed.

Please be advised that this release contains processed documents from both main files and cross-references.  A cross-reference is a mention of your subject by name in a file on another individual, organization, event, activity, or the like.

In processing cross-references, the pages considered for possible release included only those pages which mention your subject by name and any additional pages showing the context in which your subject was mentioned.  When such a page also contained information about other subject matters, the information "outside the scope" of the request was marked "o/s" and bracketed.  Whenever possible, the o/s material was released; however, it was withheld if consultation with another government agency would be required or if it would have been otherwise exempt from disclosure.  For your information, the exemptions that would have applied to that material had it been within the scope of your request have also been noted on the document.

For your information, the file numbers for several of the processed cross-references have been deleted.  The file numbers which were deleted for classification reasons have been numbered one through nine for your convenience.  Additionally, one cross-reference file number which was deleted under other exemptions was labeled document number one.

Also, there are eight cross-references which are on special locate at FBIHQ.  When located, these cross-references will be processed and released to you if found to be identifiable with your subject.

Numerous documents included in the material pertinent to your request were found to be duplicative of other documents being released.  These duplicate documents have not been considered for release unless additional information was included on the duplicate document.

Mr. Seth Rosenfeld

Please be advised that one FBIHQ main file, 95-124920, which may pertain to the subject of your request, has been sent to the National Archives. Since that material was not reviewed, it is not known if it actually pertains to your subject. You may wish to correspond directly with the National Archives, 8601 Adelphi Road, College Park, Maryland 20740-6001.

In addition, some of the field office main files pertaining to your subject have been destroyed. The records destruction practices of the FBI are conducted in full compliance with Title 44, United States Code, Chapter 33 and the Code of Federal Regulations, Title 36, Chapter 12, Subpart 1228. The FBI Records Retention Plan and Disposition Schedules have been approved by the National Archives.

Finally, as agreed upon, all records pertaining to your subject from July 1, 1975, through January 1, 1979, will be processed and released at a rate of at least 1,000 pages per month beginning after completion of the Rosenfeld II records.

4

.v.10-18-94)

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy  and (B) are in fact properly classified pursuant to such Executive order;

(b) (2)  related solely to the internal personnel rules and practices of an agency;

(b) (3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b) (4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b) (5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b) (6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b) (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(b) (8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b) (9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d) (5)  information compiled in reasonable anticipation of a civil action proceeding;

(j) (2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k) (1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k) (2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k) (4)  required by statute to be maintained and used solely as statistical records;

(k) (5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k) (7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

# Exhibit D

4-604 (Rev. 10-18-94)



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535

Mr. Seth Rosenfeld
301 Pennsylvania Avenue
San Francisco, CA 94107

FEB 27 1997

Subject of Request: Ronald W. Reagan

FOIPA No. 405,193    /190-33829

Dear Requester:

    Enclosed are copies of documents from FBI records. Excisions have been made to protect information exempt from disclosure pursuant to Title 5, United States Code, Section 552 (Freedom of Information Act) and/or Section 552a (Privacy Act). In addition, where excisions were made, the appropriate exempting subsections have been cited opposite the deletions. Where pages have been withheld in their entirety, a deleted page information sheet has been substituted showing the reasons or basis for the deletion. The subsections cited for withholding information from the enclosed documents are marked below:

|  | **Section 552** |  |  | **Section 552a** |
|---|---|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) |  |  | ☐ (d)(5) |
| ☒ (b)(2) | ☐ (b)(7)(B) |  |  | ☐ (j)(2) |
| ☐ (b)(3)_____ | ☒ (b)(7)(C) |  |  | ☐ (k)(1) |
| _____ | ☒ (b)(7)(D) |  |  | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) |  |  | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) |  |  | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) |  |  | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) |  |  | ☐ (k)(6) |
| ☒ (b)(6) |  |  |  | ☐ (k)(7) |

(See Form 4-694a, enclosed, for an explanation of these exemptions.)

Pursuant to your request, _____902_____ pages(s) were reviewed and __851__ page(s) are being released.

During the review of material pertinent to the subject of your request, documents were located which

    ☒ originated with another Government agency(ies).
    These documents were referred to that agency(ies) for review and direct response to you.

    ☒ contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

[X] If you desire, you may appeal any denials contained herein. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530, within thirty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

[ ] The enclosed material is from the main investigative file(s) in which the subject of your request was the subject of the investigation. There are additional references to the subject(s) of your request in files relating to other individuals, organizations, events or activities. These additional mentions or references have not been reviewed to determine if, in fact, they are identifiable with the subject(s) of your request. Our experience has shown that such references are frequently similar to information contained in the processed main file(s). We will process these references if you now make a specific request for them. However, because of a significant increase in FOIPA requests and an expanding backlog, we have given priority to the processing of main investigative files and can only complete the processing of these additional references as time and resources permit

[X] See additional information which follows.

Sincerely yours,

*J. Kevin O'Brien*

Chief
Freedom of Information-
 Privacy Acts Section
Information Resources Division

Enclosures (11)

2

Mr. Seth Rosenfeld

The enclosed documents represent the final scheduled release pursuant to the Settlement Agreement dated January 4, 1996, pertaining to the litigation titled, <u>Seth Rosenfeld v. United States Department of Justice and Federal Bureau of Investigation.</u> In accordance with this agreement, this release consists of all records pertaining to Ronald W. Reagan from July 1, 1975 through January 1, 1979, at FBI Headquarters (FBIHQ) and the Los Angeles, Sacramento, San Diego, San Francisco, and Washington field offices.

Please be advised that this release contains processed documents from both main files and cross-references. A cross-reference is a mention of your subject by name in a file on another individual, organization, event, activity, or the like.

In processing cross-references, the pages considered for possible release included only those pages which mention your subject by name and any additional pages showing the context in which your subject was mentioned. When such a page also contained information about other subject matters, the information "outside the scope" of the request was marked "o/s" and bracketed. Whenever possible, the o/s material was released; however, it was withheld if consultation with another government agency would be required or if it would have been otherwise exempt from disclosure. For your information, the exemptions that would have applied to that material had it been within the scope of your request have also been noted on the document.

Also, eight cross-references from your former time frame remain on special locate at FBIHQ. One cross-reference has been placed on special locate at FBIHQ from your later time frame. When located, these cross-references will be processed and released to you if found to be identifiable with your subject.

In addition, numerous documents processed pursuant to your request were found to be duplicative of those documents which have been previously processed. These duplicate documents have not been considered for release unless additional information was included on the duplicate document.

Finally, one of the field office main files pertaining to your subject has been destroyed. The records destruction practices of the FBI are conducted in full compliance with Title 44, United States Code, Chapter 33 and the Code of Federal Regulations, Title 36, Chapter 12, Subpart 1228. The FBI Records Retention Plan and Disposition Schedules have been approved by the National Archives.

.rev.10-18-94)

# EXPLANATION OF EXEMPTIONS

## SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy  and (B) are in fact properly classified pursuant to such Executive order;

(b) (2)   related solely to the internal personnel rules and practices of an agency;

(b) (3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the  matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b) (4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b) (5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b) (6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b) (7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to  a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforce- ment investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(b) (8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b) (9)   geological and geophysical information and data, including maps, concerning wells.

## SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d) (5)   information compiled in reasonable anticipation of a civil action proceeding;

(j) (2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k) (1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k) (2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (3)   material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k) (4)   required by statute to be maintained and used solely as statistical records;

(k) (5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k) (7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

# Exhibit E

LAW OFFICE OF THOMAS STEEL
301 PENNSYLVANIA AVENUE
SAN FRANCISCO, CA 94107

*THOMAS STEEL*
*DREW TROTT*
*D. GILL SPERLEIN*

TELEPHONE: (415) 920-7100
FACSIMILE: (415) 920-7101

July 28, 1997

Mark T. Quinlivan
U.S. Department of Justice
Civil Division, Room 1045
901 E Street, N.W.
Washington, D.C 20530

RE:    *Rosenfeld v. Department of Justice*
       *Appeal of FOIAPA No. 405, 193 Ronald Wilson Reagan*

<u>via facsimile</u>

Dear Mr. Quinlivan:

This is an appeal, pursuant to the FOIA, of the FBI's withholdings in the above reference FOIAPA request.

We believe that the FBI has withheld information that should have been released.

As you know, the FOIA provides that agencies must respond specifically to requests for information, and release all categories of non-exempt information. Agencies also must release all reasonably segregable portions of records. Moreover, under the applicable policies of President Clinton, Attorney General Reno, and Executive Orders on Classification, agencies must make the fullest possible disclosure of records and may make additional discretionary releases.

We trust that on review of this matter you will agree that additional information should be released. Further, we expect that you will provide a detailed index as required by Vaughn v. Rosen for any information you maintain is exempt.

We look forward to your timely response. Thank you again for your help.

Very truly yours,

Thomas Steel

TS/mg

# Exhibit F

LAW OFFICE OF THOMAS STEEL
301 PENNSYLVANIA AVENUE
SAN FRANCISCO, CA 94107

THOMAS STEEL
DREW TROTT
D. GILL SPERLEIN

TELEPHONE: (415) 920-7100
FACSIMILE: (415) 920-7101

September 25, 1997

Mark T. Quinlivan
Federal Programs Branch
Civil Division
U.S. Department of Justice
901 E Street, N.W., Room 1045
Washington, D.C. 20530
(202) 616-8470 facsimile

RE:   *Appeal of FOIPA No. 405, 193 Ronald Wilson Reagan*

<u>via facsimile and U.S. mail</u>

Dear Mr. Quinlivan:

This letter concerns the above referenced FOIAPA matter and my letter to you of July 28, 1997, appealing the FBI's withholdings in it.

To date, I have had no response to this appeal from either you or the FBI.

As you know, my client has entered into the settlement that provided for the release of these records in a spirit of cooperation and in an effort to resolve matters expeditiously. As you also know, the FOIA provides that agencies shall respond to appeals within a timely period, which has elapsed in this matter.

Therefore, I would very much appreciate your responding to this appeal as soon as possible.

Thank you again for your help.

Very truly yours,

D. Gill Sperlein
Associate Attorney

# Exhibit G



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

Thomas Steel, Esq.
301 Pennsylvania Avenue        Re:  Appeal No. 97-3116
San Francisco, CA  94107            RLH:MAP:PNC

Dear Mr. Steel:

       You appealed on behalf of your client, Seth Rosenfeld, from
the action of the Federal Bureau of Investigation on his request
for access to records pertaining to Ronald Reagan that are dated
prior to January 1, 1979.

       As a result of discussions between FBI personnel and members
of my staff, a supplemental release of one page is enclosed.  In
light of this fact and after careful consideration of your
appeal, I have otherwise decided to affirm the action in this
case.  Mr. Reagan is the subject of seventy-nine main files,
consisting of thirty-three Headquarters main files, twelve Los
Angeles Field Office main files, sixteen Sacramento Field Office
main files, three San Diego Field Office main files, eleven San
Francisco Field Office main files and four Washington
Metropolitan Field Office main files.  In addition, Mr. Reagan is
alluded to briefly one hundred eighty-four times in other files,
the subjects of which are other individuals or organizations.
The FBI has processed only those portions of the latter files
which pertain to Mr. Reagan.  Certain of the material within the
scope of your client's request is classified and I am affirming
the denial of access to it on the basis of 5 U.S.C. § 552(b)(1).
This material is being referred to the Department Review Commit-
tee for its review and a determination whether it warrants
continued classification under Executive Order No. 12958.  You
will be notified if the Committee's final decision results in the
declassification of any information.  Other material was properly
withheld from your client pursuant to 5 U.S.C. § 552(b)(2), (3),
(6), (7)(C) and (7)(D).  These provisions pertain to purely
internal agency practices (in this instance, source symbol
numbers and file numbers), and to material exempted from release
by statute (in this instance, Rule 6(e) of the Federal Rules of
Criminal Procedure, which pertains to the secrecy of grand jury
proceedings; 26 U.S.C. § 6103, which pertains to third-party
income tax information; and 50 U.S.C. § 403(g), which pertains to
the functions of the Central Intelligence Agency), and to mate-
rial the release of which would constitute a clearly unwarranted
invasion of the personal privacy of third parties, and to records

- 2 -

or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties, and to disclose the identities of confidential sources and information furnished by such sources. Names of FBI agents and employees were among the items excised on the basis of 5 U.S.C. § 552(b)(7)(C). This material is not appropriate for discretionary release.

Your request for itemization of the material withheld, with a justification in each instance, is denied. In my opinion, such a listing is not required and would be unreasonably burdensome for this Department to compile at the administrative stage of processing Freedom of Information Act requests and appeals.

Judicial review of my action on this appeal is available to your client in the United States District Court for the judicial district in which he resides or has his principal place of business, or in the District of Columbia, or in the Northern District of California, the Eastern District of California, the Central District of California, or the Southern District of California, all of which are where portions of the records sought are located.

Sincerely,

Richard L. Huff
Co-Director

Enclosure

# Exhibit H

# FIRST AMENDMENT PROJECT

1736 Franklin St.,  9th Floor, Oakland, CA  94612  ▫  phone: 510.208.7744  ▫  fax: 510.208.4562  ▫  www.thefirstamendment.org
David Greene                                                                                                                James Wheaton
Executive Director/Staff Counsel                                                                               Senior Counsel

March 31, 2006

Mr. Mark Quinlivan

Re:   *Rosenfeld v. United States Department of Justice*
       Outstanding Settlement Issues

Dear Mr. Quinlivan,

As we discussed, I am addressing this letter concerning the FBI's compliance with the settlement agreement in *Rosenfeld v. US Department of Justice* to you with the understanding that you will forward it to the appropriate person in the Civil Division.

This letter concerns the above referenced matter and the letter to my office dated February 28, 2006 from Mr. David M. Hardy, chief of the FBI's Records/Information Dissemination Section. I can provide a copy of that letter for your reference.

Mr. Hardy states in his letter that the records he has enclosed constitute the FBI's "final release." However, it is clear that the FBI has not released all records as required under the settlement, which was entered as an order of U.S. District Judge Marilyn Hall Patel on May 16, 1996.

As you know, the settlement required the FBI to produce all designated records within one year. As you also know, despite that court order, the FBI has taken much longer to release many of the records. The FBI's February 28, 2006 letter concerning the release of some records concerning University of California HQ File No. 190625 – nine years after the FBI agreed to release them - is only the latest example.

Moreover, the FBI has failed to produce some of the records that it explicitly agreed to process in the court ordered settlement, despite our repeated requests. Some of these are set forth below.  We will likely identify additional records as we review the agency's releases in light of the FBI's apparent assertion that it has completed processing in this matter.

I.     **Subjects for which the FBI has not released Supporting Office or Office of Origin files.**

As you are aware, as part of the settlement, the FBI and Mr. Rosenfeld stipulated to a list of subjects requested by Mr. Rosenfeld. This stipulated list was signed by a representative of the Department of Justice and entered as an order by Judge Patel on Oct. 25, 1995. This stipulation listed both the subjects and the respective FBI offices from which Mr. Rosenfeld requested records.

However, the FBI has not produced, and in some cases has refused to produce, records from Supporting Offices, which are FBI Field Offices that provide assistance to other FBI offices during investigations, and records from Offices of Origin, which are the FBI offices that have primary responsibility during an investigation.

The FBI has taken the position that Mr. Rosenfeld should have submitted his original request individually to each Office of Origin and each Supporting Office. However, this view, as we have repeatedly advised the FBI, is erroneous. The FBI, in agreeing to the stipulation and settlement, implicitly and explicitly agreed to process these records pursuant to the terms therein. The FBI's post-hoc arguments that it was not obliged to produce these records is not only contrary to the bureau's representations to the court, but smacks of bad faith in its extended negotiations prior to settlement with Mr. Rosenfeld and his counsel. If at all, the FBI should have objected prior to settlement that it would not produce such records, not after it agreed to produce them in a binding court order.

For your reference, these are the subjects for which the FBI has not produced, or specifically refused to produce, Supporting Office and/or Office of Origin records:

Hugh M. Burns
Irving Hall
Hardin Jones
Eli Katz
Mario Savio
Robert G. Sproul
Edward W. Strong
Jack Tenney
Steve Weissman
Ronald Reagan

We ask again that you promptly release these records.

**II.    Subjects who were alive at the time of the stipulation and for whom the FBI has refused to release any records.**

The stipulated list of subjects included several living people who were prominent in public affairs. Despite the fact that they were prominent public figures, the FBI has refused to release any records concerning them absent notarized waivers from them.

The FBI's refusal to release records regarding these public figure is contrary both to FOIA and to the rulings of five federal judges in this litigation. As you know, the courts repeatedly ruled that in many cases the FBI's surveillance of and accumulation of information on individuals was revealing not so much of the already public activity of these people but of the FBI's covert and legally questionable spying on them because of their First Amendment activities. At minimum, the FBI was required to release this kind of information on the living public figure subjects listed in the stipulation. Such information includes, but is not limited to, newspaper clippings, petitions, transcripts and photographs of public speeches, and FBI records addressing the collection of such information on subjects involved in First Amendment activity.

Moreover, and as you know, the settlement agreement requires the FBI to release information in broad categories, including the names of law enforcement officers, names of commercial and financial institution employees, and names of all non-FBI federal, state and local government employees in documents dated 1990 or prior. Thus, to the extent than any of the following living subjects fall into these categories, the FBI is required to release information on them.

For your reference, these subjects and the respective FBI offices from which Mr. Rosenfeld requested records include:

Alan Blanchard: SF
Jerome Byrne, HQ, LA, SF
Stephen Carr, HQ, LA, SC, SD SF
William T. Divale, HQ, LA, SF
Franklin Dunn, SF
Harry Edwards: HQ, SF
Allan Francke: SF
Paul Ivory: HQ, SF
Charles Palmer, HQ, SF
Franz Schurman, HQ, SF
Charles Schwartz, HQ, SF
Joseph Tussman, HQ, SF
Emit Wallace, SF

We ask again that you promptly release these records.

For your further reference, please be advised both that Joseph Tussman and Jerome Byrne recently passed away. I am prepared to provide you copies of their obituaries. I ask that you immediately release the records concerning them and that you process them in accord with the settlement requirements. Please note that we are in no way waiving our position that the FBI is required to release the records as set forth above

### III.    Records referred to other governmental agencies for processing

Previous letters from the FBI and the Department of Justice indicate that the FBI has referred thousands of pages of responsive records to other governmental agencies for processing. We have not received many of these records. Please advise me as to the status of these records in writing, including the number of pages you referred to each agency and the date you referred them.

### IV.    FBI records that were missing and placed on locate

Previous letters from the FBI and the Department of Justice have stated that the FBI was unable to locate some records and had placed them "on locate." Please advise me as to which records remain on locate in writing, by subject title and the number of pages.

### V.    Declassification Review

Please advise me as to the status of all of the FBI's outstanding declassification reviews for the responsive records in writing, including the caption, number, and approximate number of pages for each file pending review.

### VI.    Other outstanding issues

We are still awaiting a reply to some of the issues raised in our letters dated March 9, March 25 and April 11, 2005.

Mr. Hardy's letter of June 30, 2005 did address some questions in these letters, but he also stated, "please be advised that your other concerns are being investigated and we will provide you with the outcome in the very near future." Nearly nine months have passed and we have had no further response to these other concerns. The issues which remain to be addressed are as follows:

1.    The FBI inexplicably sent some correspondence to an incorrect address. We asked the agency to confirm that no records had been produced to that or any other incorrect address. Please check your records to determine whether the FBI had sent any other shipments of documents to the wrong address, and advise me in writing as to whether any other shipments from the FBI, or from other government agencies to which the FBI had referred records, were sent to the wrong address. As I explained

in my prior letters, the FBI sent at least one shipment to the wrong address, as did the Department of Homeland Security.

2.    So that we may confirm that we received all shipments we requested that we be sent copies of all cover letters for each shipment of records that the FBI has released in this case since January 1, 1999. Presumably, the FBI's cover letters are easily accessible to the FBI because they all reside in the master file ("190") on Mr. Rosenfeld's FOIA request.

3.    To monitor the progress of the FBI's compliance with the settlement agreement, we further requested a list, by file name and number, of all records that remain to be processed and released pursuant to the court settlement, and  when you reasonably expect to release them.

4.    In his June 30, 2005 letter, Mr. Hardy acknowledged that the FBI had stopped including inventory sheets with its releases of University of California HQ File No. 190625, supra. He stated that he would include the FBI's new electronically produced inventory, listing the page, serial number, date and exemption claimed. However, some nine months have passed and the FBI still has not released these for all sections of this file.

**Conclusion**

The record shows that my client has been exceedingly patient and cooperative in the handling of this request. In fact, according to a recent survey Mr. Rosenfeld's request is the single oldest pending FOIA request in the United States. Such non-responses and open-ended delays are clearly contrary to the FOIA and to President Bush's recent Executive Order requiring agencies to improve compliance with the FOIA. I thus ask that you respond promptly to each of the points in this letter.

Please contact me at the above number if I may be of assistance. Thank you very much for your help.

Very truly yours,

David Greene

# Exhibit I

# FIRST AMENDMENT PROJECT

1736 Franklin St., 9th Floor, Oakland, CA  94612  □  phone: 510.208.7744  □  fax: 510.208.4562  □  www.thefirstamendment.org
David Greene                                                                                                                James Wheaton
Executive Director/Staff Counsel                                                                                           Senior Counsel

May 4, 2006

Mr. Mark Quinlivan
Assistant U.S. Attorney
John Joseph Moakley Courthouse
Suite 9200
1 Courthouse Way
Boston, MA 02210

Re:     *Rosenfeld v. United States Department of Justice*
        Outstanding Settlement Issues

Dear Mr. Quinlivan,

Thank you for speaking with me on April 7, 2006, and acknowledging receipt of my letter dated March 31, 2006 addressing, inter alia, the FBI's failure to release certain records in the above referenced matter. You agreed to forward that letter to the appropriate person in the Civil Division.

To date I have had no further response from you or any one else in the Civil Division. I am thus also addressing this letter concerning my further concerns with the FBI's lack of compliance with the settlement agreement in *Rosenfeld v. US Department of Justice* to you with the understanding that you will likewise forward it to the appropriate person. Given the age of this matter, I would appreciate a timely response from you or whoever in the Civil Division will be handling it.

Mr. Rosenfeld continues a thorough review of the produced materials in light of the FBI's assertion that it has complied in full with the Stipulation and Order.   He has identified several areas in which it appears that the FBI has not adequately responded in addition to those noted in my last letter.

### Ronald Regan records

Under the 1996 settlement agreement the FBI agreed to release:

"Any and all records at FBI HQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin on Ronald W. Reagan (date of birth 2/06/11; UC Regent ex officio c. 1966-1978), from the earliest records through January 1, 1979."

My letter to you dated April 16, 2006 addressed the FBI's refusal to process Office of Origin records concerning Ronald Reagan. This letter addresses numerous other records that the FBI apparently has not released as required under the settlement agreement.

It appears that the searches the FBI did conduct were not complete and thorough; that the FBI has not released all responsive records it found in those searches; and that the FBI did not search in places it identified as likely to contain responsive records. Set forth below are examples, both of specific records and whole categories of records, which the FBI has yet to release.

Please direct the FBI to conduct the requested searches and reviews, and release all responsive records promptly.

### A) Outstanding Referrals

The FBI's letters dated May 2, 1996 and February 27, 1997 stated that it had referred dozens of documents concerning Ronald Reagan to other government agencies for processing. These letters stated that in some instances the other government agencies would respond to Mr. Rosenfeld directly. In others instances, the FBI would respond to Mr. Rosenfeld. In addition, you letter dated April 17, 1998 included a list that showed four outstanding referred documents. Other FBI records indicate that the FBI referred dozens of documents to other agencies.

Please advise me as to the status of each referral, including referrals to the IRS, DOJ Criminal Division, and the U.S. Secret Service. Please also advise me as to the status of those referrals in which the FBI was to respond to Mr. Rosenfeld.

### B) Outstanding HQ Cross References

By letters dated May 2, 1996 and February 27, 1997, the FBI stated that "there are eight cross references which are on special locate at FBI HQ" along with one additional cross reference also on special locate at FBI HQ. Further, by letter dated April 17, 1998, the FBI stated that "most of these have been located and sent to DCU. Upon completion of the DCU review, they will be processed and forwarded expeditiously."

Further, the FBI's Inventory Sheets for the records released May 2, 1996 at page 45 lists the following Headquarters cross references as on locate:

105-196603-5
62-12188-7981
62-112228-A
62-11228-47A
100-138754-A
100-38280-384
58-11887-190 (permanent charge out)
91-01-1374

FBI search slips list HQ 66-6575 as on locate.

Please advise me as to the status of these and any other records on locate.

### C) Miscellaneous Records Not Released

Other records were identified in FBI materials but not released, including:

- FBI index cards list Sacramento Field Office cross reference 194-4-1, but this was not released.

- The FBI identified HQ file 175-383 as a main file captioned Ronald Reagan, but

withheld serials 2 through 11 on the ground that "these serials don't pertain to Reagan." As you know, that is not a valid exemption under the FOIA for withholding records from a responsive file.

- Search slips and index cards for the San Francisco Field Office list File No. 80-0-2602A as responsive; but it was not released. In addition, San Francisco File 9-2094 was listed as destroyed but it appears that this file may be extant.

Please direct the FBI to release each of the above cited records.

### D) Overly Narrow Field Office Searches

In regard to field office records, the FBI should have conducted a search for any and all references concerning Ronald Reagan. An examination of the FBI's search slips indicates, however, that instead of conducting "all reference" searches, the FBI instead conducted narrower searches narrower and incomplete searches.

Los Angeles: The FBI did not specify an all-reference search, as it did on the headquarters search slip. (It did not specify any kind of search.) Further, the search slip indicates no searches were made of the Confidential Indices, FOIMS, Global, ISIS, IIS, Micro and Regional indices.

Sacramento: The FBI did not specify an all-reference search. The search slip indicates no searches were made of the FOIMS, Global, ISIS, OCIS, IIS, Micro and Regional indices.

San Diego: The search slip states that - instead of an all-reference search - a search was done for "Security References Only" and for either "Main Security" or "Main Criminal." Further, the slip indicates no searches were done for Global, Micro and Regional indices. In addition, the slip states that the search was restricted to the geographic San Diego area only. As you know, Mr. Rosenfeld's request did not restrict the requested documents to any geographic area.

San Francisco: The FBI specified an "all reference search." However, the slip indicates no searches were made of the ISIS, Micro or Global and Regional indices. The search slip indicates that a search of the General Indices was negative, which seems highly unlikely. The slip notes that the San Francisco field office apparently searched its Hearnap and Rymur indices, which are indices created for these two major investigations. However, no other field office searched any of their major case indices.

Washington Field Office: The FBI did not specify an all-reference search. The search slip indicates no searches were made of the Global, Micro and Regional indices. Further, all searches that were done were restricted to "AX & WF refs. only." (AX is the Alexandria resident agency, a sub-office of the Washington Field Office.) However, Mr. Rosenfeld requested any and all documents at each field office without restricting the office or agency that originated the document, and without restricting the geographic area covered by the document. The FBI's undue restrictions could improperly eliminate

records in the possession and/or otherwise under the control of the Washington Field Office and all its sub-offices.

Indeed, the FBI's overly narrow searches for responsive records apparently resulted in its failure to release records as required under the settlement agreement. As noted above, the FBI was required to release any and all records concerning Reagan from specified FBI Field Offices, including any and all cross references (also called see references). However, the FBI released only one cross reference from the San Francisco Field Office; one from the San Diego Field Office; two from the Los Angeles FBI Field Office (44-3130-1 is actually a main file); and four from the Washington Field Office. The Sacramento Field Office released several cross references, but none prior to 1974.

These FBI offices likely had many more cross references on Reagan, who after all was a prominent figure in Hollywood and in state and national politics and was governor of California for eight years.

In this regard, I note with some concern that the FBI apparently has a practice in handling FOIA requests of not listing all responsive records on its search slips and not processing all responsive records, even when requesters seek "any and all" records.

### E) Overly Narrow Headquarters Searches

FBI Headquarters also appears to have conducted its search in an overly narrow manner that excluded responsive documents.

The search slip indicates that the FBI did make an "all references" search for headquarters records. However, the search slip also states that the FBI used "the common name rule" in searching and listing records for processing. According to information from the FBI, the application of the common name rule means that not all responsive main files and cross references are listed on the search slip and processed for the requester.

Further, it appears that the FBI did not search all ISIS, Micro, Global, Regional OCIS, IIS, SDIS and FOIMS indices for headquarters records.

### F) Searches Apparently Not Conducted

In addition to conducting overly narrow searches as set forth above, a review of the record indicates that the FBI did not search in files that in some cases the bureau itself had identified as containing responsive records concerning Ronald Reagan. Some examples are set forth below:

Reagan was a member of the board of the Screen Actors Guild (SAG) starting in 1941 and was president of the SAG from 1947 to 1952 and again from 1959 to 1960, during a period when the FBI was intensely investigating communism in Hollywood in a

major case it code-named COMPIC. However, the FBI apparently did not examine its records concerning COMPIC or SAG for information concerning Reagan and did not release all responsive information from these records.

In 1946, Reagan, in his role as a member of the SAG board, mediated a dispute involving the Conference of Studio Unions, which was lead by Herb Sorrell, a suspected communist. However, the FBI apparently did not examine its records concerning the late Sorrell for references to Reagan and did not release all records concerning this matter.

The FBI released records showing that in the late 1940s Reagan provided the FBI with information on actors Larry Parks ("The Jolson Story"), Howard Da Silva ("The Lost Weekend") and Alexander Knox ("Wilson"). Each of them is deceased. However, the FBI apparently did not check its records on each of these actors for references to Reagan.

In 1948, Reagan was a founder of the Labor League of Hollywood Voters and in 1949 a co-founder of the Motion Picture Industry Council. Both of these organizations were involved in efforts to remove communists from Hollywood and were in contact with the FBI. However, the FBI apparently did not examine its records concerning these two organizations for information concerning Reagan.

In the late 1950s and early 1960s, the U.S. Department of Justice and the FBI conducted investigations of the Music Corporation of America (MCA) and its relationship with the Screen Actors Guild during a time when Reagan was SAG President. In this connection, according to published accounts, Reagan in 1962 testified before the federal grand jury investigating MCA and the FBI investigated Reagan's tax records. However, the FBI has not released all records concerning these matters.

In the 1940s and 1950s, the FBI investigated an organization called the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions (HICCASP), in which Reagan was involved. However, the FBI apparently did not search its records on HICCASP for information concerning Reagan.

The FBI apparently maintained at FBI Headquarters and/or the Los Angeles Field Office a major case index on its investigation of communism in Hollywood, which as previously noted the FBI code-named COMPIC. However, the FBI apparently did not conduct a search of the COMPIC index for records concerning Reagan.

### G) Other Missing Records

The FBI's overly narrow and incomplete searches, as described above, may account for the FBI having not released all responsive records on Reagan, including but not limited to those described as follows.

Press accounts and books over the years have said that Reagan was an informant for the FBI, starting in the 1940s. Although these accounts were published while Reagan was President and during his subsequent years in private life, Reagan never disputed these reports. If these accounts are correct, then why has the FBI not released to Mr. Rosenfeld all files on Reagan's role in providing information to the FBI, including but not limited to informant reports, FD-302s, and informant files such as "134" classification files.

Reagan published two autobiographies, "Where's the Rest of Me? The Ronald Reagan Story," published in 1965, and "An American Life," published in 1990. In both books, Reagan describes what he says was an important meeting with FBI agents. According to Reagan, one evening in 1946 or thereabout two agents came to his apartment in Los Angeles and had a substantial discussion with him about alleged subversion in the film industry. However, the FBI has released no records concerning this meeting or others Reagan himself described.

At the time of publication of "Where's the Rest of Me?" the FBI had a practice of internally reviewing and taking note of books that mentioned the FBI and prominent people of interest to the FBI. However, the FBI has released no records concerning this book.

### H) Conclusion

As set forth above, it appears that the FBI has not adequately searched for and released any and all records concerning Ronald Reagan.

I therefore ask that your office direct the FBI to take the following steps to ensure all records concerning Reagan are searched for at each specified FBI office and released as required pursuant to the settlement agreement:

1) Conduct complete and thorough searches, including but not limited to "all reference" searches, for any and all references to Ronald Reagan in all indices at FBI headquarters and at each specified field office, including but not limited active, inactive, General, Confidential, ELSUR, FOIMS, Global, ISIS, OCIS, IIS, Micro, Regional, SDIS and ADB indices.

2) Search all major case indices, including but not limited to COMPIC, HEARNAP, RYMUR and WEAFUG, at headquarters and at each specified field office.

3) Release any and all responsive records, including any and all main files, main file equivalents and cross references, at each specified FBI office.

4) Conduct searches using a six-way-breakdown on all reasonable variations of the names Ronald Wilson Reagan, Ronnie Reagan, Ronald Wilson Regan and Ron Regan.

5) Conduct searches under Reagan's official title, "Governor, State of California,"

and "California, Governor's Office" and reasonable variations thereof.

6) Search for records concerning Reagan in the files on COMPIC; Screen Actors Guild (SAG); the Labor League of Hollywood Voters (LLHV); the Motion Picture Industry Council (MPIC); the late Herb Sorrell; the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions (HICCASP); the Music Corporation of America (MCA).

7) Search for records concerning Reagan in the FBI's records on the late actors Larry Parks, Howard Da Silva and Alexander Knox.

8) Search for information concerning Reagan's 1965 Book, "Where's the Rest of Me? The Ronald Reagan Story." Please search by reasonable variations of the title, and under the names of Reagan and his co-author, Richard G. Hubler.

9) Search for and release any and all records at each specified FBI office concerning Reagan's meeting with the FBI around 1948 and his role in providing information to the FBI, including but not limited to informant reports, FD-302s, and informant files such as 134 classification files.

10) Provide copies of search slips used for each of the above requested searches.

11) Provide a copy of the pages of the General Indices Statistical Data (GISD) book at headquarters and each specified field office showing any and all records concerning Reagan.

In conclusion, we ask that the FBI immediately release any and all responsive records concerning Ronald Reagan, including but not limited to those discussed above.

As Mr. Rosenfeld has been very patient in awaiting the FBI's completion of his request, I would be grateful for a prompt response to each of the points in this letter.


Very truly yours,


David Greene

# Exhibit J

# FIRST AMENDMENT PROJECT

1736 Franklin Street, 9th Flr, Oakland, California 94612#tel:510.208.7744#fax: 510.208.4562 # www.thefirstamendment.org
James Wheaton, Senior Counsel          Pondra Perkins, Staff Attorney & Fellow          David Greene, Executive Director
wheaton@thefirstamendment.org               scope@thefirstamendment.org               dgreeene@thefirstamendment.org

January 29, 2007

Mr. Daniel J. Metcalfe, Director
Office of Information and Privacy
U.S. Department of Justice
Flag Building, Suite 570
Washington, DC 20530

By mail and facsimile to 202-514-1009

Re: Seth Rosenfeld request for Ronald Reagan FBI records

Dear Mr. Metcalfe,

This office represents Seth Rosenfeld and hereby submits this final appeal of the FBI's failure to release any and all records in response to the above referenced FOIA request for records concerning the late Ronald Reagan.

The FBI was required to produce certain records concerning Mr. Reagan pursuant to the 1996 settlement agreement in Rosenfeld v. U.S. Department of Justice, Case Nos. 90-3576 MHP, 85-1709 MHP and 85-2247 MHP.

The settlement agreement specified these records as:

"Any and all records at FBI HQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin on Ronald W. Reagan (date of birth 2/06/11; UC Regent ex officio c. 1966-1978), from the earliest records through January 1, 1979."

However, our review of the record indicates that the FBI has not conducted complete and thorough searches; that the FBI has not released all responsive records it found in those searches; and, moreover, that the FBI did not search in places it identified as likely to contain responsive records.

We detailed these issues in a letter dated May 4, 2006, to Assistant U.S. Attorney Mark Quinlivan, as he was the attorney of record in the above referenced cases. We asked Mr. Quinlivan to respond or, alternatively, to forward the letter to the appropriate person at the U.S. Department of Justice.

In addition, we note that many of the records that may be responsive to this request may already have been processed for other requesters. To the extent this is the case, it may significantly reduce the burden on the Bureau to search for and release responsive records as required under the Settlement Agreement.

We had hoped to resolve these issues without further litigation that would create an avoidable burden on the parties as well as on the federal courts. However, we received no substantive response from Mr. Quinlivan or anyone else for the defendants, and consequently filed a motion to compel compliance with these and other outstanding settlement agreement issues.

Mr. Daniel J. Metcalfe, Director
9 February 2007
Page 2

In response to our motion, defendants took the position that the Settlement Agreement provided that any issues concerning the FBI's processing of the Reagan records would be handled as a separate FOIA case. At a hearing on our motion before U.S. Magistrate Judge Elizabeth LaPorte on December 5, 2006, Peter Wechsler, a trial attorney with DOJ's Civil Division, affirmed this position.

We therefore submit this final administrative appeal in a further effort to resolve it without unnecessary litigation. I request that you review the attached, and hereby incorporated, copy of our May 4, 2006 letter and that you direct the FBI to conduct the requested searches for the specified Reagan records in a thorough and complete manner as required under the Settlement Agreement. Further, given the history of this matter, we request that you direct the FBI to complete these searches and release any and all responsive records within 90 days from the date of this letter.

We hope we can dispatch with this matter in a mutually acceptable manner, but if we cannot reach an agreement with a firm deadline my client will have no alternative but to enforce his rights under the FOIA in court.

Thank you very much for your timely consideration of this matter. Please phone me if I may be of assistance.

Cordially,

James Wheaton,
Senior Counsel

Encl: May 4, 2006 letter

# Exhibit K



**U.S. Department of Justice**

Office of Information and Privacy

Telephone: (202) 514-3642                    Washington, D.C. 20530

FEB 0 8 2007

James Wheaton, Esq.
First Amendment Project
1736 Franklin Street, 9th Floor
Oakland, CA 94612

Re: Seth Rosenfeld request for Ronald Reagan FBI records

Dear Mr. Wheaton:

This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on January 30, 2007.

The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number 07-0563. Please mention this number in any future correspondence to this Office regarding this matter.

We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

Sincerely,

Priscilla Jones
Supervisory Administrative Specialist

# Exhibit L

# FIRST AMENDMENT PROJECT

1736 Franklin Street, 9th Flr., Oakland, California 94612 ▪ tel:510.208.7744 ▪ fax: 510.208.4562 ▪ www.thefirstamendment.org
James Wheaton, Senior Counsel     Pondra Perkins, Fellow & Staff Attorney     David Greene, Executive Director
wheaton@thefirstamendment.org          pondra@thefirstamendment.org          dgreeene@thefirstamendment.org

1 March 2007

Mr. Daniel J. Metcalfe, Director
Office of Information and Privacy
U.S. Department of Justice
Flag Building, Suite 570
Washing ton, DC 20530

By mail and fax to 202-514-1009

Re: Ronald Reagan FBI records, Appeal No. 07-0563

Dear Mr. Metcalfe,

This letter concerns the above referenced matter, my appeal letter dated January 29, 2007, and your reply by Priscilla Jones dated February 8, 2007.

My letter appealed the FBI's failure to produce "any and all" records in response to the above referenced request as required under the law and the 1996 settlement agreement in Rosenfeld v. U.S. Department of Justice, Case Nos. 90-3576, 85-1709-MHP and 85-2247 MHP.

Thank you for your February 8 letter, which acknowledged my appeal. However, your letter did not address any of the substantive matters in my appeal, and it provided no date when you reasonably expected to make such a substantive response.

This means, of course, that at this point we face an open-ended delay as to when we might actually receive the records at issue. Accordingly, I hereby renew my appeal of the FBI's numerous improper withholdings of information concerning Mr. Reagan, as set forth in my January 29 letter and as outlined below.

In addition, please understand that this appeal concerns not only the FBI's failure to search for and release records, but also the FBI's improper withholdings in records it has released.

As you know from the record in this case, my office and prior counsel for Mr. Rosenfeld repeatedly raised such concerns in prior letters. In response to our appeal, your office released only one (1) additional page of material on Mr. Reagan and stated that if Mr. Rosenfeld wanted to pursue further relief he should file a lawsuit in U.S. District Court.

We believe the FBI made numerous unfounded claims in processing this request and withholding some of the requested records, including but not limited to claims based on personal privacy, law enforcement and national security.

We believe additional information should be released for numerous reasons, including but not limited to the following:

Mr. Daniel J. Metcalfe, Director
1 March 2007
Page 2

1)      The records are as much as six decades old;

2)      Many people whose names appear in the records are deceased, are government officials or are celebrities, all of whom have a diminished expectation of privacy;

3)      The FBI previously released such information elsewhere;

4)      Other government agencies, as well as non-government entities, have released identical or similar information;

5)      A great volume of contextual information related to the records is already public;

6)      The records concern public events and other well-publicized matters.

Mr. Rosenfeld has previously provided the FBI with several lists of the names of deceased and public figure persons who likely appear in these records.

Further, and as you know, the records at issue are of great historical value and overriding public interest. Mr. Reagan is considered by many scholars, politicians and citizens to be one of the nation's most significant presidents.

All of the above factors weigh in favor of the broadest possible release of information. Yet the FBI has instead withheld non-exempt information.

Moreover, it is clear that the FBI withheld numerous pages from the cross-references it has released, without even claiming any exemption for them. This has rendered the released cross-reference records incomplete and in many cases virtually incomprehensible. Such processing amounts to a constructive and impermissible denial of access to non-exempt information.

It also appears the FBI and other agencies have not released all documents and/or portions of documents that the FBI found in its files and referred to the other agencies for processing. Such failures to release non-exempt information from these "referrals" are also prohibited under the FOIA.

Please note that the FBI should be able to review the Reagan records it has released to Mr. Rosenfeld and release additional non-exempt information as noted above fairly easily. This is because many of these records at issue have apparently been previously processed for other requesters and thus the FBI's FOIA processing unit has already done much or most of the necessary initial review.

For your reference, these previously processed records may include records in the FBI files on Mr. Reagan as well as in related FBI files on the Screen Actors Guild, the COMPIC investigation, Motion Picture Industry Council, the Motion Picture Alliance, the Labor League of Hollywood Voters, the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions, also known as HICCASP, the late Roy M. Brewer, and in files on other organizations and individuals with which Mr. Reagan was involved in and of which the FBI is aware.

To the extent these records have been processed for other requesters, the FBI may more easily review them for additional information that should be released in this request. This may significantly reduce the burden on the FBI to comply with this request, and we

Mr. Daniel J. Metcalfe, Director
1 March 2007
Page 3

ask that you ensure that the FBI avail itself of this potential route to expeditiously processing these records.

Given the protracted history of litigation in this matter, we request that you direct the FBI to release all non-exempt information within 90 days from the date of this letter. Specifically we request the following:

1) That the FBI conduct complete and thorough searches for all responsive records as set forth in our January 29, 2007 letter to you;

2) That the FBI conduct a re-review of all Reagan records it has released to Mr. Rosenfeld to date to ensure that it release all non-exempt portions thereof;

3) That the FBI release all pages of all responsive see references, including all administrative pages;

4) That in processing the responsive records the FBI apply the lists of deceased persons, public figures and exposed informants and sources that Mr. Rosenfeld has previously provided;

5) That in processing the records the FBI check its readily available resources to determine whether third parties mentioned in the responsive records are deceased and/or are public figures so that the FBI may release all non-exempt information in the responsive records.

While this appeal challenges unfounded deletions in all the Reagan records released to Mr. Rosenfeld to date, I have enclosed for your convenience a partial list of these records.

In conclusion, I note that the record in this case shows that Mr. Rosenfeld been very patient and cooperative in working with the FBI on these requests. This is underscored by the fact that he has prevailed in the three above-referenced federal court actions, and most recently in the motion that resulted in Magistrate Judge Elizabeth D. Laporte's Order dated February 6, 2007.

I sincerely hope that we may resolve these matters informally and in a mutually acceptable manner and thus avoid potentially unnecessary litigation. However, if we cannot promptly reach an agreement with a firm deadline my client will have no alternative but to enforce his rights under the FOIA in court.

Thank you very much for your timely consideration of this matter. Please phone me if I may be of assistance.

Cordially,

James Wheaton,
Senior Counsel

Enclosure:   Partial list of excised Reagan records from which additional information should be released

Mr. Daniel J. Metcalfe, Director
1 March 2007
Page 4

Partial list of excised Reagan records from which additional information should be released

1) HQ Cross-references Vol. 1:

66-2542-7560
100-146517-33
100-138754-124
100-138754-125
100-343468-14
100-339008-31
100-338892-63
100-173363-22
100-343748-8
100-41584-42
100-339008-49
100-317714-25
100-338892-124
100-339008-109
66-2542-3-26-198 or -1987 (number unclear)
61-7582-1463
100-138754-188
61-7582-1471
100-138754-220
100-138754-329
94-34419-1 (Quentin Reynolds is deceased)
100-138754-314
100-138754-367
100-351326-5
100-138754-461
100-138754-472
100-138754-481
100-343468-39
100-138754-503
100-138754-513
100-2245-8
100-138754-525
100-138754-545
100-138754-667
100-138754-691
100-138754-695
100-138754-842
100-362955-5
62-60527-33807
62-60527-33498
62-56921-263
77-81528-5
77-81528-8
77-81528-10

2) HQ Cross-references Vol. 2:

62-104401-108
100-375582-152
100-340922-480
62-88472-20
100-434516-143
62-108840-11
62-9-38-374
Document No. 1, 7-29-65
Classified No. 4, 7-27-66
100-18459-323
100-151646-219
100-151646-223
100-151646-223
Classified No. 2, 8-28-67
157-6-19-423
100-3-104-26-339x2
100-445393-109
62-112075-2
100-3-104-26-345x
100-3-104-26-346x
166-7728-30
62-112228-67-35
62-107261-32-107
12-0-7232
100-454261-23
62-109119-2672
62-109276-1192

3) HQ Main Files:

100-382196 Sections 1, 2, 3 and 4

4) L.A. Main Files:

80-579
116-70463
161-2715-12

# Exhibit M

# FIRST AMENDMENT PROJECT

1736 Franklin Street, 9th Flr., Oakland, CA 94612 ■ tel:510.208.7744 ■ fax: 510.208.4562 ■ www.thefirstamendment.org
James Wheaton, Senior Counsel          Pondra Perkins, Fellow & Staff Attorney          David Greene, Executive Director
wheaton@thefirstamendment.org          pondra@thefirstamendment.org          dgreeene@thefirstamendment.org

13 April 2007

Mr. Daniel J. Metcalfe, Director
Office of Information and Privacy
U.S. Department of Justice
Flag Building, Suite 570
Washing ton, DC 20530

     By mail and fax to 202-514-1009
     Re: Appeals in various FOIA requests

Dear Mr. Metcalfe,

     I am counsel for Seth Rosenfeld regarding his appeals pursuant to the Freedom of Information Act in the above referenced requests.

     Mr. Rosenfeld in the past several years has submitted FOIA requests to the FBI for records concerning various subjects about which he is conducting research as a professional journalist. (A list of these requests, with available request and appropriate appeal numbers is attached as an exhibit for ease of reference.)

     Mr. Rosenfeld has also made repeated requests of the FBI, both verbally and in writing, inquiring when the FBI will release the requested records.  Further, he has filed repeated appeals on each of these requests with your office asking your office to direct the FBI to release the records pursuant to the FOIA.

     However, to date the FBI has failed to release the requested records. In response to some requests, the FBI has released some but not all records. In many other of the requests, the FBI has failed to release any records at all. Further, the FBI has failed to conduct adequate searches for the records specified in the requests.

     Moreover, despite Mr. Rosenfeld's requests, both the FBI and your office have not provided any estimate of a date when you reasonably expect to release the records. Thus, although Mr. Rosenfeld has been patient and cooperative in these requests, and has waited in some cases has already waited nearly three years, he continues to face open-ended delays that constructively deny him timely access to the requested records.

     Please be advised that as of this date we are treating the FBI's failure to release all requested non-exempt records – as well as the lack of response to his eppals – as a denial of his requests and of his appeals. Accordingly, we believe that under the FOIA we may file suit at any time to compel compliance with these requests.

     We will file said suit if we do not receive (1) a written communication granting his appeals in all respects on or before April 19, 2007, and (2) a commitment to provide all responsive records within 30 days thereafter.

     We look forward to your timely reply.

                    Cordially,

                    James Wheaton

Enc. List of FOIA Appeals

PRINTED ON RECYCLED PAPER

Exhibit 1: List of Seth Rosenfeld FOIA Appeals

Ronald Reagan, Deceased
Appeal No. 07-0563

Earl C. Bolton, Deceased
FOIA APPEAL NOS. 05-1845 and 05-1843
FBI HQ REQUEST 0999534-01
FBI SF REQUEST 0999688-000 SF

Neil Reagan (deceased)
FOIA APPEAL 05-1850
FBI Headquarters and
Los Angeles Field Office No. 1017395
Washington Field Office (no number assigned)

Research West
Appeal 07-0128
FBI HQ FOIA 1050449-000
FBI San Francisco FOIA - no number

"80 Files"
Appeal No. 07-0124
FBI Request 1049330

Herbert Ellingwood, deceased,
FOIA No. 1049408-000
Appeal No. 07-0120

Alexander C. Sherriffs, deceased
Appeal: Number 05-1852
FBI Headquarters: Number 1001628-00
SF: No Number Assigned

Robert L. Lamborn, Deceased
FOIA APPEAL Nos. 05-1848; 07-0571; 07-0572
FBI HQ REQUEST 0997262-000
FBI SF REQUEST 0997928-000

George Murphy, deceased
Appeal No. 07-0119; 05-1847
Los Angeles Field Office No. 1017613
FBI Washington Field Office No. 1018728-000
Washington Field Office (no number assigned)

Motion Picture Industry Council
Appeal No. 07-0126; Request 1050646-000,

Labor League of Hollywood Voters
Appeal No. 07-0125; Request 1050649-001,

Motion Picture Alliance for the Preservation of American Ideals
No appeal number; Request 1050648-000,

Roy M. Brewer (deceased)
APPEAL No. 07-573 -
FBI Headquarters – No. 1063060-000
Los Angeles Field Office No. 190-C2-2838
Washington Field Office (No number assigned)