JAMES R. WHEATON (Cal. Bar No. 115230)
DAVID A. GREENE (Cal. Bar No. 160107)
FIRST AMENDMENT PROJECT
1736 Franklin Street, 9th Floor
Oakland, CA 94612
Tel:   (510) 208-7744
Fax:   (510) 208-4562

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD | Case No. 07-cv-03240-MHP |
| Plaintiff, | DECLARATION OF SETH ROSENFELD IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| FEDERAL BUREAU OF INVESTIGATION, AND UNITED STATES DEPARTMENT OF JUSTICE | DATE: June 30, 2008<br>TIME: 2:00 p.m.<br>DEPT: Judge: Hon. Marilyn Hall Patel |
| Defendants. | |

I, SETH ROSENFELD, DECLARE under penalty of perjury that, unless otherwise indicated, the following is true and correct of my own personal knowledge, that I can completely testify thereto:

1.  I make this declaration in support of Plaintiff's Motion for Summary Judgment.

2.  I am a professional journalist who for many years has been reporting on the FBI's activities in regard to the University of California. My reporting has focused on nationally prominent events in and around the campus community, including but not limited to the loyalty oath of the 1950s, the civil rights movement of the early 1960s, the Free Speech Movement of 1964, the anti-war movement of the latter 1960s, the development of ethnic studies, other social and political movements, and individuals involved in those events.

3. My research has been based largely on FBI records released to me pursuant to requests and complaints filed under FOIA in the United States District Court for the Northern District of California in cases C 90-3576 MHP, C 85-1709 MHP, and C 85-2247 MHP. Pursuant to a settlement agreement entered by this Court in 1996, the Defendants have released numerous records, albeit not yet all. Attached as **Exhibit A** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the May 16, 1996 Settlement Agreement in those matters.

4. I have continued my research in this area, looking further into the FBI's activities, and the cooperation of various governmental and UC officials, members of the entertainment industry, and other high profile Californians. To that end, over the past several years I have submitted additional FOIA requests to the FBI.

5. Although the FBI has produced numerous pages of records to me in response to these requests, it has grossly failed to comply with its duties under FOIA by refusing to search for and release numerous other records. I have studied the records I have received closely and find them to be lacking in many obvious ways.

6. I have gained extensive knowledge of the FBI's record-keeping system during the over 25 years I have spent seeking records from the agency. The representations I make herein regarding the FBI's record-keeping systems are based on what I have learned from the agency itself as it responds to my FOIA requests, from the agency's representations in litigation, from consulting with books and experts, and from consulting with other agencies such as the National Archives and Records Administration.

7. I am informed and believe that the abstract card system was used by the FBI between 1921 and 1979 to assist in the assignment of the next sequential serial number to an FBI document. Each card consists of a two to three sentence summary of the document's contents, and the document's date, file classification, case and serial numbers and author.

8. I have seen and reviewed abstracts cards in other matters and find them to be a very valuable research tool. Among other value, the abstracts may be the only existing

indication of the contents of a record that the FBI cannot locate. Furthermore, the abstracts system was used by FBI officials to help them manage investigations. Thus, the abstracts provide useful information both about the subject of the documents and the FBI's administrative practices.

9. I have also gained extensive knowledge of the FBI's system of "cross references." "Cross references," also known as "see references," are documents contained in files on other subjects in which information about the requested reference appears. In my experience, some of the most valuable information I have obtained from the FBI originated in cross references.

10. For each of the following subject, I formulated the FOIA request with the goal of obtaining information that would give me a comprehensive understanding of the FBI's activities. I provided the FBI with information as to where it might be able to find responsive records both to assist the FBI in its searching and to ensure that I received all responsive records.

**RONALD REAGAN RECORDS**

11. It is well known that prior to his being elected President of the United States, the late Ronald Reagan was an actor and an official and then president of the Screen Actors Guild, the actors' union, in Hollywood, during the forties and fifties, and then Governor of California for two terms during the 1960s. My research is directed at this part of Reagan's life. During this time Ronald Reagan was actively involved in efforts to eliminate communists from the film industry. Mr. Reagan also was an FBI informant during this period, providing information to FBI agents about Hollywood political activities. Mr. Reagan has acknowledged this in his two autobiographies. In addition, previously released FBI records confirm this.

12. I initially requested records concerning Ronald Reagan as part of the settlement agreement in Rosenfeld v. U.S. Department of Justice (see paragraph 3 above). The FBI assigned this request FOIAPA Request No. 405, 193. Attached as **Exhibit D** to Plaintiff's

Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a letter dated May 2, 1996 from Defendant, Department of Justice, on which that request number appears. The FBI released records in response to that request.

13. Over a ten-year period, as the FBI processed the Ronald Reagan FOIA request, I or my counsel on my behalf, corresponded with the FBI on numerous occasions regarding the production of records. I believed that the FBI was still processing and producing Ronald Reagan records until February 28, 2006. On that date, my counsel received a production of records to another request covered by the settlement agreement. The cover letter to that production indicated that the FBI had processed all records it was required to under the Settlement Agreement. That letter is Exhibit F to Plaintiff's Exhibits. Up until that point, I believed that the FBI's processing of the Ronald Reagan request was ongoing.

14. I subsequently advised the FBI, through my counsel, that I believed that there were numerous additional responsive records that had not been produced to me. Through my counsel, I requested these additional records, and provided the FBI with the locations of how such records might be identified and where they might be located. I was hopeful that the highly detailed and specific information would assist the FBI in producing all records that were responsive to my FOIA request. A summary of those additional requested records is set forth in the May 4, 2006 letter to Assistant U.S. Attorney Mark Quinlivan.(see Exhibit E to Plaintiff's Exhibits).

15. Having not received a substantive response to the May 4, 2006 letter, I submitted a new request for all Reagan records identified in my earlier request, and the May 4, 2006 letter. I specified that I did not want records already released to me, but I did request the FBI to reprocess records in light of deceased persons and public figures who, through my subsequent research, I believed might appear in those records. I believe that substantial additional information would be released as a result of such reprocessing. Attached as **Exhibit G** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of this FOIA request, dated August 6, 2007.

16. After I filed the instant litigation, the FBI provided 5,995 pages in response to this request by letter dated November 28, 2007. Attached as **Exhibit H** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to this release dated November 28, 2007.

17. As indicated in the cover letter, these pages had previously been processed for another requester. My review of these records revealed them to be virtually entirely non-responsive to my request. First, the vast majority of them are dated after the cut-off date for the requested records, which was January 1, 1979. Second, the released records contain no field office records, even though I requested responsive records from the San Francisco, San Diego, Los Angeles, Sacramento and Washington field offices. Third, the released records contain no cross-references at all. Fourth, the request specified all search slips, including search slips used to process this request. Although the released records show that the FBI responded to numerous requests from various persons for these records, no search slips were released other than the one set dated September 10, 2007 provided in discovery in the instant case. Fifth, the request asked the FBI to reprocess any previously processed records in light of the deceased and public figure status of individuals who may appear in the records, pursuant to the lists of deceased and public figures provided to the FBI by plaintiff and otherwise readily available to the FBI through the on-line social security death index and other sources. Sixth, the released records contained no abstract records. Seventh, the released records do not contain all office of origin records.

18. I received an additional 35 pages of records on or about April 11, 2008. Attached as **Exhibit I** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, as is a true and correct copy of the cover letter to that release.

19. In addition, the FBI produced the aforementioned search slips for the Ronald Reagan records. Attached as **Exhibit J** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the FBI search slips each dated

September 10, 2007 regarding the search for records concerning Ronald W. Reagan.

20. Having reviewed the records and search slips produced to me, I believe the FBI has yet to conduct proper searches in response to my most recent FOIA request for Ronald Reagan records. The search slips themselves are incomplete and it is impossible to tell based on them what files and indexes the FBI searched for records in response to this request. For example, the search slips do not state the kind of search that was done. In this regard, I note that there are boxes that can be checked for various kinds of searches, such as All Reference (Security and Criminal); Security only, Criminal only, and Main only. But these boxes are not checked on any of the released search slips. This is significant, because some kinds of searches are more thorough than others. For example, a Main search is a search only for main files, and does not include cross references, which may contain the most important information on a subject. A criminal search would not include voluminous security files that may exist on a subject and document the FBI's interest in that person's political activities. In addition, I note that the search slips contain vertical columns that further indicate what kinds of indexes and records were searched. For example, ADB, which I believe stands for Automated Data Base, would be an index only of records entered into certain FBI computers, and would not include older records and manual indexes. But whatever ADB may stand for, once again, the FBI did not check these columns on any of these search slips to indicate what kinds of searches were done.

21. The search slips also show that all searches were performed on the same date, September 10, 2007, by the same searcher. It appears that rather than actually searching for records at the actual field offices, the FBI had a single person search the field office records remotely from a single location or summarize incompletely the work that was done by others at various other locations. There were no released search slips that were created at any of the field offices, or for FBIHQ, or which show that any searches were actually done at the specific offices.

22. Furthermore, the search slips do not indicate that the FBI searched any of the indices or

case or subject files, or employed the other search terms I specifically indicated. Among those searches not performed were those pertaining to Reagan's autobiography and co-author, or the files of Alexander Knox, the Screen Actor's Guild, the six-way breakdown of Reagan's name and variations of "Governor, State of California."

23. Based on my review of the released records, and my independent research, I believe the FBI likely has substantial additional records concerning Mr. Reagan that are responsive to this request. For example, the search slips indicate that there were only six cross references from the San Francisco field office for Ronald Reagan. It is difficult to believe that those six documents are the complete record of the FBI's files on Ronald Reagan in San Francisco. Surely, the FBI maintained voluminous records on the man who was, during the relevant time period, the Governor of California, a member of the board and then president of the Screen Actors Guild and a noted film actor when the FBI was actively investigating communism in Hollywood through the case it code-named COMPIC. I also requested all office of origin files. Office of origin is any FBI office that originates a case on a subject. This is usually the office closest to the subject of the investigation. But it may also be FBIHQ. The search slips indicate that no such searches were performed. There may be numerous office of origin records concerning Ronald Reagan that were not produced.

24. On a separate issue, prior correspondence from the FBI had identified dozens of documents that had been referred to other governmental agencies for processing. I thus instructed my counsel to include in the May 4, 2006 letter a request that I be advised as to the status of these referrals, many of which are now over 12 years old. I have not been advised of the status of those outstanding referrals since May 4, 2006 letter.

25. In the cover letter to its April 11, 2008 production, the FBI asserted that two records were accessioned to the NARA (HQ 91-01-1374, SC 194-4-1). To follow up on that assertion I wrote to the NARA on April 29, 2008. The NARA staff responded telephonically and stated that the NARA did not have the records.

**HERBERT ELLINGWOOD RECORDS**

26. Herbert Ellingwood was a prosecutor in the Alameda County District Attorney's Office in the early 1960s. In the later 1960s through the 1970s he served in Governor Reagan's cabinet, specializing in matters concerning law enforcement and civil unrest. Ellingwood's job included monitoring and suppressing student protests at UC-Berkeley. I am informed and believe that Mr. Ellingwood was in frequent contact with FBI officials in his official capacity as a representative of Governor Reagan. The FBI considered him a special contact of the Sacramento FBI office, someone whom the head of that FBI field office had designated as an especially helpful source for investigations. Attached as **Exhibit P** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a Memorandum dated July 17, 1969 to Mr. Tolson from C.D. De Loach that describes Mr. Ellingwood's role as a special contact.

27. On May 8, 2006, I submitted a request to the Los Angeles, Sacramento, San Francisco, San Diego, and Washington field offices, and FBIHQ, seeking "any and all records in any way concerning the late Herbert E. Ellingwood, also known as Herb Ellingwood." Rosenfeld specified that the FBI should search "any and all records, including but not limited to the main files, see references, Do Not File files, channelized references, search slips, including search slips used to process this request, ELSUR records, index cards, records that are or were maintained in SAC safes, and bulky exhibits." Rosenfeld specified that the FBI conduct an "all references" search of all automated and manual, active and inactive, indices. Rosenfeld further specifically requested that the search be conducted using a six-way breakdown of Mr. Ellingwood's name. Attached as **Exhibit K** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of my FOIA request.

28. By letter dated July 19, 2006, the FBI responded that it had located approximately 530 pages responsive to my request. Attached as **Exhibit L t**o Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of this letter. However, I received no records regarding Mr. Ellingwood from the FBI until June 27, 2007, when the FBI sent me an "interim release" of 46 pages. Attached as **Exhibit M**

**8**
**Case No. 07-cv-03240-MHP*: *PLAINTIFF SETH ROSENFELD'S DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to this "interim release."

29. More documents were produced to me afer the filing of the Complaint. An additional 1,286 pages, from four files, were produced on November 13, 2007, which the cover letter characterized as the "final release." Attached as **Exhibit N** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to this "final release." An additional 14 pages were released to me on April 4, 2008. Attached as **Exhibit O** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to that most recent release.

30. The FBI also produced the search slips it purports were created for the searches for the Ellingwood records. Attached as **Exhibit Q** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip dated May 24, 2006 regarding the search for records concerning H. Ellingwood. Attached as **Exhibit R** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip dated February 11, 2008 regarding a search for records concerning H. Ellingwood.

31. I have reviewed the Ellingwood search slips produced by the FBI. As with the Ronald Reagan search slips, the FBI has not released the actual Field Office records concerning the searches, and there is no clear record of what files and indices the FBI actually searched in response to plaintiff's request. However, a review of the search slips and the released records suggests that the FBI did not do a complete and thorough search, and did not release all responsive records. The record suggests that additional cross references and main files should have been released from the requested offices. For example, page 1 of the search slip dated February 11, 2008 contains boxes at the top indicating what kind of search is to be done, such as "All References (security & Criminal)" or "Security Search" only, or "Criminal Search" only, or "Main" files (and not see references) only. I note, however, that none of these boxes is checked, and the kind of search the FBI did is

9
Case No. 07-cv-03240-MHP*:* **PLAINTIFF SETH ROSENFELD'S DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

not indicated. Furthermore, page 2 of this search slip dated February 11, 2008, does not indicate what files and indexes were searched at the Sacramento (SC) and San Francisco (SF) and Washington, D.C., field offices. I note that none of the vertical columns for the type of search done is checked for these offices. Further, I note that for the Headquarters records, the only column checked is for ADB-HQGI, which, as noted above, I believe stands for Automated Data Base- Head Quarters General Index. I am informed and believe that such a search would not encompass all potentially responsive files, including but not limited to older files and see references dating from the fifties, sixties and seventies. Thus, it is impossible to tell from the search slips what kind of search the FBI did, and this raises further questions in my mind as to whether the FBI complied with my request. However, it appears that the FBI did not conduct a thorough search of any of the field offices, and especially of the Sacramento and San Francisco field offices. For example, the released records contain very few records from the sixties and the seventies, a period when Mr. Ellingwood likely had numerous contacts with officials at these FBI offices concerning First Amendment activities, civil unrest and campus protests, which would have generated numerous records. The vast majority of the released records concern Mr. Ellingwood's appointment in the 1980s to President Reagan's administration. The records also contain few cross references. I believe there should have been more cross references, because Mr. Ellingwood's name likely came up in other topics that were the subject of FBI records. In addition, I note that no abstracts were released concerning Mr. Ellingwood, and no index cards.

**ALEXANDER SHERRIFFS RECORDS**

32.  By letters dated July 8, 2004 and February 19, 2005, I requested from FBIHQ and the San Francisco field office "any and all records in any way concerning Alexander C. Sherriffs." Attached as **Exhibits S** and **T** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, are true and correct copies of these FOIA requests.

33.  The late Dr. Sherriffs was a psychology professor at UC-Berkeley from the fifties through the late sixties. He was also a vice chancellor in charge of student affairs, and

played a key role in enforcing a rule that prohibited students from engaging in First Amendment political activity on campus, which led the students to respond with the Free Speech Movement, a major protest of the sixties. In addition, dating at least from the early sixties, Sherriffs was in frequent contact with FBI agents at the San Francisco Field office, providing them with information about students, professors and other administrators and their involvement in First Amendment activities and campus policies. In the late sixties, Dr. Sherriffs left the university to join Governor Reagan's administration as education advisor. I am informed and believe that in this capacity, Dr. Sherriffs continued to have frequent contact with FBI officials relative to campus dissent and First Amendment activities.

34. For more than three years the FBI failed to release any records in response to my request for records concerning Dr. Sherriffs. On April 1, 2008, the FBI released 22 pages. Attached as **Exhibit U** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to this release.

35. I believe that the FBI has numerous additional responsive records. It is simply inconceivable that the FBI does not have more documents, and no documents at the San Francisco Field Office, pertaining to the man who played so prominent a role in events so closely watched by the FBI.

36. Moreover, the search slips that the FBI released concerning Dr. Sherriffs, dated February 11, 2008, do not provide a clear picture of what records and indexes the FBI searched in response to this request. As with other search slips the FBI provided pursuant to this court's order, the FBI staff did not check boxes indicating what kind of search they did. Moreover, the FBI did not release the records that were created at the Field Offices from which records were requested. Instead, the FBI released a summary created apparently at headquarters, that as noted does not describe the kind of search done and how thorough it was. In addition, the search slip lists a San Francisco main file 80-928 concerning Dr. Sherriffs, and states "can't find." But the search slip does not indicate what efforts the FBI has taken to locate this file. Four other records listed on the search slip (HQ 62-

19060-2665, HQ 62-19060-2793, HQ 140-13514-18, HQ 100-151646-35) were not produced. One that was produced (HQ 62-103031-124x) is not listed on the search slip. No FBIHQ main files were located. This further demonstrates the inaccuracy of the search slips. Attached as **Exhibit V** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip dated February 11, 2008 regarding a search for records concerning Alexander Sherriffs.

37. By three separate and identical letters dated October 13, 2006, I submitted requests to the FBI Washington Field Office, the Los Angeles Field Office, and FBIHQ for "any and all records in any way concerning the late Roy Martin Brewer." In my request, I listed seven organizations with which Mr. Brewer was involved and requested that records concerning those organizations be checked for references to Mr. Brewer. I also requested that records concerning Ronald Reagan be checked for references to Mr. Brewer. Attached as **Exhibit W** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of this FOIA.

38. As I noted in my FOIA request, the late Roy Brewer was a union official in Hollywood in the fifties and sixties who worked closely with Ronald Reagan to oust communists from the film industry. I am informed and believed that Mr. Brewer also worked closely with FBI agents to accomplish this goal.

39. The FBI released 231 pages on April 26, 2007. All records were from the Washington Field Office. No records from any other field offices were produced. Attached as **Exhibit X** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to this release. The FBI released an additional 290 pages on April 2, 2008. The cover letter to that disclosure indicated that these records were cross references identified when the central records system at FBIHQ was searched. Attached as **Exhibit Y** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to the release dated April 2, 2008.

40. The FBI also produced one undated search slip regarding its efforts to locate Brewer

records. Attached as **Exhibit Z** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of an undated FBI search slip regarding the search for records concerning Roy M. Brewer. Like other search slips I received from the FBI, this search slip does not provide a clear picture of what records and indexes the FBI searched in response to this request. In fact, it is impossible to tell from this slip what files the FBI searched at each field office.

41. My review of the record indicates that the FBI arbitrarily stopped its search of the Brewer records. The FBI did apparently search through the first 39 serials of FBI headquarters file, 100-138754, which was the FBI's main file on its investigation of communists in Hollywood, code-named "COMPIC." I have reviewed other records from COMPIC and know it to be a massive file that consists of hundreds of serials, or documents. However, inexplicably, the FBI apparently stopped its search of this file at serial 39. I am informed and believed that there are numerous other serials in this file that concern Mr. Brewer and that are responsive to my request. My belief that the FBI arbitrarily ceased processing my Brewer request is supported by the notation on the cover letter to the FBI's April 2, 2008 release. In that letter, Mr. David Hardy of the FBI acknowledged that the FBI had additional responsive records, but to date they have not been released and he has provided no estimated date when they will be released.

42. In addition, I note that the FBI released relatively few cross references concerning Mr. Brewer. I am informed and believe that based on Mr. Brewer's activities there may be numerous additional cross references that are responsive to my request.

43. I am informed and believed that the FBI has additional records, including cross references and main files that should be released in response to this request.

**NEIL REAGAN RECORDS**

44. By three separate and identical letters dated March 23, 2005 to the FBI Washington Field Office, the Los Angeles Field Office, and FBI Headquarters, I requested "any and all records in any way concerning Neil Reagan." Attached as **Exhibit AA** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and

correct copy of my FOIA request concerning Neil Reagan.

45. The late Neil Reagan was the older brother of Ronald Reagan. He worked in advertising and public relations. In addition, starting in the late 1940s, he worked with the FBI, helping FBI agents gather information about people involved in left-wing political activity in Hollywood. Mr. Reagan described his work for the FBI in an oral history interview published by the State of California. Attached as **Exhibit FF** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of an excerpt from an interview with Neil Reagan from 1981 titled "Governmental History Documentation Project Ronald Reagan Era."

46. On May 26, 2005, the FBI responded that its search of the central records system files, manual and ELSUR indices at FBI Headquarters, Los Angeles Field Office and Washington Field Office revealed no records responsive to my request. Attached as **Exhibit BB** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of this letter. I filed an administrative appeal to that response. On February 28, 2006, the FBI produced 3 pages of records. Attached as **Exhibit CC** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to that release. Eighty-eight additional pages were produced on September 4, 2007. Attached as **Exhibit DD** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to the September 4, 2007 release. An additional 9 pages were released April 3, 2008. Attached as **Exhibit EE** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to the April 3, 2008 release.

47. I have reviewed the Neil Reagan records produced to me. These pages were mostly news clippings from the 1980s.

48. The FBI also produced a search slip for the Neil Reagan records. Attached as **Exhibit GG** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip dated February 11, 2008 regarding the

search for records concerning Neil Reagan.

49. Again, it is impossible to tell from the released search slips what records the FBI searched or did not search concerning my request for records concerning Mr. Reagan. The single page of search slips that the FBI released is incomplete and does not indicate what records were searched or not searched at each specified FBI office.

50. However, I am informed and believe that the FBI has numerous other responsive records concerning Mr. Reagan. My belief is based, in part, on one record that the FBI released in response to this request that lists Mr. Reagan as a confidential informant. Attached as **Exhibit HH** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of this FBI document from 1949 concerning Neil Reagan. Based on this record, and other information including Mr. Reagan's oral history interview, I believe the FBI created additional records concerning Mr. Reagan, including records relating to his work as an informant and his contacts with the FBI.

51. In addition, although I requested see reference, or cross reference documents, the FBI, rather than release Exhibit HH pursuant to my instructions, released only selected pages. As a result, it is difficult for me to have a full and accurate understanding of the this record and how it relates to Mr. Reagan.

**MPIC, MPA AND LABOR LEAGUE OF HOLLYWOOD VOTERS RECORDS**

52. By letters dated June 14, 2006, I submitted FOIA requests to the FBI's Los Angeles filed office and to FBIHQ. seeking "any and all records in any way concerning . . . the Motion Picture Industry Council, also known as MPIC, the Motion Picture Alliance for the Preservation of American Ideals, also known as MPA, [and] the Labor League of Hollywood Voters." A true and correct copy of this FOPIA request is attached as **Exhibit II** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith.

53. These three organizations existed in Hollywood in the Cold War era and were involved in eliminating suspected communists from the film industry. Among those active in, or in contact with, these groups, were Roy Brewer and Ronald Reagan. I am informed and believed that these groups, through their representatives, also had periodic contact with

15
Case No. 07-cv-03240-MHP: PLAINTIFF SETH ROSENFELD'S DECLARATION IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

FBI agents. As a result, I am informed and believed that the FBI created extensive records concerning these organizations, including but not limited to main files, see references, abstracts and index cards.

54. On April 25, 2007, the FBI produced 49 pages on the Labor League. The cover letter does not indicate what searches were done. Attached as **Exhibit JJ** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter dated April 25, 2007. On September 28, 2007, the FBI produced 991 pages regarding MPA. The cover letter does not indicate what searches were done. Attached as **Exhibit KK** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter dated September 28, 2007. The FBI produced 1,018 pages on MPIC on February 28, 2008. Attached as **Exhibit LL** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of the cover letter to the MPIC release dated February 28, 2008. Like the other, the cover letter does not indicate what searches were done.

55. In addition, the FBI produced search slips purportedly corresponding to these releases. Attached as **Exhibit MM** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip regarding the search for records concerning MPIC. Attached as **Exhibit NN** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip regarding the search for records concerning the Labor League of Hollywood Voters. Attached as **Exhibit OO** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, is a true and correct copy of a FBI search slip regarding the search for records concerning MPA.

56. As in the above cases, the released search slips either show that narrow and non-responsive searches were conducted, such as a search only of the Automated Data Base (ADB) or of Main files; or, the search slips are so incomplete that it is impossible to tell what files and indexes were searched at each FBI field office.

57. The FBI has released numerous pages in response to these three requests. However, based on my review of the records, I believe that the FBI has not conducted a thorough search for, and released, all non-exempt responsive main files and cross references. In addition, the FBI has released no abstracts and index cards.

**THE FBI'S POLICY OF DELAY AND DENIAL**

58. I am informed and believe that the FBI has adopted a deliberate policy intended to deny, delay and discourage FOIA requests. As part of this policy, the FBI routinely ignores FOIA requests that properly specify certain categories of records, such as cross references, and instead processes only main files that are referenced in limited indexes. The FBI deliberately ignores these lawful requests to force requesters to make a time consuming and discouraging appeal of the FBI's denial to the Department of Justice. Only then will the FBI conduct an additional search. But even at that time, the FBI will not conduct of full and thorough search for specified records, including but not limited to inactive files and abstract records. The FBI treats these records as if they are categorically exempt from disclosure, even though there is no such exemption in the law. Attached **as Exhibit PP** to Plaintiff's Exhibits in Support of Motion for Summary Judgment, filed herewith, are true and correct copies of two letters I received from the FBI that state that agency's purported policies.

I declare under penalty of perjury that the foregoing is true and correct and executed June 2, 2008 at San Francisco, California.

by: _____
Declarant Seth Rosenfeld