# Exhibit A

1 | THOMAS STEEL
2 | JEFF BYRNE
  | STEEL, CLARENCE, BUCKLEY & SNELL
3 | 301 Pennsylvania Avenue
  | San Francisco, CA 94107
  | (415) 920-7100
4 |
5 | Attorneys for Plaintiff

6 | FRANK W. HUNGER
  | Assistant Attorney General
  | MICHAEL J. YAMAGUCHI
7 | United States Attorney
  | GAIL KILLEFER
8 | Assistant United States Attorney
  | ANNE L. WEISMANN
9 | MARK T. QUINLIVAN
10 |    U.S. Department of Justice
  |    Civil Division; Room 1048
  |    901 E Street, N.W.
11 |    Washington, D.C. 20530
  |    Telephone: (202) 514-3346
12 |
  | Attorneys for Defendants
13 |

14 |           UNITED STATES DISTRICT COURT
  |          NORTHERN DISTRICT OF CALIFORNIA
15 |

16 | SETH ROSENFELD,                    )
17 |                                    )    Case No. 90-3576 MHP
  |                Plaintiff,           )    AND
  |                                     )    Case No. 85-1709 MHP
18 | v.                                 )    Case No. 85-2247 MHP
  |                                     )
19 |                                    )    [PROPOSED] ORDER
20 | UNITED STATES DEPARTMENT OF        )
  | JUSTICE, and UNITED STATES         )
21 | FEDERAL BUREAU OF                  )
  | INVESTIGATION,                     )
22 |                                    )    Date:
  |                Defendants.          )    Hon. Marilyn Hall Patel
23 |                                    )
24 | _____    )

25 |                    ORDER

26 |     This matter comes before the Court on the parties Joint
27 | Motion for Entry of Settlement Agreement as an Order of Court and
28 | to Retain Jurisdiction.  Upon consideration of the foregoing

ORIGINAL

RECEIVED

MAY 16 1996

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
MAY 22 7 32 AM '96
RICHARD W. WIEKING
U.S. DISTRICT COURT
NO DIST OF CA

1   motion, and the entire record herein, it is by the Court this 21⁵ᵗ

2   day of May 1996

3       ORDERED that the parties' Joint Motion be, and the same

4   hereby is, GRANTED; and it is further

5       ORDERED that the parties' Settlement Agreement, which is

6   attached hereto, is hereby entered as an order of this Court; and

7   it is further

8       ORDERED that the Court will retain jurisdiction over these

9   cases in order to enforce and administer the terms of the

10  agreement and to resolve any fee disputes.

11

12

13

14                      MARILYN HALL PATEL
                   UNITED STATES DISTRICT JUDGE
15                         MAY 2 2 1996

16

17

18

19

20

21

22

23

24

25

26

27

28  [PROPOSED] ORDER                              - 2 -
    Case Nos. 90-3576 MHP; 85-1709 MHP; 85-2247 MHP

# ORIGINAL



## SETTLEMENT AGREEMENT

Seth Rosenfeld (hereafter "Rosenfeld") and the Federal Bureau of Investigation and the United States Department of Justice (hereafter "Defendants"), through their authorized representatives, hereby agree to the following terms:

1. The terms of this agreement apply to the records at issue in both Rosenfeld v. FBI, District Court Nos. C-85-1709, C-85-2247, Ninth Cir. No. 91-16538 ("Rosenfeld I"); and Rosenfeld v. FBI, District Court No. C-90-3576 ("Rosenfeld II"). This agreement contains the parties' legal obligation regarding the records at issue in both Rosenfeld I and Rosenfeld II.

2. The parties agree that the records at issue in Rosenfeld I and Rosenfeld II shall be disclosed pursuant to the terms of this agreement, except as otherwise expressly indicated. Under this agreement, the disclosures and exemptions from disclosure shall be governed by the law and representative rulings contained in the district court's opinion (incorporating the magistrate's ruling) and the Ninth Circuit's opinion in Rosenfeld I (see 761 F. Supp. 1440 and 57 F.3d 803), and Freedom of Information Act ("FOIA") law generally where the foregoing opinions do not cover a specific matter, EXCEPT as modified by the following terms:

(a) (i) Defendants may withhold the identities of all confidential sources in all of the records at issue, regardless

of whether the records meet the "law enforcement purposes" threshold of Exemption 7 (5 U.S.C. §552(b)(7)), and regardless of whether the FBI previously sought to protect the source under Exemption 7 or Exemption 1 (5 U.S.C. §552(b)(1)), except as provided in Paragraph 2(a)(iii).

(ii)  Under the agreement, "confidential sources" are all sources who were given either express or implied assurances of confidentiality by the FBI.  Claimed confidential sources will be evaluated consistent with the Supreme Court's decision in U.S. Dep't of Justice v. Landano, 113 S. Ct. 2014 (1993) and with the district court's and Ninth Circuit's decisions, except as stated in Paragraphs (2)(a)(i) and 2(a)(iii) of this agreement.  However, the parties agree that, for the purposes of this agreement, all sources who were given symbol numbers by the FBI will automatically be deemed to be confidential sources.

(iii)  Any source who has been previously officially acknowledged by the FBI as a source, or who has publicly testified that he or she was a source of the FBI, will be disclosed BUT ONLY if the record at issue relates directly to the information in the prior disclosure and both the circumstances and the nature of the information in the record at issue are substantially consistent with the information provided by the

2

source as revealed by the prior disclosure, and only to the extent that any such prior disclosure was not made inadvertently.

(b)   Defendants will release the names of local, state, and foreign police department officers in records dated 1990 or earlier.

(c)   Defendants will release the names and titles of commercial and financial institution employees in documents dated 1990 or earlier.

(d)   Defendants will release the names of all FBI employees in documents dated 1990 or earlier.

(e)   Defendants will release the names of all non-FBI federal, state, and local government employees in documents dated 1990 or earlier.

(f)   Defendants will release in its entirety all information (that is not otherwise independently exempt from disclosure) provided by the sources, except that the information provided by a confidential source will not be disclosed where it could reasonably be expected to identify the source from the circumstances, context, or content of the statements.

(g)    No term in this agreement shall be read to require disclosure of matters properly classified pursuant to Executive Order 12958 or predecessor orders.    Classified information will be reviewed by the FBI pursuant to Executive Order 12958.    Any information withheld by the FBI as classified after such review shall be subject to challenge in the district court and further review as appropriate (see below).

3.    Defendants will also reprocess all of the Rosenfeld I and Rosenfeld II records in accordance with FOIA standards in effect as of the date of this agreement (except as modified by this agreement), including (a) the standard for Exemption 7(D) articulated by the Supreme Court in Landano; (b) the Freedom of Information policies announced by President Clinton and Attorney General Reno on October 4, 1993; and (c) Executive Order 12958.

4.    As part of its reprocessing of records, Defendants will update all of the University of California files responsive to Mr. Rosenfeld's request (see Stipulation and Order, filed October 24, 1995, in Rosenfeld II, at 19 (identifying records responsive to the "University of California" request)) by processing and releasing (subject to the standards set forth above) records dated up to three months prior to the date that reprocessing of the records commences.

4

5.   Defendants agree to reprocess and release the documents at issue (subject to the standards agreed to above) within a total of twelve (12) months of settlement.  The materials relating to Rosenfeld I will be processed first and processing will be completed in two months or less after the date of this agreement.  After the reprocessing of the Rosenfeld I files is complete, Defendants shall process the Rosenfeld II material. Every two months after the processing of the Rosenfeld I material is complete, the FBI shall issue interim releases of all of the material which has been processed to date.  The FBI shall attempt to issue interim disclosures of at least 15,000 pages, absent exigent circumstances.

6.   (a)  Upon signing this agreement, the parties will file a joint motion in the district court, asking the court to issue an indicative order as to whether it would enter this agreement as an order of the court and would retain jurisdiction over Rosenfeld I and Rosenfeld II in order to enforce and administer the terms of this agreement and to resolve any fee disputes.

(b)  If the district court issues an indicative order, that, upon remand, it will enter this agreement as an order of the court and will retain jurisdiction over Rosenfeld I and Rosenfeld II in order to enforce and administer the terms of this agreement and to resolve any fee disputes, then defendants will promptly dismiss the Petition for a Writ of Certiorari in this

case, filed in the United States Supreme Court on November 22, 1995 (No. 95-804, October Term 1995).

(c) Upon remand to the district court, the parties will file a joint motion in the district court, asking the court to enter this agreement as an order of the court, and to retain jurisdiction over Rosenfeld I and Rosenfeld II in order to enforce and administer the terms of this agreement, and to resolve any fee disputes.

(d) The parties stipulate to the referral of these cases to United States Magistrate Judge Phyllis Hamilton. Upon remand, the parties will jointly ask the district court to appoint Magistrate Judge Hamilton to adjudicate all challenges to the FBI's processing of documents, claims of exemptions, and all issues relating to the disclosure of records under this agreement.

(e) Before Magistrate Judge Hamilton, Mr. Rosenfeld will be permitted to challenge the specific disclosures (by file, document or by specific exemption within a document), to ensure that the FBI complies with this agreement. The Magistrate Judge will permit Rosenfeld to file a reasonable number of challenges. The number of challenges will be determined by the Magistrate Judge after obtaining the views of the parties. If the Magistrate Judge so finds, after reviewing Rosenfeld's challenges

6

(e.g., by examining the parties' declarations and conducting in camera review), that the FBI has not substantially complied with this agreement, the Magistrate Judge will permit additional challenges, and may order other relief as deemed necessary.

(f) The FBI will be permitted to submit additional declarations or other information to support the claimed exemptions. Rosenfeld will be permitted to submit declarations and other information to support his challenges. Specific procedures and time limits will be determined by Magistrate Judge Hamilton.

(g) The parties will ask the court to instruct Magistrate Judge Hamilton to take all reasonable steps to decide the disputed issues expeditiously.

(h) The parties agree that, except as to the materials specified in Paragraph 6(i), Magistrate Judge Hamilton's rulings regarding the processing of documents, claims of exemption, and issues relating to the disclosure of the materials at issue in Rosenfeld I and Rosenfeld II shall be final, nonappealable, and enforceable by the district court.

(i) The parties shall retain their ordinary appeal rights (to the district court and for further review) in regard to any challenge to information withheld under:

7

Exemption (b)(1), as classified pursuant to Executive Order 12958;

Exemption (b)(3), but only insofar as the information is claimed to relate to intelligence sources and methods under 50 U.S.C. § 403(d)(3); and

Exemption (b)(7)(D), but only insofar as the information is withheld under a claimed implied assurance of confidentiality[1] (and defendants agree that they can appeal as to no more than 40 redactions (of the identity and identifying information provided by a claimed source given an implied assurance of confidentiality) pursuant to this (b)(7)(D) subprovision).

The parties will ask the district court to issue a final judgment containing all of its rulings on such challenges, and that final judgment will be subject to the ordinary appeal process. The parties agree that if the district court orders disclosure of such information, the court's disclosure order will be stayed if the Government seeks further review of the court's order. The parties agree that, if any appeal is taken, they will jointly move for expedition of the appeal. Defendants further

---

[1] The appeal rights are not intended to include or relate to symbol sources, which are addressed in Paragraph 2(a)(ii) of this Agreement.

8

agree that the disclosure of material not subject to or implicated by the appeal will not be delayed due to any appeal taken.

(j)  When the processing is completed pursuant to this agreement, and the fee issues are resolved, and all disputes provided for in Paragraph 6(i) are finally resolved (including through appeal), the parties will ask the district court to dismiss the Rosenfeld I and Rosenfeld II actions with prejudice.

7.  (a)  Defendants stipulate that Rosenfeld has "substantially prevailed" in Rosenfeld I and Rosenfeld II, for the purposes of receiving, pursuant to 5 U.S.C. § 552(a)(4)(e), "reasonable attorney fees and other litigation costs reasonably incurred" at the district court level, upon appeal, and through settlement.

(b)  The parties agree that this Settlement Agreement does not waive or otherwise affect the possibility of the entitlement of further fees related to these cases, and that Rosenfeld has not in any way waived his right to seek attorney fees and costs for all work done in these cases, including work done in connection with the fee negotiations (and/or fee motion to the court) and all subsequent phases of the litigation before Magistrate Judge Hamilton, the district court or any other tribunal.

9

(c)  The parties will attempt to negotiate a reasonable fee amount to be paid by Defendants (which may include negotiations over the amount of fees to be paid for work in connection with the fee negotiations).  If the parties cannot agree, the fee request will be resolved by the district court upon motion.

(d)  Defendants agree that Rosenfeld may request attorney fees and costs (and/or file a motion for fees and costs in the district court) prior to the completion of the reprocessing of the records at issue.

(e)  Defendants do not concede that Rosenfeld is a prevailing party for any additional proceedings before Magistrate Judge Hamilton or the district court.  If Rosenfeld seeks attorney fees or costs for this subsequent phase of the litigation, he must file  a supplemental fee request in the district court and demonstrate that he substantially prevailed in that portion of the litigation.

8.   Rosenfeld waives his right to file any future request under the Freedom of Information Act for the records at issue in _Rosenfeld I_ or _Rosenfeld II_, unless there is a significant change in FOIA law or policy, or a significant new occurrence, that would create a reasonable likelihood that additional information would be released.  If a new FOIA request is filed by Mr.

10

Rosenfeld for the records at issue in <u>Rosenfeld I</u> or <u>Rosenfeld II</u>, Mr. Rosenfeld agrees that Paragraph 2(a) of this agreement will be binding in regard to the new request.

9.  Mr. Rosenfeld requests the following information under the FOIA from the FBI:

> Any and all records at FBIHQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin, on Ronald W. Reagan (date of birth 2/06/11; UC Regent <u>ex officio</u> c. 1966-1978), from the earliest record through January 1, 1979.

The FBI agrees to process this new FOIA request as a priority matter as outlined in Subparagraphs (a) and (b).  The processing of this request and any disputes arising under this new FOIA request shall be deemed a separate matter not covered by this agreement and shall not be considered part of the <u>Rosenfeld I</u> or <u>Rosenfeld II</u> cases.

(a)  Defendants agree to process (in accordance with FOIA standards in effect as of the date of this agreement) all of the records responsive to this new request that are dated prior to July 1, 1975, and release all non-exempt records, within two months after completing reprocessing of the <u>Rosenfeld I</u> records (pursuant to Paragraph 5 of this agreement).

(b)  Defendants agree to process (in accordance with FOIA standards in effect as of the date of this agreement) all of the records responsive to this new request that are dated from

July 1, 1975 through January 1, 1979, and release all non-exempt records, at a rate of at least 1,000 pages per month beginning after completion of the reprocessing of the Rosenfeld II records (pursuant to Paragraph 5 of this agreement).

10. The terms related to the reprocessing and release of information under this agreement shall remain unaffected by any subsequent decisions by the Ninth Circuit or the Supreme Court.

11. The parties have agreed to terms and principles articulated in this agreement for the sole purpose of settling the Rosenfeld I and Rosenfeld II cases. The terms of this agreement do not establish any general policy and shall have no precedential or binding effect beyond the scope of this specific agreement.


THOMAS STEEL
Attorney

For Seth Rosenfeld

Dated  1-12-96.


FRANK W. HUNGER
Assistant Attorney General
Civil Division
Department of Justice

For Defendants

Dated  1/11/96.


12

# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Northern District of California*

---

11th Floor, Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

(415) 436-7200

FAX:(415) 436-7234

February 22, 2008

<u>VIA TELEFAX 510-208-4562</u>
David Greene, Esq.
Executive Director/Staff Counsel
First Amendment Project
1736 Franklin Street, 9th Floor
Oakland, CA 94612

       Re:    Rosenfeld v. Federal Bureau of Investigation, <u>et al</u>.
               <u>Case No. C 07-03240 MHP</u>

Dear Mr. Greene:

       I write to respond to your letter, dated December 21, 2007, and the concerns raised
therein (and during the parties' December 19, 2007 teleconference) about the FBI's handling of
the FOIA requests that are the subject of the above-referenced civil action. The following
information is provided to update plaintiff about the results of the FBI's efforts to respond to his
concerns.

I.    First Cause of Action
     <u>Ronald Reagan Records</u>

       As stated by FBI representatives during the December 19, 2007 teleconference, the FBI
considers this request closed. The FBI made its final release of documents to plaintiff on or
about February 27, 1997.

II.    Second Cause of Action
     <u>Herbert Ellingwood Records</u>

       The FBI has released approximately 1,365 pages in response to plaintiff's request for
documents concerning Mr. Ellingwood. Plaintiff claims that the records he received regarding
Mr. Ellingwood did not contain cross-references, abstracts or documents prior to the 1980s. The
FBI currently is reviewing the files regarding Mr. Ellingwood to ensure that all responsive

February 22, 2008
Page Two

documents have been provided to plaintiff.[1] Additionally, the FBI has received plaintiff's
payment of $126.50 for duplication fees associated with this request. There are currently no
outstanding fees associated with this request (FOIPA #1049408-00).

### III.   Third Cause of Action
Alex Sherriffs Records

The FBI's recent search verification efforts have yielded one file in the San Francisco
Field Office and some cross-references at FBI Headquarters ("FBIHQ") that may be responsive
to this request. The San Francisco Field Office file is being sent to FBIHQ. This file and the
cross-references will be reviewed to determine if they are in fact responsive to this request.

### IV.   Fourth Cause of Action
Roy Brewer Records

Plaintiff has received approximately 231 pages responsive to his request regarding Mr.
Brewer but claims that he has not received any search slips, cross-references, abstracts,
Headquarters records, or records dated prior to the 1980s. The FBI's attempts to verify these
searches have resulted in the identification of potentially responsive cross-references regarding
Mr. Brewer in a publicly-available main file located in the FBI Reading Room. The FBI is
presently undertaking a review of this Reading Room file in order to determine whether these
cross-references are in fact responsive. Aside from these potentially responsive cross-references,
and those documents already produced to plaintiff, the FBI has identified no other documents
responsive to plaintiff's request.

### V.   Fifth Cause of Action
Neil Reagan Records

Plaintiff has received approximately 91 pages of documents in response to his request
regarding Neil Reagan but claims that he has not received any main files or abstracts. The FBI's
attempts to verify the searches conducted in response to this request have not revealed any
documents other than those already provided to plaintiff.

---

[1]    Because any records responsive to plaintiff's requests in this case would have
been created prior to the creation of the FBI's automated search capabilities, the FBI is
occasionally unable to identify some older documents when it conducts a standard automated
search. To ensure the reasonableness of the searches it has conducted in this case, the FBI has
verified the automated searches and has also sent a team of analysts to the FBI's Alexandria
Records Center to verify the searches of the manual indices for some of the subjects plaintiff
requested.

February 22, 2008
Page Three

VI.     Sixth Cause of Action
        "80" Files Records

        Although plaintiff has received 984 pages in response to his request for documents regarding the "80 Files," he maintains that additional files exist and have not been identified. The FBI released all records regarding the following Sacramento Field Office main files: 80-130, 80-131, 80-132, 80-133, 80-134, 80-135, 80-136, 80-137, 80-138, 80-139 and 80-140, with the final release made on or about November 14, 2007. This case was closed on or about November 15, 2007. The FBI is taking no further action regarding this request. The FBI has received plaintiff's payment of $86.70 for duplication fees, and there are no outstanding fees associated with this now closed request (FOIPA #1049330).

VII.    Seventh Cause of Action
        (a) Motion Picture Industry Council

        The parties agreed in the December 19, 2007 teleconference that this request is still pending. The FBI has recently processed the remaining documents and is conducting a final review prior to release. The FBI anticipates making a final release of documents as soon as the review process is complete.

        (b) Labor League of Hollywood Voters

        The FBI closed this request following the release of approximately 49 pages on or about April 25, 2007.

        (c) Motion Picture Alliance for the Preservation of American Ideals

        The FBI closed this request following the release of approximately 991 pages on or about September 28, 2007. The FBI has received plaintiff's recent payment of $89.10 for duplication fees, and there are no outstanding fees associated with this closed request (FOIPA #1050648).

VIII.   Eighth Cause of Action
        Ronald Reagan Records (New Request)

        The FBI released approximately 5,995 pages of pre-processed FBIHQ material to plaintiff on or about November 28, 2007. At that time, the FBI requested that plaintiff pay a fee of $589.50 prior to the commencement of any further processing of this request. Upon review, plaintiff indicated that the pre-processed material was not responsive to his request because the documents were dated after 1979. Plaintiff also stated that there was no indication that the list of deceased individuals which he had supplied to the FBI had been applied to further process this pre-processed material.

        The FBI routinely relies on lists of deceased individuals which exist at the time of initial processing of documents. However, it is not always possible for the FBI to apply these deceased

February 22, 2008
Page Four

lists to pre-processed material, particularly when, as in this instance, the material is relatively voluminous.

During the December 19, 2007 teleconference, the FBI agreed to review and validate the search for pre-1979 Ronald Reagan documents and to revisit the appropriateness of the fees assessed to plaintiff. After further consideration, the FBI has decided to waive the $589.50 in duplication fees assessed for the documents sent to plaintiff. The FBI's recent attempt to validate the previously conducted searches did, in fact, locate additional Ronald Reagan documents which are potentially responsive. The FBI is now undertaking efforts to determine which of these newly-located documents have previously been provided to plaintiff. All responsive documents which the FBI has not already provided to plaintiff will be processed at FBIHQ.

IX.    Search Slips

Plaintiff expressed concern, both during the December 19, 2007 teleconference and in your letter, dated December 21, 2007, about the FBI's failure to provide search slips for the searches conducted in response to his requests. The temporal scope of a FOIA request typically is defined through the agency's use of a "cut-off" date, meaning that records created after that date are treated as not responsive to the request. See, e.g., Defenders of Wildlife v. U.S. Dep't of the Interior, 314 F. Supp. 2d 1, 12, n.10 (D.D.C. 2004) (recognizing that records created after date-of-search "cut-off" date specifically established by agency regulation "are not covered by [plaintiff's] request"). The FBI employs a "date-of-search cut-off," which courts have favored because this "results in a much fuller search and disclosure" than the use of a less inclusive "cut-off," such as one based on the date of the request or of its receipt by the agency. See, e.g., Van Strum v. EPA, No. 91-35404, 1992 WL 197660, at *2 (9th Cir. Aug. 17, 1992) (agreeing that a date-of-search "cut-off" date is "the most reasonable date for setting the temporal cut-off in this case"). Moreover, the FBI places requesters on "constructive notice" as to its search cut-off date through its published FOIA regulations, 28 C.F.R. Part 16. See, e.g., 28 C.F.R. § 16.4(a)(providing notice of the "cut-off" date that the Justice Department "ordinarily" uses, and specifying that "if any other date is used, the [Department] shall inform the requester of that date").

The FBI creates search slips as a result of searches conducted in response to a new FOIA request. These search slips are not in existence at the time the request is received and are only created once the FBI commences its search. Although the FBI has processed and released search slips to plaintiff in response to earlier FOIA requests, these releases were made in the context of a negotiated Settlement Agreement reached between plaintiff and the FBI. Henceforth, the FBI is responding to plaintiff's FOIA requests, including those which are the subject of this current litigation, by using its standard FOIA processing procedures. The result is that search slips which the FBI generates in the process of responding to plaintiff's FOIA requests are not deemed responsive and will not be produced.

February 22, 2008
Page Four

lists to pre-processed material, particularly when, as in this instance, the material is relatively voluminous.

During the December 19, 2007 teleconference, the FBI agreed to review and validate the search for pre-1979 Ronald Reagan documents and to revisit the appropriateness of the fees assessed to plaintiff. After further consideration, the FBI has decided to waive the $589.50 in duplication fees assessed for the documents sent to plaintiff. The FBI's recent attempt to validate the previously conducted searches did, in fact, locate additional Ronald Reagan documents which are potentially responsive. The FBI is now undertaking efforts to determine which of these newly-located documents have previously been provided to plaintiff. All responsive documents which the FBI has not already provided to plaintiff will be processed at FBIHQ.

IX.    Search Slips

Plaintiff expressed concern, both during the December 19, 2007 teleconference and in your letter, dated December 21, 2007, about the FBI's failure to provide search slips for the searches conducted in response to his requests. The temporal scope of a FOIA request typically is defined through the agency's use of a "cut-off" date, meaning that records created after that date are treated as not responsive to the request. See, e.g., Defenders of Wildlife v. U.S. Dep't of the Interior, 314 F. Supp. 2d 1, 12, n.10 (D.D.C. 2004) (recognizing that records created after date-of-search "cut-off" date specifically established by agency regulation "are not covered by [plaintiff's] request"). The FBI employs a "date-of-search cut-off," which courts have favored because this "results in a much fuller search and disclosure" than the use of a less inclusive "cut-off," such as one based on the date of the request or of its receipt by the agency. See, e.g., Van Strum v. EPA, No. 91-35404, 1992 WL 197660, at *2 (9th Cir. Aug. 17, 1992) (agreeing that a date-of-search "cut-off" date is "the most reasonable date for setting the temporal cut-off in this case"). Moreover, the FBI places requesters on "constructive notice" as to its search cut-off date through its published FOIA regulations, 28 C.F.R. Part 16. See, e.g., 28 C.F.R. § 16.4(a)(providing notice of the "cut-off" date that the Justice Department "ordinarily" uses, and specifying that "if any other date is used, the [Department] shall inform the requester of that date").

The FBI creates search slips as a result of searches conducted in response to a new FOIA request. These search slips are not in existence at the time the request is received and are only created once the FBI commences its search. Although the FBI has processed and released search slips to plaintiff in response to earlier FOIA requests, these releases were made in the context of a negotiated Settlement Agreement reached between plaintiff and the FBI. Henceforth, the FBI is responding to plaintiff's FOIA requests, including those which are the subject of this current litigation, by using its standard FOIA processing procedures. The result is that search slips which the FBI generates in the process of responding to plaintiff's FOIA requests are not deemed responsive and will not be produced.

February 22, 2008
Page Five

### X.    Abstracts

You are correct that the FBI does not consider the abstracts to be a searchable record in response to FOIA requests. We note that plaintiff agrees that the FBI is not required at this time to either search for or produce abstracts in response to the FOIA requests in this action.

I trust that this information addresses plaintiff's concerns. The FBI will continue its review of those searches described above and will promptly apprise plaintiff if additional responsive materials are located.

Very truly yours,

Ellen M. FitzGerald
Assistant United States Attorney

# United States Attorney's Office
## NORTHERN DISTRICT OF CALIFORNIA



Northern District of California
Federal Building
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Office: 415/436-7200
Fax:    415/436-7234



Oakland Branch Office
1301 Clay Street, Suite 340S
Oakland, California 94612
Office: 510/637-3680
Fax:    610/637-3724

San Jose Branch Office
150 Almaden Blvd., Suite 900
San Jose, California 95113
Office: 408/535-5061
Fax:    408/535-5066

# FAX COVER SHEET

| | |
|---|---|
| TO: *David Greene, Esq.* | |
| ORGANIZATION: *First Amendment Project* | |
| PHONE: | FAX NO.: *510-208-4562* |
| DATE: *2/22/08* | PAGES: *(including fax cover sheet)* |

COMMENTS/CONTENTS:

FROM: *Ellen M. FitzGerald*

ORGANIZATION:  U.S. Attorney's Office - Northern District of California

PHONE:                                   FAX NO.:

NOTE: If you do not receive the total number of pages indicated above, please call the sending individual listed above.
IMPORTANT: If this fax was erroneously sent to your fax number, please contact sending individual immediately.

# Exhibit C

# FIRST AMENDMENT PROJECT

1736 Franklin St., 9th Floor, Oakland, CA 94612 □ phone: 510.208.7744 □ fax: 510.208.4562 □ www.thefirstamendment.org
David Greene                                                                                               James Wheaton
Executive Director/Staff Counsel                                                                          Senior Counsel

March 4, 2008

Ms. Ellen M. FitzGerald
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94103

> Re:     *Rosenfeld v. Department of Justice*
>         N.D. Cal. case no. 3:07-CV-03240-MHP

Dear Ms. FitzGerald:

Thank you for your February 22, 2008 response to our previous correspondence. I write here with some follow-up questions to that letter and also to confirm your understanding of the Court's Order following our case management conference.

### The Court's Case Management Conference Order

As I assume you have seen, the Court's Order issued after our Case Management Conference last week indicated that the "Plaintiff is to provide Rule 26 disclosures not later than 4/11/2008." I believe this statement is in error. At the CMC, Judge Patel indicated that the Defendants must provide Mr. Rosenfeld with both all records it has identified as responsive to his FOIA requests and the search slips that are the record of the processing of his requests by April 11, 2008. The reference to Rule 26 disclosures at the CMC was specifically to the search slips.

Please confirm that your understanding is consistent with mine. I would like to apprise the Court of this error, and would prefer to do so jointly.

### Cross-Motions for Summary Judgment

As the Court has set a calendar for cross-motions for summary judgment, I am hopeful that we can quickly identify the areas of disagreement that will be at issue in those motions. Obviously, we cannot fully assess this until the FBI has completed its production of records as described in your letter. But the following discussion highlights some of the areas I have identified thus far.

**Searches of the Manual Indices**

In footnote 1 of your letter you address the fact that Mr. Rosenfeld's requests seek records that pre-date the FBI's automated search capabilities. In this regard you note that the FBI has verified the searches of the manual indices "for some of the subjects plaintiffs requested."

When a FOIA request seeks records that pre-date the agency's automated search capabilities, the agency must conduct a manual search. I such situations, the "standard automated search" is plainly inadequate.

We therefore expect that – as requested - the FBI will thoroughly search all indices, automated and manual, electronic and paper, to locate any and all responsive records. Your letter states that the manual indices were searched for only "some of the subjects plaintiff requested." Please confirm that thorough manual searches were performed for each and every subject requested by Mr. Rosenfeld. If the FBI maintains that it is not required to perform such manual searches for each, or any particular, subject, please explain. That is obviously a point we would seek to have resolved on summary judgment.

Mr. Rosenfeld is especially concerned about the apparent lack of manual searches because, as noted in our December 21, 2007 letter, he has not in many instances received any records that pre-date the 1980s, unless such records were part of a previously-processed request.

**Deceased Individuals**

In your letter you assert that it is not always possible to review previously processed records to determine whether any additional material is now subject to release because of the death of an individual for whom the FBI had asserted a privacy interest as a basis for non-disclosure. We are unclear as to why this is "impossible"; in any event, FOIA certainly requires that all non-exempt records be disclosed. To the extent the FBI is withholding any record that is no longer exempt, it is violating FOIA.

Please confirm that the FBI has reviewed all previously processed records, including those processed for Mr. Rosenfeld, to ensure that records pertaining to subsequently deceased individuals is no longer being withheld. Mr. Rosenfeld has provided the FBI with obituaries and other death notices for many such individuals. For others, such as President Reagan's first wife, Jane Wyman, the death has been widely reported. If the FBI disputes its duty to conduct such reviews, we will want to litigate that issue on summary judgment.

### Abstracts

Your letter states the FBI's position that abstracts are not a searchable record in response to FOIA requests.

Mr. Rosenfeld in no way agrees with that assertion. Our December 21, 2007 letter included only an offer, "without waiving Mr. Rosenfeld's right to seek abstracts in the future in this litigation, that the FBI need not at this time search and produce abstracts." This offer was made in the interest in obtaining a speedy response from the FBI. It was in no way an admission that the FBI has no duty to search the abstracts in response to Mr. Rosenfeld's FOIA requests.

Please confirm that the FBI asserts that it bears no duty under FOIA to search the abstracts in response to Mr. Rosenfeld's FOIA requests. We obviously disagree with that assertion and will thus address it in our summary judgment motion.

Thanks for your cooperation in these matters. Please let me know as soon as possible if you are willing to join in my filing to the court regarding the corrections to the Case Management Conference order.

Sincerely,

David Greene.

# FIRST AMENDMENT PROJECT

1736 Franklin St., 9th Floor, Oakland, CA 94612□ phone: 510.208.7744 □ fax: 510.208.4562 □ www.thefirstamendment.org
David Greene                                                                                                                    James Wheaton
Executive Director/Staff Counsel                                                                                              Senior Counsel

April 28, 2008

Ms. Ellen M. FitzGerald
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94103

> Re:  *Rosenfeld v. Department of Justice*
>       N.D. Cal. case no. 3:07-CV-03240-MHP

Dear Ms. FitzGerald:

I have been trying to reach you both by phone and email for a few weeks now so that we can discuss issues pertinent to our up-coming cross-motions for summary judgment.

### Defendants' Refusal to Produce Search Slips

As far as I know, the court has not signed our proposed clarification to the case management conference order, nor has the court done anything else to relieve Defendants of their duty to provide both search slips and a *Vaughn* index. We have to date received no search slips and no *Vaughn* index.

As such, Defendants are currently in violation of the court's order. The Defendants' continued refusal to produce search slips is impeding Rosenfeld's ability to prepare his summary judgment motion. As we have discussed, the summary judgment motions will largely focus on the adequacy of the FBI's search for records. As the search slips are the best evidence of what the FBI has done, it is crucial that Rosenfeld receive them as soon as possible.

If, by May 6, we do not receive either the search slips or an order relieving Defendants of the duty to produce them, we will pursue appropriate sanctions from the court.

### Produced Records

As noted in my previous emails to you, Mr. Rosenfeld did recently receive a small number of records that were sent to his post office box. No records were received at my office. I have asked you to confirm that the FBI has completed its searches and produced all responsive records as ordered. I have received no reply to that request. Once again, please confirm that the FBI has completed its search and produced all responsive records.

### Issues on Summary Judgment

I am also awaiting a response to my previous request that the Defendants confirm their positions with respect to several issues. As noted before, I am seeking to identify the issues about which we disagree that can be considered in the summary judgment motions.

### Searches of the Manual Indices

In footnote 1 of your letter you address the fact that Mr. Rosenfeld's requests seek records that pre-date the FBI's automated search capabilities. In this regard you note that the FBI has verified the searches of the manual indices "for some of the subjects plaintiffs requested."

When a FOIA request seeks records that pre-date the agency's automated search capabilities, the agency must conduct a manual search. I such situations, the "standard automated search" is plainly inadequate.

We therefore expect that - as requested - the FBI will thoroughly search all indices, automated and manual, electronic and paper, to locate any and all responsive records. Your letter states that the manual indices were searched for only "some of the subjects plaintiff requested." **Please confirm that thorough manual searches were performed for each and every subject requested by Mr. Rosenfeld. If the FBI maintains that it is not required to perform such manual searches for each, or any particular, subject, please explain.** That is obviously a point we would seek to have resolved on summary judgment.

### Deceased Individuals

The FBI has asserted that it is not always possible to review previously processed records to determine whether any additional material is now subject to release because of the death of an individual for whom the FBI had asserted a privacy interest as a basis for non-disclosure. We are unclear as to why this is "impossible"; in any event, FOIA certainly requires that all non-exempt records be disclosed. To the extent the FBI is withholding any

record that is no longer exempt, it is violating FOIA.

Please confirm that the FBI has reviewed all previously processed records, including those processed for Mr. Rosenfeld, to ensure that records pertaining to subsequently deceased individuals is no longer being withheld.

### Abstracts

You have confirmed that the FBI asserts that it bears no duty under FOIA to search the abstracts in response to Mr. Rosenfeld's FOIA requests.

Thanks for your cooperation in these matters. I look forward to hearing from you.

Sincerely,

David Greene.

# Exhibit D

4-694 (Rev. 10-18-94)



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Mr. Seth Rosenfeld
301 Pennsylvania Avenue
San Francisco, CA  94107

Washington, D.C.  20535

MAY 0 2 1996

Ronald W. Reagan
Subject of Request:

FOIPA No. 405,193  /90-33829

Dear Requester:

Enclosed are copies of documents from FBI records. Excisions have been made to protect information exempt from disclosure pursuant to Title 5, United States Code, Section 552 (Freedom of Information Act) and/or Section 552a (Privacy Act). In addition, where excisions were made, the appropriate exempting subsections have been cited opposite the deletions. Where pages have been withheld in their entirety, a deleted page information sheet has been substituted showing the reasons or basis for the deletion. The subsections cited for withholding information from the enclosed documents are marked below:

|  Section 552 |  |  Section 552a |
|---|---|---|
| ☒ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☒ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☒ (b)(3) Rule 6(e), FRCP; 26 | ☒ (b)(7)(C) | ☐ (k)(1) |
| U.S.C. 6103 per IRS; | ☒ (b)(7)(D) | ☐ (k)(2) |
| 50 U.S.C. 403(g) | ☒ (b)(7)(E) | ☐ (k)(3) |
| per CIA | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☒ (b)(6) | | ☐ (k)(7) |

(See Form 4-694a, enclosed, for an explanation of these exemptions.)

Pursuant to your request, ___2,199___ pages(s) were reviewed and ___1,935___ page(s) are being released. 6/7L

During the review of material pertinent to the subject of your request, documents were located which

☒ originated with another Government agency(ies).
These documents were referred to that agency(ies) for review and direct response to you.

☒ contain information furnished by another Government agency(ies). You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

[X] If you desire, you may appeal any denials contained herein. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530, within thirty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

[ ] The enclosed material is from the main investigative file(s) in which the subject of your request was the subject of the investigation. There are additional references to the subject(s) of your request in files relating to other individuals, organizations, events or activities. These additional mentions or references have not been reviewed to determine if, in fact, they are identifiable with the subject(s) of your request. Our experience has shown that such references are frequently similar to information contained in the processed main file(s). We will process these references if you now make a specific request for them. However, because of a significant increase in FOIPA requests and an expanding backlog, we have given priority to the processing of main investigative files and can only complete the processing of these additional references as time and resources permit

[X] See additional information which follows.

Sincerely yours,

J. Kevin O'Brien

Chief
Freedom of Information–
    Privacy Acts Section
Information Resources Division

Enclosures (13)

2

Mr. Seth Rosenfeld

The enclosed documents are being released pursuant to the Settlement Agreement dated January 4, 1996, pertaining to the litigation titled, <u>Seth Rosenfeld v. United States Department of Justice and Federal Bureau of Investigation.</u> In accordance with this agreement, this release concerns all records pertaining to Ronald W. Reagan from the earliest record to July 1, 1975, at FBI Headquarters (FBIHQ) and the Los Angeles, Sacramento, San Diego, San Francisco and Washington field offices. This release consists of documents previously processed for other requesters which have been reprocessed under current FOIA guidelines and additional documents not previously processed.

Please be advised that this release contains processed documents from both main files and cross-references. A cross-reference is a mention of your subject by name in a file on another individual, organization, event, activity, or the like.

In processing cross-references, the pages considered for possible release included only those pages which mention your subject by name and any additional pages showing the context in which your subject was mentioned. When such a page also contained information about other subject matters, the information "outside the scope" of the request was marked "o/s" and bracketed. Whenever possible, the o/s material was released; however, it was withheld if consultation with another government agency would be required or if it would have been otherwise exempt from disclosure. For your information, the exemptions that would have applied to that material had it been within the scope of your request have also been noted on the document.

For your information, the file numbers for several of the processed cross-references have been deleted. The file numbers which were deleted for classification reasons have been numbered one through nine for your convenience. Additionally, one cross-reference file number which was deleted under other exemptions was labeled document number one.

Also, there are eight cross-references which are on special locate at FBIHQ. When located, these cross-references will be processed and released to you if found to be identifiable with your subject.

Numerous documents included in the material pertinent to your request were found to be duplicative of other documents being released. These duplicate documents have not been considered for release unless additional information was included on the duplicate document.

Mr. Seth Rosenfeld

Please be advised that one FBIHQ main file, 95-124920, which may pertain to the subject of your request, has been sent to the National Archives. Since that material was not reviewed, it is not known if it actually pertains to your subject. You may wish to correspond directly with the National Archives, 8601 Adelphi Road, College Park, Maryland 20740-6001.

In addition, some of the field office main files pertaining to your subject have been destroyed. The records destruction practices of the FBI are conducted in full compliance with Title 44, United States Code, Chapter 33 and the Code of Federal Regulations, Title 36, Chapter 12, Subpart 1228. The FBI Records Retention Plan and Disposition Schedules have been approved by the National Archives.

Finally, as agreed upon, all records pertaining to your subject from July 1, 1975, through January 1, 1979, will be processed and released at a rate of at least 1,000 pages per month beginning after completion of the Rosenfeld II records.

4

.v.10-18-94)

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b) (1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy  and (B) are in fact properly classified pursuant to such Executive order;

(b) (2)  related solely to the internal personnel rules and practices of an agency;

(b) (3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the  matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b) (4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b) (5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b) (6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b) (7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to  a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

(b) (8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b) (9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d) (5)  information compiled in reasonable anticipation of a civil action proceeding;

(j) (2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k) (1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k) (2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k) (4)  required by statute to be maintained and used solely as statistical records;

(k) (5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k) (6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k) (7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

# Exhibit E

# FIRST AMENDMENT PROJECT

1736 Franklin St., 9th Floor, Oakland, CA 94612 ⌐ phone: 510.208.7744 ▫ fax: 510.208.4582 ⌐ www.thefirstamendment.org
David Greene                                                                                                                James Wheaton
Executive Director/Staff Counsel                                                                                             Senior Counsel

May 4, 2006

Mr. Mark Quinlivan
Assistant U.S. Attorney
John Joseph Moakley Courthouse
Suite 9200
1 Courthouse Way
Boston, MA 02210

      Re:    *Rosenfeld v. United States Department of Justice*
              Outstanding Settlement Issues

Dear Mr. Quinlivan,

      Thank you for speaking with me on April 7, 2006, and acknowledging receipt of my letter dated March 31, 2006 addressing, inter alia, the FBI's failure to release certain records in the above referenced matter. You agreed to forward that letter to the appropriate person in the Civil Division.

      To date I have had no further response from you or any one else in the Civil Division. I am thus also addressing this letter concerning my further concerns with the FBI's lack of compliance with the settlement agreement in *Rosenfeld v. US Department of Justice* to you with the understanding that you will likewise forward it to the appropriate person. Given the age of this matter, I would appreciate a timely response from you or whoever in the Civil Division will be handling it.

      Mr. Rosenfeld continues a thorough review of the produced materials in light of the FBI's assertion that it has complied in full with the Stipulation and Order. He has identified several areas in which it appears that the FBI has not adequately responded in addition to those noted in my last letter.

### Ronald Regan records

Under the 1996 settlement agreement the FBI agreed to release:

"Any and all records at FBI HQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin on Ronald W. Reagan (date of birth 2/06/11; UC Regent ex officio c. 1966-1978), from the earliest records through January 1, 1979."

My letter to you dated April 16, 2006 addressed the FBI's refusal to process Office of Origin records concerning Ronald Reagan. This letter addresses numerous other records that the FBI apparently has not released as required under the settlement agreement.

It appears that the searches the FBI did conduct were not complete and thorough; that the FBI has not released all responsive records it found in those searches; and that the FBI did not search in places it identified as likely to contain responsive records. Set forth below are examples, both of specific records and whole categories of records, which the FBI has yet to release.

Please direct the FBI to conduct the requested searches and reviews, and release all responsive records promptly.

### A) Outstanding Referrals

The FBI's letters dated May 2, 1996 and February 27, 1997 stated that it had referred dozens of documents concerning Ronald Reagan to other government agencies for processing. These letters stated that in some instances the other government agencies would respond to Mr. Rosenfeld directly. In others instances, the FBI would respond to Mr. Rosenfeld. In addition, you letter dated April 17, 1998 included a list that showed four outstanding referred documents. Other FBI records indicate that the FBI referred dozens of documents to other agencies.

Please advise me as to the status of each referral, including referrals to the IRS, DOJ Criminal Division, and the U.S. Secret Service. Please also advise me as to the status of those referrals in which the FBI was to respond to Mr. Rosenfeld.

### B) Outstanding HQ Cross References

By letters dated May 2, 1996 and February 27, 1997, the FBI stated that "there are eight cross references which are on special locate at FBI HQ" along with one additional cross reference also on special locate at FBI HQ. Further, by letter dated April 17, 1998, the FBI stated that "most of these have been located and sent to DCU. Upon completion of the DCU review, they will be processed and forwarded expeditiously."

Further, the FBI's Inventory Sheets for the records released May 2, 1996 at page 45 lists the following Headquarters cross references as on locate:

- 105-196603-5
- 62-12188-7981
- 62-112228-A
- 62-11228-47A
- 100-138754-A
- 100-38280-384
- 58-11887-190 (permanent charge out)
- 91-01-1374

FBI search slips list HQ 66-6575 as on locate.

Please advise me as to the status of these and any other records on locate.

### C) Miscellaneous Records Not Released

Other records were identified in FBI materials but not released, including:

- FBI index cards list Sacramento Field Office cross reference 194-4-1, but this was not released.

- The FBI identified HQ file 175-383 as a main file captioned Ronald Reagan, but

withheld serials 2 through 11 on the ground that "these serials don't pertain to Reagan." As you know, that is not a valid exemption under the FOIA for withholding records from a responsive file.

- Search slips and index cards for the San Francisco Field Office list File No. 80-0-2602A as responsive, but it was not released. In addition, San Francisco File 9-2094 was listed as destroyed but it appears that this file may be extant.

Please direct the FBI to release each of the above cited records.

### D) Overtly Narrow Field Office Searches

In regard to field office records, the FBI should have conducted a search for any and all references concerning Ronald Reagan. An examination of the FBI's search slips indicates, however, that instead of conducting "all reference" searches, the FBI instead conducted narrower searches narrower and incomplete searches.

Los Angeles: The FBI did not specify an all-reference search, as it did on the headquarters search slip. (It did not specify any kind of search.) Further, the search slip indicates no searches were made of the Confidential Indices, FOIMS, Global, ISIS, IIS, Micro and Regional indices.

Sacramento: The FBI did not specify an all-reference search. The search slip indicates no searches were made of the FOIMS, Global, ISIS, OCIS, IIS, Micro and Regional indices.

San Diego: The search slip states that - instead of an all-reference search - a search was done for "Security References Only" and for either "Main Security" or "Main Criminal." Further, the slip indicates no searches were done for Global, Micro and Regional indices. In addition, the slip states that the search was restricted to the geographic San Diego area only. As you know, Mr. Rosenfeld's request did not restrict the requested documents to any geographic area.

San Francisco: The FBI specified an "all reference search." However, the slip indicates no searches were made of the ISIS, Micro or Global and Regional indices. The search slip indicates that a search of the General Indices was negative, which seems highly unlikely. The slip notes that the San Francisco field office apparently searched its Hearnap and Rymur indices, which are indices created for these two major investigations. However, no other field office searched any of their major case indices.

Washington Field Office: The FBI did not specify an all-reference search. The search slip indicates no searches were made of the Global, Micro and Regional indices. Further, all searches that were done were restricted to "AX & WF refs. only." (AX is the Alexandria resident agency, a sub-office of the Washington Field Office.) However, Mr. Rosenfeld requested any and all documents at each field office without restricting the office or agency that originated the document, and without restricting the geographic area covered by the document. The FBI's undue restrictions could improperly eliminate

records in the possession and/or otherwise under the control of the Washington Field Office and all its sub-offices.

Indeed, the FBI's overly narrow searches for responsive records apparently resulted in its failure to release records as required under the settlement agreement. As noted above, the FBI was required to release any and all records concerning Reagan from specified FBI Field Offices, including any and all cross references (also called see references). However, the FBI released only one cross reference from the San Francisco Field Office; one from the San Diego Field Office; two from the Los Angeles FBI Field Office (44-3130-1 is actually a main file); and four from the Washington Field Office. The Sacramento Field Office released several cross references, but none prior to 1974.

These FBI offices likely had many more cross references on Reagan, who after all was a prominent figure in Hollywood and in state and national politics and was governor of California for eight years.

In this regard, I note with some concern that the FBI apparently has a practice in handling FOIA requests of not listing all responsive records on its search slips and not processing all responsive records, even when requesters seek "any and all" records.

### E) Overly Narrow Headquarters Searches

FBI Headquarters also appears to have conducted its search in an overly narrow manner that excluded responsive documents.

The search slip indicates that the FBI did make an "all references" search for headquarters records. However, the search slip also states that the FBI used "the common name rule" in searching and listing records for processing. According to information from the FBI, the application of the common name rule means that not all responsive main files and cross references are listed on the search slip and processed for the requester.

Further, it appears that the FBI did not search all ISIS, Micro, Global, Regional OCIS, IIS, SDIS and FOIMS indices for headquarters records.

### F) Searches Apparently Not Conducted

In addition to conducting overly narrow searches as set forth above, a review of the record indicates that the FBI did not search in files that in some cases the bureau itself had identified as containing responsive records concerning Ronald Reagan. Some examples are set forth below:

Reagan was a member of the board of the Screen Actors Guild (SAG) starting in 1941 and was president of the SAG from 1947 to 1952 and again from 1959 to 1960, during a period when the FBI was intensely investigating communism in Hollywood in a

major case it code-named COMPIC. However, the FBI apparently did not examine its records concerning COMPIC or SAG for information concerning Reagan and did not release all responsive information from these records.

In 1946, Reagan, in his role as a member of the SAG board, mediated a dispute involving the Conference of Studio Unions, which was lead by Herb Sorrell, a suspected communist. However, the FBI apparently did not examine its records concerning the late Sorrell for references to Reagan and did not release all records concerning this matter.

The FBI released records showing that in the late 1940s Reagan provided the FBI with information on actors Larry Parks ("The Jolson Story"), Howard Da Silva ("The Lost Weekend") and Alexander Knox ("Wilson"). Each of them is deceased. However, the FBI apparently did not check its records on each of these actors for references to Reagan.

In 1948, Reagan was a founder of the Labor League of Hollywood Voters and in 1949 a co-founder of the Motion Picture Industry Council. Both of these organizations were involved in efforts to remove communists from Hollywood and were in contact with the FBI. However, the FBI apparently did not examine its records concerning these two organizations for information concerning Reagan.

In the late 1950s and early 1960s, the U.S. Department of Justice and the FBI conducted investigations of the Music Corporation of America (MCA) and its relationship with the Screen Actors Guild during a time when Reagan was SAG President. In this connection, according to published accounts, Reagan in 1962 testified before the federal grand jury investigating MCA and the FBI investigated Reagan's tax records. However, the FBI has not released all records concerning these matters.

In the 1940s and 1950s, the FBI investigated an organization called the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions (HICCASP), in which Reagan was involved. However, the FBI apparently did not search its records on HICCASP for information concerning Reagan.

The FBI apparently maintained at FBI Headquarters and/or the Los Angeles Field Office a major case index on its investigation of communism in Hollywood, which as previously noted the FBI code-named COMPIC. However, the FBI apparently did not conduct a search of the COMPIC index for records concerning Reagan.

### G) Other Missing Records

The FBI's overly narrow and incomplete searches, as described above, may account for the FBI having not released all responsive records on Reagan, including but not limited to those described as follows.

Press accounts and books over the years have said that Reagan was an informant for the FBI, starting in the 1940s. Although these accounts were published while Reagan was President and during his subsequent years in private life, Reagan never disputed these reports. If these accounts are correct, then why has the FBI not released to Mr. Rosenfeld all files on Reagan's role in providing information to the FBI, including but not limited to informant reports, FD-302s, and informant files such as "134" classification files.

Reagan published two autobiographies, "Where's the Rest of Me? The Ronald Reagan Story," published in 1965, and "An American Life," published in 1990. In both books, Reagan describes what he says was an important meeting with FBI agents. According to Reagan, one evening in 1946 or thereabout two agents came to his apartment in Los Angeles and had a substantial discussion with him about alleged subversion in the film industry. However, the FBI has released no records concerning this meeting or others Reagan himself described.

At the time of publication of "Where's the Rest of Me?" the FBI had a practice of internally reviewing and taking note of books that mentioned the FBI and prominent people of interest to the FBI. However, the FBI has released no records concerning this book.

### H) Conclusion

As set forth above, it appears that the FBI has not adequately searched for and released any and all records concerning Ronald Reagan.

I therefore ask that your office direct the FBI to take the following steps to ensure all records concerning Reagan are searched for at each specified FBI office and released as required pursuant to the settlement agreement:

1) Conduct complete and thorough searches, including but not limited to "all reference" searches, for any and all references to Ronald Reagan in all indices at FBI headquarters and at each specified field office, including but not limited active, inactive, General, Confidential, ELSUR, FOIMS, Global, ISIS, OCIS, IIS, Micro, Regional, SDIS and ADB indices.

2) Search all major case indices, including but not limited to COMPIC, HEARNAP, RYMUR and WEAFUG, at headquarters and at each specified field office.

3) Release any and all responsive records, including any and all main files, main file equivalents and cross references, at each specified FBI office.

4) Conduct searches using a six-way-breakdown on all reasonable variations of the names Ronald Wilson Reagan, Ronnie Reagan, Ronald Wilson Regan and Ron Regan.

5) Conduct searches under Reagan's official title, "Governor, State of California,"

and "California, Governor's Office" and reasonable variations thereof.

6) Search for records concerning Reagan in the files on COMPIC; Screen Actors Guild (SAG); the Labor League of Hollywood Voters (LLHV); the Motion Picture Industry Council (MPIC); the late Herb Sorrell; the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions (HICCASP); the Music Corporation of America (MCA).

7) Search for records concerning Reagan in the FBI's records on the late actors Larry Parks, Howard Da Silva and Alexander Knox.

8) Search for information concerning Reagan's 1965 Book, "Where's the Rest of Me? The Ronald Reagan Story." Please search by reasonable variations of the title, and under the names of Reagan and his co-author, Richard G. Hubler.

9) Search for and release any and all records at each specified FBI office concerning Reagan's meeting with the FBI around 1948 and his role in providing information to the FBI, including but not limited to informant reports, FD-302s, and informant files such as 134 classification files.

10) Provide copies of search slips used for each of the above requested searches.

11) Provide a copy of the pages of the General Indices Statistical Data (GISD) book at headquarters and each specified field office showing any and all records concerning Reagan.

In conclusion, we ask that the FBI immediately release any and all responsive records concerning Ronald Reagan, including but not limited to those discussed above.

As Mr. Rosenfeld has been very patient in awaiting the FBI's completion of his request, I would be grateful for a prompt response to each of the points in this letter.

Very truly yours,

David Greene

# Exhibit F



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

JAMES WHEATON ESQ
FIRST AMENDMENT PROJECT
9TH FLOOR
1736 FRANKLIN STREET
OAKLAND, CA 94612

February 28, 2006

Subject: UNIVERSITY OF CALIFORNIA

FOIPA No. 0291701- 004

Dear Mr. Wheaton:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☒ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☒ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☒ (b)(3) _50 USC 403-3 (c)(5)_ | ☒ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☒ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☒ (b)(6) | | ☐ (k)(7) |

3,273 **page(s)** were reviewed and 3,224 **page(s)** are being released.

☒ Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    ☒ referred to the OGA for review and direct response to you.

    ☐ referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☒ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s).

If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

Enclosed is the final release consisting of sections  50, 70, 72, 76, 79, 86, 87, 89, 90, 93, 94 and 95. The subject of this file is captioned " Communist Infiltration of the Radiation Laboratory at the University of California at Berkeley (CINRAD)."

# Exhibit G

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892


August 6, 2007                        By Certified Mail


FBI - FOIA OFFICE
Federal Office Building
9797 Aero Drive
San Diego, California 92123-1800

                Re: Ronald Reagan FOIA Request

Dear FOIA Officer,

This is an FOIAPA request for certain records concerning
the late president Ronald Wilson Reagan as set forth below.

As you know, the FBI has previously released some records
concerning Mr. Reagan to me under FOIAPA Request No.
405,193. This request, which was part of the settlement in
prior litigation, required the FBI to produce the
following:

"Any and all records at FBI HQ, San Francisco, Los Angeles,
Sacramento, San Diego, Washington Field Office, and all
offices of origin on Ronald W. Reagan (date of birth
2/06/11; UC Regent ex officio c. 1966-1978), from the
earliest records through January 1, 1979."

I subsequently appealed the FBI's failure to search for
and/or release certain responsive records to this request.
These non-released records were set forth in the May 4,
2006 letter to Assistant U.S. Attorney Mark Quinlivan from
my attorney David Greene. I have enclosed a copy of
relevant portions of this letter for your reference. Please
note in particular the list of requested items under
heading "H) Conclusion" at page 9.

In addition, and as set forth in my Oct. 16, 2006 letter to
you, I believe that pertinent information concerning
deceased and/or public figure individuals was withheld from
the records released to me pursuant to FOIAPA Request No.

405,193. In addition, I believe that pertinent information concerning these individuals may appear in the records the FBI failed to search for and/or produce pursuant to FOIA Request No. 405,193, as described in the preceding paragraph. A copy of this letter and its attached documentation of the deceased and public figure status of the listed individuals are already in your possession. I have attached for your reference a copy of the letter.

I hereby request the production of all the records and information as set forth in this instant letter and the two above-referenced letters.

Additionally, please note the following:

I am requesting all see references. In processing see references, please release the entire see reference document if the body of the document is less than 10 pages. If it is more than 10 pages, please release the first five pages of the body of the document, the last five pages of the body of the document, and the five pages on either side of each reference to Mr. Reagan. In addition to these pages in the body of the document, for each see reference please release all administrative pages at the beginning and at the end of the body of the document.

As noted above, I have previously provided the FBI with obituaries and other proof of death for individuals who may appear in the requested records. Please note that in addition to these persons, please note that Richard G. Hubler, who co-authored Mr. Reagan's autobiography, is deceased.

Please be sure to check the readily available on-line Social Security Death Index on other names that may appear in the requested records, since a person's deceased status weighs in favor of more complete disclosure of information to the public.

This request specifically includes all index cards and abstract records concerning Mr. Reagan.

Please release all search slips, including search slips used to process this request.

Please process and release copies of duplicate records that are distinguished by substantive administrative markings.

Substantive administrative markings for this purpose include but are not limited to any hand written notations on the document.

Please note that there is no need to release records that have been previously released to me, unless there is additional information in them that was withheld but can now be disclosed.

I ask that you promptly release the requested information within the time period specified by the FOIA. If you are unable to do so, please state the specific reason why not.

I hereby agree to pay reasonable costs for the production of these records, and I reserve my right to pursue a fee waiver at a later date.

Finally, please note that by submitting this request I am in no way waiving my rights or arguments as set forth in any pending litigation.

Please phone me at 415-861-5881 if I may be of any assistance.

Thank you very much.

Sincerely,


Seth Rosenfeld

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____     ☐ Agent
                       ☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery
                                    8-8-07

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

1. Article Addressed to:

FBF
FOIA Officer
Fed Bldg
9757 Aero Drive
S.D., CA 92123-1800

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered       ☒ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)     7005 1820 0001 1064 2807

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

SAN DIEGO CA 92123     OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.75 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.55 |

AUG -8 2007
Postmark
08/06/2007

Sent To     FBF San Diego
Street, Apt. No.; or PO Box No.     9757 Aero Drive
City, State, ZIP+4     SD CA 92123-1800

PS Form 3800, June 2002     See Reverse for Instructions

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892


August 6, 2007                    By Certified Mail


FBI
Washington Metropolitan Field Office
601 4th Street, N.W.
Washington, D.C. 20535-0002
Att: FOIA Officer

              Re: Ronald Reagan FOIA Request

Dear FOIA Officer,

This is an FOIAPA request for certain records concerning
the late president Ronald Wilson Reagan as set forth below.

As you know, the FBI has previously released some records
concerning Mr. Reagan to me under FOIAPA Request No.
405,193.  This request, which was part of the settlement in
prior litigation, required the FBI to produce the
following:

"Any and all records at FBI HQ, San Francisco, Los Angeles,
Sacramento, San Diego, Washington Field Office, and all
offices of origin on Ronald W. Reagan (date of birth
2/06/11; UC Regent ex officio c. 1966-1978), from the
earliest records through January 1, 1979."

I subsequently appealed the FBI's failure to search for
and/or release certain responsive records to this request.
These non-released records were set forth in the May 4,
2006 letter to Assistant U.S. Attorney Mark Quinlivan from
my attorney David Greene. I have enclosed a copy of
relevant portions of this letter for your reference. Please
note in particular the list of requested items under
heading "H) Conclusion" at page 9.

In addition, and as set forth in my Oct. 16, 2006 letter to
you, I believe that pertinent information concerning
deceased and/or public figure individuals was withheld from

                                                          1

the records released to me pursuant to FOIAPA Request No.
405,193. In addition, I believe that pertinent information
concerning these individuals may appear in the records the
FBI failed to search for and/or produce pursuant to FOIA
Request No. 405,193, as described in the preceding
paragraph. A copy of this letter and its attached
documentation of the deceased and public figure status of
the listed individuals are already in your possession. I
have attached for your reference a copy of the letter.

I hereby request the production of all the records and
information as set forth in this instant letter and the two
above referenced letters.

Additionally, please note the following:

I am requesting all see references. In processing see
references, please release the entire see reference
document if the body of the document is less than 10 pages.
If it is more than 10 pages, please release the first five
pages of the body of the document, the last five pages of
the body of the document, and the five pages on either side
of each reference to Mr. Reagan. In addition to these pages
in the body of the document, for each see reference please
release all administrative pages at the beginning and at
the end of the body of the document.

As noted above, I have previously provided the FBI with
obituaries and other proof of death for individuals who may
appear in the requested records. Please note that in
addition to these persons, please note that Richard G.
Hubler, who co-authored Mr. Reagan's autobiography, is
deceased.

Please be sure to check the readily available on-line
Social Security Death Index on other names that may appear
in the requested records, since a person's deceased status
weighs in favor of more complete disclosure of information
to the public.

This request specifically includes all index cards and
abstract records concerning Mr. Reagan.

Please release all search slips, including search slips
used to process this request.

Please process and release copies of duplicate records that are distinguished by substantive administrative markings. Substantive administrative markings for this purpose include but are not limited to any hand written notations on the document.

Please note that there is no need to release records that have been previously released to me, unless there is additional information in them that was withheld but can now be disclosed.

I ask that you promptly release the requested information within the time period specified by the FOIA. If you are unable to do so, please state the specific reason why not.

I hereby agree to pay reasonable costs for the production of these records, and I reserve my right to pursue a fee waiver at a later date.

Finally, please note that by submitting this request I am in no way waiving my rights or arguments as set forth in any pending litigation.

Please phone me at 415-861-5881 if I may be of any assistance.

Thank you very much.

Sincerely,


Seth Rosenfeld

3



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | $2.65 | |
| Return Receipt Fee (Endorsement Required) | $2.15 | |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | $5.55 |

Sent To: PMF Bab FelDale

Street, Apt. No.; or PO Box No.: New dd

City, State, ZIP+4

PS Form 3800, June 2002        See Reverse for Instructions

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892


August 6, 2007                    By Certified Mail


FBI San Francisco,
Att: FOIA OFFICE
450 Golden Gate Avenue, 13th. Floor
San Francisco, California 94102-9523

        Re: Ronald Reagan FOIA Request

Dear FOIA Officer,

This is an FOIAPA request for certain records concerning
the late president Ronald Wilson Reagan as set forth below.

As you know, the FBI has previously released some records
concerning Mr. Reagan to me under FOIAPA Request No.
405,193.  This request, which was part of the settlement in
prior litigation, required the FBI to produce the
following:

"Any and all records at FBI HQ, San Francisco, Los Angeles,
Sacramento, San Diego, Washington Field Office, and all
offices of origin on Ronald W. Reagan (date of birth
2/06/11; UC Regent ex officio c. 1966-1978), from the
earliest records through January 1, 1979."

I subsequently appealed the FBI's failure to search for
and/or release certain responsive records to this request.
These non-released records were set forth in the May 4,
2006 letter to Assistant U.S. Attorney Mark Quinlivan from
my attorney David Greene. I have enclosed a copy of
relevant portions of this letter for your reference. Please
note in particular the list of requested items under
heading "H) Conclusion" at page 9.

In addition, and as set forth in my Oct. 16, 2006 letter to
you, I believe that pertinent information concerning
deceased and/or public figure individuals was withheld from
the records released to me pursuant to FOIAPA Request No.

                                                           1

405,193. In addition, I believe that pertinent information
concerning these individuals may appear in the records the
FBI failed to search for and/or produce pursuant to FOIA
Request No. 405,193, as described in the preceding
paragraph. A copy of this letter and its attached
documentation of the deceased and public figure status of
the listed individuals are already in your possession. I
have attached for your reference a copy of the letter.

I hereby request the production of all the records and
information as set forth in this instant letter and the two
above referenced letters.

Additionally, please note the following:

I am requesting all see references. In processing see
references, please release the entire see reference
document if the body of the document is less than 10 pages.
If it is more than 10 pages, please release the first five
pages of the body of the document, the last five pages of
the body of the document, and the five pages on either side
of each reference to Mr. Reagan. In addition to these pages
in the body of the document, for each see reference please
release all administrative pages at the beginning and at
the end of the body of the document.

As noted above, I have previously provided the FBI with
obituaries and other proof of death for individuals who may
appear in the requested records. Please note that in
addition to these persons, please note that Richard G.
Hubler, who co-authored Mr. Reagan's autobiography, is
deceased.

Please be sure to check the readily available on-line
Social Security Death Index on other names that may appear
in the requested records, since a person's deceased status
weighs in favor of more complete disclosure of information
to the public.

This request specifically includes all index cards and
abstract records concerning Mr. Reagan.

Please release all search slips, including search slips
used to process this request.

Please process and release copies of duplicate records that
are distinguished by substantive administrative markings.

Substantive administrative markings for this purpose include but are not limited to any hand written notations on the document.

Please note that there is no need to release records that have been previously released to me, unless there is additional information in them that was withheld but can now be disclosed.

I ask that you promptly release the requested information within the time period specified by the FOIA. If you are unable to do so, please state the specific reason why not.

I hereby agree to pay reasonable costs for the production of these records, and I reserve my right to pursue a fee waiver at a later date.

Finally, please note that by submitting this request I am in no way waiving my rights or arguments as set forth in any pending litigation.

Please phone me at 415-861-5881 if I may be of any assistance.

Thank you very much.

Sincerely,


Seth Rosenfeld

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FBF
450 Golden Gate
SF  94102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Terry X. Crule    8/7/07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered    ☒ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7005 1820 0001 1064 2845

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1548



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.75 |
| Certified Fee | | $2.65 |
| Return Receipt Fee (Endorsement Required) | | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.55 |

Sent To  FBF SF Neone
Street, Apt. No.; or PO Box No.  450 Golden Gate
City, State, ZIP+4  SF 94102

PS Form 3800, June 2002    See Reverse for Instructions

7005 1820 0001 1064 2845

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892


August 6, 2007                    By Certified Mail


FBI Sacramento – FOIA Office
4500 Orange Grove Avenue
Sacramento, California 95841-4205

                Re: Ronald Reagan FOIA Request

Dear FOIA Officer,

This is an FOIAPA request for certain records concerning
the late president Ronald Wilson Reagan as set forth below.

As you know, the FBI has previously released some records
concerning Mr. Reagan to me under FOIAPA Request No.
405,193.  This request, which was part of the settlement in
prior litigation, required the FBI to produce the
following:

"Any and all records at FBI HQ, San Francisco, Los Angeles,
Sacramento, San Diego, Washington Field Office, and all
offices of origin on Ronald W. Reagan (date of birth
2/06/11; UC Regent ex officio c. 1966-1978), from the
earliest records through January 1, 1979."

I subsequently appealed the FBI's failure to search for
and/or release certain responsive records to this request.
These non-released records were set forth in the May 4,
2006 letter to Assistant U.S. Attorney Mark Quinlivan from
my attorney David Greene. I have enclosed a copy of
relevant portions of this letter for your reference. Please
note in particular the list of requested items under
heading "H) Conclusion" at page 9.

In addition, and as set forth in my Oct. 16, 2006 letter to
you, I believe that pertinent information concerning
deceased and/or public figure individuals was withheld from
the records released to me pursuant to FOIAPA Request No.
405,193. In addition, I believe that pertinent information

                                                            1

concerning these individuals may appear in the records the FBI failed to search for and/or produce pursuant to FOIA Request No. 405,193, as described in the preceding paragraph. A copy of this letter and its attached documentation of the deceased and public figure status of the listed individuals are already in your possession. I have attached for your reference a copy of the letter.

I hereby request the production of all the records and information as set forth in this instant letter and the two above referenced letters.

Additionally, please note the following:

I am requesting all see references. In processing see references, please release the entire see reference document if the body of the document is less than 10 pages. If it is more than 10 pages, please release the first five pages of the body of the document, the last five pages of the body of the document, and the five pages on either side of each reference to Mr. Reagan. In addition to these pages in the body of the document, for each see reference please release all administrative pages at the beginning and at the end of the body of the document.

As noted above, I have previously provided the FBI with obituaries and other proof of death for individuals who may appear in the requested records. Please note that in addition to these persons, please note that Richard G. Hubler, who co-authored Mr. Reagan's autobiography, is deceased.

Please be sure to check the readily available on-line Social Security Death Index on other names that may appear in the requested records, since a person's deceased status weighs in favor of more complete disclosure of information to the public.

This request specifically includes all index cards and abstract records concerning Mr. Reagan.

Please release all search slips, including search slips used to process this request.

Please process and release copies of duplicate records that are distinguished by substantive administrative markings. Substantive administrative markings for this purpose

2

include but are not limited to any hand written notations
on the document.

Please note that there is no need to release records that
have been previously released to me, unless there is
additional information in them that was withheld but can
now be disclosed.

I ask that you promptly release the requested information
within the time period specified by the FOIA. If you are
unable to do so, please state the specific reason why not.

I hereby agree to pay reasonable costs for the production
of these records, and I reserve my right to pursue a fee
waiver at a later date.

Finally, please note that by submitting this request I am
in no way waiving my rights or arguments as set forth in
any pending litigation.

Please phone me at 415-861-5881 if I may be of any
assistance.

Thank you very much.

Sincerely,


Seth Rosenfeld



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PGF
4500 Orange Grove Ave
Sacto, CA
95841-4205

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☑ Agent ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
8/8/07

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7005 1820 0001 1064 2814

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

SACRAMENTO CA 95815    OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.75 | 0056 |
| Certified Fee | $2.65 | 07 |
| Return Receipt Fee (Endorsement Required) | $2.15 | |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | $5.55 | 08/06/2007 |

Sent To  PGF Sacto    new PGF
Street, Apt. No.; or PO Box No.  4500 Orange Grove Ave
City, State, ZIP+4  Sacto CA 95841

PS Form 3800, June 2002    See Reverse for Instructions

7005 1820 0001 1064 2814

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892


August 6, 2007    By Certified Mail and Fax to 202-324-3752


Mr. David M. Hardy
Section Chief - Record/Information
 Dissemination Section
Records Management Division
FBI HQ
935 Pennsylvania Ave., NW
Washington, DC 20535-0001


             Re: FOIAPA Request re Ronald Reagan


Dear Mr. Hardy,

This is an FOIAPA request for certain records concerning
the late president Ronald Wilson Reagan as set forth below.

As you know, the FBI has previously released some records
concerning Mr. Reagan to me under FOIAPA Request No.
405,193. This request, which was part of the settlement in
prior litigation, required the FBI to produce the
following:

"Any and all records at FBI HQ, San Francisco, Los Angeles,
Sacramento, San Diego, Washington Field Office, and all
offices of origin on Ronald W. Reagan (date of birth
2/06/11; UC Regent ex officio c. 1966-1978), from the
earliest records through January 1, 1979."

I subsequently appealed the FBI's failure to search for
and/or release certain responsive records to this request.
These non-released records were set forth in the May 4,
2006 letter to Assistant U.S. Attorney Mark Quinlivan from
my attorney David Greene. I have enclosed a copy of
relevant portions of this letter for your reference. Please
note in particular the list of requested items under
heading "H) Conclusion" at page 9.

                                                        1

In addition, and as set forth in my Oct. 16, 2006 letter to you, I believe that pertinent information concerning deceased and/or public figure individuals was withheld from the records released to me pursuant to FOIAPA Request No. 405,193. In addition, I believe that pertinent information concerning these individuals may appear in the records the FBI failed to search for and/or produce pursuant to FOIA Request No. 405,193, as described in the preceding paragraph. A copy of this letter and its attached documentation of the deceased and public figure status of the listed individuals are already in your possession. I have attached for your reference a copy of the letter.

I hereby request the production of all the records and information as set forth in this instant letter and the two above referenced letters.

Additionally, please note the following:

I am requesting all see references. In processing see references, please release the entire see reference document if the body of the document is less than 10 pages. If it is more than 10 pages, please release the first five pages of the body of the document, the last five pages of the body of the document, and the five pages on either side of each reference to Mr. Reagan. In addition to these pages in the body of the document, for each see reference please release all administrative pages at the beginning and at the end of the body of the document.

As noted above, I have previously provided the FBI with obituaries and other proof of death for individuals who may appear in the requested records. Please note that in addition to these persons, please note that Richard G. Hubler, who co-authored Mr. Reagan's autobiography, is deceased.

Please be sure to check the readily available on-line Social Security Death Index on other names that may appear in the requested records, since a person's deceased status weighs in favor of more complete disclosure of information to the public.

This request specifically includes all index cards and abstract records concerning Mr. Reagan.

Please release all search slips, including search slips used to process this request.

Please process and release copies of duplicate records that are distinguished by substantive administrative markings. Substantive administrative markings for this purpose include but are not limited to any hand written notations on the document.

Please note that there is no need to release records that have been previously released to me, unless there is additional information in them that was withheld but can now be disclosed.

I ask that you promptly release the requested information within the time period specified by the FOIA. If you are unable to do so, please state the specific reason why not.

I hereby agree to pay reasonable costs for the production of these records, and I reserve my right to pursue a fee waiver at a later date.

Finally, please note that by submitting this request I am in no way waiving my rights or arguments as set forth in any pending litigation.

Please phone me at 415-861-5881 if I may be of any assistance.

Thank you very much.

Sincerely,

Seth Rosenfeld

Enc.

3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

David Clark
PBF ITR
Wash DE
20535

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
8/6/07

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☒ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7005 1820 0001 1064 2968

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540



**U.S. Postal Service**
**CERTIFIED MAIL · RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.75 |
| Certified Fee | $2.65 |
| Return Receipt Fee (Endorsement Required) | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.55 |

SAN FRANCISCO
AUG 6 2007

Sent To  David Clark Newark
Street, Apt. No.; or PO Box No.  Wash DE 2058
City, State, ZIP+4  PBF ITR

PS Form 3800, June 2002    See Reverse for Instructions

7005 1820 0001 1064 2968

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892


August 6, 2007                    By Certified Mail


FBI - FOIA OFFICE
Suite 1700, FOB
11000 Wilshire Boulevard
Los Angeles, California 90024-3672

                Re: Ronald Reagan FOIA Request

Dear FOIA Officer,

This is an FOIAPA request for certain records concerning
the late president Ronald Wilson Reagan as set forth below.

As you know, the FBI has previously released some records
concerning Mr. Reagan to me under FOIAPA Request No.
405,193.  This request, which was part of the settlement in
prior litigation, required the FBI to produce the
following:

"Any and all records at FBI HQ, San Francisco, Los Angeles,
Sacramento, San Diego, Washington Field Office, and all
offices of origin on Ronald W. Reagan (date of birth
2/06/11; UC Regent ex officio c. 1966-1978), from the
earliest records through January 1, 1979."

I subsequently appealed the FBI's failure to search for
and/or release certain responsive records to this request.
These non-released records were set forth in the May 4,
2006 letter to Assistant U.S. Attorney Mark Quinlivan from
my attorney David Greene. I have enclosed a copy of
relevant portions of this letter for your reference. Please
note in particular the list of requested items under
heading "H) Conclusion" at page 9.

In addition, and as set forth in my Oct. 16, 2006 letter to
you, I believe that pertinent information concerning
deceased and/or public figure individuals was withheld from
the records released to me pursuant to FOIAPA Request No.

                                                        1

405,193. In addition, I believe that pertinent information concerning these individuals may appear in the records the FBI failed to search for and/or produce pursuant to FOIA Request No. 405,193, as described in the preceding paragraph. A copy of this letter and its attached documentation of the deceased and public figure status of the listed individuals are already in your possession. I have attached for your reference a copy of the letter.

I hereby request the production of all the records and information as set forth in this instant letter and the two above referenced letters.

Additionally, please note the following:

I am requesting all see references. In processing see references, please release the entire see reference document if the body of the document is less than 10 pages. If it is more than 10 pages, please release the first five pages of the body of the document, the last five pages of the body of the document, and the five pages on either side of each reference to Mr. Reagan. In addition to these pages in the body of the document, for each see reference please release all administrative pages at the beginning and at the end of the body of the document.

As noted above, I have previously provided the FBI with obituaries and other proof of death for individuals who may appear in the requested records. Please note that in addition to these persons, please note that Richard G. Hubler, who co-authored Mr. Reagan's autobiography, is deceased.

Please be sure to check the readily available on-line Social Security Death Index on other names that may appear in the requested records, since a person's deceased status weighs in favor of more complete disclosure of information to the public.

This request specifically includes all index cards and abstract records concerning Mr. Reagan.

Please release all search slips, including search slips used to process this request.

Please process and release copies of duplicate records that are distinguished by substantive administrative markings.

2

Substantive administrative markings for this purpose
include but are not limited to any hand written notations
on the document.

Please note that there is no need to release records that
have been previously released to me, unless there is
additional information in them that was withheld but can
now be disclosed.

I ask that you promptly release the requested information
within the time period specified by the FOIA. If you are
unable to do so, please state the specific reason why not.

I hereby agree to pay reasonable costs for the production
of these records, and I reserve my right to pursue a fee
waiver at a later date.

Finally, please note that by submitting this request I am
in no way waiving my rights or arguments as set forth in
any pending litigation.

Please phone me at 415-861-5881 if I may be of any
assistance.

Thank you very much.

Sincerely,


Seth Rosenfeld



**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FBI-LA
11000 Wilshire Bld
L A CA 90024

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
Miguel Hernandez   8-9-07

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☑ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7005 1820 0001 1064 2821

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL... RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

7005 1820 0001 1064 2821

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.73 |
| Certified Fee | $2.65 |
| Return Receipt Fee (Endorsement Required) | $2.15 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.35 |

Sent To  FBI LA   new addr

Street, Apt. No.; or PO Box No.  11000 Wilshire

City, State, ZIP+4  L A CA 90024

# FIRST AMENDMENT PROJECT

1738 Franklin St., 9th Floor, Oakland, CA 94612 □ phone: 510.208.7744 □ fax: 510.208.4562 ⊓ www.thefirstamendment.org
David Greene                                                                                                                                  James Wheaton
Executive Director/Staff Counsel                                                                                                      Senior Counsel

May 4, 2006

Mr. Mark Quinlivan
Assistant U.S. Attorney
John Joseph Moakley Courthouse
Suite 9200
1 Courthouse Way
Boston, MA 02210

        Re:    Rosenfeld v. United States Department of Justice
                    Outstanding Settlement Issues

Dear Mr. Quinlivan,

        Thank you for speaking with me on April 7, 2006, and acknowledging receipt of
my letter dated March 31, 2006 addressing, inter alia, the FBI's failure to release certain
records in the above referenced matter. You agreed to forward that letter to the
appropriate person in the Civil Division.

        To date I have had no further response from you or any one else in the Civil
Division. I am thus also addressing this letter concerning my further concerns with the
FBI's lack of compliance with the settlement agreement in Rosenfeld v. US Department
of Justice to you with the understanding that you will likewise forward it to the
appropriate person. Given the age of this matter, I would appreciate a timely response
from you or whoever in the Civil Division will be handling it.

        Mr. Rosenfeld continues a thorough review of the produced materials in light of
the FBI's assertion that it has complied in full with the Stipulation and Order.   He has
identified several areas in which it appears that the FBI has not adequately responded
in addition to those noted in my last letter.

### Ronald Regan records

Under the 1996 settlement agreement the FBI agreed to release:

"Any and all records at FBI HQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin on Ronald W. Reagan (date of birth 2/06/11; UC Regent ex officio c. 1966-1978), from the earliest records through January 1, 1979."

My letter to you dated April 16, 2006 addressed the FBI's refusal to process Office of Origin records concerning Ronald Reagan. This letter addresses numerous other records that the FBI apparently has not released as required under the settlement agreement.

It appears that the searches the FBI did conduct were not complete and thorough; that the FBI has not released all responsive records it found in those searches; and that the FBI did not search in places it identified as likely to contain responsive records. Set forth below are examples, both of specific records and whole categories of records, which the FBI has yet to release.

Please direct the FBI to conduct the requested searches and reviews, and release all responsive records promptly.

### A) Outstanding Referrals

The FBI's letters dated May 2, 1996 and February 27, 1997 stated that it had referred dozens of documents concerning Ronald Reagan to other government agencies for processing. These letters stated that in some instances the other government agencies would respond to Mr. Rosenfeld directly. In others instances, the FBI would respond to Mr. Rosenfeld. In addition, you letter dated April 17, 1998 included a list that showed four outstanding referred documents. Other FBI records indicate that the FBI referred dozens of documents to other agencies.

Please advise me as to the status of each referral, including referrals to the IRS, DOJ Criminal Division, and the U.S. Secret Service. Please also advise me as to the status of those referrals in which the FBI was to respond to Mr. Rosenfeld.

### B) Outstanding HQ Cross References

By letters dated May 2, 1996 and February 27, 1997, the FBI stated that "there are eight cross references which are on special locate at FBI HQ" along with one additional cross reference also on special locate at FBI HQ. Further, by letter dated April 17, 1998, the FBI stated that "most of these have been located and sent to DCU. Upon completion of the DCU review, they will be processed and forwarded expeditiously."

Further, the FBI's Inventory Sheets for the records released May 2, 1996 at page 45 lists the following Headquarters cross references as on locate:

    •105-196603-5
    • 62-12188-7981
    •62-112228-A
    •62-11228-47A
    •100-138754-A
    • 100-38280-384
    •58-11887-190 (permanent charge out)
    • 91-01-1374

•FBI search slips list HQ 66-6575 as on locate.

Please advise me as to the status of these and any other records on locate.

### C) Miscellaneous Records Not Released

Other records were identified in FBI materials but not released, including:

• -- FBI index cards list Sacramento Field Office cross reference 194-4-1, but this was not released.

• The FBI identified HQ file 175-383 as a main file captioned Ronald Reagan, but

withheld serials 2 through 11 on the ground that "these serials don't pertain to Reagan." As you know, that is not a valid exemption under the FOIA for withholding records from a responsive file.

   - Search slips and index cards for the San Francisco Field Office list File No. 80-0-2602A as responsive; but it was not released. In addition, San Francisco File 9-2094 was listed as destroyed but it appears that this file may be extant.

   Please direct the FBI to release each of the above cited records.

### D) Overly Narrow Field Office Searches

   In regard to field office records, the FBI should have conducted a search for any and all references concerning Ronald Reagan. An examination of the FBI's search slips indicates, however, that instead of conducting "all reference" searches, the FBI instead conducted narrower searches narrower and incomplete searches.

   Los Angeles: The FBI did not specify an all-reference search, as it did on the headquarters search slip. (It did not specify any kind of search.) Further, the search slip indicates no searches were made of the Confidential Indices, FOIMS, Global, ISIS, IIS, Micro and Regional indices.

   Sacramento: The FBI did not specify an all-reference search. The search slip indicates no searches were made of the FOIMS, Global, ISIS, OCIS, IIS, Micro and Regional indices.

   San Diego: The search slip states that - instead of an all-reference search - a search was done for "Security References Only" and for either "Main Security" or "Main Criminal." Further, the slip indicates no searches were done for Global, Micro and Regional indices. In addition, the slip states that the search was restricted to the geographic San Diego area only. As you know, Mr. Rosenfeld's request did not restrict the requested documents to any geographic area.

   San Francisco: The FBI specified an "all reference search." However, the slip indicates no searches were made of the ISIS, Micro or Global and Regional indices. The search slip indicates that a search of the General Indices was negative, which seems highly unlikely. The slip notes that the San Francisco field office apparently searched its Hearnap and Rymur indices, which are indices created for these two major investigations. However, no other field office searched any of their major case indices.

   Washington Field Office: The FBI did not specify an all-reference search. The search slip indicates no searches were made of the Global, Micro and Regional indices. Further, all searches that were done were restricted to "AX & WF refs. only." (AX is the Alexandria resident agency, a sub-office of the Washington Field Office.) However, Mr. Rosenfeld requested any and all documents at each field office without restricting the office or agency that originated the document, and without restricting the geographic area covered by the document. The FBI's undue restrictions could improperly eliminate

records in the possession and/or otherwise under the control of the Washington Field
Office and all its sub-offices.

Indeed, the FBI's overly narrow searches for responsive records apparently
resulted in its failure to release records as required under the settlement agreement. As
noted above, the FBI was required to release any and all records concerning Reagan
from specified FBI Field Offices, including any and all cross references (also called see
references). However, the FBI released only one cross reference from the San
Francisco Field Office; one from the San Diego Field Office; two from the Los Angeles
FBI Field Office (44-3130-1 is actually a main file); and four from the Washington Field
Office. The Sacramento Field Office released several cross references, but none prior
to 1974.

These FBI offices likely had many more cross references on Reagan, who after
all was a prominent figure in Hollywood and in state and national politics and was
governor of California for eight years.

In this regard, I note with some concern that the FBI apparently has a practice in
handling FOIA requests of not listing all responsive records on its search slips and not
processing all responsive records, even when requesters seek "any and all" records.

### E) Overly Narrow Headquarters Searches

FBI Headquarters also appears to have conducted its search in an overly narrow
manner that excluded responsive documents.

The search slip indicates that the FBI did make an "all references" search for
headquarters records. However, the search slip also states that the FBI used "the
common name rule" in searching and listing records for processing. According to
information from the FBI, the application of the common name rule means that not all
responsive main files and cross references are listed on the search slip and processed
for the requester.

Further, it appears that the FBI did not search all ISIS, Micro, Global, Regional
OCIS, IIS, SDIS and FOIMS indices for headquarters records.

### F) Searches Apparently Not Conducted

In addition to conducting overly narrow searches as set forth above, a review of
the record indicates that the FBI did not search in files that in some cases the bureau
itself had identified as containing responsive records concerning Ronald Reagan. Some
examples are set forth below:

Reagan was a member of the board of the Screen Actors Guild (SAG) starting in
1941 and was president of the SAG from 1947 to 1952 and again from 1959 to 1960,
during a period when the FBI was intensely investigating communism in Hollywood in a

major case it code-named COMPIC. However, the FBI apparently did not examine its records concerning COMPIC or SAG for information concerning Reagan and did not release all responsive information from these records.

In 1946, Reagan, in his role as a member of the SAG board, mediated a dispute involving the Conference of Studio Unions, which was lead by Herb Sorrell, a suspected communist. However, the FBI apparently did not examine its records concerning the late Sorrell for references to Reagan and did not release all records concerning this matter.

The FBI released records showing that in the late 1940s Reagan provided the FBI with information on actors Larry Parks ("The Jolson Story"), Howard Da Silva ("The Lost Weekend") and Alexander Knox ("Wilson"). Each of them is deceased. However, the FBI apparently did not check its records on each of these actors for references to Reagan.

In 1948, Reagan was a founder of the Labor League of Hollywood Voters and in 1949 a co-founder of the Motion Picture Industry Council. Both of these organizations were involved in efforts to remove communists from Hollywood and were in contact with the FBI. However, the FBI apparently did not examine its records concerning these two organizations for information concerning Reagan.

In the late 1950s and early 1960s, the U.S. Department of Justice and the FBI conducted investigations of the Music Corporation of America (MCA) and its relationship with the Screen Actors Guild during a time when Reagan was SAG President. In this connection, according to published accounts, Reagan in 1962 testified before the federal grand jury investigating MCA and the FBI investigated Reagan's tax records. However, the FBI has not released all records concerning these matters.

In the 1940s and 1950s, the FBI investigated an organization called the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions (HICCASP), in which Reagan was involved. However, the FBI apparently did not search its records on HICCASP for information concerning Reagan.

The FBI apparently maintained at FBI Headquarters and/or the Los Angeles Field Office a major case index on its investigation of communism in Hollywood, which as previously noted the FBI code-named COMPIC. However, the FBI apparently did not conduct a search of the COMPIC index for records concerning Reagan.

### G) Other Missing Records

The FBI's overly narrow and incomplete searches, as described above, may account for the FBI having not released all responsive records on Reagan, including but not limited to those described as follows.

Press accounts and books over the years have said that Reagan was an informant for the FBI, starting in the 1940s. Although these accounts were published while Reagan was President and during his subsequent years in private life, Reagan never disputed these reports. If these accounts are correct, then why has the FBI not released to Mr. Rosenfeld all files on Reagan's role in providing information to the FBI, including but not limited to informant reports, FD-302s, and informant files such as "134" classification files.

Reagan published two autobiographies, "Where's the Rest of Me? The Ronald Reagan Story," published in 1965, and "An American Life," published in 1990. In both books, Reagan describes what he says was an important meeting with FBI agents. According to Reagan, one evening in 1946 or thereabout two agents came to his apartment in Los Angeles and had a substantial discussion with him about alleged subversion in the film industry. However, the FBI has released no records concerning this meeting or others Reagan himself described.

At the time of publication of "Where's the Rest of Me?" the FBI had a practice of internally reviewing and taking note of books that mentioned the FBI and prominent people of interest to the FBI. However, the FBI has released no records concerning this book.

### H) Conclusion

As set forth above, it appears that the FBI has not adequately searched for and released any and all records concerning Ronald Reagan.

I therefore ask that your office direct the FBI to take the following steps to ensure all records concerning Reagan are searched for at each specified FBI office and released as required pursuant to the settlement agreement:

1) Conduct complete and thorough searches, including but not limited to "all reference" searches, for any and all references to Ronald Reagan in all indices at FBI headquarters and at each specified field office, including but not limited active, inactive, General, Confidential, ELSUR, FOIMS, Global, ISIS, OCIS, IIS, Micro, Regional, SDIS and ADB indices.

2) Search all major case indices, including but not limited to COMPIC, HEARNAP, RYMUR and WEAFUG, at headquarters and at each specified field office.

3) Release any and all responsive records, including any and all main files, main file equivalents and cross references, at each specified FBI office.

4) Conduct searches using a six-way-breakdown on all reasonable variations of the names Ronald Wilson Reagan, Ronnie Reagan, Ronald Wilson Regan and Ron Regan.

5) Conduct searches under Reagan's official title, "Governor, State of California,"

and "California, Governor's Office" and reasonable variations thereof.

6) Search for records concerning Reagan in the files on COMPIC; Screen Actors Guild (SAG); the Labor League of Hollywood Voters (LLHV); the Motion Picture Industry Council (MPIC); the late Herb Sorrell; the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions (HICCASP); the Music Corporation of America (MCA).

7) Search for records concerning Reagan in the FBI's records on the late actors Larry Parks, Howard Da Silva and Alexander Knox.

8) Search for information concerning Reagan's 1965 Book, "Where's the Rest of Me? The Ronald Reagan Story." Please search by reasonable variations of the title, and under the names of Reagan and his co-author, Richard G. Hubler.

9) Search for and release any and all records at each specified FBI office concerning Reagan's meeting with the FBI around 1946 and his role in providing information to the FBI, including but not limited to informant reports, FD-302s, and informant files such as 134 classification files.

10) Provide copies of search slips used for each of the above requested searches.

11) Provide a copy of the pages of the General Indices Statistical Data (GISD) book at headquarters and each specified field office showing any and all records concerning Reagan.

In conclusion, we ask that the FBI immediately release any and all responsive records concerning Ronald Reagan, including but not limited to those discussed above.

As Mr. Rosenfeld has been very patient in awaiting the FBI's completion of his request, I would be grateful for a prompt response to each of the points in this letter.

Very truly yours,

David Greene

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892

October 16, 2006

Via Certified Mail & Fax to 202-324-3752

Mr. David M. Hardy
Section Chief — Record/Information Dissemination Section
Records Management Division
FBI HQ
935 Pennsylvania Ave. NW
Washington, DC 20535-0001

Re: Ronald Reagan FOIA

Dear Mr. Hardy,

This letter concerns the above referenced FOIAPA
matter, which is pending with your office.

Please be advised that the following deceased
individuals may appear in records concerning Ronald Reagan.
As you know, a person's deceased status, and their public
figure status, requires a greater disclosure of
information.

Accordingly, if the names of the below individuals, or
information concerning them, appears in the Ronald Reagan
records, then that information should be released.

1) Roy M. Brewer, official of the Motion Picture Industry Council, aka MPIC; of International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators, aka IATSE; of Motion Picture Alliance for the Preservation of American Ideals, aka MPA; and other groups.

2) Willie Bioff, IATSE official
3) George Browne, IATSE official
4) Sidney Buchman, actor
5) Gary Cooper
6) Howard Da Silva, actor
7) Edward Dmytryk
8) Walt Disney
9) Herbert Ellingwood
10) John Garfield, actor
11) Hedda Hopper
12) Elia Kazan, writer
13) Alexander Knox, actor
14) John Howard Lawson, writer
15) Leo McCarey
16) John McCone, former CIA chief
17) Arthur Miller, writer
18) George Murphy
19) Larry Parks, actor
20) Louella Parsons
21) Neil Reagan
22) Herb Sorrell, union official
23) Jimmy Stewart
24) Robert Taylor
25) Dalton Trumbo, writer
26) King Vidor
27) Walter Wanger
28) Jack Warner, studio executive
29) John Wayne
30) Sam Wood

I have enclosed obituaries and death notices, or previously provided them. Thus, if information concerning the above deceased people appears in records concerning Mr. Reagan, that information should be released, as their deceased status and public figure status weighs in favor of greater disclosure.

Thank you very much. Please phone if I may help.

Sincerely,

Seth Rosenfeld

2

**FAX**

October 15, 2006

TO:

202-324-3752

Mr. David M. Hardy
Section Chief — Record/Information
Dissemination Section
Records Management Division
FBI HQ
935 Pennsylvania Ave. NW
Washington, DC 20535-0001

FROM:

Seth Rosenfeld
P.O. Box 421,892
San Francisco, CA 94142-1892

Seven pages follow - Thank you