1   James R. Wheaton, SBN 115230
    David A. Greene, SBN 160107
2   FIRST AMENDMENT PROJECT
    California Building
3   1736 Franklin Street, Ninth Floor
    Oakland, CA 94612
4   Phone: (510) 208-7744
    Facsimile: (510) 208-4562
5   wheaton@thefirstamendment.org
    dgreene@thefirstamendment.org
6

7   Attorneys for Plaintiff

8                   UNITED STATES DISTRICT COURT

9
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11  Seth Rosenfeld                    )    Case No. 3:07-cv-03240-MHP
                                      )
12                                    )
            Plaintiff,                )    PLAINTIFF SETH ROSENFELD'S
13                                    )    OPPOSITION TO DEFENDANTS'
        vs.                           )    MOTION FOR PARTIAL SUMMARY
14                                    )    JUDGMENT
                                      )
15  Federal Bureau of Investigation, and United )
    States Department of Justice      )
16                                    )    Date:   June 30, 2008
                                      )    Time:  2:00 p.m.
17          Defendant.                )    Judge Marilyn Hall Patel
                                      )
18

19

20

21

22

23

24

25

26

27
                                          PLAINTIFF'S OPPOSITION TO
28                                        DEFENDANTS' MOTION FOR
                                          PARTIAL  SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    EACH CAUSE OF ACTION IS PROPERLY BEFORE THIS COURT . . . . 1

    A.    FOIA SHOULD BE CONSTRUED TO MAXIMIZE THE DISCLOSURE OF RECORDS AND FACILITATE ACCESS; THE DEFENDANTS' INTERPRETATION OF FOIA DOES THE OPPOSITE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    ROSENFELD EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR THE BREWER AND LABOR LEAGUE OF HOLLYWOOD VOTERS REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.    ROSENFELD EXHAUSTED HIS ADMINISTRATIVE REMEDIES ON THE BREWER REQUEST . . . . . . . . . . . . . 4

        2.    ROSENFELD EXHAUSTED HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO THE LABOR LEAGUE OF HOLLYWOOD VOTERS REQUEST . . . . . . . . . . . . . . . . . . . 5

    C.    ROSENFELD'S RONALD REAGAN REQUEST IS NOT BARRED BY THE STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING THAT THE FBI FULLY COMPLIED WITH FOIA . . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    FOIA REQUIRES THAT AN AGENCY DEFENDING ITS COMPLIANCE WITH FOIA MAKE A REASONABLY DETAILED AND NON-CONCLUSORY SHOWING BASED ON SUFFICIENTLY DIRECT KNOWLEDGE OF THE WORK THAT WAS DONE . . . . 9

        1.    THE FBI'S DECLARANT DOES NOT DEMONSTRATE THAT HE HAS SUFFICIENTLY DIRECT KNOWLEDGE OF THE FBI'S EFFORTS TO LOCATE THE RECORDS ROSENFELD REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    DEFENDANTS' EVIDENCE IS CONCLUSORY AND INSUFFICIENTLY DETAILED TO SUPPORT THE FBI'S CLAIM THAT IT PERFORMED AN ADEQUATE SEARCH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**B.** **THE FBI'S SEARCH WAS NOT ADEQUATE IN THAT IT FAILED TO PERFORM MANY OF THE SEARCHES ROSENFELD SPECIFICALLY REQUESTED, AND OTHERWISE OVERLOOKED MATERIALS IT SHOULD HAVE DISCOVERED** ............ 17

**1.** **THE FBI FAILED TO SEARCH ADEQUATELY FOR ANY FIELD OFFICE RECORDS** ......................... 18

**2.** **THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR RONALD REAGAN RECORDS** ...................................... 19

**3.** **THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR ELLINGWOOD RECORDS** ............................................. 20

**4.** **THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR SHERRIFFS RECORDS** . 20

**5.** **THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR BREWER RECORDS** ... 21

**6.** **THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR NEIL REAGAN RECORDS** ............................................. 23

**7.** **THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR MPIC, LABOR LEAGUE AND MPA RECORDS** ................................ 23

**CONCLUSION** ................................................ 24

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

Aftergood v. CIA,

225 F. Supp. 2d 27 (D.D.C. 2002) ........................................ 1

Campbell v. U.S. Dep't of Justice,

164 F.3d 20 (D.C.Cir.1998) ............................................. 9

Davis v. Astrue,

___ F. Supp. 2d ___, 2008 WL 1944134 (N.D. Cal., May 2, 2008) ............... 3

Dep't of Air Force v. Rose,

425 U.S. 352 (1976) .................................................... 1

Dep't of State v. Ray,

502 U.S. 164 (1991). ................................................... 1

Eison v. Kallstrom,

75 F. Supp. 2d 113 (S.D.N.Y. 1999) .................................... 6

Founding Church of Scientology v. NSA

610 F.2d 824 (D.C. Cir. 1979) ......................................... 9

Hiken v. Dep't of Defense

521 F. Supp. 2d 1047(N.D. Cal. 2007) ............................... 10,13

In re Steele,

799 F.2d 461, 466 (9th Cir. 1986) .................................... 3

John Doe Agency v. John Doe Corp.,

493 U.S. 146 (1989) ................................................... 1

Lane v. Dep't of the Interior

523 F.3d 1128 (9th Cir. 2008) ........................................ 10

Maynard v. CIA

986 F.2d 547, 560 (1st Cir. 1993) .................................... 10

McKart v. United States,

395 U.S. 185 (1969) .................................................. 3

Mehl v. EPA,

  797 F. Supp. 43 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Nation Magazine v. U.S. Customs Service

  71 F.3d 885 (D.C. Cir. 1995 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Oglesby v. Dep't of Army,

  920 F.2d 57 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,8,9,14

Peck v. CIA,

  787 F. Supp. 63 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Raulerson v. Ashcroft,

  271 F. Supp. 2d 17 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SafeCard Services, Inc. v. SEC

  926 F.2d 1197 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Spannaus v. U.S. Dep't of Justice,

  824 F.2d 52 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Steinberg v. U.S. Dep't of Justice,

  23 F.3d 548 (D.C. Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

Valencia-Lucena v. U.S. Coast Guard,

  180 F.3d 321 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Voinche v. FBI,

  999 F.2d 962 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Weisberg v. Dep't of Justice,

  745 F.2d 1476 (D.C. Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

Wickwire Gavin, P.C. v. Def. Intel. Ag'y,

  330 F. Supp. 2d 592 (E.D. Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Zemansky v. EPA,

  767 F.2d 569(9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
PARTIAL  SUMMARY JUDGMENT

**CODE OF FEDERAL REGULATIONS**

 28 C.F.R. § 16.9(a)(3)(2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**FEDERAL RULES OF CIVIL PROCEDURE**

 Rule 26(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

 Rule 37(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**INTRODUCTION**

Defendants' Motion for Partial Summary Judgment reveals all too clearly the FBI's strategy of obstructing and ignoring specific FOIA requests. Whether by erecting an onerous and unnecessary process for exhausting administrative remedies or by unreasonably confining its searches to some of its automated databases, the FBI violates both the spirit and letter of FOIA.

Defendants have failed to produce sufficient evidence to prove that the FBI has searched for the requested records in the places where the FBI knows they are likely to be located, or that it has searched in the places Rosenfeld has specifically asked it to search. Defendants have failed to produce evidence that the FBI has employed the search terms Rosenfeld specifically asked it to use. Defendants have failed to offer anything more than conclusory evidence of how it searched at field offices or in manual indices.

Defendants' Motion for Partial Summary Judgment should be denied. Indeed, the evidence before this Court so strongly proves that the FBI did not fulfill its obligations under FOIA, Plaintiff's Motion for Partial Summary Judgment must be granted.

**ARGUMENT**

**I.    EACH CAUSE OF ACTION IS PROPERLY BEFORE THIS COURT**

    **A.    FOIA SHOULD BE CONSTRUED TO MAXIMIZE THE DISCLOSURE OF RECORDS AND FACILITATE ACCESS; THE DEFENDANTS' INTERPRETATION OF FOIA DOES THE OPPOSITE**

The fundamental principle of the Freedom of Information Act is to facilitate public access to governmental documents. John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989). "[D]isclosure, not secrecy, is the dominant objective of the Act." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). FOIA thus embodies a "strong presumption in favor of disclosure." Dep't of State v. Ray, 502 U.S. 164, 173 (1991). As a result, FOIA is construed so as to promote, not obstruct, access to governmental records. See Rose, 425 U.S. at 361.

Contrary to the Act's clear purpose of promoting and facilitating disclosure, the FBI has adopted a policy that creates a moving target of claims accrual for FOIA requesters. According to the FBI, each release of records under a single FOIA request confers on the requester a new obligation to appeal. A FOIA requester has not exhausted his administrative remedies, and thus

his claim does not accrue, unless he has specifically appealed each and every release of records. However, for statute of limitations purposes, the FBI claims that the initial appeal is the only one that counts. Subsequent appeals, according to the FBI, do not result in either the tolling of the limitations period or the accrual of new claims and thus a new limitations period. [Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Memo") at p. 14-15]

The FBI's self-serving interpretation of FOIA thus permits it to manipulate FOIA to the distinct disadvantage of the FOIA requester. The FBI can drip out records in a series of "interim" releases over several years, claiming that each release requires a new administrative appeal, and "closing" the request if the requester fails to appeal any particular "interim" release. Yet the limitations period runs the whole time. The FBI could conceivably, by dragging out a response to a FOIA request over six years, effectively nullify a requester's right to judicial review.

The tortuous and torturous nature of the FBI's interpretation of FOIA is evident in its argument that Rosenfeld failed to exhaust his administrative remedies for two of his FOIA requests and that a third is barred by the statute of limitations. In each instance, Rosenfeld had filed one or more appeals. Yet the FBI seeks to manipulate the administrative process to suit its own purposes, an approach that puts requesters in an administrative limbo and subvert the goals of the FOIA. This Court should reject each of those arguments.

**B.     ROSENFELD EXHAUSTED HIS ADMINISTRATIVE REMEDIES FOR THE BREWER AND LABOR LEAGUE OF HOLLYWOOD VOTERS REQUESTS**

Defendants' contention that Rosenfeld failed to exhaust his administrative remedies with respect to the Brewer and Labor League of Hollywood Voters requests must be rejected. Defendants' argument is premised on the faulty position that the FBI's duties under FOIA are satisfied by occasional "interim" releases of records.[1]

The FBI's position places a FOIA requester in an untenable situation. It is not possible for

---

[1] The FBI's typical practice is to use the label "final release" to indicate that it has purportedly fulfilled its obligations under FOIA. [See, e.g., Plaintiff's Exhs. F, N, LL]

1   a requester who believes that an adequate search has not been performed to appeal anything less

2   than a final determination of his or her request. A requestor cannot typically identify the ways in

3   which a search for records has been inadequate—the very meaning of an interim release is that

4   the FBI has not finished searching for and producing records.

5        The Ninth Circuit has interpreted the exhaustion of remedies requirement as a

6   jurisdictional element, but only explicitly so under the circumstances in which a FOIA requester

7   made no effort at all to follow any of the agency's FOIA procedures. See In re Steele, 799 F.2d

8   461, 466 (9th Cir. 1986) (disapproving of the district court having treated the plaintiffs' informal

9   discovery letter as a FOIA request). However, as this Court has recently held, the exhaustion

10   requirement should not be applied so rigidly so as to unfairly deny a FOIA requestor the

11   opportunity for judicial review, or to create unnecessarily circuitous procedures, when the

12   requester has made a good faith effort to exhaust administrative remedies. Davis v. Astrue, ___

13   F. Supp. 2d ___, 2008 WL 1944134, at *5-*7 (N.D. Cal., May 2, 2008). As a general matter, the

14   failure to exhaust administrative remedies should act as a jurisdictional bar only in the specific

15   cases, on specific facts, in which such a barrier is necessary to fulfill the goals of the

16   administrative remedies requirement, namely those of permitting the agency to have the first shot

17   at exercising its discretion and making an administrative record. See McKart v. United States,

18   395 U.S. 185, 198-99 (1969); Steele, 799 F.2d at 466. See also Oglesby v. Dep't of Army, 920

19   F.2d 57, 61 (D.C. Cir. 1990) ("However, absent a statutory provision to the contrary, failure to

20   exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of

21   exhaustion and the particular administrative scheme in deciding whether they will hear a case or

22   return it to the agency for further processing.").

23        As discussed below, Rosenfeld, unlike the plaintiffs in Steele, made formal and thorough

24   FOIA requests. For each request, Rosenfeld properly appealed the FBI's failure to adequately

25   respond to his FOIA request. When those appeals were not fully and timely responded to,

26   Rosenfeld had exhausted his administrative remedies.

27

28

1

## 1.    ROSENFELD EXHAUSTED HIS ADMINISTRATIVE REMEDIES ON THE BREWER REQUEST

Rosenfeld has exhausted his administrative remedies with respect to his request for records pertaining to Roy M. Brewer. As set forth in the First Amendment Complaint, Rosenfeld submitted his requests for "any and all records in any way concerning the late Roy Martin Brewer" on October 13, 2006. [Plaintiff's Exh. W][2] Having received no substantive response to his requests, Rosenfeld appealed first on January 31, 2007 and then again on March 1, 2007. In each appeal he requested that the FBI be directed "to immediately release any and all records as requested above and required by law." [Plaintiff's Exhs. QQ, RR] The Department of Justice's Office of Information and Privacy (OIP), the component of the Department of Justice to which appeals from FBI FOIA decisions are made, 28 C.F.R. § 16.9(a) (2007), assigned his appeal number 07-0573. [Plaintiff's Exh. SS]

The FBI made an interim release of 231 pages on April 26, 2007. The cover letter to that release did not indicate that the FBI had completed its search for and release of records. [Plaintiff's Exh. X] Moreover, the release contained no records dated prior to 1988; Rosenfeld thus had no reason to believe that this was a final release.[3] [Second Declaration of Seth

---

[2]Rosenfeld submitted Plaintiff's Exhibits (which included Exhibits A through PP) with his Motion for Partial Summary Judgment. Filed with this Opposition is Plaintiff's Supplemental Exhibits (which includes Exhibits QQ-DDD). Each is denoted "Plaintiff's Exh." in citations to the submitted evidence.

[3]Defendants' declarant David Hardy asserts that the Brewer request was closed internally by the FBI on April 26, 2007. [Declaration of David Hardy filed in Support of Defendant's Motion for Partial Summary Judgment ("Hardy Decl.") ¶ 60] Rosenfeld objects to this evidence as hearsay and lacking in foundation. However, even if the statement is credited as evidence, there is no evidence or assertion that the FBI informed Rosenfeld that it had purportedly completed processing his request.

Defendants may contend that the cover letter gave Rosenfeld adequate notice that he had to file a new appeal. But it did not. The cover letter merely included a form paragraph informing the requester that "You have the right to appeal any denials in this release." [See, e.g., Defendant's Exh. B] This boiler-plate paragraph did not make any mention of what effect the production had on a pending appeal. Rather it seems to refer to appeals that may be made of exemption claims.

Moreover, Rosenfeld's belief that the FBI had not completed processing his request has

1    Rosenfeld ("Second Rosenfeld Decl.") ¶3]

2        Nor did the FBI inform the OIP that it had completed its work on the Brewer request.

3    According to the OIP, Rosenfeld's appeal remained open and pending–yet not timely responded

4    to–at the time of the filing of the initial Complaint in this matter. Indeed, the OIP did not close

5    the appeal until July 16, 2007. And the appeal was closed at that point not because the FBI had

6    completed its search for and release of the Brewer records, but because Rosenfeld had filed the

7    initial Complaint in this matter.[4] [Defendants' Exh. J]

8        Rosenfeld's appeals had requested that the FBI be directed to release "any and all

9    records." The FBI's release did not purport to have done that. There was thus nothing additional

10   for Rosenfeld to appeal; the FBI had still not complied with his initial appeal.

11       Rosenfeld's appeal of his Brewer request was not subject to a timely disposition at the

12   time of the filing of the Complaint. He thus exhausted his administrative remedies.

13       **2.    ROSENFELD EXHAUSTED HIS ADMINISTRATIVE REMEDIES**
                      **WITH RESPECT TO THE LABOR LEAGUE OF HOLLYWOOD**

14                      **VOTERS REQUEST**

15       Rosenfeld has also exhausted his administrative remedies with respect to his request for

16   records pertaining to the Labor League of Hollywood Voters. As set forth in the First Amended

17   Complaint, Rosenfeld submitted his requests for "any and all records in any way concerning . . .

18   [the] Labor League of Hollywood Voters" on June 14, 2006. [Plaintiff's Exh. II] The FBI

19   responded on  August 28, 2006 that it had conducted a search of main files only, not cross

20   references, and that it had located no records. [Plaintiff's Exh. TT] Rosenfeld appealed this

21   denial noting the FBI's failure to perform an adequate search for records. [Plaintiff's Exh. UU]

22   The OIP granted the appeal and remanded the request to the FBI for further searches including

23   cross-references. [Plaintiff's Exh. VV] Having received no additional records, Rosenfeld filed a

24   
_____

25   been borne out as true.  The FBI released an additional 290 pages on April 2, 2008. The cover
   letter to that disclosure indicated that these records were cross references identified when the

26   central records system at FBIHQ was searched. [Plaintiff's Exh. Y]

27       [4]Pursuant to Department of Justice regulations, "An appeal ordinarily will not be acted on

28   if the request becomes a matter of FOIA litigation." 28 C.F.R. §16.9(a)(3) (2007).

1    new appeal with the OIP on March 1, 2007. This appeal noted not only the FBI's untimeliness,

2    but also incorporated his previous appeal and that appeal's focus on the undue narrowness of the

3    FBI's search. [Plaintiff's Exh. WW]

4        Prior to the filing of the initial Complaint in this matter, Rosenfeld had no indication that

5    the FBI had completed its processing of the Labor League request or otherwise addressed the

6    substantive defects identified in the appeal. The FBI released 49 pages of records by letter dated

7    April 25, 2007. [Defendant's Exh. EE] The release did not include any records from the Los

8    Angeles field office. Nor did the FBI release all non-exempt FBIHQ records. [Second Rosenfeld

9    Decl. ¶ 7] Nor did the cover letter give any indication that the FBI had completed processing

10   Rosenfeld's request. [Defendant's Exh. EE] Rosenfeld thus believed that the request was still

11   pending. [Second Rosenfeld Decl. ¶ 7]

12       The April 25, 2007 release thus, at most, addressed only the FBI's complete failure to

13   respond to Rosenfeld. But it did not address the other defects regarding adequacy of the search

14   and full compliance with FOIA identified in Rosenfeld's appeal. The present case is thus more

15   like the FOIA request in Eison v. Kallstrom, 75 F. Supp. 2d 113, 116-7 (S.D.N.Y. 1999), than

16   the one in Voinche v. FBI, 999 F.2d 962 (5th Cir. 1993). In Voinche, the requester had appealed

17   only the tardiness of the FBI's response; when the FBI ultimately responded, that appeal was thus

18   moot and the requester had to pursue his administrative remedies anew. Voinche, 999 F.2d at

19   963. In Eison, like the present case, the requester had specifically appealed the adequacy of the

20   FBI's response. The court distinguished Voinche and held that the requester's appeal had not

21   been mooted. There was no need to file a new appeal to the agency's inadequate response. Eison,

22   75 F. Supp. 2d at 116-17.

23       After the filing of the initial Complaint in this matter, Rosenfeld was informed by OIP on

24   June 29, 2007 that his "appeal[] from the FBI's failure to respond to" the request was moot

25   because the FBI had responded to the requests. [Plaintiff's Exh. XX] However, the letter did not

26   explain why the part of Rosenfeld's appeal dealing with the adequacy of the FBI's search was

27   moot. Nor did the letter from OIP contend that the FBI had completed its processing of the Labor

28

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   League request.[5]

2   Rosenfeld filed a valid appeal that raised both substantive and timeliness issues. Even if

3   the FBI's production can be seen as dispositive of the timeliness issues, it did not dispose of the

4   substantive issues raised in the appeal. Rosenfeld should not be required to chase down the FBI

5   any more than he has.

6
7   **C.    ROSENFELD'S RONALD REAGAN REQUEST IS NOT BARRED BY THE STATUTE OF LIMITATIONS**

8   Defendants' claim that Rosenfeld's "request for Ronald Reagan" records is time-barred

9   must also be rejected.

10   This Court need not even reach this issue. Rosenfeld's request for certain records

11   regarding Ronald Reagan is the subject of two separate FOIA requests, set forth separately as the

12   First and Eighth Causes of Action in the First Amended Complaint. The second request

13   incorporated and expanded upon the first. Even if, as Defendants claim, the First Cause of Action

14   is time-barred, Rosenfeld is entitled to the very same records, and more, pursuant to the Eighth

15   Cause of Action. Thus to the extent that his Ronald Reagan records request expired, Rosenfeld

16   successfully resurrected it by requesting the same information again. See Spannaus v. Dep't of

17   Justice, 824 F.2d 52, 61 (D.C. Cir. 1987); Aftergood v. CIA, 225 F. Supp. 2d 27, 30-31 (D.D.C.

18   2002).

19   However, the Court should consider the statute of limitations questions if for no other

20   reason than to highlight the inconsistency and unfairness of the FBI's position.

21   The statute of limitations for a FOIA action is six years from the date of first accrual.

22   Spannaus, 824 F.2d at 56; 28 U.S.C. § 2401(a). A cause of action accrues for purposes of the

23   statute of limitations when a party has exhausted administrative remedies. Spannaus, 824 F.2d at

24   58.

25   Rosenfeld's Ronald Reagan request set forth in the First Cause of Action is not time-

26
27   [5]Any suggestion that Rosenfeld should have filed another appeal after receipt of the June

29, 2007 letter from OIP must be rejected. As noted above, the OIP will not act on an appeal

28   once litigation has been filed. 28 C.F.R. §16.9(a)(3) (2007).

1    barred because it was filed well within the six-year limitations period. Following the first

2    notification to Rosenfeld that the FBI had purportedly completed processing his Ronald Reagan

3    request as required by the settlement agreement, Rosenfeld submitted an administrative appeal to

4    the DOJ on January 29, 2007. [Second Rosenfeld Decl. ¶ 9; Plaintiff's Exh. YY] OIP

5    acknowledged receipt of the appeal and assigned it number 07-0563. [Plaintiff's Exh. ZZ]

6    Rosenfeld's administrative remedies were constructively exhausted 20 days later, on March 1,

7    2007, by which date the DOJ had made no substantive response to the appeal. The cause of

8    action accrued, and the statute of limitations began to run, on that day. The original Complaint in

9    this matter was filed just a few months later, on June 19, 2007, well within the six-year

10   limitations period.

11       Defendants claim, however, that the limitations period began and ran un-tolled from

12   October 14, 1997, twenty days after the DOJ failed to respond to Rosenfeld's first appeal

13   submitted on September 25, 1997. [Defs.' Memo at 15.] This argument is irreconcilable with

14   Defendants' position that a requester *must* appeal anew each and every interim response from the

15   FBI. Because, as Defendants contend, each of the FBI's responses gives rise to the accrual of a

16   new claim, the statute of limitations must run from the moment at which that particular claim

17   accrues.

18       None of the cases relied on by Defendants address the effect of subsequent appeals on the

19   statute of limitations. Each case involved only a single appeal each. See Spannaus, 824 F.2d at

20   54; Aftergood, 225 F. Supp. 2d at 28; Peck v. CIA, 787 F. Supp. 63, 64 (S.D.N.Y. 1992). Indeed,

21   courts have suggested that subsequent appeals could at a minimum toll the statute of limitations.

22   See Spannaus, 824 F.2d at 59-60; Oglesby v. Dep't of Army, 920 F.2d 57, 63-64 (D.C. Cir.

23   1990).

24       The FBI's position on the accrual of FOIA claims is not only contrary to the letter and

25   spirit of FOIA, but also internally inconsistent. The Court should reject it and find that

26   Rosenfeld's first Ronald Reagan request is not time-barred.

27   ///

28   ///

## II.    DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROVING THAT THE FBI FULLY COMPLIED WITH FOIA

This Court must reject Defendants' contention that the FBI conducted a reasonable search for the requested records. The FBI has not carried its burden of proving that it has fully complied with its duties to Rosenfeld under FOIA. Rather, the evidence presented by the FBI is conclusory and nonspecific. Moreover, there are numerous searches that Rosenfeld specifically requested that the FBI has not even attempted. The available evidence, such as search slips, and records produced in this case and others, supports this position.

### A.    FOIA REQUIRES THAT AN AGENCY DEFENDING ITS COMPLIANCE WITH FOIA MAKE A REASONABLY DETAILED AND NON-CONCLUSORY SHOWING BASED ON SUFFICIENTLY DIRECT KNOWLEDGE OF THE WORK THAT WAS DONE

To prevail on the issue of the adequacy of its search, an agency must show that, "viewing the facts in the light most favorable to the requester, ... [it] 'has conducted a search reasonably calculated to uncover all relevant documents.' " Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The agency need not show that its search was exhaustive; rather it is sufficient for the agency to prove that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency is not as a general matter required to search every existing database for responsive records. Founding Church of Scientology v. NSA, 610 F.2d 824, 837 (D.C. Cir. 1979).  However, an agency may not exclude a records system unless it reasonably believes, and can demonstrate why, that system will have no responsive records. See Campbell v. Dep't of Justice, 164 F.3d 20, 28 (D.C.Cir.1998) (rejecting the FBI's categorical exclusion of tickler files); Oglesby, 920 F.2d at 68.

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness, and depends upon the facts of each particular case. Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985). Although a court's inquiry regarding the adequacy of the search focuses on the search itself, rather than the quantum of records produced, the results of the search are not

1    irrelevant. A minimal production of records in response to a very broad request may be evidence

2    of an inadequate search. <u>Hiken v. Dep't of Defense</u>, 521 F. Supp. 2d 1047, 1054-55 (N.D. Cal.

3    2007) ("Where the scope of the request is broad and the government fails to produce any

4    responsive documents, it may raise a question as to the reasonableness of the search.").

5         An agency may prove the reasonableness of its search through the declarations of

6    knowledgeable agency officials describing in reasonable detail the scope of the search and the

7    methods employed for the particular searches at issue. <u>Lane v. Dep't of the Interior</u>, 523 F.3d

8    1128, 1135 (9th Cir. 2008); <u>Hiken</u>, 521 F. Supp. 2d at 1054.

       1.    **THE FBI'S DECLARANT DOES NOT DEMONSTRATE THAT HE HAS SUFFICIENTLY DIRECT KNOWLEDGE OF THE FBI'S EFFORTS TO LOCATE THE RECORDS ROSENFELD REQUESTED**

12         The agency declarant who seeks to demonstrate the adequacy of the agency's search must

13    be at a minimum "the official who coordinated the search." <u>Wickwire Gavin, P.C. v. Def. Intel.</u>

14    <u>Ag'y</u>, 330 F. Supp. 2d 592, 598 (E.D. Va. 2004). The declarant must have some personal

15    connection to the search; without such a connection the court cannot be sure that the declarant is

16    not speculating about or assuming how the search was conducted. <u>See SafeCard Servs., Inc. v.</u>

17    <u>SEC</u>, 926 F.2d 1197, 1201 (D.C. Cir. 1991). <u>Cf.</u> <u>Weisberg v.. Dep't of Justice</u>, 627 F.2d 365, 369

18    (D.C. Cir. 1980) (finding testimony about what "may have" happened, not based on first-hand

19    knowledge, to be insufficient). Thus in <u>Carney v. Dep't of Justice</u>, 19 F.3d 807, 813-14 (2d Cir.

20    1994), the court found sufficient the combination of the declarations of an official who had

21    "personally supervised" the FOIA requests and "reviewed the withheld documents," another who

22    was "personally involved in processing" the requests, and a third who supervised the processing

23    of the requests made to another division. In <u>SafeCard,</u>, the court found sufficient the affidavit of

24    the official who had personally interviewed the contractors who had reportedly destroyed a box

25    of documents. <u>SafeCard</u>, 926 F.2d at 1201. Because the affidavit was based on these interviews,

26    the affiant's testimony, although second-hand, was not found to be speculation or mere

27    assumptions. <u>Id.</u> In <u>Maynard v. CIA</u>, 986 F.2d 547, 560 (1st Cir. 1993), the court held that a

28    supervisor in the FOIA section of the FBI's records division who in several declarations testified

1    how he had personally reviewed the information in his official capacity was a qualified declarant.

2        In <u>Mehl v. EPA</u>, 797 F. Supp. 43, 45-46 (D.D.C. 1992), the court contrasted the

3    declarations filed to support the adequacy of two separate searches. For the search of records at

4    EPA Headquarters, the EPA provided the declaration of the official who had "personally

5    reviewed" all of the pertinent files for responsive materials. <u>Id.</u> at 46. However, the declaration

6    filed with respect to the search of a regional office was deemed insufficient. <u>Id.</u> The declarant for

7    that search testified that he had first-hand knowledge of the case files and responses to other

8    FOIA requests for them, but that the search itself had been performed by contractors. <u>Id.</u> As a

9    result the court found that an additional declaration was needed from someone more familiar

10    with the work the contractors had done. <u>Id.</u>

11        In this case, the Defendants' sole declarant, David Hardy, does not adequately establish

12    himself as the person with sufficient knowledge of the FBI's efforts to locate the records

13    requested by Rosenfeld. Hardy does not indicate that he has either first- or second-hand

14    knowledge of, or that he personally coordinated or specifically supervised the efforts to, search

15    for the records. Hardy only states that he is "the Section Chief of the Record/Information

16    Dissemination Section ("RIDS")" at the FBI. [Hardy Decl. ¶1] He explains that in that capacity

17    he generally supervises "approximately 190 employees who staff a total of ten (10) units and a

18    field operational service unit." [Hardy Decl. ¶2] And he states merely that he is "aware of the

19    treatment which has been afforded plaintiff's FOIA requests." [Hardy Decl. ¶3] However, there

20    is no specific information about how Hardy knows what he purports to state as fact in his

21    declaration. He admits that although some of the assertions in his declaration are based on his

22    personal knowledge, others are based on "information provided to me in my official capacity,"

23    and "upon conclusions and determinations reached and made in accordance therewith."[6] [Hardy

24    Decl. ¶2] Nowhere else in the declaration is Hardy any more specific about the source of the

25

26

27

28        [6]That much of Hardy's testimony is inadmissible hearsay is addressed in Plaintiff's
Objections to Defendants' Evidence filed herewith.

1    "information" provided to him.[7] Nowhere does he state what records he reviewed or which

2    employees, if any, he interviewed. Nowhere does he explain what his "supervision" of the RIDS

3    staff entailed with respect to Rosenfeld's requests. Nowhere in the declaration does he indicate

4    which assertions he makes are of his first-hand knowledge and which are merely his "conclusions

5    and determinations." Nowhere in his declaration does he state that he was either personally

6    involved in the search or even in the direct supervision of those who searched.[8]

7         This Court thus has no way of knowing which of Hardy's statements regarding the

8    adequacy of the searches performed were of his own personal knowledge and which ones were

9    merely third- or fourth-hand, or even more remote, accounts.[9] Nor does this Court have any basis

10   for determining whether any particular statement Hardy makes is merely a "conclusion" or

11   "determination" rather than a known fact. Hardy has not provided the Court with any basis for

12   distinguishing between what he knows to be true and what he is merely assuming or guessing.

13        That Hardy may not have sufficient knowledge of the FBI's efforts is made manifest by

14   the inconsistencies between Hardy's version of the FBI's efforts and the search slips that also

15   purport to show what efforts were made. For example, for the Ronald Reagan records, Hardy

16   indicated that six variations of Ronald Reagan's name were searched for on the CRS on

17

18        [7]In fact, Hardy's knowledge of Rosenfeld's requests appears to be based entirely on his
19   "review" of the First Amended Complaint. [Hardy Decl. ¶5]

20        [8]Indeed, Hardy has approximately 190 employees under his supervision. [Hardy Decl. ¶2]
21   Surely he does not directly supervise all of them.

22        [9]This is a serious concern. The search slips produced to Rosenfeld pursuant to Rule 26(a)
     were apparently at least second-hand accounts themselves. As discussed in Rosenfeld's summary
23   judgment motion, the search slips appear to have been compiled by a single person who gathered
     information from the various field offices. The FBI provided no search slips that were actually
24   generated at a field office. [Plaintiff's Memorandum in Support of Plaintiff's Motion for
     Summary Judgment ("Plaintiff's Memo.") at 4; Plaintiff's Exhs. J, Q, R, V, Z, GG, MM, NN,
25   OO] To the extent Hardy relied on the same search slips, his knowledge is quite remote from the
     actual searching that was done. To the extent he relied on other documentation of the searches,
26   the FBI violated Rule 26(a) by not producing that documentation to Rosenfeld, and thus should
     be barred from using them as evidence or deriving other evidence from them. Fed. R. Civ. P.
27   37(a)(1).

28

1    September 11, 2007. [Hardy Decl. ¶151] However the search slip for the Ronald Reagan searches

2    indicates the searches were performed on September 10, 2007 and that, depending on the field

3    office, only 1, 2, or 3 name variations were used. [Plaintiff's Exh. J] There are similar

4    discrepancies between Hardy's declaration and the Sherriffs and Brewer search slips. [Compare

5    Hardy Decl ¶151 with Plaintiff's Exhs. V, Z].

6        This Court should thus find that the FBI, on this basis alone, has not carried its burden of

7    demonstrating that it has performed an adequate search for the records Rosenfeld requested.

8                    **2.    DEFENDANTS' EVIDENCE IS CONCLUSORY AND
                                INSUFFICIENTLY DETAILED TO SUPPORT THE FBI'S CLAIM**
9                                **THAT IT PERFORMED AN ADEQUATE SEARCH**

10       Even if Hardy is considered, by himself, to be a sufficiently knowledgeable declarant, his

11   declaration is conclusory and fails to detail adequately the FBI's efforts to search for the records

12   Rosenfeld requested.

13       A declaration describing the agency's search procedures is sufficient to prove that an

14   adequate search was performed only if the declaration is relatively detailed in its description of

15   the files searched and the search procedures, and if it is non-conclusory and not impugned by

16   evidence of bad faith. Zemansky v. EPA, 767 F.2d 569, 573 (9th Cir. 1985). Accord Steinberg v.

17   Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). A declaration's description of the search

18   conducted cannot be so "general" that it would not permit the court to determine de novo whether

19   a "reasonably thorough search" was performed. Steinberg, 23 F.3d at 551. See also Hiken v.

20   Dep't of Defense, 521 F. Supp. 2d 1047, 1054-55 (N.D. Cal. 2007) (declining to grant the

21   agency summary judgment because of the "general nature" of the declaration's description of the

22   search in combination with evidence that the results of the search failed to produce responsive

23   documents).

24       If an agency has chosen to search less than all of its records, the declaration must

25   demonstrate why the excluded records system will have no responsive records. See Ogelsby, 920

26   F.2d at 68 (noting the agency's failure to explain why the records system it searched was "the

27   *only* possible place that responsive records are likely to be located").

28

                                                                    PLAINTIFF'S OPPOSITION TO
                                                                    DEFENDANTS' MOTION FOR
                                                                    PARTIAL SUMMARY JUDGMENT

1    Courts have set a minimum level of detail that must be included in the agency's

2    declaration. The declaration must include at least the following information:

3        (1)    the identification of which records systems were searched,  Wickwire, 330 F.

4            Supp. 2d at 598;

5        (2)    an explanation of why those records systems searched were the only ones likely to

6            contain responsive records, Oglesby, 920 F.2d at 68;

7        (3)    the search terms used, id.;

8        (4)    reasonable detail about how the search was conducted, id.;

9        (5)    the identity of those  who conducted the search, Wickwire, 330 F. Supp. 2d at

10           598, and;

11       (6)    an indication of  how long the searches took to perform. Id.

12   The reasonableness of the search performed must be analyzed with reference to the

13   specific request. Steinberg, 23 F.3d at 551; Meerpol v. Meese, 790 F.2d 942, 956 (D.C. Cir.

14   1986). The agency's declarations must thus provide specific information about how the

15   requester's specific search was actually conducted. The agency cannot simply explain how FOIA

16   requests are typically processed. Oglesby, 920 F.2d at 68 (rejecting as insufficient a declaration

17   that merely stated that the search was performed pursuant to customary procedures in the records

18   system most likely to contain the records); Wickwire, 330 F. Supp. 2d at 598 (citing Ethyl Corp.

19   v. EPA, 25 F.3d 1241, 1247 (4th Cir. 1994)) (holding that an agency "may not rest" on a

20   declaration that simply "avers that the search was conducted in a manner consistent with

21   customary practice and established procedure"). An agency has a positive obligation to follow

22   leads it uncovers as it identifies responsive records. Campbell, 164 F.3d at 28. As a result, the

23   agency's declaration should explain how all such leads and suggestions of where additional

24   records might be located were pursued.

25   As this Court is well aware, Rosenfeld's FOIA requests were not boiler-plate FOIA

26   requests. They were far more specific than the typical FOIA request and requested, among other

27   things, that the FBI search in specific files and indices and use particular search terms.

28

In response to these particularized requests, however, Defendants have produced a largely boiler-plate declaration. The Hardy declaration is lengthy, 53 numbered paragraphs spread out over 33 pages. But only nine of those paragraphs describe how the FBI searched for the responsive records [Hardy Decl. ¶¶ 144-52] And of those nine paragraphs, only two pertain particularly to the work done processing Rosenfeld's requests. [Hardy Decl. ¶¶ 151, 152] The rest is simply a boiler-plate explanation of how the FBI's files are maintained.

The paragraphs purporting to provide the "reasonably detailed and non-conclusory" information about the FBI's searches are each missing key details courts have required.

Paragraph 151 describes the FBI's search of its Central Records System (CRS) for the records Rosenfeld requested. The paragraph indicates the dates on which the CRS was searched and the search terms used to conduct the searches.[10] The paragraph indicates that both main files and cross references were located. However, Hardy does not indicate who conducted the searches and how long the searches took to perform. [Hardy Decl. ¶151]

The only information about the FBI's manual searches for the records Rosenfeld requested is contained in Paragraph 152. Numerous essential details are left out. Hardy lists only the field offices that were subject to manual searches for each of Rosenfeld's subjects. He does not indicate which manual indices and records were searched, who performed the searches, the dates on which the searches performed or how much time each search took. Nor does Hardy indicate which search terms were used for the manual searches. [Hardy Decl. ¶152] The search terms identified previously were only used with respect to the searches in the CRS.[11] [Hardy

---

[10]There are some peculiarities here. For example, the FBI purportedly conducted a search using the term "Sacramento 80s files," even though that request actually sought only files specified by file number. [Hardy Decl. ¶151; Plaintiff's Exh. AAA] The search slip reflects that the FBI searched by file number, not by the phrase. [Plaintiff's Exh. BBB] These inaccuracies call Hardy's competency as a witness into further question.

[11]The search slips indicate that the FBI did not use the multi-level variations of the subjects name in searching the manual indices at the field offices. For the Ellingwood records, for example, Hardy states that three variations of his name were used. [Hardy Decl. ¶151] But the Ellingwood search slips show that those three variations were only used for the automated database searches. [Plaintiff's Exhs. Q, R]

1  Decl. ¶151]

2       Nor does the Hardy declaration taken as a whole contain the reasonable detail required in

3  order for the Defendants to carry their burden of proving that an adequate search was performed.

4  The gravest deficiency is that it does not explain why the FBI's decision to limit its searches to

5  the CRS and a few unspecified manual indices was reasonably calculated to lead to the discovery

6  of all relevant records. See Steinberg, 23 F.3d at 551; Ogelsby, 920 F.2d at 68. Hardy never states

7  that these records systems were identified by the FBI as the only ones likely to contain the

8  records Rosenfeld requested; he never states that the records systems excluded were adjudged to

9  be highly unlikely to yield responsive records.

10       Insufficient detail is provided about the CRS. Hardy explains that the "records maintained

11  in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for

12  law enforcement purposes." [Hardy Decl. ¶145] But he does not explain if *all* such records are

13  included in the CRS, and if not, which ones are excluded. For example, Hardy states that "[m]ore

14  than 105 million records from the CRS were converted from automated systems previously

15  utilized by the FBI." [Hardy Decl. ¶146] But he does not indicate what percentage of total FBI

16  records this comprises. Thus a certain percentage of CRS records are not included in the ACS

17  and as a result are not searched. Given the age of the records he is seeking, Plaintiff is informed

18  and believes that the excluded records are likely to contain the records most relevant to the

19  subjects of his requests. [Second Rosenfeld Decl. ¶ 12]

20       Similarly, Hardy explains that the ACS is used to search the General Indices. [Hardy

21  Decl. ¶ 147] However, Hardy does not indicate what records are included in, and what records

22  are excluded from, the General Indices.

23       Many of the records Rosenfeld seeks are from the 1940s and 1950s. Yet Hardy's boiler-

24  plate declaration does not explain whether records of that vintage are included in the CRS or

25  whether the automated systems have been updated to identify them. Most significantly, Hardy

26  does not describe at all the FBI's procedure for finding records that were created prior to the

27  inception of the automated systems. He does not explain what time period is covered by the

28

1    General Indices, or what time periods are covered by each of the ACS components described in

2    Paragraph 147.

3          Hardy's declaration provides no information at all about the manual records systems, or

4    how they are organized, maintained, indexed or searched.  [Hardy Decl. ¶152]

5          Moreover, the Hardy Declaration does not explain why the FBI failed to search its

6    abstracts system for any of the subjects, even though records for each subject are located there.

7          The Hardy Declaration thus does not sufficiently prove that the FBI conducted an

8    adequate search.

9

10          **B.    THE FBI'S SEARCH WAS NOT ADEQUATE IN THAT THE FBI FAILED
                TO PERFORM MANY OF THE SEARCHES ROSENFELD
11              SPECIFICALLY REQUESTED, AND OTHERWISE OVERLOOKED
                MATERIALS IT SHOULD HAVE DISCOVERED**

12          Even if Defendants can demonstrate that the FBI performed a generically "reasonable"

13   search, the FBI has failed to prove that it used the search terms and searched the indices, records

14   and field offices as specifically requested by Rosenfeld. When the record is considered, in light

15   of Rosenfeld's well-defined requests and the positive indications of overlooked materials, set

16   forth below, it is clear that an adequate search has not been performed. See Valencia-Lucena v.

17   U.S. Coast Guard, 180 F.3d 321, 324-26 (D.C. Cir. 1999).

18          As noted above, each FOIA request has its own unique set of facts, and the adequacy of a

19   search will be judged against the particular facts of that request. The reasonableness of the search

20   performed must be analyzed with reference to the specific request. See Steinberg, 23 F.3d at 551.

21          Thus, an agency's search is not adequate if it has failed to search records systems

22   specifically identified by the requester as a possible source of responsive records. See Campbell,

23   164 F.3d at 28; Raulerson v. Ashcroft, 271 F. Supp. 2d 17, 21-22 (D.D.C. 2002) (each explaining

24   that when a request does *not* specify the locations in which an agency should search the agency

25   *then* has discretion to confine its search to a central filing system).

26          Similarly, an agency cannot confine its search to a subject's name if the requester has

27   specified a broader search. In Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 890-91

28

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
PARTIAL  SUMMARY JUDGMENT

17

1    (D.C. Cir. 1995), the court construed the FOIA request to include not only those records indexed

2    under the subject's name, but also records pertaining to the subject in the agency's subject matter

3    files. However the agency had failed in its declaration to describe its record-keeping systems in

4    sufficient detail so as to permit the court to assess which subject matter files might contain

5    responsive records. Id. at 92.

6         Rosenfeld did in fact provide the FBI with specific records locations and search terms to

7    help ensure that the FBI could identify all responsive records. This was necessary because, as the

8    FBI has acknowledged, the FBI does not index all names and all information contained in its

9    records. [Hardy Decl. ¶150] As a result, the FBI may have responsive records that are not

10   referred to in an index. Rosenfeld thus provided the FBI with specific information about where

11   both indexed and non-indexed records responsive to his request might be found. But the FBI

12   ignored those searches.

13        Moreover, for several of the subjects, the records that were produced indicate that there

14   should be numerous other records made available. Also, for several of the subjects, there is

15   external evidence that records were identified in prior FOIA requests but not produced to

16   Rosenfeld.

17
18   **1.    THE FBI FAILED TO SEARCH ADEQUATELY FOR ANY FIELD
           OFFICE RECORDS**

19        As set forth in his summary judgment papers, Rosenfeld directed each of his FOIA

20   requests to at least one FBI field Office in addition to FBI HQ.

21        However, the FBI has failed to show that any of its field office searches were adequate. In

22   describing the FBI's manual search for the FBI field office records, Hardy admits that such

23   searches were conducted by "FBIHQ." [Hardy Decl. ¶152] This is a startling admission.

24   According to Hardy, no searches were actually conducted by Field Office staff at the Field Office

25   where the records are actually maintained. Hardy does not explain what the FBI actually searched

26   and what Field Office resources were available to the FBIHQ staff who, apparently remotely,

27   performed the searches. As discussed above, many of the records Rosenfeld seeks are older. But

28

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT

1   the FBI has offered no assurance that such older field office records are searchable remotely by

2   FBIHQ personnel.

### 2.     THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR RONALD REAGAN RECORDS

5       In his May 4, 2006 letter, Rosenfeld set forth, in great detail, a series of specific requests

6   intended to ensure that the FBI identified as many Ronald Reagan records as possible. [Plaintiff's

7   Exh. E] However, as set forth in the memorandum supporting Rosenfeld's summary judgment

8   motion, the majority of those searches have yet to be performed. [Plaintiff's Memo at pp. 8-9]

9       The Hardy declaration only serves to corroborate Rosenfeld's assertions. As made clear

10  from the Hardy Declaration, the FBI searched for Ronald Reagan records using only variations of

11  Ronald Reagan's name as the search terms, and even then for only some searches. [Hardy Decl. ¶

12  151] The FBI disregarded Rosenfeld's request that the FBI search for Ronald Reagan records in

13  the subject files of numerous other individuals and organizations he specified. The FBI also

14  ignored Rosenfeld's request that numerous specified field office indices be searched, including,

15  but not limited to Active, Inactive, General, Confidential, ELSUR, FOIMS, Global, ISIS, OCIS,

16  IIS, Micro, Regional, SDIS and ADB indices. [Plaintiff's Exh. E] Of these, the FBI has only said

17  that it has searched the General Indices. [Hardy Decl. ¶147]

18      There is also substantial external evidence that the FBI did not search in places it knew

19  records concerning Ronald Reagan were likely to be located. For example, the book, *Dark*

20  *Victory: Ronald Reagan, MCA and the Mob*, refers to documents obtained through FOIA

21  regarding a federal grand jury investigation that focused on Reagan, Reagan's involvement in the

22  FBI's investigation of Music Corp of America (MCA) in the 1940s and '50s, and notes Reagan's

23  role as an FBI informant.[12] The FBI should have produced  records concerning Ronald Reagan

24  from the MCA Inquiry. [Second Rosenfeld Decl. ¶13]

25      The FBI has not conducted an adequate search for the Ronald Reagan records.

26

27      [12]Dan E. Moldea, *Dark Victory: Ronald Reagan, MCA, and the Mob* (Viking-Penguin
    1986). [Second Rosenfeld Decl. ¶ 13; Plaintiff's Exh. CCC at pp. 2, 117]
28

1
2

### 3.    THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR ELLINGWOOD RECORDS

3      The memorandum in support of Rosenfeld's summary judgment motion set forth

4   numerous specific searches that the FBI failed to perform for any and all records concerning

5   Herbert Ellingwood.

6      The Hardy Declaration does not prove that an adequate effort  was made to locate

7   Ellingwood records. Much of Ellingwood's activity was in the 1940s, '50s, and '60s. But the FBI

8   has not explained what it did to ensure that it was identifying records from that period. Moreover,

9   there is no indication in Hardy's Declaration that the FBI searched its COMPIC or other major

10  case indices likely to contain Ellingwood records. Hardy does not state that the FBI searched all

11  active and inactive indices and index cards, or conducted  "all references" checks at each field

12  office as requested. Nor does Hardy state that the FBI searched the SAC contact records, as

13  requested. And when the FBI did search it used only three variations of Ellingwood's name, not

14  the six Rosenfeld requested. [Plaintiff's Exh. K; Hardy Decl. ¶151]

15

16

### 4.    THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR SHERRIFFS RECORDS

17     The memorandum in support of Rosenfeld's summary judgment motion detailed

18  numerous specific searches that the FBI had failed to perform for any and all records in any way

19  concerning Alexander Sherriffs.

20     As the majority of the Sherriffs records would derive from the 1950s, '60s and '70s, the

21  FBI's searches of the manual indices were especially important. Yet the Hardy Declaration

22  provides only summary information of what files the FBI searched. Hardy notes only that three

23  variations of Sherriffs's name, as opposed to the six Rosenfeld requested, were run through the

24  CRS. But it is unknown which terms were used for the manual searches. He does not address any

25  of the deficiencies noted in the memorandum. He does not explain the efforts the FBI made to

26  locate San Francisco field office main file SF 80-928.  That file was listed on the search slip as

27  being responsive, but not located. [Plaintiff's Exh. V]  Hardy does not indicate that an "all

28

PLAINTIFF'S OPPOSITION TO<br>
DEFENDANTS' MOTION FOR<br>
PARTIAL  SUMMARY JUDGMENT

1   references" search was conducted, or that all SAC contact search records at the San Francisco

2   field office, or all index cards, active and inactive, were searched, even though Rosenfeld

3   specifically requested each of those.

4       Moreover, records the FBI has produced elsewhere confirm Rosenfeld's belief that

5   Sherriffs during his tenure at UC Berkeley and later as an aide to Governor Reagan was in

6   frequent contact with the FBI concerning campus dissent and that the FBI maintained numerous

7   records concerning him, and that his name was indexed in the records at the San Francisco field

8   office. [Second Rosenfeld Decl. ¶14; Plaintiff's Exh. DDD] Given this level of interaction, it is

9   highly unlikely that there are only 22 pages of FBI records concerning Sherriffs. [Second

10  Rosenfeld Decl. ¶14]

11
12              **5.    THE FBI FAILED TO PERFORM EACH OF THE REQUESTED
                        SEARCHES FOR BREWER RECORDS**

13      The memorandum in support of Rosenfeld's summary judgment motion detailed

14  numerous specific searches that the FBI had failed to perform for any and all records in anyway

15  concerning Roy Brewer. [Plaintiff's Memo at pp. 17-18]

16      The Hardy declaration is silent as to whether many of the searches specifically requested

17  by Rosenfeld were performed. Hardy does not indicate that the FBI searched its COMPIC or

18  other major case indices for Brewer records. Hardy does not indicate that the six-way breakdown

19  of Brewer's name used for the CRS searches was used for the manual searches at FBIHQ and

20  field offices. As with Sherriffs, Hardy does not state that the FBI conducted an "all-references"

21  search, searched all SAC contact records, or searched all index cards, active or inactive.

22      Moreover, Rosenfeld, by letter dated October 13, 2006, in order to assist the FBI with its

23  search, provided the FBI with a list of organizations in which Brewer was active, and individuals,

24  including Ronald Reagan, with whom Brewer was involved. Rosenfeld specifically requested

25  that the FBI check all records concerning those organizations and individuals for all references to

26  Brewer. [Plaintiff's Exh.W] But the Hardy declaration does not indicate that any of those

27  searches were performed.

28

1       Moreover, there are positive indications that the FBI did not search for Brewer records in

2    places where they knew Brewer records might be located. For example, the FBI had posted on its

3    official website, in its electronic reading room, numerous records from its headquarters files on

4    the COMPIC case, the investigation of alleged communists in Hollywood during the 1940s and

5    '50s. [Second Rosenfeld Decl. ¶ 16] Rosenfeld reviewed some of those records and found

6    references to Roy Brewer in certain documents. [Second Rosenfeld Decl. ¶ 16] The FBI, for

7    reasons unknown to plaintiff, removed the COMPIC records from its web site within the last

8    several months. [Second Rosenfeld Decl. ¶ 16] However, Rosenfeld's notes show that some of

9    the headquarters COMPIC records containing reference to Brewer were serials 120, 121, 122,

10    142, 149, 200, 209, 218 and 317. [Second Rosenfeld Decl. ¶ 16]

11       None of the above records have been released to Rosenfeld. [Second Rosenfeld Decl. ¶

12    17] The Brewer search slip shows that FBI staff started to conduct a search of the FBI's

13    headquarters file on the COMPIC case, but stopped their search after only serial 39. [Plaintiff's

14    Exh. Z; Second Rosenfeld Decl. ¶ 17] The COMPIC file consists of hundreds of serials totaling

15    thousands of pages. Rosenfeld thus believes that the FBI has numerous additional records

16    concerning Brewer that are responsive to his request that are contained in the COMPIC

17    headquarters file.[Second Rosenfeld Decl. ¶ 17] Rosenfeld also believes that the FBI has

18    numerous additional records concerning Brewer that are contained in its Los Angeles file on the

19    COMPIC case, none of which have been released to him. [Second Rosenfeld Decl. ¶ 18]

20       Rosenfeld also believes that there are numerous additional references to  Brewer in other

21    files, either on Brewer and the organizations that he was involved in, or on third party individuals

22    and organizations. [Second Rosenfeld Decl. ¶19] His belief is based on his research, which

23    shows that Brewer was deeply involved in fighting communists in Hollywood in the 1940s and

24    '50s, and in that role worked closely with Ronald Reagan, the Screen Actors Guild, the Motion

25    Picture Industry Council, the Labor League of Hollywood Voters and the Motion Picture

26    Alliance for the Preservation of American Ideals. [Second Rosenfeld Decl. ¶¶ 13, 19; Plaintiff's

27    Exh. CCC at pp. 65-68, 71-75, 332-33]

28

### 6.    THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR NEIL REAGAN RECORDS

The memorandum in support of Rosenfeld's summary judgment motion detailed numerous specific searches that the FBI had failed to perform for any and all records in any way concerning Neil Reagan.

As with the other subjects, the Hardy declaration is silent as to whether the COMPIC and other major case indices at each office were searched. It is silent as to whether all active and inactive indices and index cards were searched at each field office. It is silent as to whether the FBI conducted "all references" searches. And, as set forth in the memorandum in support of Rosenfeld's summary judgment motion, the records produced to Rosenfeld confirm that Neil Reagan was an FBI informant, denoted "Confidential Informant T-36" in one FBI record, strongly suggesting that there are numerous additional responsive records concerning him.. [Plaintiff's Memo at pp. 18 n.11, 19] The Hardy Declaration also does not indicate that the FBI searched its SAC contact records at any office.

### 7.    THE FBI FAILED TO PERFORM EACH OF THE REQUESTED SEARCHES FOR MPIC, LABOR LEAGUE AND MPA RECORDS

The memorandum in support of Rosenfeld's summary judgment motion detailed numerous specific searches that the FBI had failed to perform for any and all records in any way concerning the Motion Picture Industry Council, the Labor League of Hollywood Voters, and the Motion Picture Alliance for the Preservation of American Ideals.

The processing of these requests suffers from the same deficiencies as the others. The Hardy Declaration does not indicate that all manual indices were searched, or that "all references" searches were conducted, or that the FBI made any special effort to search for records likely created in the 1940s and '50s. There are as a result notable omissions from the FBI's production of records to Rosenfeld in response to these requests.

///

///

## CONCLUSION

The FBI has failed to carry its burden of proving that it searched for and produced all records responsive to Rosenfeld's FOIA requests. Defendants' evidence, which is required to be reasonably detailed and non-conclusory, is neither. Defendants' sole declarant, David Hardy, has not demonstrated his competence as a witness for the FBI's response to these specific FOIA requests. Nor has Hardy provided sufficient detail to demonstrate that the FBI made an adequate effort to search for and produce the requested records. Moreover, the FBI failed to perform many of the searches Rosenfeld specifically requested. The totality of evidence calls into serious question the FBI's good faith in responding to Rosenfeld's FOIA requests.

Defendants' Motion for Partial Summary Judgment must be denied. Moreover, as it is clear as a matter of law that the FBI failed to fulfill its duties under FOIA, Plaintiff's Motion for partial Summary Judgment should be granted.


DATED: June 16, 2008                     Respectfully submitted,

                                         James R. Wheaton
                                         David A. Greene
                                         FIRST AMENDMENT PROJECT


                                         By:      /s/
                                         Attorneys for Plaintiff
                                         SETH ROSENFELD