JAMES R. WHEATON (Cal. Bar No. 115230)
DAVID A. GREENE (Cal. Bar No. 160107)
FIRST AMENDMENT PROJECT
1736 Franklin Street, 9th Floor
Oakland, CA 94612
Tel:   (510) 208-7744
Fax:   (510) 208-4562

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD<br><br>            Plaintiff,<br>    vs.<br><br>FEDERAL BUREAU OF INVESTIGATION, AND UNITED STATES DEPARTMENT OF JUSTICE<br><br>            Defendants. | Case No. 07-cv-03240-MHP<br><br>SECOND DECLARATION OF SETH ROSENFELD IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>DATE: June 30, 2008<br>TIME: 2:00 p.m.<br>DEPT: Judge: Hon. Marilyn Hall Patel |

I, SETH ROSENFELD, DECLARE under penalty of perjury that, unless otherwise indicated, the following is true and correct of my own personal knowledge, and that I can completely testify thereto:

---

1

Case No. 07-cv-03240-MHP: PLAINTIFF SETH ROSENFELD'S SECOND DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1. On January 31, 2007 and then again on March 1, 2007, I sent letters to the Department of Justice's Office of Information and Privacy appealing the FBI's failure to adequately respond to my FOIA request concerning Roy M. Brewer. True and correct copies of those letters are attached as **Exhibits QQ** and **RR**, respectively, to Plaintiff's Supplemental Exhibits, filed herewith.

2. The OIP acknowledged receipt of my appeal by letter dated February 8, 2007. A true and correct copy of that letter is attached as Exhibit SS to to Plaintiff's Supplemental Exhibits, filed herewith.

3. A few days after April 26, 2007, I received a box of 231 pages of records pertaining to Roy M. Brewer with a cover letter bearing that date. I reviewed the records and discovered that they pertained solely to Mr. Brewer's appointment to a position in the administration of President Reagan. None of the records produced dated prior to 1988. I had specifically sought any and all records concerning Mr. Brewer because I am particularly interested in his activities during the 1940s, 1950s and 1960s. I had specifically referred to Mr. Brewer's prominence in the 1940s and 1950s in my request letter. I also requested that the FBI search such major case files such as COMPIC, a case file that spanned the 1940s and 1950s. Based on the fact that I had not yet received any documents from the time period I was most interested in, I believed that the FBI had much more work remaining to do to comply with my request. Moreover, the cover letter did not indicate that the documents I had received were a "final release" as previous cover letter for other requests had. I therefor had no reason to believe that my January 31, 2007 and March 1, 2007 appeals had been fully adrresssed.

4. By letter dated June 14, 2006, I made a FOIA request to the FBI for any and all records in any way concerning the Labor League of Hollywood Voters. The FBI responded by letter dated August 28, 2006 that it had conducted a search of main files only, not cross references, and that it had located no records. A true and correct copy of that letter is attached as **Exhibit TT** to Plaintiff's Supplemental Exhibits, filed herewith.

5. I appealed this denial by letter dated October 16, 2006, in which I noted the FBI's failure to perform an adequate search for records. A true and correct copy of this letter is attached as **Exhibit UU** to to Plaintiff's Supplemental Exhibits, filed herewith. The OIP granted the appeal on December 19, 2006 and remanded the request to the FBI for further searches including cross-references. A true and correct copy of the letter I received from OIP informing me of the remand is attached as **Exhibit VV** to Plaintiff's Supplemental Exhibits, filed herewith.

6. However, I received no additional records following the remand. As a result I filed a new appeal with the OIP on March 1, 2007. This appeal noted not only the FBI's untimeliness, but also incorporated his previous appeal and that appeal's focus on the undue narrowness of the FBI's search. A true and correct copy of this appeal is attached as **Exhibit WW** to Plaintiff's Supplemental Exhibits, filed herewith.

7. I received the first box of 49 pages of records purportedly responsive to my FOIA request on the Labor League a few days after April 25, 2007. Included was a cover letter bearing that date. I reviewed those 49 pages. This production did not by its contents appear to represent a complete processing of my request. Among other deficiencies, none of the pages released were from the Los Angeles field office even though I had specifically requested that that field office be searched for responsive records. There was no other indication in the cover letter or otherwise that this was a final release of all Labor League records. I thus believed that the FBI was continuing to process my request.

8. After I filed my initial complaint in this matter, my attorney received a letter dated June 29, 2007 from OIP. That letter indicated OIP's belief that my March 1, 2007 appeal was now moot. A true and correct copy of that letter is attached as **Exhibit XX** to Plaintiff's Supplemental Exhibits, filed herewith.

9. As part of the settlement of previous FOIA litigation with Defendants, the FBI agreed to process a detailed request for records pertaining to Ronald Reagan according to a

schedule set forth in the Settlement Agreement. Many pages of records were produced to me in the years immediately following the execution of the settlement agreement. However, I believed that many more responsive records had yet to be located. As the FBI had never indicated to me that it had completed processing my Ronald Reagan request, and as the processing of other records pursuant to the Settlement Agreement was continuing, I believed that the FBI had not completed processing the Ronald Reagan request. It was not until I received a production of records, accompanied by a cover letter dated February 28, 2006 that I was aware that the FBI considered its duties regarding the Ronald Reagan records to be complete. That letter, a true and correct copy of which was attached as Exhibit F to Plaintiff's Exhibits, filed with my first declaration, was the first indication to me that the FBI considered all of its duties under the settlement agreement competed.

10. I thus appealed the FBI's failure to respond adequately to my Ronald Reagan request by letter dated January 29, 2007. A true and correct copy of my appeal letter is attached as **Exhibit YY** to Plaintiff's Supplemental Exhibits, filed herewith. OIP acknowledged receipt of February 28, 2007, a true and correct copy of which is attached as **Exhibit ZZ** to Plaintiff's Supplemental Exhibits, filed herewith.

11. By letter dated April 28, 2006, I filed a FOIA request for any and all main files at FBIHQ that were the corresponding main files to certain specified files at the Sacramento Field Office with an "80" classification. I soon after made a request to the Sacramento field office for the files themselves. True and correct copies of those request letters are attached as **Exhibit AAA** to Plaintiff's Supplemental Exhibits, filed herewith. A true and correct copy of the search slip produced to me during discovery in this matter corresponding to my "Sacramento 80 files" request is attached as **Exhibit BBB** to Plaintiff's Supplemental Exhibits, filed herewith.

12. I have reviewed David Hardy's declaration submitted in support of Defendants' Motion

for Partial Summary Judgment, and in particular paragraphs 145 through 152 in which he describes the FBI's Central Records System. Based on my extensive experience with and research on the FBI's record keeping system, I believe his characterizations of the CRS is incomplete.

    a.    I am informed and believe that many potentially responsive records are not included in the CRS. This is especially true of older records. Significantly, he fails to state what time period is covered in the CRS, and whether this time period is consistent for all categories of records therein.

    b.    In paragraph 146, Hardy sets forth a description of the Automated Case Support System (ACS) which he states is the mechanism used to search the CRS. He acknowledges that the ACS does not include all records in the CRS.

    c.    In paragraph 147, Hardy states that the ACS is used to search the General Index to the CRS. However, he fails to state that not all records are included in the General Index, and he does not state what time period is covered by the General Index.

    d.    In paragraph 149, Hardy provides further description of the ACS, by discussing three of its components, the Investigative Case Management (ICM), the Electronic Case File (ECF) and the Universal Index (UI). However, as Hardy acknowledged in his paragraph 146, the ACS, and these components, include only part of the FBI's Central Records System. Hardy acknowledges that these components encompass only a portion of the CRS, but once again, Hardy fails to state the time periods covered by each of these components.

    e.    I am informed and believe, moreover, that not all computer indexes at the Field Office are encompassed in the computer indexes at FBI HQ. These Field office indexes would require separate searches at each respective

field office.

f.  Hardy acknowledges in his paragraph 150, furthermore, that FBI officials do not index all names and all information contained in FBI records. Thus, the FBI may have responsive records to a FOIA request that are not referenced in an index. That is why I provided the FBI with specific information about where indexed and non-indexed records responsive to this request might be found and why I specifically requested the FBI to search those areas. However, the FBI did not conduct these searches.

g.  Hardy states in paragraph 151 that in response to my FOIA requests the FBI conducted searches of the CRS. But for the reasons noted above, these searches would not encompass all records responsive to my request.

h.  At paragraph 152, Hardy describes the FBI "use of manual methods to search for responsive records." Here Mr. Hardy makes a startling admission. He states "FBIHQ conduced manual searches on the following subject matters or individuals in specific field offices, at the FBI's Alexandria Records Center (ARC) or at the Pocatello Information Technology Center (PITC)." Mr. Hardy makes no assertion that any searches were actually conducted by Field Office staff at the Field Office where the records are actually maintained. Apparently, FBIHQ conducted these searches remotely, using limited search tools, and no searches were actually done at the Field Offices. I believe this is significant because many field office records, particularly older records that are the subject of my request, would not be searchable remotely and could not be retrieved without a manual search conducted of manual records at each specified field office.

i.  Moreover, Hardy in paragraph 152 is even more vague in his description of what searches were done. He makes only a sweeping statement that FBI

6

Case No. 07-cv-03240-MHP: PLAINTIFF SETH ROSENFELD'S SECOND DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

      HQ "conducted manual searches ... in specific field offices." He does not state what kinds of manual searches were done, nor does he specify what manual indexes and records were searched.

  j. In Paragraphs 151, Hardy provides a list of variations on the names of subjects he states were searched, but he asserts only that these variations were searched in the FBI's CRS system at headquarters. Significantly, he does not state that these name variations were searched in Field Office records. Nor does he state that these variations were searched manually. I am informed and believed that unless the FBI conducted these other searches using these name variations the FBI would not conduct a thorough search for responsive records and would not locate all responsive records.

13. I have reviewed the book *Dark Victory: Ronald Reagan, MCA, and the Mob* by Dan E. Moldea, which states it is based in large part on records obtained from the FBI through FOIA. The book contains extensive information about both Ronald Reagan and Roy Brewer and their various interactions with the FBI. True and correct copies of some of the relevant pages of the book are attached as **Exhibit CCC** to Plaintiff's Supplemental Exhibits, filed herewith. I have not received any of these MCA records regarding Reagan and Brewer to which the book refers, even though I requested "any and all" records concerning each of them.

14. In response to my FOIA request for records regarding the late Alexander C. Sherriffs, the FBI has released only 22 pages of records. However, based on my research, I believe that there are numerous other records concerning Sherriffs that should have been released. For example, I have attached true and correct copies of records released in another FOIA case as **Exhibit DDD** to Plaintiff's Supplemental Exhibits, filed herewith. These records confirm my belief that Sherriffs was in frequent contact with the FBI about unrest on the UC Berkeley campus, and confirms that the FBI did not fully comply with my request for

7

Case No. 07-cv-03240-MHP: PLAINTIFF SETH ROSENFELD'S SECOND DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

all records concerning Sherriffs. I believe that the FBI must have numerous other records pertaining to Sherriffs and has not adequately searched for them. For example, I note that document 100-34204-559, dated November 20, 1962, captioned Douglas Wachter, states on page 2 that the FBI indexed Sherriffs's name at the FBI's San Francisco field office. However, the FBI has not released any index cards on Sherriffs, even though I requested any and all records concerning him.

15. Regarding my FOIA request for records pertaining to the late Roy M. Brewer, I suspected that the FBI might not have indexed all records concerning Brewer under his name. In order to assist the FBI in finding records pertaining to Brewer, I provided the FBI with a list of organizations in which Brewer had been active and persons with whom he had been involved. I directed the FBI to search for Brewer information in the records of these organizations and individuals. A true and correct copy of my letters to the FBI to this effect were attached as Exhibit W to Plaintiff's Exhibits filed with my first declaration in this matter. However, to my knowledge the FBI has not applied this list, or conducted reasonable searches related to it, in response to my request.

16. Given his involvement with the motion picture industry, I believed that many references to Brewer would be found in the FBI's COMPIC case file. I thus had a research assistant investigate the records from the FBIHQ COMPIC file that were posted in the FBI's electronic reading room on the FBI's official website. My research assistant directed me to several references to Brewer in the posted COMPIC files. These records were removed from the reading room several months ago. However, my notes show that some of the headquarters COMPIC records containing reference to Brewer were serials 120, 121, 122, 142, 149, 200, 209, 218 and 317.

17. None of those records were released to me pursuant to my FOIA request for any and all records concerning Brewer. In this regard, I note that the FBI search slips released to me pursuant to this court's order show that FBI staff started to conduct a search of the FBI's headquarters file on the COMPIC case, but for some reason unknown to me stopped their

19. In addition, I believe that there are numerous additional references to Brewer in other files, either on Brewer and the organizations that he was involved in, or on third party individuals and organizations. My belief is based on my research, which shows that Brewer was deeply involved in fighting communists in Hollywood in the 1940s and 1950s, and in that role worked closely with Ronald Reagan, The Screen Actors Guild, the Motion Picture Industry Council, the Labor League of Hollywood Voters and the Motion Picture Alliance for the Preservation of American Ideals.

I declare under penalty of perjury that the foregoing is true and correct and executed June 16, 2008 at San Francisco, California.

by:  _____/s/_____
Declarant Seth Rosenfeld