1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SETH ROSENFELD,

        Plaintiff,

  v.

UNITED STATES DEPARTMENT OF
JUSTICE, and UNITED STATES FEDERAL
BUREAU OF INVESTIGATION,

        Defendants.
                           /

No. C 07-03240 MHP

**MEMORANDUM & ORDER**

**Re: Cross-Motions for Summary Judgment**

      On June 19, 2007 plaintiff Seth Rosenfeld filed a complaint pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. section 552, against the Department of Justice ("DOJ") and the

Federal Bureau of Investigation ("FBI")[1] (collectively, "defendants"), seeking injunctive relief

mandating disclosure of certain documents requested by Rosenfeld.  Now before the court are the

parties' cross-motions for summary judgment.  Having considered the parties' arguments fully and

for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[2]

      Rosenfeld is a professional journalist who has been employed by the San Francisco

Chronicle since the year 2000.  Over the course of his career, Rosenfeld has published numerous

articles about the FBI's activities at the University of California during nationally prominent events

in the 1950s and 1960s.  See Docket No. 13 (hereinafter "Amended Compl."), Exh. A.  His research

has largely been based on FBI records released to him pursuant to requests and complaints filed

under the FOIA.  The subject of this action are FOIA requests filed by Rosenfeld through which he

seeks to gather information maintained by the FBI on nine individuals and organizations: 1) Ronald

United States District Court

For the Northern District of California

Reagan; 2) Herbert Ellingwood; 3) Alexander C. Sheriffs; 4) Roy M. Brewer; 5) Neil Reagan; 6) "80" Files;[3] 7) Motion Picture Industry Council; 8) Labor League of Hollywood Voters; and 9) Motion Picture Alliance for the Preservation of American Ideals.

In his request pertaining to the above individuals and organizations, Rosenfeld asked that the FBI search main files, all "see" references, "Do Not File" files, channelized records, search slips (including search slips used to process the requests themselves), Electronic Surveillance Indices records ("ELSUR"), Official and Confidential files, Official and Personal Files, JUNE Files, index cards, records that are or were maintained in SAC safes, and bulky exhibits.[4]  Pl.'s Motion, Exh's. G, K, S, W, AA & II.  Rosenfeld directed these requests to FBI headquarters ("FBIHQ"), the Los Angeles Field Office ("LAFO"), the Sacramento Field Office ("SFO"), the San Francisco Field Office ("SFFO"), the San Diego Field Office ("SDFO"), and/or the Washington, D.C., Field Office ("WFO").  Id.

After corresponding with the FBI and DOJ regarding the adequacy of the FBI's search for documents responsive to his search, Rosenfeld filed suit in this court alleging, *inter alia*, that the FBI had not conducted a reasonable search.  Specifically, Rosenfeld raises the following issues: 1) cross-references not searches or processed in the manner specified by Rosenfeld; 2) failure to search particular indices; 3) inadequate or nonexistent search slips; 4) records on search slips not produced; 5) failure to produce abstracts; 6) records identified but not released; 7) failure to re-process Ronald Reagan records; and 8) failure to produce office of origin files.  Hardy 2d Dec. ¶ 4.  In opposition, defendants contend that the FBI conducted a reasonable search, two requests are barred by Rosenfeld's failure to exhaust his administrative remedies and one request is barred by the statute of limitations.  Before discussing the merits of this action, the court first describes Rosenfeld's various requests.

I.    Request for Ronald Reagan Records (First Cause of Action)

Prior to being elected President of the United States, the late Ronald Reagan was an actor and president of the Screen Actors Guild during the forties and fifties, and then Governor of

California for two terms during the 1960s. Rosenfeld's research is directed at this part of Reagan's life. Rosenfeld Dec. ¶ 11.

As part of the 1996 settlement of an earlier FOIA lawsuit by Rosenfeld, the FBI agreed to release "[a]ny and all records at FBI HQ, San Francisco, Los Angeles, Sacramento, San Diego, Washington Field Office, and all offices of origin on Ronald W. Reagan (date of birth 2/06/11; UC Regent ex officio c. 1966-1978), from the earliest records through January 1, 1979." Pl.'s Motion, Exh. A. The settlement agreement further specified that the Ronald Reagan request would be treated as a "new" FOIA request that would be addressed separately from any earlier litigation. Id.

On May 2, 1996, of the 2,199 pages reviewed, the FBI released 1,935 pages of responsive records to Rosenfeld. Amended Compl., Exh. C. The FBI informed Rosenfeld that this interim release was being made pursuant to the 1996 settlement and that certain information was being withheld pursuant to FOIA exemptions. Id. On February 27, 1997 the FBI released an additional 851 pages of responsive material and stated "[t]he enclosed documents represent the final scheduled release pursuant to the Settlement Agreement."[5] Id., Exh. D.

Rosenfeld appealed the FBI's FOIA response in two letters dated July 28, 1997 and September 25, 1997. Id., Exh's. E & F. The FBI released one additional page in response in an undated letter. Id., Exh. G. On April 17, 1988 the FBI released more legible copies of five previously released documents, a list of main files and cross-references and a list detailing the status of referrals to other government agencies. Id., Exh. H. On March 2, 1998 Rosenfeld requested the search slips generated for the Ronald Reagan requests, and the DOJ released approximately 25% of the search slips to Rosenfeld on February 26, 1999. Id., Exh's. I & J. On March 12, 1999 DOJ released a copy of the FBIHQ index cards for the Ronald Reagan search. Id., Exh. J. On June 24, 1999 the FBI released 108 index cards concerning Ronald Reagan from their field offices in Los Angeles, Sacramento, San Diego, San Francisco and Washington. Id., Exh. K. On July 2, 1999 the DOJ re-released the 108 index cards previously released on June 24, 1999. Id., Exh. L.

On March 31, 2006, May 4, 2006 and January 29, 2007 Rosenfeld appealed the FBI's failure to release any and all records concerning Ronald Reagan to DOJ. Id., Exh's. N & O. On February 8, 2007 the DOJ acknowledge receipt of Rosenfeld's administrative appeal and assigned it an appeal

3

United States District Court

For the Northern District of California

number. Id., Exh. Q. On March 1, 2007 and April 13, 2007 Rosenfeld again appealed to the DOJ. Id., Exh's. R & S.

II.    Request for Herbert Ellingwood Records

Herbert Ellingwood was a prosecutor in the Alameda County District Attorney's Office in the early 1960s. In the later 1960s through the 1970s he served in Governor Reagan's cabinet, specializing in matters concerning law enforcement and civil unrest. Rosenfeld Dec. ¶ 26.

On May 8, 2006 Rosenfeld submitted requests for "any and all" records concerning Herbert Ellingwood, the former deputy general counsel to Ronald Reagan, to FBIHQ, LAFO, SFO, SFFO, SDFO and WFO. Amended Compl., Exh. T. On July 19, 2006 the FBI responded that it had located approximately 530 pages of material and the cost of duplicating these records would be $43. Id., Exh. V. Three months later, Rosenfeld appealed the FBI's failure to release the requested documents to the DOJ. Id., Exh. W. On December 18, 2006 DOJ acknowledged receipt of Rosenfeld's administrative appeal and informed him that there was no action to consider on appeal because the FBI had not yet responded to his request. Id., Exh. X. They stated this was because DOJ regulations allow an administrative appeal only after there has been an adverse determination by an agency. Id. Rosenfeld wrote FBIHQ on January 31, 2007 regarding the status of his request made to the field offices, and the FBI informed him one week later that the relevant documents were "being prepared for processing." Id., Exh. Z. Two months later, Rosenfeld appealed to the DOJ again. Id., Exh. AA. On June 6, 2007 the FBI notified Rosenfeld that an analyst was reviewing documents to confirm that all records were responsive to his request. Id., Exh. BB.

On June 27, 2007 the FBI sent Rosenfeld 46 pages of responsive material. Id., Exh. CC. On October 1, 2007 the FBI again updated Rosenfeld on the status of his requests. Hardy Dec., Exh. A. Eighteen months after the original request, on November 13, 2007, the FBI released an additional 1,319 pages out of 1,489 pages reviewed and informed Rosenfeld that "this conclude[d] the processing of [his] request." Id., Exh. B. On April 4, 2008 FBIHQ released an additional 16 pages after "[a] search of inactive indices concerning 'see references' revealed documents related to [Rosenfeld's] request."[6] Id., Exh. C.

**United States District Court**
For the Northern District of California

III.    Request for Alexander C. Sheriffs Records

On July 8, 2004 Rosenfeld submitted a FOIA request to FBIHQ and SFFO for documents concerning Alexander C. Sheriffs, a Vice Chancellor at the University of California, Berkeley, in the 1960s who thereafter became the State Education Advisor for then-Governor Ronald Reagan. Amended Compl., Exh. DD.

On August 11, 2004 the FBI informed Rosenfeld that a search of the automated and manual indices, as well as the ELSUR found no responsive documents.  Def.'s Motion, Exh. F.  Rosenfeld appealed four times to the DOJ regarding the FBI's failure to release any records pursuant to this request, including his most recent appeal on March 1, 2007.  Amended Compl., Exh's. FF, HH, JJ & KK.  On July 16, 2007 the DOJ advised Rosenfeld that his appeal was closed, under 28 C.F.R. section 16.9(a)(3), because the request was now the subject of this litigation.  Def.'s Motion, Exh. H. Nevertheless, on April 1, 2008 the FBI released 22 pages and advised Rosenfeld that certain information was withheld pursuant to FOIA exemptions.  Id., Exh. I.

IV.    Request for Roy M. Brewer Records

On October 13, 2006 Rosenfeld submitted a FOIA request to FBIHQ, WFO and LAFO for documents concerning Roy Brewer, who headed the Hollywood branch of the movie industry's leading union of stage hands and served as co-chair of the Screen Actors Guild with Ronald Reagan. Amended Compl., Exh. LL.

On October 17, 2006 and October 25, 2006 LAFO and WFO, respectively, acknowledged receipt of Rosenfeld's request and informed him that the request was being forwarded to FBIHQ. Id., Exh. MM.  Rosenfeld filed appeals with the DOJ on January 31, 2007 and March 1, 2007 after receiving no response from the FBI for over a year.  Id., Exh's. NN & ¶.  On April 26, 2007 the FBI made an interim release of 231 pages to Rosenfeld.  Pl.'s Motion, Exh. X.  That same day, the FBI asserts that FBI personnel closed this request.  Hardy Dec. ¶ 60.  On July 16, 2007 the DOJ informed Rosenfeld that his appeal was being closed since it was now the subject of litigation.  Id., Exh. J.

The FBI released an additional 290 pages on April 2, 2008 and indicated in the cover letter that these records were cross references identified when the central records system at FBIHQ was

United States District Court

For the Northern District of California

1    searched.  Pl.'s Motion, Exh. Y.  On April 10, 2008 the FBI made a final release of 130 pages out of

2    the 219 pages reviewed.  Hardy Dec., Exh. L.  Defendants assert that the DOJ has no record of

3    receiving an administrative appeal of the April 10, 2008 release.  Hardy Dec. ¶ 64.

4

5    V.    Request for Neil Reagan Records

6         The late Neil Reagan was the older brother of Ronald Reagan.  He worked in advertising and

7    public relations.  In addition, starting in the late 1940s, he worked with the FBI, helping FBI agents

8    gather information about people involved in left-wing political activity in Hollywood.  Rosenfeld

9    Dec. ¶ 45.

10        On March 23, 2005 Rosenfeld submitted a FOIA request to FBIHQ, WFO and LAFO for

11   records concerning Neil Reagan.  Amended Compl., Exh. RR.  The FBI acknowledged Rosenfeld's

12   request to FBIHQ and LAFO on March 30, 2005 and April 13, 2005, respectively.  Id., Exh. §.  On

13   May 12, 2005 Rosenfeld wrote FBIHQ requesting an update and sent a separate letter appealing to

14   the DOJ.  Id., Exh. TT; Hardy Dec., Exh. M.  On May 26, 2005 the FBI notified Rosenfeld that a

15   search of the automated and manual indices at the three offices revealed no records pertinent to

16   Rosenfeld's request.  Amended Compl., Exh. VV.  That same day, the DOJ acknowledged receipt of

17   Rosenfeld's administrative appeal.  Id., Exh. UU.

18        On June 10, 2005 Rosenfeld wrote to FBIHQ to reiterate his original request for information

19   on Neil Reagan.  Hardy Dec., Exh. N.  The DOJ notified Rosenfeld on August 22, 2005 that it had

20   remanded his request to the FBI because the FBI was still processing his request.  Id., Exh. O.  The

21   DOJ also stated that Rosenfeld could appeal any future adverse determinations and, if he was

22   dissatisfied with the DOJ's action, he could seek judicial review.  Id.  On September 6, 2005 the

23   DOJ informed Rosenfeld that the FBI's response to him on May 26, 2005 addressed the basis for his

24   appeal.  Amended Compl., Exh. WW.  Rosenfeld again appealed to the DOJ on November 8, 2005.

25   Id., Exh. XX.

26        On February 28, 2006 FBIHQ released three pages and advised Rosenfeld that certain

27   information was being withheld pursuant to FOIA exemptions.  Id., Exh. YY.  On January 31, 2007

28   Rosenfeld wrote FBIHQ again to reiterate his request for records pertaining to Neil Reagan.  Id.,

United States District Court

For the Northern District of California

1 Exh. ZZ. One month later, on March 1, 2007, Rosenfeld appealed to the DOJ. Id., Exh. AAA. On

2 May 9, 2007 and August 8, 2007 the FBI wrote to Rosenfeld to inform him that documents for his

3 FOIA request had been identified and would be reviewed shortly by an analyst. Id., Exh. BBB;

4 Hardy Dec., Exh. R. The FBI released 88 pages on September 4, 2007. Amended Compl., Exh.

5 CCC. On March 27, 2008 the FBI released nine pages after re-checking the manual and automated

6 indices. Hardy Dec., Exh. S.

7

8 VI.    Records Pertaining to Motion Picture Industry Council

9        The Motion Picture Industry Council, the Labor League of Hollywood Voters Records and

10 the Motion Picture Alliance for the Preservation of American Ideals were organizations that existed

11 in Hollywood during the Cold War era. They were involved in eliminating suspected communists

12 from the film industry and Roy Brewer and Ronald Reagan were allegedly in contact with these

13 groups. Rosenfeld Dec. ¶ 53.

14        On June 14, 2006 Rosenfeld submitted FOIA requests to FBIHQ and LAFO seeking

15 information about the Motion Picture Industry Council. Amended Compl., Exh. MMM. Two

16 months later, on August 21, 2006, the FBI advised Rosenfeld that no records pertinent to his request

17 were located by search of the automated and manual indices at FBIHQ or LAFO. Id., Exh. OOO.

18 Rosenfeld appealed the FBI's "no record" determination to the DOJ on October 16, 2006. Id., Exh.

19 RRR. That same day, he wrote a separate letter to FBIHQ concerning the non-disclosure of

20 deceased individuals' names in the responsive records. Id., Exh. SSS. A month later, on November

21 13, 2006, the DOJ acknowledged receipt of Rosenfeld's administrative appeal. Id., Exh. TTT. On

22 December 19, 2006 the DOJ informed Rosenfeld that his request had been remanded to the FBI for

23 further searches of responsive records. Id., Exh. UUU.

24        On February 8, 2007 the FBI informed Rosenfeld that a search of the FBI's Central Records

25 System would be conducted. Id., Exh. VVV. Approximately one month later, on March 1, 2007,

26 Rosenfeld sent another appeal to the DOJ. Id., Exh XXX. Two weeks later, the FBI released two

27 compact discs, located in the FOIA Reading Room at FBIHQ, to Rosenfeld. Id., Exh. WWW. On

28 May 1, 2007 the FBI advised Rosenfeld that approximately 1,100 pages of responsive material had

United States District Court

For the Northern District of California

1
2
3
4
5
6

been located.  Id., Exh. BBBB.  The DOJ informed Rosenfeld on June 29, 2007 that since the FBI had responded to his request, the appeal was moot.  Id., Exh. DDDD.  On July 31, 2007, the FBI informed Rosenfeld that his documents were in the "perfected backlog," awaiting assignment to an analyst.  Id., Exh. CCCC.  On November 2, 2007 and January 31, 2008 the FBI informed Rosenfeld that an analyst was reviewing the material.  Hardy Dec., Exh's. AA & BB.  On February 28, 2008 the FBI released 1,018 pages out of 1,024 pages reviewed to Rosenfeld.  Id., Exh. CC.

VII.    Request for Labor League of Hollywood Voters Records

Rosenfeld initiated this FOIA request on June 14, 2006 in two separate letters to FBIHQ and LAFO.  Amended Compl., Exh. MMM.  The FBI responded to this request two months later, on August 28, 2006, stating that it could find no responsive records in a search of the automated or manual databases.  Id., Exh. QQQ.  Rosenfeld filed an administrative appeal with the DOJ on October 16, 2006, and the DOJ acknowledged receipt of his appeal one month later, on November 13, 2006.  Id., Exh's. SSS & TTT.  The DOJ remanded the case to the FBI for further investigation on December 19, 2006.  Id., Exh. UUU.  On January 31, 2007 Rosenfeld wrote FBIHQ asking for an update, and the FBI informed him that a search of the Central Records System was to be conducted on February 8, 2007.  Id., Exh. VVV; Hardy Dec., Exh. DD.  Rosenfeld again appealed to the DOJ on March 1, 2007.  Amended Compl., Exh. XXX.  On April 25, 2007 the FBI provided Rosenfeld with 49 pages of responsive documents out of 53 pages reviewed.  Hardy Dec., Exh. EE.  On June 29, 2007 the DOJ informed Rosenfeld that it considered his appeal moot since the FBI had responded.  Amended Compl., Exh. DDDD.

VIII.    Request for Motion Picture Alliance for the Preservation of American Ideals Records

Rosenfeld submitted this FOIA request to FBIHQ and LAFO on June 14, 2006.  Id., Exh. MMM.  On August 21, 2006 the FBI informed Rosenfeld that approximately 820 potentially responsive pages had been located.  Id., Exh. PPP.  Rosenfeld wrote the FBI on October 16, 2006 regarding the non-disclosure of deceased individuals' names, and again on January 31, 2007 regarding the status of his request.  Id., Exh. SSS; Hardy Dec., Exh. FF.  Ten months after

United States District Court

For the Northern District of California

Rosenfeld's initial request, on April 25, 2007, the FBI informed Rosenfeld that approximately 1,041 potentially responsive pages had been located. Amended Compl., Exh. YYY. On May 9, 2007, and August 7, 2007 the FBI notified Rosenfeld that an analyst was reviewing his request. Id., Exh.'s. XXX(#2) & ZZZ. On June 29, 2007 the DOJ acknowledged receipt of Rosenfeld's administrative appeal but informed him that there was no action to consider because the FBI had yet to respond to his request because DOJ  regulations allow for an appeal only after an adverse determination by an agency. Id., Exh. DDDD. The FBI released 991 pages to Rosenfeld on September 28, 2007. Id., Exh. AAAA.

IX.    Records Pertaining to Ronald Reagan (Eighth Cause of Action)

On August 6, 2007 Rosenfeld submitted a FOIA request to the FBI seeking all documents concerning Ronald Reagan that had not been previously released to him. Id., Exh. EEEE. Eight months later, in April 2008, the FBI advised Rosenfeld that the manual and automated indices at FBIHQ, LAFO, SFO, SFFO, SDFO and WFO were re-checked in an effort to find additional records pertaining to Reagan. Hardy Dec., Exh. II. This resulted in locating the 35 additional pages enclosed with the April 2008 letter. Id.

The FBI has acknowledged that they incorrectly interpreted this FOIA request to only be for additional records on Ronald Reagan not previously released and will reprocess records previously released to Rosenfeld for any other basis warranting additional disclosure. Hardy 2d Dec. ¶ 17. For instance, the interim death of Ronald Reagan may make available certain previously withheld records.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

**United States District Court**

For the Northern District of California

1  nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying

2  those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

3  issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the

4  opposing party will have the burden of proof at trial, the moving party need only point out "that

5  there is an absence of evidence to support the nonmoving party's case."  Id.

6       Once the moving party meets its initial burden, the nonmoving party must go beyond the

7  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

8  genuine issue for trial."  Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving

9  party's allegations.  Id.; see also Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.

10 1994).  The court may not make credibility determinations, Anderson, 477 U.S. at 249, and

11 inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

12 motion.  Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

13

14 DISCUSSION

15      These cross-motions for summary judgment raise three distinct legal issues.  First,

16 defendants contend that Rosenfeld's causes of action for records on Roy M. Brewer and the Labor

17 League of Hollywood Voters are barred because he failed to exhaust the applicable administrative

18 remedies.  Second, defendants argue that Rosenfeld's request for records on Ronald Reagan relating

19 to the earlier settlement is barred because the six-year statute of limitations has expired.  Finally, the

20 parties disagree about the reasonableness of the FBI's search for documents in response to

21 Rosenfeld's FOIA requests.

22

23 I.      Administrative Exhaustion

24      In FOIA cases, "exhaustion is a prudential consideration rather than a jurisdictional

25 requirement."  Wilbur v. Cent. Intelligence Agency, 355 F.3d 675, 677 (D.C. Cir. 2004).

26 Nevertheless, in general, a FOIA claimant must first exhaust administrative remedies before filing an

27 action in federal court.  Id. at 676.  Exhaustion can be straightforward: "Any person making a

28 request to any agency for records . . . shall be deemed to have exhausted his administrative remedies

with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(6)(C)(I).  The paragraph requires an agency to "determine within 20 days . . . after the receipt of any such request whether to comply with such request." <u>Id.</u> § 552(a)(6)(A)(I).  This section has been interpreted to "permit[] a requester to file a lawsuit when [twenty] days have passed without a reply from the agency indicating that it is responding to his request, but [] this option lasts only up to the point that an agency actually responds." <u>Oglesby v. United States Dep't of Army</u>, 920 F.2d 57, 61 (D.C. Cir. 1990).

Once the agency has responded, the petitioner can "seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies." <u>Id.</u>  DOJ regulations state that "if [petitioner] wish[es] to seek review by a court of any adverse determination, [petitioner] must first appeal under this section." 28 C.F.R. § 16.9(a).  The DOJ further requires that appeals of adverse determinations must be made "in writing and [] must be received by the Office of Information and Privacy within 60 days of the date of the letter denying [petitioner's] request." <u>Id.</u> § 16.9(c).  Adverse determination is defined as:

> a determination to withhold any requested record in whole or in part; a determination that a requested record does not exist or cannot be located; a determination that a record is not readily reproducible in the form or format sought by the requester; a determination that what has been requested is not a record subject to the FOIA; a determination on any disputed fee matter, including a denial of a request for a fee waiver; and a denial of a request for expedited treatment.

<u>Id.</u> § 16.6(c).  Finally, the FOIA statute requires an agency to "make a determination with respect to any appeal within 20 days . . . after receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(ii).

The "exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so," but "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." <u>Hidalgo v. Fed. Bureau of Investigation</u>, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003) (quoting <u>Oglesby</u>, 920 F.2d at 61).  The Ninth Circuit has held that "[w]here no attempt to comply fully with agency procedures has been made, the courts will assert their lack of jurisdiction under the exhaustion doctrine." <u>In re Steele</u>, 799 F.2d 461, 466 (9th Cir. 1986).

United States District Court

For the Northern District of California

A.    Request for Roy M. Brewer Records

As discussed above, Rosenfeld appealed to the DOJ his request for recordings pertaining to Roy M. Brewer on January 31, 2007 and March 1, 2007 after receiving no response from the FBI for over a year after submission of his request.  The FBI subsequently made an interim release on April 26, 2007, which stated that Rosenfeld had the right to appeal any denials in that release.  It did not refer to the matter as closed.  The DOJ informed Rosenfeld on July 16, 2007 that his appeal was being closed since this request was in litigation.  Indeed, the instant action was filed on June 19, 2007.  Another interim release was made on April 2, 2008, and a final release was made one week later.  See Hardy Dec., Exh. L ("Please be advised that this [sic] the final release of documents responsive to your request for documentation on Roy Brewer.").  Rosenfeld did not appeal the releases made in April 2007 or April 2008.

Defendants contend Rosenfeld's cause of action pertaining to Roy M. Brewer is barred because he failed to exhaust the applicable administrative remedies.  Specifically, they argue that the court should dismiss this cause of action because Rosenfeld failed to appeal the April 26, 2007 release.  In essence, defendants are arguing that Rosenfeld must appeal every single interim release and the failure to appeal even one release bars him from bringing suit on his entire request.  This court is unwilling to sanction such a result on the facts here.

A plain reading of the FOIA statute and the DOJ regulations do not support defendants' claim that Rosenfeld must appeal interim releases.  Indeed, a FOIA claimant cannot be expected to assess the adequacy of a search that is not yet final.  The FOIA statute does not require, and defendants do not point to any DOJ regulations, that a FOIA claimant appeal every interim release.  Thus, the particular administrative scheme requires appeal only upon a final adverse determination.  Since a final determination on Brewer's records had not been made until after this litigation commenced, an appeal would have been moot, as made clear by the DOJ's July 16, 2007 letter.  See also 28 C.F.R. § 16.9(a)(3).  Consequently, this cause of action is properly before this court.

The court finds defendants' arguments unconvincing for three more reasons.  First, the DOJ's failure to reach a determination with respect to Rosenfeld's January 31, 2007 appeal within the 20 days mandated by the FOIA statute renders his claim exhausted.  Second, if the purpose of

United States District Court

For the Northern District of California

exhaustion is to give an agency the opportunity to respond, this objective appears to be met when defendants failed to respond to Brewer's initial appeal for three months. Indeed, the agency has had an opportunity to exercise its discretion and expertise on the matter to create a factual record that supports its decision. Further, given the multiple appeals made here, top managers of the agency were given an opportunity to correct mistakes made at lower levels, which would have obviated unnecessary judicial review. See Oglesby, 920 F.2d at 61. Third and finally, since Rosenfeld's appeal to the DOJ remained open and pending after the April 26, 2007 release, it would have been redundant for him to appeal again.

B.    Request for Labor League of Hollywood Voters Records

To briefly summarize, the FBI notified Rosenfeld on August 28, 2006 that it could find no responsive records. Rosenfeld appealed to the DOJ on October 16, 2006, and the DOJ remanded back to the FBI on December 19, 2006 for further investigation. After receiving no documents for over two months, Rosenfeld appealed again to the DOJ on March 1, 2007. On April 25, 2007 the FBI released documents to Rosenfeld. The accompanying correspondence did not state that this was the final release with respect to this request. Ten days after Rosenfeld initiated this action, on June 29, 2007, the DOJ informed Rosenfeld that it considered his appeal moot since the FBI responded.

Defendants contend Rosenfeld has not exhausted the applicable administrative remedies for this cause of action because he failed to appeal the April 25, 2007 release. For the same reasons as discussed above, the court finds that Rosenfeld has exhausted his administrative remedies.

Further, by periodically appealing the FBI's lack of response, Rosenfeld has demonstrated an effort to fully exhaust his administrative remedies. Defendants are attempting to shield the disclosure of information by marshaling administrative technicalities. Indeed, it is the agency's delayed responses that purportedly made Rosenfeld's claims unexhausted. This court does not condone such agency behavior and holds this cause of action to be properly before this court.

United States District Court

For the Northern District of California

II.     Statute of Limitations

28 U.S.C. section 2401(a) states, in relevant part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  "A cause of action against an administrative agency 'first accrues,' within the meaning of section 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court."  Spannaus v. Dep't. of Justice, 824 F.2d 52, 56 (D.C. Cir. 1987).  In a FOIA action, "[c]onstructive exhaustion occurs when the time limits by which an agency must reply to a FOIA claimant's request or appeal . . . expire."  Aftergood v. Cent. Intelligence Agency, 225 F. Supp. 2d 27, 29 (D.D.C. 2002).  In this case, the federal agency has 20 days to respond to a FOIA appeal.  5 U.S.C. § 552(a)(6)(A)(ii).  Courts have held that a cause of action barred by the statute of limitations can be cured by filing a new FOIA request "so long as the new claims replace the time-barred claims."  Aftergood, 225 F. Supp. 2d at 31; see Spannaus, 824 F.2d at 61.

Defendants argue that the Ronald Reagan FOIA request pertaining to the 1996 settlement between the parties is barred by the statute of limitations.  The court agrees.  As discussed above, the FBI sent a final release to Rosenfeld on February 27, 1997.  Rosenfeld, however, contends that a final release was not made until February 28, 2006.  See Pl.'s Motion at 6 n.6, Exh. F.  The letter that Rosenfeld cites refers to FOIA number 0291701-004, which differs from the numbers assigned to the two Ronald Reagan requests, and lists the "University of California" as the subject.  Indeed, the February 28, 2006 release concerned the Communist Infiltration of the Radiation Laboratory at U.C. Berkeley and did not pertain to Reagan.  Hardy Dec. ¶ 7 n.2.  Rosenfeld appealed the February 27, 1997 response on September 25, 1997.  As a result, the statute of limitations began running in mid-October 1997 and the six-year statute of limitations expired in October 2003.  Rosenfeld did not file this action until June 19, 2007.  However, since Rosenfeld filed a second FOIA request for information on Ronald Reagan on August 6, 2007, this ruling has little effect because defendants do not contest the validity of the substantially similar newly filed FOIA request.

Although the effect of this holding may appear to undermine the purpose of statutes of limitations, this ruling is consistent with the purpose of the FOIA.  The fundamental principle of the

FOIA is to facilitate public access to governmental documents. <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 151 (1989). Allowing Rosenfeld to continue forward with his second FOIA request for information on Ronald Reagan while rejecting his earlier request on statute of limitation grounds encourages full agency disclosure by preventing agencies from using administrative technicalities as shields from disclosing information. Furthermore, the FOIA allows requesters to file identical requests over time because the information released may change due to subsequent declassification and the availability of additional data. Indeed, "nothing prevents [a requester] from requesting the same withheld documents decade after decade without ever bringing a timely suit to compel disclosure."[7] <u>Spannaus</u>, 824 F.3d at 61.

III.     <u>Reasonableness of the Search</u>

The court reviews *de novo* an agency's action in response to a FOIA request, and the agency bears the burden of justifying non-disclosure. <u>See</u> 5 U.S.C. § 552(a)(4)(B). To prevail on summary judgment in a FOIA action, the government must establish that: 1) its search for responsive documents was reasonable; and 2) it has described with reasonable specificity the nature of the responsive documents and its justification for any non-disclosure. <u>Zemansky v. United States Envtl. Prot. Agency</u>, 767 F.2d 569, 571 (9th Cir. 1985); <u>Halpern v. Fed. Bureau of Investigation</u>, 181 F.3d 279, 291 (2d Cir. 1999).

FOIA requires that the agency conduct a reasonable search for responsive documents using methods which can reasonably be expected to produce the information requested. <u>See</u> 5 U.S.C. § 552(a)(3)(C). In demonstrating the reasonableness of a search, an agency "may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." <u>Zemansky</u>, 767 F.2d at 571. Here, defendants presented the declaration of David M. Hardy, the Section Chief of the Record and Information Dissemination Section, Records Management, at FBIHQ in Washington, D.C. In his declaration, Hardy describes the manual and electronic searches performed on documents and files located at FBIHQ and the field offices in response to Rosenfeld's FOIA requests. Rosenfeld has raised several challenges to both the sufficiency of the evidence submitted to support non-disclosure as well as the reasonableness of defendants' search. The court will address these arguments in turn.

A.    Adequacy of David M. Hardy as a Declarant

Rosenfeld contends that defendants' sole declarant, David M. Hardy, fails to demonstrate that he is sufficiently knowledgeable about the FBI's search efforts.

When supporting a summary judgment motion, an affidavit must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). For an action involving a FOIA request, an agency may submit a declaration from an agency official with "responsibility for coordinating the agency's decisions on FOIA requests where that official has personal knowledge of the procedures used in handling the FOIA request at issue and is familiar with the documents in question." Berman v. Cent. Intelligence Agency, 378 F. Supp. 2d 1209, 1216 n.7 (E.D. Cal. 2005); see also SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (finding declarant's second-hand knowledge sufficient because she interviewed the relevant employees).

Hardy stated the following about how he acquired knowledge about the FBI's search:

> In my official capacity as Section Chief of [Record/Information Dissemination Section at the FBI], I supervise approximately 190 employees who staff a total of ten (10) units and a field operational center unit . . . . The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

Hardy Dec. ¶ 2. Rosenfeld argues that much of the Hardy Declaration is inadmissible hearsay because Hardy does not state that he personally supervised the efforts to search for the records nor explain how he acquired knowledge about the various searches.

The court is concerned about Hardy's conclusory assertion of personal knowledge. Indeed, the declaration merely makes a legal conclusion without specifying how this personal knowledge was acquired. In any event, the court finds that Hardy meets the personal knowledge requirement with respect to the searches at FBIHQ because he supervises the division responsible for processing Rosenfeld's FOIA requests. See Def.'s Response at 3. However, there is no evidence that Hardy directly supervises the field offices. And if he does, there is no evidence of the level of contact he has with those offices. Consequently, his declaration with respect to searches conducted at the field offices are inadmissible. For future declarations submitted by Hardy, the court seeks further

explanation regarding the basis for his purported personal knowledge. Specifically, the court seeks information about the extent to which Hardy is personally involved in the FOIA request process.

B.    Automated Searches

The Hardy Declaration chronicles the correspondence between Rosenfeld and defendants for 27 pages of the 32-page declaration. Thus, only the last five pages of declaration provide a description of the methodology that informs the court when attempting to assess the reasonableness of the FBI's search for responsive material. By focusing primarily on chronology, defendants have failed to provide sufficient evidence about the various automated databases to enable the court to determine the reasonableness of their search. The court first describes the evidence provided, followed by its deficiencies.

1.    Searches Performed

The Hardy Declaration gives the following description of the automated search: "In order to locate records responsive to [Rosenfeld's] requests, the FBI conducted a search for records by (1) conducting a search for records in the FBI's Central Records System ("CRS"), and (2) performing manual searches for potentially responsive records." Hardy Dec. ¶ 144.[8] The Hardy Declaration further explains that "the CRS consists of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." Id. ¶ 145. Some CRS records are located at FBIHQ, while other records that are pertinent to specific FBI field offices are maintained in those offices. Id.

"[T]he FBI searches CRS for documents that are potentially responsive to FOIA/Privacy Act requests." Id. The CRS is searched through the FBI's Automated Case Support System ("ACS"). Id. The FBI uses ACS to retrieve data from all field offices, Legal Attaches ("Legats") and FBIHQ. The Hardy Declaration states that:

> The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order. Entries in the General Indices fall into two categories:
> (a) A "main" entry—A "main" entry, or "main" file, carries the name corresponding with the subject of a file contained in the CRS.
> (b) A "reference" entry—"Reference" entries, sometimes called "cross-references" are generally only a mere mention or reference to an individual

1  organization, or other subject matter contained in a document located in
another "main" file on a different subject matter.

2  Id. ¶ 147.  The decision to index names other than subjects, suspects and victims is a discretionary

3  decision usually made by a FBI Special Agent.  Id. ¶ 150.  "The FBI does not index every name in its

4  files; rather, it indexes only the information considered to be pertinent, relevant, or essential for

5  future retrieval."  Id.  "The General Indices to the CRS files are the means by which the FBI can

6  determine what retrievable information, if any, the FBI may have in its CRS files on a particular

7  subject matter or individual."  Id.

8      The FBI initiated a CRS search for records responsive to each of plaintiff's requests on the

9  following dates: Ronald Reagan (Eighth Cause of Action) (September 11, 2007); Herbert Ellingwood

10  (June 1, 2006); Alex Sherriffs (July 22, 2004); Roy M. Brewer (November 17, 2006); Neil Reagan

11  (April 15, 2005); Motion Picture Industry Council (August 11, 2006); Labor League of Hollywood

12  Voters (August 11, 2006); and Motion Picture Alliance for the Preservation of American Ideals

13  (August 11, 2006).  Hardy Dec. ¶ 151.  The FBI used the following search terms to conduct the

14  searches: "Ronald W Reagan," "Ronald Reagan," "Reagan, Ronald," "Ronald, Ronald, W," "Reagan,

15  R, W," "Reagan, R," "Herbert Ellingwood," "Ellingwood, H," "Ellingwood, Herbert," "Alex

16  Sherriffs," "Sherriffs, Alex," "Sherriffs, A," "Roy M Brewer," "Roy Brewer," "Brewer, Roy,"

17  "Brewer, Roy, M," "Brewer, R, M ," "Brewer, R," "Neil Reagan," "Reagan, Neil," "Reagan, N,"

18  "Motion Picture Industry Council," "Labor League of Hollywood Voters" and "Motion Picture

19  Alliance for the Preservation of American Ideals."  This search identified both main files and

20  cross-references.  Id.

21      In conducting its searches, the FBI failed to use all the search terms Rosenfeld requested.

22  For instance, Rosenfeld requested a "six-way breakdown on all reasonable variations of the names

23  Ronald Wilson Reagan, Ronnie Reagan, Ronald Wilson Regan and Ron Regan."  Pl.'s Motion, Exh.

24  E.  He also asked the FBI to conduct searches using "Governor, State of California," "California,

25  Governor's Office" and reasonable variations thereof as well as variations of Reagan's 1965 book,

26  "Where's the Rest of Me?  The Ronald Reagan Story."  The FBI used the following search terms in

27  CRS: "Ronald W Reagan," "Ronald Reagan," "Reagan, Ronald," "Ronald, Ronald, W," "Reagan, R,

28

18

W," and "Reagan, R." Hardy Dec. ¶ 151.[9]  This led to the identification of both main files and cross-references. Id.  The FBI declined to use search terms, including but not limited to those derived from his 1965 memoir, "Where's the Rest of Me?  The Ronald Reagan Story," and his "meeting with the FBI around 1948 " because "[r]ecords on Ronald Reagan would be indexed by his name either in main files on him, or in cross-references mentioning him." Hardy 2d Dec. ¶ 18.

Although defendants did not use all of the search terms requested by Rosenfeld, this court finds that the search terms used to identify responsive records in the CRS were reasonable since the files are indexed by name.[10]  Defendants, however, do not address whether other databases are indexed by name, so with respect to those other databases, the court cannot assess whether the search terms are "reasonably calculated to uncover all relevant documents requested." Zemansky, 767 F.2d at 571.

The general nature of the description contained within the affidavit combined with the lack of explanation about other electronic databases beyond the CRS necessitates a more detailed declaration.  The court orders defendants to explain, for FBIHQ and *each* field office: (1) the nature and scope of all databases and indices maintained by defendants, including a description of the data contained in the same; (2) which databases and indices were searched in response to Rosenfeld's requests, including case indices, whether within or without CRS; (2) what terms were searched, or if a different mechanism for searching was used, to explain the same; (3) when the search was performed; (4) where the search was performed; and (5) which databases and indices were not searched and why not.[11]

The above remedy also applies to Rosenfeld's contention regarding office of origin files[12] and other electronic databases.  Defendants' wholly inadequate response regarding other databases, not the CRS, is reproduced here.

> [Rosenfeld] mentions throughout his motion that the FBI did not search particular indices for records responsive to his requests.  Record systems like the Electronic Surveillance Indices ("ELSUR") that have their own system of records notice are searched separately.  Thus, ELSUR was searched in this case.  All other material is retrievable through a search of the CRS, which the FBI has already conducted.

Hardy 2d Dec. ¶ 20. The court finds this statement to be inadequate because defendants fail to explain which databases need to be searched separately from the CRS and whether those databases

19

were actually searched.  To the extent certain databases were not searched, defendants omitted to explain the primary purposes of those databases, so the court cannot assess if it was reasonable for defendants to exclude them from the search.  The affidavit's description of the search cannot be "so general as to raise a serious doubt whether the [agency] conducted a reasonably thorough search of its records."  Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).

### 2.    Cross-References

A cross-reference is a document contained in a file on other subjects in which information about the requested reference appears.  Rosenfeld Dec. ¶ 9.  The FBI searched cross-references for all subjects requested by Rosenfeld.  Hardy 2d Dec. ¶ 16.  The FBI considers a cross-reference to be responsive if:

> the pages 1) mention the subject of a request and 2) contain context for the pages in which the subject of the request was mentioned.  These responsive pages giving context include the first page of the document, which contain the date and subject matter, as well as any other pages that explain the context of the page where the subject is mentioned.  The remaining pages within a cross-reference document are 'outside the scope' of the request.

Id.  Rosenfeld asserts that defendants failed to conduct a reasonable search because they ignored his request that the FBI produce the page in which the subject is referenced and a specified number of pages on either side of the references as well as any other pages needed for context.  Here, defendants have not met their burden of proof in establishing that this scheme for finding responsive cross-references is reasonable.  They simply assert that only pages that do not mention the subject or provide context are excluded because they are not responsive to Rosenfeld's request.  The court finds this explanation lacking.  Consequently, the court orders the following search of cross-references: if the cross-reference appears in a document that is less than ten pages long, then the entire document is to be searched and provided, otherwise, if the cross-reference appears in a longer document with headings and sections, the relevant section in which the reference appeared is to be searched and provided.  In addition, for every cross-reference, the entire introduction section of the document and the administrative pages of the document are to be searched and provided to Rosenfeld.

20

United States District Court

For the Northern District of California

3.     Specific Reagan Requests

In his Ronald Reagan request, Rosenfeld asked the FBI to search for material on Reagan in the files on "COMPIC; the Screen Actors Guild; the Labor League of Hollywood Voters; the Motion Picture Industry Council; Herb Sorrell; the Hollywood Independent Citizens Committee of the Arts, Sciences and Professions; the Music Corporation of America; and the records of the late actors Larry Parks, Howard Da Silva and Alexander Knox." Pl.'s Motion, Exh. E. Rosenfeld asserts that the FBI should have searched these files. Defendants explained that "[t]o find any mention of 'Ronald Reagan' in all the files listed by [Rosenfeld] would require a page-by-page review of each file. The FBI does not conduct such reviews of serials and/or files in which a subject is not indexed as either a main entry or a cross-reference." Hardy 2d Dec. ¶ 19.

The FBI's conclusory assertion is inadequate. Specifically, the FBI does not demonstrate the burden associated with conducting this manual search. In order to ascertain the reasonableness of the FBI's declination to conduct the manual search, the FBI is ordered to submit a declaration that sets forth the costs associated with conducting this manual search. Relevant information includes the size of the files to be searched, the amount of time and effort required and the likelihood of finding responsive documents.

C.     Manual Searches

The following offices conducted manual searches on Ronald Reagan: San Diego, Sacramento, the Pocatello Information Technology Center ("PITC"), Washington Field Office, Los Angeles, San Francisco, FBIHQ, and the Alexandria Records Center ("ARC").[13] Hardy Dec. ¶ 152.[14] The court cannot determine the reasonableness of the manual search because defendants fail to discuss how these were conducted and what databases were searched. The court orders defendants to provide an explanation of their searches in significantly greater detail. Specifically, for FBIHQ and each field office, including technology and record centers, defendants must: (1) explain what databases (that must be searched manually) are located in that office, including a description of the information stored in these databases and an explanation of how the files are organized; (2) list which of these databases were searched; (3) the mechanics of how they were

United States District Court

For the Northern District of California

searched, e.g., by search term; and (4) to the extent that any of these databases were not searched, provide a detailed rationale for this decision. Information about who conducted the search, when it was conducted and how long it took to conduct the search, though not required, would also aid the court in reaching a decision about reasonableness.

The Hardy Declaration further states that "[t]he General Indices, which became fully automated on September 24, 1987, also include Index cards which allow a manual search for records prior to that date." Id. ¶ 147 n.6. Defendants, however, do not explain whether a manual search of these Index cards was conducted. The court orders defendants to explain: 1) what records prior to September 27, 1987 would be covered by a search of the automated databases or other databases that must be manually searched; 2) to the extent that pre-1987 records would not be covered by the aforementioned databases, whether they conducted a manual search of the Index cards; and 3) if they did not manually search the Index cards, to provide an explanation for the same.

        D.    Search Slips

Rosenfeld asserts that the search slips produced by the FBI do not provide a clear record of the FBI's searches because they lack information about what kind of search was performed, what indices were searched or which field office files were searched. Indeed, some search slips do not have any of the appropriate boxes checked indicating the kind of search that was performed. Rosenfeld Dec. ¶ 36. They also do not indicate what efforts were made to locate missing files. Id. Finally, none of the search slips produced were created at the field offices. Rosenfeld suggests that the search slips reveal that the FBI did not conduct an adequate search.

The search slips provided to Rosenfeld only document searches that took place in FBIHQ, which uses the search slips to "keep track of the places searches, the terms used to conduct the search, and the dates on which the search was conducted." Hardy 2d Dec. ¶ 6. FBI field offices do not need to create search slips for FOIA purposes. Id. The FBI has contacted the field offices and has agreed to produce to Rosenfeld search slips from those offices that did compile search slips.

22

United States District Court

For the Northern District of California

1    The court orders defendants to provide a list of the offices that do not use search slips and,

2    for those offices, explain how they keep track of searches.  Specifically, the court seeks information

3    about any written records created to document the search.

4

5    E.    Abstract Card System

6        Rosenfeld contends that the FBI's decision to not search the abstract card system is

7    unreasonable.  The FBI used the abstract card system from 1921 to 1979 to "assist in the

8    determination of the next sequential serial number to assign a document in a particular file, as well

9    as to quickly distinguish documents within a given file."  Hardy 2d Dec. ¶ 8.  The abstract cards

10   were "stored and maintained in sequential order by case number and serial."  Id. ¶ 10.  By using the

11   abstract cards, FBI clerical employees could determine the next serial number to assign an incoming

12   document without having to retrieve the actual file from storage.  Id.  The abstract card itself is a 3

13   by 5 two-ply carbon form typed by an FBI clerical employee that was not trained to interpret the

14   documents nor assess their importance.  Id. ¶¶ 9, 11.  The abstract card system was never intended to

15   be used as a means for searching and retrieving documents.  Id. ¶12.  These cards have been stored

16   in approximately 2,000 boxes for over 20 years in the Federal Records Center facility, and there is

17   no master index for the abstract cards.  Id.

18       The court finds the defendants' explanation insufficient to make a determination of

19   reasonableness.  Specifically, the FBI simply estimates that a hand-search of the boxes would take

20   one employee 38 years to complete and cost approximately $60,000 to have the boxes removed and

21   returned to storage.  Hardy 2d Dec. ¶15, n.3.  The FBI does not state the costs associated with the

22   specific searches requested here.  Indeed, the boxes relevant here may be marked on the outside as

23   well as arranged sequentially.  The court orders the FBI to submit a declaration stating the costs

24   associated with fulfilling the specific requests made by Rosenfeld.

25

26   F.    Records Identified But Not Released

27       Rosenfeld contends that certain records were identified but not released to him.  Given the

28   lack of specificity in the Hardy Declaration, the court cannot assess whether or not the FBI's search

23

United States District Court

For the Northern District of California

1   for these records was reasonable.  The FBI notified Rosenfeld that certain records identified as

2   responsive could not be located, were destroyed or were accessioned to the National Archives.

3   Hardy 2d Dec. ¶ 21.  "For the first set of records, the FBI has thoroughly searched for these records,

4   but has been unable to locate them.  FBI has also memorialized that the other records mentioned by

5   [Rosenfeld] were either destroyed or accessioned."  Id.  The court finds defendants' statement that

6   they have "thoroughly searched" for the other records to be conclusory because defendants have not

7   provide this court with enough evidence to assess the validity of that statement.  For all records

8   identified as lost or destroyed, the court orders defendants to: (1) list the individuals that searched

9   for the lost or destroyed records; and (2) explain the steps taken to retrieve the document.

10

11  CONCLUSION

12          Plaintiffs motion for summary judgment is GRANTED in part and DENIED in part.

13  Defendants motion for summary judgment is GRANTED in part and DENIED in part.

14          The court orders defendants to begin processing cross-references in accordance with this

15  memorandum.

16          The court also orders defendants to provide supplemental declarations in accordance with

17  this memorandum.  The declarations shall be submitted within thirty (30) days of the date of this

18  order.  Thereafter, plaintiff may bring another motion for summary judgment and the court may

19  order defendants to conduct further searches based upon the reasonableness or unreasonableness of

20  the searches already performed.

21

22          IT IS SO ORDERED.

23  Dated: August 22, 2008                                    _____

24                                                            MARILYN HALL PATEL
                                                              United States District Court Judge
                                                              Northern District of California

25

26

27

28

24

United States District Court

For the Northern District of California

**ENDNOTES**

1.      Citing 5 U.S.C. section 552(a)(4)(B), defendants assert that the FBI is not a proper defendant under the FOIA because it is a component of the DOJ rather than an agency.  The court disagrees.  Neither the section cited by defendants nor any other portion of 5 U.S.C. section 552 supports defendants contention.  Furthermore, the U.S. Supreme Court has heard a FOIA case in which the DOJ and FBI were considered proper defendants.  See U.S. Dep't of Justice v. Landano, 508 U.S. 165 (1993).

2.      The facts listed in this background section are given by way of overview.  The court does not rely on any facts that were objected to by plaintiff, so any evidentiary challenges regarding their use is moot.

3.      Rosenfeld does not contest that the FBI discharged its duty to search and produce responsive documents for his request on the "80" files, though he reserves the right to challenge the FBI's assertion of FOIA exemptions.

4.      The court is ignorant of the full form of the above acronyms because neither party has explained the contour of the various databases.  The court notes that there are numerous other databases referenced by their acronyms in the parties' papers.  The court expects a full explanation of those databases, in addition to any others, in the supplemental declarations to be submitted.

5.      Rosenfeld argues that the FBI asserted, for the first time, that it had completed processing the Ronald Reagan records in its February 28, 2006 cover letter.  See Pl.'s Motion at 6 n.6, Exh. F.  The letter cited, however, refers to FOIA request number 0291701-004, which differs from the numbers assigned to the two Ronald Reagan requests.

6.      Defendants stated that 16 pages had been released, but the original letter sent to Rosenfeld said 14 pages.

7.      A vexatious litigant may file suits *ad seriatim*, but courts can require the litigant to acquire leave before filing suit.

8.      Rosenfeld objects to this paragraph of the Hardy Declaration, asserting Hardy lacks personal knowledge and fails to demonstrate the basis for his purported knowledge.  This objection is overruled because "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."  Carney v. United States Dep't of Justice, 19 F.3d 807, 814 (2d Cir. 1994).

9.      See supra note 9.

10.     The court cannot reach a determination with respect to the other electronic databases because defendants fail to explain how files are organized in those databases.

11.     Rosenfeld testifies that he had a research assistant search the FBIHQ COMPIC file that was posted on the FBI's electronic reading room.  Rosenfeld claims that reference was made to Brewer in several serials in the file and that those records are no longer available online.  Rosenfeld 2d Dec. ¶ 16.  The court needs further information from the defendants about this database and its organization to determine if the FBI's search was inadequate.  The court notes, however, that it would be unreasonable to require the FBI to manually search every record within an electronic database to determine if reference is made to a particular subject requested by the requestor.

12.     Office of origin is the FBI office that originates a case on a subject.  Rosenfeld contends that the FBI failed to produce these files.

13.    "In addition to searching the CRS for records responsive to plaintiff's requests, FBIHQ conducted manual searches on the following subject matters or individuals in specific field offices at the FBI's Alexandria Records Center ('ARC'), or at the Pocatello Information Technology Center ('PITC'):

    (a) Ronald Reagan:          San Diego (SD), Sacramento (SC), PITC, Washington Field Office (WFO), Los Angeles (LA), San Francisco (SF), FBIHQ, and the ARC

    (b) Herbert Ellingwood:      SD, SF, WFO, LA, FBIHQ, and the ARC

    (c) Alex Sherriffs:          SF

    (d) Roy Brewer:             LA, WFO

    (e) Neil Reagan:            LA, WFO, ARC

    (f) Sacramento "80" Files:     SF

    (g) Motion Picture Industry Council:    LA, HBIHQ, ARC

    (h) Labor League of Hollywood Voters:    LA, FBIHQ, ARC

    (I) Motion Picture Alliance for the Preservation of American Ideals:    LA, HQ"

Hardy Dec. ¶ 152.

14.    Since the court orders further information be provided, Hardy's declaration on this matter is referenced by way of overview only and is not relied upon by the court.

United States District Court

For the Northern District of California

26