JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
ELLEN M. FITZGERALD (NY 2408805)
Assistant United States Attorney
450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102-3495
Telephone: (415) 436-7314
Facsimile: (415) 436-6748
Email: ellen.fitzgerald@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SETH ROSENFELD,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendants. | No. C 90-3576 MHP; No. C 85-1709 MHP<br>No. C 85-2247 MHP; No. C 07-3240 MHP<br><br>**FOURTH DECLARATION OF**<br>**DAVID M. HARDY** |

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF LAW IN SUPPORT THEREOF
C 07-03240 MHP

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SETH ROSENFELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-CV-03240 |
| ) | |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION and ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendants. ) | |

## FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 195 employees who staff a total of ten (10) units and a field operational service center unit whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. I am the senior official within the FBI responsible for execution of the FBI's FOIA duties. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded plaintiff's FOIA requests which seeks access to all records, to include but not limited to, all "main" and "reference" file listings, "Do Not File" files, channelized records, search slips – including search slips used to process plaintiff's request – Electronic Surveillance ("ELSUR") records, index cards, records that are or were maintained in Special Agent in Charge ("SAC") safes, and bulky exhibits pertaining to nine subjects: (1) Ronald Reagan, (2) Herbert Ellingwood, (3) Alexander C. Sherriffs, (4) Roy M. Brewer, (5) Neil Reagan, (6) "80" Files, (7) The Motion Picture Industry Council, (8) The Labor League of Hollywood Voters, and (9) The Motion Picture Alliance for the Preservation of American Ideals.

(4) The purpose of this declaration is to provide the Court and plaintiff with an explanation of the handling of certain aspects of plaintiff's FOIA requests to FBIHQ, the Washington Field Office ("WFO"), the Los Angeles Field Office ("LAFO"), the Sacramento Field Office ("SCFO"), the San Diego Field Office ("SDFO"), and the San Francisco Field Office

2

("SFFO"). This declaration will explain in further detail 1) the costs associated with conducting a search of the abstract card system, 2) the burden associated with a page-by-page review of main files and cross-references associated with plaintiff's request to search specific subjects for material mentioning Ronald Reagan, 3) the steps taken to locate missing files, 4) the process for destruction of files and accession of files to NARA, and 5) specific information concerning the disposition of particular files requested by plaintiff.

**Abstract Card System**

(5) As stated in the June 16, 2008 Declaration of David M. Hardy ("Second Hardy Declaration"), abstract cards are arranged by case file number and by the author's name. If the FBI is not provided the case file number, the only way the abstract cards can searched by subject name is a manual search of each individual card. The FBI is willing to search the abstract card system by specific file numbers, but not by subject. To search the abstract card system by subject name is too costly and time-consuming. It would take an employee roughly 38 years to complete a hand-search of the approximately 30 million abstract cards stored in 2000 boxes containing 15,000 cards each. This estimate is based on the following assumptions: An employee could be expected to search 375 cards per hour for the list of subjects previously provided by the plaintiff, yielding 3000 card reviews per day, 15,000 per week and 780,000 per year. At a production rate of 780,000 abstract cards per year, it would take over 38 years to complete the review of 30 million cards. This manual review would be accomplished by a member of the Work Processing Unit within the RIDS and the lowest grade of any federal employee assigned to RIDS is GS-7. The minimum annual wage (before employer taxes and benefits costs) of a GS-7 employee assigned to RIDS in 2008 is $39,330. Consequently, a review of all FBI abstract cards

3

by subject matter would cost approximately $1,494,540, which is $39,330 multiplied by 38 years.

(6) Most (but not all) of the storage boxes indicate the case file number and serial scope of the cards. It's simpler, less costly, and less time-consuming to search for responsive records by case file numbers. The FBI is willing to perform a reasonable search of the abstract card system based on an agreed upon number of case file numbers provided by the plaintiff. The cost of this search would be determined at a later date. It will be based on the amount of time and manpower that the FBI uses to complete the search for the abstract cards.

### Specific Reagan Requests

(7) In regard to the plaintiff's request to search specific subjects' files (i.e., COMPIC; Screen Actors Guild; Labor League of Hollywood Voters; Motion Picture Industry Council; Herb Sorrell; Hollywood Independent Citizens Committee of the Arts, Sciences and Professions; Music Corporation of America; and the records of the late actors Larry Parks, Howard Da Silva and Alexander Knox. Pl's Motion, Exh. E.) for material mentioning Ronald Reagan, a manual search proposed by plaintiff would be extremely burdensome, and there are no indications it would be productive.

(8) If Ronald Reagan is mentioned in any of the main files for the above listed subjects then he, being a well-known figure, would be listed as a cross reference file in the automated indices for Ronald Reagan. With respect to plaintiff's request for a manual search for Ronald Reagan cross references, a search of our electronic indices was completed to determine how many files would need to be reviewed on a page-by-page basis for this particular information. The following is our finding.

4

(A) COMPIC (also known as the Communist Infiltration - Motion Picture Industry Council)-has been the subject of a prior FOIA request and records responsive to this prior request have been copied to a CD. The information contained on this CD consists of 13,533 pages. In addition to these pages, the FBI has located an addition 111 main files and 508 cross-references on this subject;

(B) The Screen Actors Guild-consists of nine main files and 42 cross-references;

(C) The Labor League of Hollywood Voters-consists of one main file and three cross-references;

(D) The Motion Picture Industry Council-consists of eight main files and 38 cross-references;

(E) The Hollywood Independent Citizens Committee of the Arts, Sciences and Professions-consists of two cross-references;

(F) The Music Corporation of America-consists of seven main files and eleven cross-references;

(G) Herb Sorrell-consists of 14 main files and 31 cross-references;

(H) Larry Parks-consists of 557 main files and 1,474 cross-references;

(I) Howard D Silva-consists of 20 main files and 156 cross-references; and

(J) Alexander Knox-consists of 145 main files and 401 cross-references.

(9) Given the number of files identified in the above searches and the already existing listing of Ronald Reagan cross references in the electronic indices, a manual search of these files would place an unreasonable burden on the FBI.

5

### "Unable to Locate" or Missing Files

(10) The FBI uses the following procedures to locate missing files. Once a search is conducted on a subject and a potentially responsive file is identified, the employee goes into the File Access Control System ("FACS") to order this file. FACS is a library system that tracks approximately twelve million FBI Headquarters hard copy files.[1] FACS designates files as: "In File," "Unable to Locate" (which previously was known as "No Charge Out" or NCO), and "Permanently Charged Out" or PCO. When a file is PCO it means that the file is located in a particular office that has authority to maintain the file in that particular location. Additional designations for the files tracked in FACS are files that are "charged out," which indicates that a file has been signed out to another individual; files that are "destroyed," which indicates that a file has been destroyed pursuant to various destruction schedules; or files that are accessioned to the National Archives and Records Administration ("NARA").

(11) If a file is designated as an "In File" in FACS, then it is considered an available file and is shipped to the requesting employee for handling. If the file is designated in FACS as "charged-out" to another individual, RMD contacts the person that is listed as holding the file to determine if this person is still in possession of the file. If the individual is in possession of the file, a request is made through FACS to borrow the file or gain possession of it once the individual is finished with it. If the individual is not in possession of the file, RMD makes contact with the ARC in order to determine the status of the file. If after a manual search for this file, RMD determines that it is not located at the ARC, an e-mail is sent out to each employee within RMD to search their work space in order to locate the file. An "unable to locate" file

---

[1] RMD FACS User Manual, Release 2.1.

6

indicates that the file has not been located after a shelf-by-shelf review of the ARC, has not been located in the physical workspace of any RMD employee after a manual search for this file, and/or was never sent to the ARC and cannot be located in any other division within the FBI. A file is not labeled as "unable to locate" unless all the procedures detailed above have been followed.

### Destruction of Files and Accession of Files to NARA

(12) To identify those records meeting the requirements for permanent retention, RMD's Records Disposition Unit ("RDU") follows the criteria listed in the FBI's Records Retention Plan. Pursuant to the Records Retention Plan, each of the FBI's investigative file classifications has different criteria for permanency, transfer to NARA, and destruction. For example, the handling of file classification 7 records, which are records concerning kidnapping and child abduction, is different from that of file classification 65 records, which are records concerning espionage. RDU selects an individual file classification for review, and within that classification systematically reviews each case individually to see if it meets any of the criteria for permanent retention. In some classifications, the number of serials in a case file will determine whether it is retained or destroyed. In general, all cases that relate to a prominent figure or a well-known event, or that consist of 20 or more sections at HQ or 35 or more sections in the field offices are retained and sent to NARA.

(13) As permanent records for accession to NARA are identified, RDU employees review each file page-by-page to identify protected information. An acid free strip is placed around any serials that contain protected information to indicate that the material may not be released by NARA. If the file is in a national security-related classification, then it is sent to

RIDS for declassification review. Each file is sequenced by file classification and case file number and boxed. A list of files in each box is prepared for NARA and information about the main subject of the file and cross-references listed in the file is recorded and provided to NARA as a finding aid to locate information for researchers.

(14) Once 300 to 400 boxes have been assembled, RDU arranges a date with NARA to transfer the records along with the record finding aid, a list of the files in each box, and the signed "Agreement to Transfer" form. Once NARA receives the boxes, they process the shipment by verifying that they have received each box listed on the transfer form, and then formally accession the records into their collection. NARA signs the transfer form and provides a copy to RDU. At this point, the records become the official property of NARA, and NARA is responsible for responding to all requests for information in those files. After the records have been delivered to NARA, RDU employees update FACS with the transfer date to indicate that the records have been transferred to NARA.

(15) Any temporary records that do not meet the criteria for permanent retention are reviewed to determine their eligibility for destruction. RDU employees review the files individually to ensure that they are within the date range eligible for disposal; do not contain any material that would render them permanently valuable; are not part of a NARA identified sampling list; and are not the subject of any ongoing litigation, discovery, FOIA/Privacy Act or National Name Check Program ("NNCP") request, or other inquiry. If records meet none of these criteria, they are destroyed by placing the paper documents into the confidential trash.

FACS is updated to indicate the date of destruction.[2] If any record of the file exists in Automated Case Support System ("ACS"), this record is also deleted.

(16) Upon the receipt of a FOIA/Privacy Act request, if the FBI is unable to locate a file or the file has been destroyed or accessioned to NARA, a disposition letter is sent to the requester. If the record indicates the file is destroyed, FACS may (or may not) list a date of destruction. If the file has been sent to NARA, FACS indicates that as well. If the FBI is unable to locate a file or if the file has been destroyed, a letter is sent to the requester with contact information for the U.S. Department of Justice, Office of Information and Privacy ("OIP") for appeal purposes. If the file has been accessioned to NARA, a letter is sent to the requester with contact information for NARA. In the process of locating responsive records, an employee is not required to do a further search to see if a file has actually been destroyed or to contact NARA to see if the records are actually there. The employee relies on the information that is stored in FACS.

## Files Responsive to Plaintiff's Requests

(17) The following files were identified as responsive to plaintiff's requests but were unable to be located by RMD: HQ 66-6575, SF 80-0-2602-A, SF 9-2094, HQ 105-196603-5, HQ 62-112228-A, HQ 62-112228-47-A, HQ 91-01-1374, SC 194-4-1, and HQ main file 175-383. File HQ 66-6575 and SF 80-0-2602-A have been destroyed; however, there is no documented date of destruction. File SF 9-2094 was destroyed in 1998. File HQ 105-196603-5, HQ 62-112228-A, and HQ 62-112228-47-A are being researched for their location. Upon

---

[2] Although the date of destruction should appear in FACS, on rare occasion the date may not be listed.

determining the location of these files, RMD will be retrieve them from the ARC to ensure that they are the correct files. File HQ 91-01-1374 was accessioned to NARA on July 1, 1997. File SC 194-4-1 was accessioned to NARA on April 5, 1992. File HQ 175-383 was included in a release made to plaintiff on April 11, 2008, pertaining to Ronald Reagan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of September, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, VA

11