JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
ELLEN M. FITZGERALD (NY 2408805)
Assistant United States Attorney
450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102-3495
Telephone: (415) 436-7314
Facsimile: (415) 436-6748
Email: ellen.fitzgerald@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SETH ROSENFELD,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendants. | No. C 90-3576 MHP; No. C 85-1709 MHP<br>No. C 85-2247 MHP; No. C 07-3240 MHP<br><br>**DECLARATION OF**<br>**DEBRA ANNE O'CLAIR** |

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF LAW IN SUPPORT THEREOF
C 07-03240 MHP

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL BUREAU OF ) <br> INVESTIGATION and ) <br> U.S. DEPARTMENT OF JUSTICE, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 07-CV-03240 |

## DECLARATION OF DEBRA ANNE O'CLAIR

I, Debra Anne O'Clair, declare as follows:

(1) I am currently the Assistant Section Chief of the Records Policy and Administration Section ("RPAS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 20, 2006. In my official capacity as Assistant Section Chief of RPAS, I am responsible for assisting with the management of FBI records, including records policy and the creation, management and storage, and final disposition of records. Since joining the FBI in June 1979, I have held various positions within RMD. During the course of my FBI career in records management, I have acquired knowledge regarding the creation, use, and maintenance of abstract cards.

(2) The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and

determinations reached and made in accordance therewith.

(3) In the course of my official duties, I have become familiar with certain aspects of RMD's Record/Information Dissemination Section's ("RIDS") handling of plaintiff's numerous requests for information through the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. It is my understanding that plaintiff has submitted FOIA requests seeking access to records pertaining to nine subjects: (1) Ronald Reagan, (2) Herbert Ellingwood, (3) Alexander C. Sherriffs, (4) Roy M. Brewer, (5) Neil Reagan, (6) "80" Files, (7) The Motion Picture Industry Council, (8) The Labor League of Hollywood Voters, and (9) The Motion Picture Alliance for the Preservation of American Ideals. More recently, I am aware that the Court issued a Memorandum & Order on August 22, 2008 ("Order"), in which the Court ordered "defendants to provide supplemental declaration in accordance with this memorandum . . . within thirty (30) days of the date of this order." In particular, this declaration addresses the portion of the Order concerning the abstract card system.

## ABSTRACTS[1]

(12) By way of background, it will be helpful to explain the nature of the FBI's abstract-card system. As a threshold matter, FBI files were, and continue to be, maintained using a numerical filing system. When the FBI opens a new case, it is assigned a Universal Case File Number ("UCFN"), which is utilized by FBIHQ and all field offices that are conducting or assisting in the investigation. Using a hypothetical file number "12-WF-1234" as an example, "12" indicates the file classification for the specific type of investigation (which corresponds to a

---

[1] I was the declarant for the consolidated Rosenfeld v. United States Department of Justice, et al., Case Nos. 90-3576, 85, 1709, and 85-2247. In that declaration, dated August 21, 2007, I discussed the FBI's abstract card system in detail.

federal crime for which the FBI has jurisdiction, or an administrative or personnel matter); "WF" is the abbreviated form used for the Office of Origin of the investigation, which in this example is the FBI's Washington Metropolitan Field Office; and "1234" indicates the individual case file number for the particular classification of investigation (a separate and distinct number assigned to each matter). Finally, within each investigative file, a separate and distinct serial number is assigned sequentially to each document, in the order in which the document is added to that file, typically in chronological order, with the most recent document having the highest number. Thus, again using fictitious file number "12-WF-1234," serial 1 would be represented as "12-WF-1234-1," serial 2 would be represented as "12-WF-1234-2," and so on, until we reach the last serial in that file.

(13) The abstract card system was in effect at the FBI from 1921 to 1979. The primary purpose of the abstract card system, as I will explain in further detail below, was to assist in the determination of the next sequential serial number to assign to a document in a particular file, as well as to quickly distinguish documents within a given file. Although the need for the abstract card system was obviated in 1976 when the FBI adopted the Automated Incoming Mailing Serialization, the FBI continued to type abstract cards through 1979. Abstract cards created between 1921 and 1957 no longer exist and are believed to have been destroyed.

(14) The abstract card itself consisted of a 3 x 5 two-ply carbon form typed by an FBI clerical employee who was not involved with the investigative activities of a case. In order to prepare the abstract summary, the FBI clerical employee first conducted a cursory review of each document received or generated. The employee then typed an abstract card summary based on this cursory review, which consisted of a two to three-sentence summary of the document's

-3-

contents, the date of the document, the file classification, case number and serial number of the document, the author of the document and the employee's identification code.

(15) The abstract cards were stored and maintained in sequential order by case number and serial.[2] In order to determine the next serial number to be assigned to an incoming document within a given case – without having to retrieve the physical file from its storage location each time – FBI clerical employees searched the abstract cards. Once the case number was located, the employee verified that an abstract card had not already been prepared for that specific document, and determined the next sequential serial to be assigned. For example, if the last abstract card for the fictitious file number "12-WF-1234" was 18, the next serial number assigned to the newest incoming document would have been 19. The employee then typed this new serial "19"on the abstract card and wrote the serial "19" on the incoming document. The abstract card was then separated and placed in the drawer at the end of the corresponding case and the carbon copy was sent to another unit for storage. The newly serialized document was sent to the file storage location.

(16) One set of abstract cards – the "author set" – is stored in a facility maintained by the FBI. The "numbering set" was placed into storage in 1983 at a Federal Records Center operated by the National Archives and Records Administration ("NARA"). The FBI pays an annual fee to NARA for the storage of these and other FBI records. Each time NARA removes records material from its storage location for review, copying, destruction, transfer, etc., a fee is charged. The "numbering set" of abstracts is stored in boxes within the 789,000 square foot

---

[2] A duplicate set of abstract cards was stored and maintained in alphabetical order by author's name for documents received by the FBI, and by originating office for documents authored by the FBI.

facility, which has a capacity to store 3.9 million cubic feet of records (per NARA's website). Within the boxes, the abstracts are loosely stacked three levels high, two rows per level, with a single sheet of brown wrapping paper or cardboard between each row. There are approximately 2,000 boxes of abstract cards stored within the NARA facility.

(17) There is no master index for the cards contained in the NARA facility, and there is no master index for the abstract cards contained within each box. Although a majority of the boxes indicate the case file and serial scope of the cards contained within each box, there are a number of boxes which are devoid of any markings whatsoever. The boxes are stored according to a NARA master file locator system that does not correspond in any way to the information contained within the boxes.

(18) Although it is true that both the documents in a case file and the abstracts are each filed sequentially according to the file and serial number, the similarities end there. The case files and the abstract cards are two separate and distinct series of records within the FBI, each with a separate disposition according to the FBI's approved records retention schedule. And the FBI's case files are searchable through, and retrieved by, an automated search of the Central Records System via the Automated Case Support System ("ACS"). By contrast, the abstract card system is not automated, cannot be searched electronically, and can only be hand-searched.

(19) Abstract cards were a tool used by FBI clerks (before the FBI adopted automated equipment) to determine the next sequential serial number to assign to a document in a particular file. They were prepared by an entry-level clerk, rather than by the author or recipient of the document, were two to three sentences in length, and were the clerk's summary of the contents of the document. The entry-level clerks who typed abstract cards were neither trained – nor

expected – to interpret the documents in front of them. These employees were simply typing sufficient information onto the abstract card to memorialize the receipt of a new document in order to assign it a new serial for placement in the file. These employees did not determine the importance of the contents of the document.

(20) Abstract cards are not now – nor were ever intended – to be used as a means to search for and retrieve documents from a case file. Rather, as I explained in detail above, the cards were used simply as a means to determine the next serial to assign to a document prior to its placement in the case file. They cannot be searched electronically, and would need to be hand-searched.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22 day of September, 2008.

*[signature]*
DEBRA ANNE O'CLAIR
Assistant Section Chief
Records Policy and Administration Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.