UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-07-3240 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 133, 137)** |

Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment came on for hearing before the Court on February 27, 2012. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendants' cross motion for partial summary judgment. Docket Nos. 133, 137.

## I.    FACTUAL & PROCEDURAL HISTORY

Plaintiff Seth Rosenfeld is a professional journalist who, over the past 30 years, has extensively researched and written about the FBI's activities in connection with the University of California during the Cold War. Docket No. 133-1 ¶ 1 ("Sixth Rosenfeld Decl."). Plaintiff has published numerous articles about the FBI's activities in the University of California during nationally prominent events in the 1950s and 1960s, including the FBI's political surveillance of University of California students and faculty, and the FBI's attempts to oust Clark Kerr as president of the University. Sixth Rosenfeld Decl. ¶ 2. These articles were based largely on FBI records released pursuant to the Freedom of Information Act ("FOIA"). Sixth Rosenfeld Decl. ¶ 5.

Plaintiff is currently writing a book about the FBI's activities in connection with the University of California during the Cold War that expands upon his published articles. Sixth Rosenfeld Decl. ¶ 3. To that end, Plaintiff made FOIA requests for records concerning Ronald Reagan and related persons and organizations from the date of the first record up to 1979. Sixth Rosenfeld Decl. ¶ 14. Plaintiff claims that Reagan was a FBI informant and that the FBI played an integral role in supporting Reagan's political career. Docket No. 138-1 ¶¶ 4, 6, 9 ("Seventh Rosenfeld Decl."). Plaintiff seeks information about the FBI's operations with respect to aiding Reagan's political career, and how such operations affected government policy and the exercise of First Amendment rights. Sixth Rosenfeld Decl. ¶ 14.

After the FBI failed to comply with Plaintiff's FOIA requests, Plaintiff filed suit in 2007. Sixth Rosenfeld Decl. ¶ 15. The litigation went through a *Vaughn* proceeding and several rounds of summary judgment, in which Judge Patel made rulings on the FBI's broad exemption claims and on the representative documents. Sixth Rosenfeld Decl. ¶ 15.

On November 22, 2011, the Court entered an order directing Plaintiff to file a dispositive motion for summary judgment by January 9, 2012. Docket No. 127. Plaintiff filed his third motion for summary judgment on January 5, 2012, seeking redacted information from four documents: (1) Ronald Reagan 2201, (2) Ronald Reagan 2198, (3) Ronald Reagan 1539-1541, and (4) Ronald Reagan 4162. Docket No. 133 at 6-8 ("Motion"). Defendants filed a cross-motion for summary judgment on January 19, 2012. Docket No. 137 ("Opp."). In Defendants' cross-motion for summary judgment, Defendants indicated that they had released the redacted information in Ronald Reagan 2198 and Ronald Reagan 2201. Opp. at 3. Defendant then released the redacted information concerns Ronald Reagan 4162. Docket No. 141. Thus, the only remaining issue is the redactions on Ronald Reagan 1539-1541.

Ronald Reagan 1539-1541 is a three-page document dated January 9, 1975. Docket No. 133-1, Exh. E ("Ronald Reagan 1539-1541"). The document is titled "Ronald Wilson Reagan, Special Inquiry, Buded Past" and concerns the traffic violations and arrests of a party whose name is redacted. The redacted information includes the third party's name and birth date, the dates and docket numbers of the violations and arrests, and the amount of the fines. Ronald Reagan 1539-41.

1    Plaintiff asserts the individual is ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Because the
2 identity of the party informs the purpose of the document, the strength of privacy interests, and the
3 public interest at issue, the Court ordered Defendants to produce an unredacted copy for *in camera*
4 review. Docket No. 142.

## II. DISCUSSION

A. The Freedom of Information Act ("FOIA")

The Freedom of Information Act ("FOIA") "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). FOIA contains nine exemptions, pursuant to which the government can withhold information otherwise available for disclosure. *See* 5 U.S.C. § 552(b)(1)-(9) (2006). The burden of proof is on the government to demonstrate that a document is governed by an exemption and should be withheld. *Rose*, 489 U.S. at 755; *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995). The exemptions must be read with FOIA's goal of disclosure; thus, "courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' and that the statutory exemptions, which are exclusive, are to be 'narrowly construed.'" *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991); *Rose*, 425 U.S. at 361).

In the instant case, Defendants argue that the redacted information was properly withheld under Exemptions 6 and 7(C). Opp. at 3-4. FOIA Exemptions 6 and 7(C) protect the privacy of individuals identified in agency records. Exemption 6 limits the release of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Likewise, Exemption 7 applies to records or information compiled for law enforcement purposes, and limits the release of such records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(c). Courts apply a similar analysis to both exemptions; if a third party has more than a de minimis privacy interest in the requested material, the court must weigh the third party's privacy interest against the public interest in disclosure. *ACLU*, 655 F.3d at 6 (citing *U.S. Dep't of Justice v.*

1  *Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989)).  However, based on the

2  statutory language, the courts have found that "'Exemption 7(C) is more protective of privacy than

3  Exemption 6' and thus establishes a lower bar for withholding material." *Id.* at 6 (quoting *U.S.*

4  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994)).

5  B.     Exemption 7(C)

6        For Exemption 7(c) to apply, the disputed document must have been compiled for a law

7  enforcement purpose.  5 U.S.C. § 552(b)(7).  Where the government agency seeking to apply

8  Exemption 7(c) has a clear law enforcement mandate, the government agency "need only establish a

9  'rational nexus' between enforcement of a federal law and the document for which a law

10 enforcement exemption is claimed." *Rosenfeld*, 57 F.3d at 808.  Under the rational nexus test, the

11 court must "accord a degree of deference to a law enforcement agency's decision to investigate." *Id.*

12 However, "[t]he court need not accept the government's claim that a previous investigation had a

13 law enforcement purpose if the asserted purpose is 'pretextual or wholly unbelievable.'" *Id.* (quoting

14 *Pratt v. Webster*, 673 F.2d 408, 421 (D.C. Cir. 1982)).

15       In the instant case, Defendants fail to demonstrate that Ronald Reagan 1539-1541 was

16 compiled for any legitimate law enforcement purpose.  Defendants claim that Ronald Reagan 1539-

17 1541 was compiled as part of "the FBI's investigation of Ronald Reagan's activities in and

18 involvement with – the Communist Party and other extremist activities." Docket No. 137-1 ¶ 9

19 ("Ninth Hardy Decl.").  The Court finds that as previously ruled on by Judge Patel, an alleged

20 investigation of the Communist Party is insufficient to constitute a legitimate law enforcement

21 purpose in view of the relevant time frame.  In her prior orders, Judge Patel found that:

22     the investigation of an individual's membership in or association with the Communist
       Party post-1957 serves no legitimate law enforcement purpose.  Thus, for all
23     documents dated post-1957, the investigation of an individual's mere membership in,
       or association with, the Communist Party or other purportedly subversive political
24     movement, is not by itself a legitimate law enforcement purpose.  Thus, Exemption 7
       cannot be applied to such documents.
25

26 Docket No. 115 at 7 ("February 2011 Order"); *see also* Docket No. 98 at 16 ("August 2010 Order").

27 Pursuant to the Supreme Court's 1957 ruling in *Yates v. United States*, which established that the

28 Smith Act and analogous laws allowed prosecution of only active members of the Communist party

*United States District Court* (For the Northern District of California)

4

1  with specific intent to advocate the forcible overthrow of the United States government, Judge Patel
2  distinguished between the investigation of a specific individual who advocated for the violent
3  overthrow of the government which would have a permissible law enforcement purpose and an
4  individual who merely had an association with the Communist Party whose investigation would not.
5  August 2010 Order at 15-16 (citing *Yates*, 354 U.S. 298 (1957); *Rosenfeld v. U.S. Dep't of Justice*,
6  761 F. Supp. 1440, 1458 (N.D. Cal. 1991); *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 775-76
7  (S.D.N.Y. 1979)). Here, Ronald Reagan 1539-1541 was generated in 1975 nearly 20 years after the
8  benchmark date of 1957. Thus, Defendants' reliance on Ronald Reagan's alleged connection to
9  Communism does not constitute a sufficient law enforcement purpose for this document to satisfy
10 the rational nexus test.

11     In addition, Defendants' assertion that the document is related to Ronald Reagan's
12 connection to the Communist Party is wholly unbelievable. Defendants' claim that there was a
13 legitimate law enforcement purpose in investigating Ronald Reagan for ties to Communists is belied
14 by the fact that Ronald Reagan was an informant for the FBI starting in the late 1940s, identifying
15 suspected communists in the Screen Actors Guild. Seventh Rosenfeld Decl. ¶ 4; *see also* Docket
16 No. 138-1, Exh. B ("The White House acknowledged yesterday that President Reagan was an FBI
17 informant in Hollywood in the late 1940s when he headed the Screen Actors Guild."). Given
18 Ronald Reagan's status as an informant for the FBI, the FBI would have no reason to investigate
19 Ronald Reagan for his involvement in the Communist party during the 1960s and 1970s, and
20 certainly not so in 1975 after his term as Governor of California.

21     Furthermore, having examined the document in camera and confirming the subject's identity,
22 it is clear that Ronald Reagan 1539-1541 has no apparent connection in any investigation into
23 Ronald Reagan's purported Communist ties. The document is concerned with the investigation of
24 the traffic violations of an individual closely associated with Ronald Reagan. The document has no
25 apparent connection with national security or any other legitimate law enforcement purpose.
26 Accordingly, Exemption 7(c) does not apply in this case.
27 ///
28 ///

5

C. Exemption 6

Exemption 6[1] concerns documents whose disclosure could result in the "unwarranted invasion of privacy." The Court is thus required "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008). Under this test, "the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable." *Id.* Instead, the Court must "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect. *Reporters Comm.*, 489 U.S. at 776; *Forest Servs. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 n.2 (9th Cir. 2008).

1. Privacy Interests

The Court finds that the privacy interest in Ronald Reagan 1539-1541 is low because the document concerns traffic violations from forty years ago and because the subject is a public figure.

In general, although "one [does] not necessarily forfeit a privacy interest in matters made part of the public record . . . the privacy interest [is] diminished." *Reporters Comm.*, 489 U.S. at 764 n.15. In *Reporters Committee*, the Supreme Court examined whether "rap sheets" concerned a personal privacy interest. There, the rap sheets not only included descriptive information about the subject, including the date of birth and physical characteristics, but a complete history of arrests, charges, convictions, and incarcerations. *Id.* at 751. While the Supreme Court acknowledged that much of the information was a matter of public record, it found that the availability and dissemination of the information to the public was limited because 47 states placed substantial restrictions on the availability of criminal-history summaries, even though the individual events

---

[1] The parties do not address Exemption 6's threshold test, which limits Exemption 6's applicability to information contained in "personnel and medical files and similar files." 5 U.S.C. § 552(b)(6). The Ninth Circuit has found that "[t]he phrase 'similar files' has a broad, rather than a narrow meaning. As such, we have previously held that government records containing information that applies to particular individuals satisfy the threshold test of Exemption 6." *Forest Serv. Emps.*, 524 F.3d at 1024 (citations omitted); *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (9th Cir. 2006) ("We have also read [Exemption 6] to exempt not just files, but also bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy."). Given this broad scope afforded by Exemption 6, the Court finds that the threshold test is met and will analyze whether Ronald Reagan 1539-1541 should be released under Exemption 6's balancing test.

United States District Court
For the Northern District of California

were of public record. *Id.* at 753. The rap sheets also compiled information scattered across jurisdictions, suggesting that the information was not "freely available." *Id.* at 753, 764. Because the rap sheets were a compilation of hard-to-obtain information, including "information that would otherwise have surely been forgotten," the Court found that release of the information would be highly invasive. *Id.* at 763-64.

In contrast, the *ACLU* court distinguished *Reporters Committee* because *ACLU* concerned "a single prosecution, rather than a comprehensive scorecard of the person's entire criminal history." 655 F.3d at 8. *ACLU* concerned the production of the case name, docket number, and court of all criminal prosecutions of individuals who were tracked using mobile location data, where the government did not first secure a warrant. *Id.* at 4. Although the court recognized that disclosure of information about criminal prosecutions was embarrassing and stigmatizing, the court found that the privacy interest was on the "lower end of the privacy spectrum." *Id.* at 7. First, the court found that the information sought was readily available in public records, especially with the advent of computerized services like PACER. *Id.* at 8, 10. Second, the information sought was not the compilation of the individual's entire criminal history across multiple jurisdictions, but a single conviction. *Id.* at 10. Finally, the information sought was also more recent than that found in *Reporters Committee*, as the prosecutions at issue took place "considerably less than ten years ago." *Id.* at 10. Thus, the privacy interest was relatively low.

In the instant case, Ronald Reagan 1539-1541 falls in-between the rap sheets in *Reporters Committee* and the single convictions in *ACLU*. Although Ronald Reagan 1539-1541 contains more than a single conviction, the scope is restricted. Whereas the rap sheets in *Reporters Committee* contained an individual's entire criminal history, across state lines, Ronald Reagan 1539-1541 is limited to traffic violations in a single county. Thus, the privacy interest in Ronald Reagan 1539-1541 is greater than that in *ACLU*, but lower than *Reporters Committee*.

Whatever privacy interest at issue is significantly diminished by the fact that Ronald Reagan 1539-1541 simply compiles traffic violations from forty years ago. The stigma of forty year old traffic violations is significantly less than the embarrassment and stigma attached to the disclosure of criminal prosecutions, as in *Reporters Committee* and *ACLU*. While the Court acknowledges that

1   the traffic violations are obscure and likely forgotten and thus its publication implicates some
2   privacy interests, the fact that the documents concerns old traffic violations as opposed to more
3   serious criminal prosecutions decreases the likely stigma that would follow such a disclosure.  As
4   the likely stigma of disclosure falls, so too does the privacy interest at issue.

5   Finally, the Court finds that the privacy interest is significantly diminished because as
6   confirmed by the *in camera* review, the subject is a public figure.  While the mere fact that an
7   individual is a public figure with a diminished privacy interest does not result in automatic
8   disclosure of his or her identity, "persons who have placed themselves in the public light, e.g.,
9   through politics, or voluntarily participate in the public arena have a significantly diminished
10  privacy interest than others.  Thus, in most instances a public official's or public figure's privacy
11  interests will be outweighed by the public interest in disclosure."  August 2010 Order at 20;
12  February 2011 Order at 8.

13  Here, the subject of the document is a public figure.  He has written numerous memoirs, was
14  the host of a live radio show for over two decades, and is described on his own website as "a popular
15  national speaker on issues related to conservative politics, adoption, and the life lessons." ■■■
16  ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
17  Recently, he has garnered significant press through his opinions about the Republic nomination
18  process and his endorsement of and campaigning on behalf of a presidential candidate.[2]  Such
19  activities make clear that the subject has placed himself in the public light, writing and speaking
20  about his life experiences while getting heavily involved in recent political events.

21  Defendants argue that the subject is only a public figure because of his family relationship,
22  and that only public figures who accept a life of lesser privacy have a lesser entitlement to privacy.

23
24  [2] 
25
26
27
28

8

1  Defendants cite no authority for this proposition. Even if such a rule was applied, this subject has
2  placed himself in the public sphere since coming of age, now being viewed as a conservative icon
3  whose opinions and endorsements are regularly covered by the press. As a person who has put
4  himself in the public light through his political work, the subject has a significantly diminished
5  privacy interest.

6  Accordingly, the Court finds that the privacy interest in Ronald Reagan 1539-1541 is de
7  minimis because the document concerns decades old traffic violations of a public figure.

### 2. Public Interest

Even if the privacy interest at issue is very low, Plaintiff must still identify a public interest that outweighs the privacy interests identified above. The Supreme Court has found that "whether an invasion of privacy is *warranted* cannot turn on the purpose for which the request for information is made." *Reporters Comm.*, 489 U.S. at 771. Instead, the Court must look to the purpose of FOIA, which is "'to open agency action to the light of public scrutiny,' rather than on the particular purpose for which the document is being requested." *Id.* at 772 (quoting *Rose*, 425 U.S. at 372); *see also Rosenfeld*, 57 F.3d at 812 ("The sole cognizable public interest for FOIA is the interest to open agency action to the light of public scrutiny, to inform the citizenry about what their government is up to."). For example, courts have found that "[m]atters of substantive law enforcement policy are properly the subject of public concern,' whether or not the policy in question is lawful." *ACLU*, 655 F.3d at 15 (quoting *Reporters Comm.*, 489 U.S. at 766 n.18).

In *Reporters Committee*, the plaintiffs sought information concerning the criminal records of four members of the Medico family, arguing that there was a public interest in understanding the family's record of bribery, embezzlement, and other financial crimes. *Id.* at 757. The Supreme Court found that this request did not serve a public interest under FOIA because it "reveals little or nothing about an agency's own conduct." *Id.* at 773. While the Supreme Court acknowledged that there was public interest in anyone's criminal history, especially where that history is related to the subject's dealing with a public official or agency, "FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happen to be in the warehouses of the Government be so disclosed." *Id.* at 774.

9

1 Because the plaintiffs were simply seeking information about another person and did not "intend to
2 discover anything about the conduct of the agency that has possession of the requested records, the
3 public interest was not promoted by the disclosure of the documents sought. *Id.* at 773.

4 In contrast, *Rosenfeld* found that there was a public interest in the release of documents
5 relating to the FBI's investigation of people and organizations involved in the Free Speech
6 Movement. 57 F.3d at 812. In balancing the privacy interests of the individuals who were
7 investigated, the Ninth Circuit found that the public interest outweighed the privacy interests of
8 those individuals because there was a public interest in:

> knowing whether and to what extent the FBI investigated individuals for participating in political protests, not federal criminal activity. Disclosing the names of the investigation subjects would make it possible to compare the FBI's investigations to a roster of the [Free Speech Movement's] leadership. Therefore, disclosing the names of investigation subjects promotes the public interest of this FOIA request.

*Id.* Thus, unlike *Reporters Committee*, the release of the information supported a public interest
because it helped the public understand "whether the FBI abused its law enforcement mandate by
overzealously investigating a political protest movement to which some members of the government
may have objected." *Id.* at 811-12. As the disputed documents were sought not for information
about the individuals who were investigated, but for information about the FBI's potential abuse of
its powers, the release served FOIA's purpose of opening agency action to the light of public
scrutiny.

More recently, in *ACLU*, the Court of Appeals for the District of Columbia found that there
was a significant public interest in the release of documents relating to the government's use of cell
phone location data in criminal prosecutions. 655 F.3d at 3. The court found that there was a
significant public interest because "the disclosure of prosecutions in which the defendants were
subject to warrantless cell phone tracking, and then were convicted or pled guilty, would shed light
on government conduct." *Id.* at 12. The court observed that the issue of warrantless cell phone
tracking had already received widespread media attention and was the subject of several
congressional hearings, and that the Supreme Court had granted certiorari to address the GPS issue.
*Id.* at 12-13. Thus, the court found the disclosure went to showing whether "the government's
tracking policy is legally improper, . . . what that policy is and how effective or intrusive it is,"

which supported FOIA's purpose by informing the ongoing public policy discussion about cell phone tracking as a law enforcement tool. *Id.* at 14.

What is critical to the public interest analysis is whether disclosure of the document sheds light on the way government conducts its business. In the instant case, Plaintiff identifies a public interest in "revealing how (and against whom) the FBI used its investigative authority to serve Ronald Reagan's personal and political interests. Reply at 1. Plaintiff identifies the disputed documents as records of the FBI doing personal and political favors for Ronald Reagan, and argues that there is a public interest "in knowing how the FBI conducts its operations, such as whether it spends its resources in pursuing investigations that are unrelated to any legitimate law enforcement mission." Reply at 2; *see also* Seventh Rosenfeld Decl. ¶¶ 7-9.

The Court finds that Plaintiff has sufficiently identified a public purpose. As previously ruled by Judge Patel, "[t]he public maintains a significant interest in knowing the extent of the FBI's involvement in furthering Reagan's political aspirations by informing him of individuals that may jeopardize his career." August 2010 Order at 20. Furthermore, unlike *Reporters Committee*, the purpose of the information sought is not for information about the subject of Ronald Reagan 1539-1541, but to examine whether the FBI used – or potentially abused – their investigative powers in order to aid Ronald Reagan in a non-law enforcement capacity. While Defendant argues that the redacted information merely identifies the individual that was under investigation, rather than how they were investigated, Plaintiff persuasively argues that the investigation of the subject's old traffic violations had no conceivable purpose other than to aid Ronald Reagan's political career by providing advance notice of any issues of potential embarrassment that might affect any future political campaign. The disclosure of this document thus enhances the public's understanding of whether then FBI used public resources to benefit a private citizen for non-law enforcement purposes.

Accordingly, the Court finds that Plaintiff has identified a public interest that must be balanced against the subject's privacy interests.

///

///

3. <u>Balancing</u>

For the reasons stated above, the Court finds that the public interest in Ronald Reagan 1539-1541 greatly outweighs the subject's privacy interests. Under Exemption 6, the disclosure of the redacted information must constitute "a clearly unwarranted invasion of personal privacy," and this invasion must outweigh the public interest. As discussed above, the disclosure here is not a "clearly unwarranted invasion of personal privacy" given the document concerns the forty-year old traffic violations of a public figure. This interest is outweighed by the public interest in understanding whether the FBI used public resources to compile information, without any apparent law enforcement purpose, to assist Ronald Reagan's political aspirations.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for summary judgment and **DENIES** Defendants' cross-motion for summary judgment. Defendants are ordered to release the unredacted version of Ronald Reagan 1539-1541.

This order disposes of Docket Nos. 133 and 137.

IT IS SO ORDERED.

Dated: March 5, 2012

_____
EDWARD M. CHEN
United States District Judge