David A. Greene (CA State Bar No. 160107)
Roger M. Myers (CA State Bar No. 146164)
BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, CA  94105-2994
Telephone:   (415) 268-2000
Facsimile:    (415) 268-1999
roger.myers@bryancave.com
david.greene@bryancave.com

James R. Wheaton, (CA State Bar No. 115230)
Lowell Chow, (CA State Bar No. 273856)
FIRST AMENDMENT PROJECT
California Building
1736 Franklin Street, Ninth Floor
Oakland, CA 94612
Phone: (510) 208-7744
Facsimile: (510) 208-4562
wheaton@thefirstamendment.org
lchow@thefirstamendment.org

Attorneys for Plaintiff
SETH ROSENFELD

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF<br>JUSTICE et al.,<br><br>                    Defendant. | CASE NO. 3:07-CV-03240-EMC<br><br>**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br>[5 U.S.C. §552(a)(4)(E)(i)]<br><br>Date:   July 13, 2012<br>Time:  1:30 PM<br>Judge:  The Hon. Edward M. Chen<br>Courtroom 5, 17th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................... vi

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.     INTRODUCTION ............................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................. 1

      A.     THE 1990 CASES ........................................................................... 3

      B.     THE INSTANT CASE .................................................................... 3

           1.    The FOIA Requests ........................................................... 3

III.   COURT'S RULINGS AND THE PRODUCTION OF RECORDS ................ 5

      A.     FIRST CROSS-MOTIONS FOR SUMMARY JUDGMENT ............. 5

           1.    Adequacy of Search Issues ................................................ 6

               a.    The Court's Order .................................................. 6

               b.    Actions Taken Pursuant to Order ........................... 8

           2.    Failure to Produce Requested Cross-Reference Pages ............. 8

               a.    The Court's Order .................................................. 9

               b.    Action Taken Pursuant to Order ........................... 9

           3.    Abstract Cards .................................................................. 9

               a.    The Court's Order ................................................ 10

               b.    Action Taken Pursuant to Order ......................... 10

      B.     SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT RELATING TO ADEQUACY OF SEARCH AND EXEMPTIONS ........................................ 10

           1.    Remaining Adequacy of Search Issues ............................ 10

               a.    Summary Memos ................................................ 10

                    (1)    The Court's Order ................................... 11

                    (2)    Records Produced .................................. 11

               b.    Records labeled as Non-Responsive ...................... 11

                    (1)    The Court's Order ................................... 11

                    (2)    Records Produced .................................. 12

i

2.      Exemptions .................................................................. 12

      a.      Reprocessing of All Records .................................. 12

            (1)      The Court's Order ................................ 13

            (2)      Records Produced .............................. 13

      b.      Exemptions 6 and 7 ............................................ 13

            (1)      The Court's Order ................................ 14

            (2)      Records Produced .............................. 14

C.      THE FBI'S THIRD MOTION FOR SUMMARY JUDGMENT ...................... 14

      1.      Court's Order ................................................................ 15

      2.      Records Produced ....................................................... 15

D.      FOURTH ROUND OF SUMMARY JUDGMENT MOTIONS ........................ 15

      1.      Court's Order ................................................................ 16

      2.      Records Produced ....................................................... 16

E.      JUDGMENT ............................................................................ 16

III.      ARGUMENT .................................................................................... 16

A.      ROSENFELD IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES ...... 17

      1.      Rosenfeld Is Eligible For Attorneys' Fees And Costs Because He Has
              Substantially Prevailed .......................................... 17

B.      ROSENFELD IS ENTITLED TO ATTORNEYS' FEES BECAUSE THIS
         LITIGATION RESULTED IN BENEFIT TO THE PUBLIC, HIS INTEREST
         WAS THAT OF A JOURNALIST AND SCHOLAR, AND THE FBI
         LACKED REASONABLE BASES FOR WITHHOLDING RECORDS ........ 18

      1.      Public benefit ............................................................... 18

      2.      Commercial benefit and nature of complainant's interest in the
              records .......................................................... 19

      3.      Reasonableness of the agency's withholding ............... 20

C.      THE FEES ROSENFELD SEEKS ARE REASONABLE ................................ 22

      1.      The number of hours expended on this matter are reasonable ............... 22

      2.      The hourly rates of Rosenfeld's counsel are reasonable ......................... 22

3.      The total fee, in summary, is reasonable.....................................................24

D.      ROSENFELD IS ALSO ENTITLED TO FEES ON FEES.................................25

CONCLUSION ...............................................................................................................................25

iii

## TABLE OF AUTHORITIES
## FEDERAL CASES

Barjon v. Dalton,
   132 F.3d 496 (9th Cir. 1997) ..................................................................... 22

Blue v. Bureau of Prisons,
   570 F.2d 529 (5th Cir. 1978) ..................................................................... 18

Bonner v. Dep't of State,
   928 F.2d 1148 (D.C. Cir. 1991) ........................................................... 12, 13

Brown v. Sullivan,
   916 F.2d 492 (9th Cir. 1990) ..................................................................... 25

Cazalas v. Dep't of Justice,
   709 F.2d 1051 (D.C. Cir. 1983) ................................................................. 20

Church of Scientology of Cal. v. U.S. Postal Serv.,
   700 F.2d 486 (9th Cir. 1983) ................................................... 16, 17, 18, 20

Cotton v. Heyman,
   63 F.3d 1115 (D.C. Cir. 1995) ................................................................... 18

Davy v. CIA,
   550 F.3d 1155 (D.C. Cir. 2008) ........................................................ *passim*

Exner v. FBI,
   443 F. Supp. 1349 (S.D. Cal. 1978) .......................................................... 18

Hensley v. Eckhart,
   461 U.S. 424 (1983) ............................................................................ 16, 22

Jarno v. DHS,
   365 F. Supp. 2d 733 (E.D. Va. 2005) ........................................................ 18

Judicial Watch v. Bureau of Land Mgt.,
   610 F.3d 747 (D.C. Cir. 2010) ................................................................... 17

Long v. IRS,
   932 F.2d 1309 (9th Cir. 1991) ............................................................. 19, 22

Miller v. Dep't of State,
   779 F.2d 1378 (8th Cir. 1985) ................................................................... 20

Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,
   675 F.2d 1319 (D.C. Cir. 1982) ........................................................... 22, 23

Oregon Natural Desert Ass'n v. Locke,
   572 F.3d 610 (9th Cir. 2009) ..................................................................... 17

Piper v. Dep't of Justice,
   339 F. Supp. 2d 13 (D.D.C. 2004) ................................................. 18, 19, 20

Rosenfeld v. U.S. Department of Justice,
    761 F. Supp. 1440 (N.D. Cal. 1991) ........................................................................... 3

Rosenfeld v. U.S. Department of Justice,
    57 F.3d 803 (9th Cir. 1995) ...................................................................................... 3

Tax Analysts v. Dep't of Justice,
    965 F.2d 1092 (D.C. Cir. 1992) ............................................................................. 19

**FEDERAL STATUTES**

UNITED STATES CODE
5 U.S.C. § 552(a)(4)(E).......................................................................................... 16, 17

1

**NOTICE OF MOTION**

2      PLEASE TAKE NOTICE that on July 13, 2012 at 1:30 PM in Courtroom 5, 17th Floor,

3   United States Federal Building, 450 Golden Gate Ave, San Francisco, before the Honorable Edward

4   M. Chen, United States District Judge, plaintiff Seth Rosenfeld will move this Court for an order

5   awarding attorneys' fees and costs. The motion is based on this notice, the following memorandum

6   of points and authorities, the declarations of Seth Rosenfeld, James Wheaton, David Greene, and

7   Richard Pearl filed herewith, all matters of record filed with the court, and other evidence that may

8   be submitted.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS      Case No. 3:07-cv-03240-EMC
#79750 v1 saf

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        Having finally completed a several-years-long effort to obtain thousands of pages of records

4   from the Federal Bureau of Investigation regarding the relationship between the FBI and Ronald

5   Reagan in the years leading up to and including his service as Governor of California, plaintiff Seth

6   Rosenfeld now seeks attorneys' fee and costs under the Freedom of Information Act ("FOIA"). Fees

7   are proper in this case because the litigation resulted in the release of thousands of pages of records

8   pertaining to important historical events from which the public will benefit by their disclosure.

9   Moreover, the fees sought by Rosenfeld are reasonable and appropriate considering the volume of

10   the records at issue, the fact that the case required four rounds of summary judgment motions and

11   numerous conferences among counsel. This Court should thus award Rosenfeld the fees and costs he

12   requests in full.

13

## II.   STATEMENT OF FACTS

14        Rosenfeld is an award-wining reporter who was for over 25 years on the staff of the *San*

15   *Francisco Examiner* and *San Francisco Chronicle*. Rosenfeld has won numerous national, state and

16   local journalism awards, particularly for his articles about the FBI's activities in regard to the

17   University of California that were based on FBI records obtained under the Freedom of Information

18   Act. Over the course of his career Rosenfeld has researched the FBI's operations with respect to the

19   University of California, especially its flagship Berkeley campus, and in particular the FBI's

20   activities as they relate to academic freedom, civil liberties and national security. Rosenfeld has

21   focused on nationally prominent events in and around the campus community, including but not

22   limited to the loyalty oath of the 1950s, the civil rights movement of the early 1960s, the Free

23   Speech Movement of 1964, the anti-war movement of the latter 1960s, the development of ethnic

24   studies, and other social and political movements. Rosenfeld has also examined the FBI's activities

25   with respect to prominent people involved in these events, including for example the late renowned

26   educator and University of California President Clark Kerr, the late United States President and

27   Governor of California Ronald Reagan, and the late Free Speech Movement leader Mario Savio.

28   [Eighth Declaration of Seth Rosenfeld, In Support of Motion For Attorneys' Fees and Costs ("8th

Rosenfeld Decl.") ¶¶ 2, 5, 15]

Rosenfeld has published numerous articles based on his research of the FBI's records concerning the above subjects in the *Daily Californian*, the *San Francisco Chronicle*, the *Los Angeles Times* and other publications. These include Rosenfeld's June 2002 series, "The Campus Files," in the *San Francisco Chronicle*. "The Campus Files" series detailed the FBI's unconstitutional and unlawful activities at the University of California, including the FBI's efforts to have Clark Kerr fired as president of the university because FBI officials disagreed with Mr. Kerr's personal political views and his campus policies. [8th Rosenfeld Decl. ¶¶ 2, 3; Docket #13 Exh. A]

The significance of Rosenfeld's writing and research about the FBI activities with respect to the University of California have been recognized in the national press. The Associated Press carried reports based on "The Campus Files" series, which appeared in the *Washington Post*, the *Los Angeles Times*, and numerous other newspapers. CNN and ABC carried news articles about "The Campus Files" series, as did many other local television and radio stations. More than a dozen newspapers wrote editorials about the series. *The New York Times* said in a June 16, 2002 editorial about Rosenfeld's series, "These accounts of the F.B.I.'s malfeasance are a powerful reminder of how easily intelligence organizations deployed to protect freedom can become its worst enemy." [Docket #13 ¶ 9 & Exh. A]

The articles also caught the attention of Senator Dianne Feinstein who made a formal inquiry regarding Rosenfeld's findings to FBI director Robert Mueller. Additionally, Senator Patrick Leahy cited the Campus Files report at a hearing, calling the FBI campaign against Kerr "outrageous and some would even say criminal conduct." [8th Rosenfeld Decl. ¶ 15 & Exh. B]

Rosenfeld is currently working on several writing projects expanding on this same topic. A primary motivation for the FOIA requests at issue in this lawsuit was a book Rosenfeld has written that is scheduled to be published this August entitled *Subversives: The FBI's War on Student Radicals, and Reagan's Rise to Power*. [8th Rosenfeld Decl.¶¶ 3, 30-32 & Exhs. F, G]

Rosenfeld's research has been based largely on FBI records released to him pursuant to requests and complaints filed under the FOIA, including the instant action.

///

#79750 v1 saf

A. **THE 1990 CASES**

This lawsuit is the offspring of a series of FOIA requests, beginning in 1981, in which Rosenfeld sought from the FBI "any and all" records in the agency's files pertaining to the University of California. The FOIA requests generated three lawsuits. Through consolidated actions C-85-2247-MHP and C-85-1709-MHP (Rosenfeld I), Rosenfeld sought release of records relating to nine different individuals and entities, including UC Chancellor and President Clark Kerr and the Free Speech Movement. Later, Rosenfeld brought a third action, Case No. C-90-3576-MHP, seeking additional documents pertaining to the FBI's delay in processing his original requests. The details of Rosenfeld's requests and the litigation that arose from them are set forth in Rosenfeld v. U.S. Department of Justice, 761 F. Supp. 1440, 1441-43 (N.D. Cal. 1991), and Rosenfeld v. U.S. Department of Justice, 57 F.3d 803, 806-07 (9th Cir. 1995).

In 1996, after several rulings by Judge Patel ordering new searches and the disclosure of material withheld by the FBI as exempt, and a favorable ruling by the Ninth Circuit, the parties entered into a Settlement Agreement, which Judge Patel adopted as an order of the Court. Among other provisions, the Settlement Agreement set forth standards by which the FBI would process records responsive to Rosenfeld's FOIA requests, created a calendar for the disclosure of responsive records, established a procedure whereby Rosenfeld could bring challenges to the FBI's compliance with the agreement before a magistrate, and established that Rosenfeld would be entitled to request attorneys' fees from Judge Patel for any successful challenge. [Docket #13 Exh. B]

The FBI claimed to have completed its required processing of records under the Settlement Agreement some 10 years later, on February 28, 2006. Rosenfeld then initiated several challenges to the FBI's compliance with the Settlement Agreement before Magistrate Judge Laporte. The results of those challenges will be the subject of a separate attorneys' fees and costs request.

B. **THE INSTANT CASE**

1. **The FOIA Requests**

The instant litigation was filed in August 2007 and concerns FOIA requests regarding Ronald Reagan and several other closely related subjects. Rosenfeld sought these records as a continuation of his previous research with a special focus on Ronald Reagan's life from the time he rose to

prominence as an actor, through his service as the president of the Screen Actor's Guild and his two terms as governor of California. Rosenfeld planned both to continue to produce long-form journalism about the FBI's activities in California, and to write the book described above. [8th Rosenfeld Decl. ¶¶ 17-21]

As part of the 1996 Settlement Agreement, the FBI had agreed to process Rosenfeld's request for all nonexempt portions of records concerning Ronald Reagan that were dated before January 1, 1979. The Settlement Agreement specified that the Reagan request was a new and separate FOIA request and not subject to either the processing or challenge procedures set forth in the Settlement Agreement, or governed by the prior rulings in that case.[1] [Docket #13 Exh. B]

Finding that the FBI had not fulfilled its obligation to search for and produce all responsive, non-exempt Ronald Reagan records, Rosenfeld in 2007 filed this case, No. C-07-3240-MHP (the "2007 Case"). This lawsuit encompasses that original **Ronald Reagan** request plus several other requests for records regarding subjects closely related to Ronald Reagan: **Herbert Ellingwood**, a prosecutor in the Alameda County District Attorney's Office who later served in Governor Reagan's cabinet; **Alexander C. Sheriffs**, the vice-chancellor in charge of student affairs during the Free Speech Movement who later served as Governor Reagan's education adviser; **Roy M. Brewer**, a union official in Hollywood in the 1950s and 60s who worked with Reagan to oust communists from the film industry; **Neil Reagan**, the Governor's older brother who was known to have worked with the FBI gathering information about persons involved in left-wing political activity in Hollywood; records from the FBI's Sacramento Filed Office containing the **"80"** designation; and, files related to three organizations that existed in Hollywood during the Cold War era and was involved in eliminating suspected communists from the film industry, the **Motion Picture Industry Council**, the **Labor League of Hollywood Voters**, and the **Motion Picture Alliance for the Preservation of American Ideals**. [Docket #13]

---

[1] In the interest of efficiency, Rosenfeld first sought to have the Ronald Reagan request issues included in his challenges to the FBI's noncompliance with the Settlement Agreement he brought before Magistrate Judge Laporte. The FBI objected and demanded that Rosenfeld instead file a new lawsuit. Rosenfeld thus withdrew his challenge based on the Ronald Reagan request and filed the instant litigation.

In his complaint, Rosenfeld alleged that the FBI failed to search adequately for the requested records and improperly withheld as exempt records it did find. [Docket #1] After the FBI raised statute of limitations concerns with respect to the original Ronald Reagan request, Rosenfeld filed a new request for Ronald Reagan records all predating January 1, 1979 that had not previously released to him, and, following the FBI's constructive denial, amended his complaint to include the FBI's failure to comply with this new request as the eighth cause of action. [Docket #13]

## III.   COURT'S RULINGS AND THE PRODUCTION OF RECORDS

The resolution of this case required four rounds of summary judgment motions. The Court's rulings on these motions led directly to the production of numerous records of interest to the public.[2]

### A.   FIRST CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties agreed to bifurcate the proceedings so all issues other than exemptions would be adjudicated first with exemption disputes subject to a second proceeding at a later time. Accordingly, in June 2008, Rosenfeld moved for summary judgment on the issue of the FBI's failure to adequately search for and produce responsive records with respect to each subject except for the Sacramento "80" files. [Docket #30] The FBI cross-moved, claiming that, for each request, it had fulfilled its obligations under FOIA to conduct a reasonable search for responsive records. [Docket #27]

Prior to the Court's ruling, in a declaration submitted in support of the FBI's opposition to Rosenfeld's motion for summary judgment, the FBI indicated that it would comply with Rosenfeld's

---

[2] The FBI produced numerous pages of records after the filing of the complaint but before the first cross-motions for summary judgment. The FBI released 35 pages of records responsive to the Ronald Reagan request on April 11, 2008 (corresponding to cross-references noted in Rosenfeld's May 4, 2006 letter as never having been produced); 14 pages responsive to the Ellingwood request were released on April 4, 2008 as a result of what the FBI called a search of unspecified inactive indices for cross-references; 22 pages responsive to the Sherriffs request were produced on April 1, 2008; 290 pages responsive to the Brewer request were released on April 2, 2008; 9 pages responsive to the Neil Reagan request were produced on April 3, 2008; 991 pages regarding the Motion Picture Alliance were produced on September 28, 2007; 1,018 pages of records responsive to the MPIC request were produced on February 28, 2008. Many of these releases were the result of a telephone conference and correspondence between the parties in December 2007. Aside from MPIC, each of these requests had previously been deemed closed by the FBI. [8th Rosenfeld Decl. Exh. ZZ]

request that it reprocess documents released to Rosenfeld in 1996 and 1997 to see if information that had previously been redacted could now be released because of subsequent declassification, the death of an individual for whom a privacy interest had been asserted, or any other basis for additional disclosure. [Docket #35 ¶ 17] Because the former production to Rosenfeld that was to be re-processed was no longer stored as compiled, the FBI undertook an entirely new search for Ronald Reagan records, and in so doing, located "quite a mass of records that were not originally located or they weren't processed because they were determined to be non-responsive." [Docket #62 at 25:12-15] These re-processed records were ultimately produced on February 6, 2009, March 9, 2009, March 12, 2009, April 1, 2009, April 20, 2009, and May 8, 2009, totaling approximately **5,200 pages** of records. [8th Rosenfeld Decl. Exh. ZZ]

The Court granted in part and denied in part both cross-motions in an August 22, 2008, order. [Docket #47] The Court's orders on the substantive issues raised by the parties were as follows:[3]

1.      **Adequacy of Search Issues**

a.      **The Court's Order**

As to the adequacy of the FBI's search, the Court found numerous deficiencies in the FBI's evidentiary submissions and ordered the FBI to submit the following additional information:

(1)      The basis for declarant David Hardy's knowledge of the methods by which field office records were searched;

(2)      For FBIHQ and each filed office, (a) the nature and scope of all databases and indices maintained by defendants, including a description of the data contained in the same; (b) which databases and indices were searched in response to Rosenfeld's requests, including case indices, whether within or without the Central Records Systems

---

[3] The FBI had also moved for summary judgment on the grounds that the causes of action based on two of Rosenfeld's requests (those for Brewer and the Labor League of Hollywood Voters) were barred for failure to exhaust his administrative remedies, and that the first cause of action based on the request for Ronald Reagan records was barred by the statute of limitations. The Court rejected the FBI's claims that the Brewer and Labor League of Hollywood Voters records request were not properly before the Court. The Court also ruled that although the first cause of action based on the first Ronald Reagan request was barred by the statute of limitations, it did not practically matter because the eighth cause of action, based on the substantially similar second Ronald Reagan request, was not so barred, a point the FBI conceded at the hearing.  [Docket #47 at 14:25-26]

(CRS); (c) what terms were searched, or if a different mechanism for searching was used, to explain the same; (d) when the search was performed; (e) where the search was performed; and (f) which databases and indices were not searched and why not; to the extent certain databases were not searched, the defendants must explain the primary purpose of those databases, so the Court could assess if it was reasonable for defendants to exclude them from the search;

(3)     An explanation of how burdensome it would be to conduct a page-by-page review for mentions of Ronald Reagan in the main files for several other subjects specified by Rosenfeld, including the size of the files to be searched, the amount of time and effort required and the likelihood of finding responsive documents;

(4)     For manual records, for the FBIHQ and each field office, including technology and records centers, the Court ordered the FBI to "(a) explain what databases (that must be searched manually) are located in that office, including a description of the information stored in these databases and an explanation of how the files are organized; (b) list which of these databases were searched; (c) the mechanics of how they were searched, e.g., by search term; and (d) to the extent that any of these databases were not searched, provide a detailed rationale for this decision. Information about who conducted the search, when it was conducted and how long it took to conduct the search, though not required, would also aid the court in reaching a decision about reasonableness";

(5)     With respect to the index cards that facilitate manual searches of records generated prior to the September 24, 1987 automation of the General Indices, the Court ordered the FBI to explain what records prior to the date of automation would be covered by a search of the automated databases or other databases that must be manually searched, whether a manual search of the index cards those records not covered by automated databases was conducted and if manual searches were not conducted an explanation as to why;

(6)     A list of field offices that do not create search slips to keep track of FOIA searches

7

performed, and for each office an explanation of how each keeps track of such searches and whether they create any written records to document the searches; and,

(7)     For all records identified as lost or destroyed, a list of individuals that searched for lost or destroyed records and what steps were taken to retrieve the documents.

**b.     Actions Taken Pursuant to Order**

The FBI filed supplemental declarations on September 22 and 23, 2008 setting the forth the information requested by the Court. [Docket ##48-52] Rosenfeld contested the sufficiency of those declarations. [Docket #59 at 8-15]

In an effort to resolve these disputes regarding the adequacy of the searches the FBI performed, the parties entered into an agreement on February 9, 2009. With respect to #3 above, pertaining to Rosenfeld's request that page-by-page searches be conducted for Ronald Reagan references in certain subject files in which Reagan was likely to be included, the FBI for the first time disclosed that many of these subject files were quite large and could not be practically searched. [Docket #49] In response, Rosenfeld offered to limit his request to a page-by-page search of the Screen Actors Guild files for the years 1946 through 1950 inclusive. [Docket #59 at 4] On February 9, 2009, the FBI agreed, as part of a larger agreement, [Docket #62] and **747 pages** of responsive records found in the SAG files were produced on April 30, 2009. [8th Rosenfeld Decl. Exh. WW]

The parties further agreed that the FBI would conduct new and more thorough searches for records regarding Neil Reagan and Alexander Sherriffs. [Docket #62] As a result, **106 pages** pertaining to Neil Reagan , and **158 pages** pertaining to Sherriffs were produced on March 30, 2009. [8th Rosenfeld Decl. Exhs. PP, TT]

**2.     Failure to Produce Requested Cross-Reference Pages**

Rosenfeld also argued that the FBI did not produce all responsive pages from cross-references — that is, records that mention a subject but are contained in the file of a different subject — because the FBI did not produce the specific pages of such records Rosenfeld requested.[4]

---

[4] Rosenfeld specifically requested that for larger cross-references the FBI produce the first and last page, the page on which the subject is referenced and a specified number of pages on either side of the reference, as well as any other pages needed for context.

### a.     The Court's Order

Rejecting the FBI's more limited approach, the Court ordered as follows:

> [I]f the cross-reference appears in a document that is less than ten pages long, then the entire document is to be searched and provided, otherwise, if the cross-reference appears in a longer document with headings and sections, the relevant section in which the reference appeared is to be searched and provided. In addition, for every cross-reference, the entire introduction section of the document and the administrative pages of the document are to be searched and provided to Rosenfeld.

[Docket #47 at 20]

### b.     Action Taken Pursuant to Order

In September 2008, the FBI submitted supplemental declarations in response to the Court's order. [Docket ##49,52] Within those declarations, the FBI indicated that it had searched for and identified 134 cross-references and had re-processed those cross-references as stated in the Court's order and as requested by Rosenfeld. Although 89 of the cross-references were found to have been processed previously in compliance with the Court's order, the remaining 44 were not, and the FBI, as ordered by the Court, produced the theretofore-unproduced **pages from the 44 cross-references**. [8th Rosenfeld Decl. Exh. ZZ]

Pursuant to further agreement of the parties, in November 2009, the FBI agreed to reprocess additional cross-references that had not been re-processed in accordance with the Court's August 22, 2008 order. [Docket #73] As a result, approximately **800 pages** were released to Rosenfeld on January 24 and 29, 2010. [8th Rosenfeld Decl. Exh. ZZ]

### 3.     Abstract Cards

The FBI had categorically refused to search and produce records from its abstract card system.[5] The FBI claimed that it would take an employee 38 years to search the abstracts cards individually to see if any of them mentioned any of the requested subjects. Rosenfeld had argued that the FBI had already identified the serial numbers of responsive records so all it had to do was

---

[5] The FBI used the abstract card system from 1921 to 1979 to assist in the sequential numbering of records within a file and to distinguish documents within a given file. [Docket #47 at 23]

9

find the abstract cards corresponding to those specific serials, an act that should not be that difficult because most of the boxes of abstracts stored in the National Records Center were marked with the range of serial numbers contained within them.

### a.       The Court's Order

The Court ordered the FBI to submit a declaration stating the costs associated with fulfilling the specific requests made by Rosenfeld so that the Court could assess whether the FBI's refusal to search for and produce the abstracts was reasonable. [Docket #47 at 23]

### b.       Action Taken Pursuant to Order

The FBI submitted a declaration, to which Rosenfeld objected as insufficient. [Docket #50] After meeting and conferring, the parties agreed that the FBI would produce the abstracts corresponding to six serials specified by Rosenfeld and all abstracts corresponding to records authored by Ronald Reagan and Sherriffs. [Fourth Declaration of David Greene, In Support of Rosenfeld's Motion for Attorneys' Fees and Costs ("4th Greene Decl.") Exh. C] These abstracts were produced on February 6, 2009. [8th Rosenfeld Decl. Exh. ZZ]

## B.       SECOND CROSS-MOTIONS FOR SUMMARY JUDGMENT RELATING TO ADEQUACY OF SEARCH AND EXEMPTIONS

The parties agreed to present their remaining adequacy of search and exemption disputes to the Court for resolution in second summary judgment motions. [Docket ##82, 85]

### 1.       Remaining Adequacy of Search Issues

### a.       Summary Memos

Summary memoranda are documents created by the FBI that catalogue all references to a certain subject as of the date of the memorandum. An index card produced to Rosenfeld indicated that on various dates in 1959, 1965, 1967, 1975 and 1976, the FBI created seven summary memos describing records in its files that contained references to Ronald Reagan. [Docket #87 ¶ 7 & Exh. G] For example, the cover sheet to the summary memo listed as record 80-579-3 describes its contents as follows:

The following is a summary of information obtained from a review of all references subsequent to September 28, 1959 to the subject in the Los Angeles files under the name listed above [Ronald Reagan]. All references under the above name containing

10

data identical or possibly identical with the subject have been included. This
summary is designated to furnish a synopsis of the information set in each reference.

[Docket #86 Exh. I] The summary memo then lists records, by file and serial number, in the left

column. The right column contains several paragraphs describing the contents of each record.

These summary memos were clearly intended to act as both a summary and as a sub-index,

referring one looking for records to the summary memos for further references. The index card for

Ronald Reagan specifically says "See summary memo." [Docket #87 Exh. G] Nevertheless, the FBI

maintained that it had no duty to search for and produce the records listed in the summary memos if

such records were not themselves separately identified through a search of the FBI's CRS or manual

indices.

### (1) The Court's Order

The Court agreed with Rosenfeld: "Here, it is undisputed that the summary pages catalog the

existence of documents pertaining to Ronald Reagan in particular files that the FBI has refused to

search. . . . Accordingly, the FBI's failure to search for, let alone produce specific, identified

documents the existence of which are not disputed demonstrates that an adequate search was not

performed." [Docket #98 at 7] The Court ordered the FBI to search for, process and produce all

responsive records specifically identified in the summary memos that had not been destroyed

### (2) Records Produced

The FBI released **743 pages** by letter dated September 28, 2010. [Docket #99-1 ¶ 9-10;

Docket #99-2; Docket #102 at 3]

### b.        Records labeled as Non-Responsive

Rosenfeld challenged the FBI's practice of refusing to produce records it labeled as "non-

responsive" to Rosenfeld's FOIA requests — despite the fact that such records were in fact indexed

to Rosenfeld's subjects — because upon reviewing the records, the FBI did not have "enough

information to determine if the named subject was the subject of the request." [Docket #92 at 5]

### (1) The Court's Order

The Court agreed with Rosenfeld that the FBI violated FOIA by refusing to disclose these

records. As the Court stated, "It strains credibility for the FBI to now argue that its agents index

records to a search term even if the record bears no reference to the indexed search term." [Docket

11

#98 at 8] However, the Court, acknowledging the burden it would place on the FBI to reprocess all of these records, ordered the FBI to re-process 30 of the files that had been labeled as "non-responsive" for that reason. [Docket #98 at 8]

### (2) Records Produced

Pursuant to the Court's order, the parties met and conferred and agreed that the FBI would comply with the Court's order by re-processing 32 Ronald Reagan files that had been labeled by the FBI as "non-responsive." [4th Greene Decl. Exh. D] The FBI produced **4 of these 32 files** on September 3, 2010. [Docket #99-1 ¶ 14]

### 2.   Exemptions

#### a.   Reprocessing of All Records

With respect to the exemptions, the parties agreed to a representative <u>Vaughn</u> index process. Accordingly, rather than produce a <u>Vaughn</u> index for each exemption on the approximately 11,000 pages of records identified as responsive to Rosenfeld's FOIA requests, the parties agreed to a <u>Vaughn</u> sample, whereby Rosenfeld would select up to 1,000 pages of records for inclusion in the <u>Vaughn</u> index; the Court's rulings on those exemptions would then be applied to all the documents.[6]

In the interest of efficiency and manageability, Rosenfeld specified exemptions on only 119 pages[7] with a total of 486 deletions[8] that the FBI needed address in its <u>Vaughn</u> index. Pursuant to the agreement of the parties, the FBI, on March 8, 2010, produced a draft <u>Vaughn</u> index addressing all of the exemptions claimed in a first set of records that Rosenfeld had specified. However, when the FBI filed the final version of its <u>Vaughn</u> index, on April 23, 2010, it rescinded **150 of these deletions**, 31% of all the deletions claimed. Apparently upon further review, the FBI realized it had

---

[6] The purpose of a sample <u>Vaughn</u> process is to allow the court to "with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" <u>Bonner v. Dep't of State</u>, 928 F.2d 1148, 1151 (D.C. Cir. 1991).

[7] In addition to these 119 pages, Rosenfeld also included an additional 60-page document that had been withheld in full on the instruction of another agency. This document was ultimately produced at that same agency's instruction.

[8] This number reflects the total number of deletions in the specified pages. However, Rosenfeld did not ask that each deletion be addressed in the sample <u>Vaughn</u> index. Thus the number of challenged deletions was actually lower and the percentage of rescinded deletions much higher.

12

originally deleted the names of several deceased persons, had deleted information that was non-derogatory or political in nature, had deleted names of exposed sources, and had deleted illegible material. [See Docket #85 at 19-20 & nn.16-19] On this basis, Rosenfeld, noting that it is the Court's duty to determine "whether the released material was properly withheld when initially reviewed by the agency," <u>Bonner</u>, 928 F.2d at 1149, moved the Court to extrapolate this rate of rescission to the entire group of withheld materials and thus order the FBI to re-process all of the responsive records.

The FBI responded that it did not err in claiming exemptions in the first instance but that the additional disclosures were merely "discretionary."[9] [Docket #91-1 ¶¶ 21-22] However, the FBI stated that "in light of these efforts to release additional information, the FBI has determined that it will undertake a re-review and re-processing of the Ronald Wilson Reagan and SAG records in order for the processing of these records to be consistent with the prior discretionary disclosures," approximately 6,000 to 8,000 pages of the 11,000 produced. [Docket #91-1 ¶ 22]

### (1) The Court's Order

The Court questioned the FBI's claims that its revoked exemptions claims were merely discretionary noting that the FBI "did not explain why administrative discretion was exercised upon reprocessing the sample, but not during the original release." But the Court found that in light of the voluntary re-processing, no further reprocessing was "necessary at the time." [Docket #98 at 12-13]

### (2) Records Produced

The FBI released over **7,000 pages** of reprocessed records by letter dated September 3, 2010. [8th Rosenfeld Decl. Exh. II]

### b.    Exemptions 6 and 7

Rosenfeld contended that several of the FOIA subsection 7 exemptions were not properly applied to certain specified deletions because for each the FBI could not demonstrate the threshold requirement that the record from which the information was withheld was not "compiled for law enforcement purposes." Rosenfeld specifically contended that the FBI did not have a legitimate law enforcement purpose in supporting Ronald Reagan's political career or in monitoring mere

---

[9] However, the FBI explained that only 32 of the rescinded deletions were instances in which it believed it was actually under no legal obligation to disclose the information. [Docket #91-1 ¶ 19]

13

membership in the Communist party after 1957. Rosenfeld thus moved the Court to order the release of the material deleted from six pages must be produced.

Rosenfeld also contended that exemption 7 could not be claimed for any records compiled in "80" or "100" files because such files were by their nature created for non-law enforcement purposes, namely, public relations and subversive, though not criminal, activities, respectively. Rosenfeld specified deletions on 15 pages that were improperly made.

Rosenfeld also contended that the FOIA subsection 6 personal privacy exemption was improperly applied because the public value in disclosure of the identity of and information about deceased persons, exposed sources and persons for whom Rosenfeld submitted privacy waivers always outweighs those individuals' privacy interests, and that the privacy interests of public figures and public figures are also sharply diminished.

### (1) The Court's Order

The Court agreed with Rosenfeld regarding the lack of legitimate law enforcement purpose in supporting Ronald Reagan's political career and in investigating mere membership in the communist party after 1957, and ordered the **6 pages** released without the redactions. With respect to the "80" and "100" files, the Court did not reach the issue of whether the exemption did not apply categorically to all records in those files. But analyzing the specific claims of exemption, it ordered that the deletions on **4 additional pages** be released. With respect to the exemption 6 claims, the Court agreed and ordered the FBI to produce ordered the FBI to release **7 pages** without deletions on this basis. [Docket #98 at 15-18]

### (2) Records Produced

The records specified by the Court were released by cover letter dated September 3, 2010. [8th Rosenfeld Decl. Exh. II]

### C.    THE FBI'S THIRD MOTION FOR SUMMARY JUDGMENT

Upon re-processing the records specified in the Court's order on the second motions for summary judgment, as well as the Ronald Reagan and SAG records it agreed to reprocess, and producing or accounting for all of the records listed in the summary memos, and re-processing the records it had initially labeled as "non-responsive," the FBI moved for summary judgment on the

---

1    basis that it had complied in full with the Court's orders. [Docket #99]

2           Rosenfeld opposed on several grounds. First, Rosenfeld contended that the FBI was required

3    to apply the Court's representative rulings with respect to exemptions to the portion of the records

4    that were not included in the sample <u>Vaughn</u> index, and, as examples, specified 174 pages of records

5    from the recently re-processed Ronald Reagan and SAG records to which the Court's exemptions

6    rulings clearly had not been. He also contended that the FBI improperly withheld four "non-

7    responsive" files that it did not affirmatively find not to pertain to Ronald Reagan. He also claimed

8    that several records produced to him were illegible. [Docket #101]

9                   **1.     Court's Order**

10          The Court reviewed the "non-responsive" files in camera and released an additional 3 pages

11   on February 10, 2011. [Docket #113] The Court ordered the FBI to produce the original versions of

12   the illegible records in its office so that Rosenfeld could review the originals. With respect to the

13   Court's <u>Vaughn</u> sample rulings, the Court ruled that its "representative rulings on the exemptions

14   must thus be re-processed to apply the representative rulings on exemptions" and ordered the parties

15   to meet and confer to devise a process for such re-processing to occur. The Court ultimately ordered

16   the FBI to reprocess 1,300 randomly selected documents from the 13,000 pages of records produced.

17   [Docket #115 at 5-8]

18                  **2.     Records Produced**

19          As noted, the Court itself released **3 pages** of records the FBI had deemed "non-responsive."

20   The illegible records were made available to Rosenfeld. The FBI processed **1,300 pages** applying the

21   Court's representative rulings on exemptions. This included the 174 pages specified by Rosenfeld

22   and 1,126 randomly selected by the FBI. [8th Rosenfeld Decl. Exhs. GG, HH]

23          **D.     FOURTH ROUND OF SUMMARY JUDGMENT MOTIONS**

24          Following an unsuccessful effort to settle all of Rosenfeld's outstanding FOIA matters with

25   the FBI, Rosenfeld moved in January 2012 for summary judgment seeking redacted information

26   from four documents: (1) Ronald Reagan 2201, (2) Ronald Reagan 2198, (3) Ronald Reagan 1539-

27   1541, and (4) Ronald Reagan 4162. [Docket #133] Defendants filed a cross-motion for summary

28   judgment, indicating that they had released the redacted information in Ronald Reagan 2198 and

Ronald Reagan 2201. Defendant then released the redacted information concerning **Ronald Reagan 4162**, leaving the three pages at Ronald Reagan 1539-41 as the only disputed records remaining at issue. [Docket #137]

### 1.    Court's Order

On March 5, 2012, this Court, following an in camera review, ruled that the FBI had improperly applied Exemptions 6 and 7(C) to the records and ordered the documents released. [Docket #144 at 5-11]

### 2.    Records Produced

The FBI subsequently released the **3 pages** of unredacted records to Rosenfeld by cover letter dated March 14, 2012. [8th Rosenfeld Decl. Exh. ZZ]

### E.    JUDGMENT

This Court entered judgment for Rosenfeld on March 28, 2012. [Docket #147]

## III.   ARGUMENT

FOIA provides, in pertinent part, that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

The Ninth Circuit has adopted a two-step approach to determine whether a plaintiff is entitled to an award of fees and costs under 5 U.S.C. § 552(a)(4)(E). First, the complainant must demonstrate that he is eligible for fees by showing that he has substantially prevailed. Church of Scientology of Cal. v. U.S. Postal Serv., 700 F.2d 486, 489 (9th Cir. 1983). If the complainant has made this showing, the Court may then exercise its discretion to determine that the complainant is entitled to attorneys' fees. Id. at 492.

Once the court determines that the plaintiff is entitled to fees, it then exercises its discretion, guided by the lodestar approach, to fix the amount of fees to be awarded. Hensley v. Eckhart, 461 U.S. 424, 433 (1983).

Applying this test, it is clear that Rosenfeld is entitled to his attorneys' fees in full.

///

///

PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS      Case No. 3:07-cv-03240-EMC
#79750 v1 saf

### A.   ROSENFELD IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

#### 1.   Rosenfeld Is *Eligible* For Attorneys' Fees And Costs Because He Has Substantially Prevailed

A FOIA plaintiff has "substantially prevailed" if he has obtained relief through either "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii) (as amended effective December 31, 2007).[10] The plaintiff meets this burden by presenting evidence that: (1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information, that is, that the plaintiff had a compelling need to bring the litigation; and (2) the filing of the action had a *substantial causative* effect on the delivery of the information, that is, that the suit resulted in the production of the documents. Church of Scientology, 700 F.2d at 489 (emphasis in original) (interpreting the catalyst theory of fee recovery reinstated by the 2007 FOIA amendments).

Applying this standard, Rosenfeld is eligible for attorneys' fees.

Litigation was necessary in this case. Indeed, the FBI insisted that Rosenfeld file this separate lawsuit, rebuffing his effort to have the dispute over the Ronald Reagan records resolved with the challenges to the Settlement Agreement instead. And for all of the other FOIA requests, aside from MPIC, the FBI had rejected several administrative appeals from Rosenfeld and asserted that it had fulfilled its duties under FOIA. Lastly, the amount of resistance asserted by the FBI during the course of this litigation, as detailed above, makes clear that but for this litigation, the FBI would not have produced the records that were ultimately supplied to Rosenfeld.

And it is indisputable, under any standard, that the lawsuit was the cause of the production of the voluminous records to Rosenfeld. Not only did the Court directly order the FBI to search for,

---

[10] The Ninth Circuit has held that subsection (4)(E)(ii) does not operate retroactively with respect to an attorney fee award entered before the effective date of the statutory amendment. Oregon Natural Desert Ass'n v. Locke, 572 F.3d 610, 617 (9th Cir. 2009). However, in the present case, although the First Amended Complaint was filed before the effective date of the amendment, all of the pertinent court orders and record productions occurred after the amendment's effective date. See Judicial Watch v. Bureau of Land Mgt., 610 F.3d 747, 750 (D.C. Cir. 2010) (denying applicability of amendment because the records were produced before the effective date).

17

process and release numerous records, numerous other records were released during the course of the litigation after it became clear that the FBI's legal positions were untenable.

**B. ROSENFELD IS *ENTITLED* TO ATTORNEYS' FEES BECAUSE THIS LITIGATION RESULTED IN BENEFIT TO THE PUBLIC, HIS INTEREST WAS THAT OF A JOURNALIST AND SCHOLAR, AND THE FBI LACKED REASONABLE BASES FOR WITHHOLDING RECORDS**

Once the plaintiff has demonstrated that he is eligible for an award of attorneys' fees, the court, exercising its discretion, considers whether he should actually receive them. Church of Scientology, 700 F.2d at 492. In so doing, the following criteria are relevant: (1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law, and (5) "'whatever factors it deems relevant in determining whether an award of attorney's fees is appropriate.'" Id. (quoting Exner v. FBI, 443 F. Supp. 1349, 1352 (S.D. Cal. 1978)).

Here, each factor weighs in Rosenfeld's favor.

**1. Public benefit**

The public benefit factor supports an award of attorneys' fees and costs where "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) A journalist's practice of obtaining information for the express purpose of disseminating it to the public is the quintessential example of when this factor is met. See Church of Scientology, 700 F.2d at 492 n.6 ("'Under the first criterion a court would award attorney's fees, for example, where a newsman was seeking information to be used in a publication[.]'") (quoting S. Rep. No. 93-854 at 19 (1974)). And the more widespread the dissemination, the stronger the public benefit. Blue v. Bureau of Prisons, 570 F.2d 529, 533 (5th Cir. 1978). The fact that the FOIA requester is planning to write a book using the information obtained through the litigation thus weighs in favor of entitlement to attorneys' fees. See Piper v. Dep't of Justice, 339 F. Supp. 2d 13, 22 (D.D.C. 2004). A public benefit also exists in FOIA requests for information that seek to hold government agencies accountable for their actions. See, e.g., Jarno v. DHS, 365 F. Supp. 2d 733, 738 (E.D. Va. 2005) (finding public interest in release of

18

1   records regarding agency's handling of a high-profile asylum case); <u>Piper</u>, 339 F. Supp. 2d at 21

2   (finding public benefit where information concerned allegations of FBI evidence tampering).

3        There can be no dispute that the public benefits from the release and dissemination of

4   information detailing the FBI's support of the man who would become Governor of California and

5   President of the United States during the crucial period in Reagan's political life when he established

6   himself as a national political figure. The records released are the most detailed record publicly

7   available of the FBI's activities in this respect and cover a wide range of subjects: information that

8   the FBI collected on Reagan's political activities in Hollywood, reports of the FBI's investigation of

9   alleged communists in Hollywood, reports showing that Reagan was more active as an FBI

10  informant in Hollywood than previously known publicly, communications between J. Edgar Hoover

11  and Reagan, informant reports concerning Reagan, and documents showing that FBI officials did

12  personal and political favors for Reagan, such as providing him information about his children's

13  social activities. [8th Rosenfeld Decl. ¶ 92]

14       That Rosenfeld will be publishing the information gleaned from these records in a book

15  further supports the public benefit of this lawsuit. And as detailed in Rosenfeld's declaration, the

16  lack of access to the FBI's records on Ronald Reagan had been a source of frustration to Reagan's

17  biographers. [8th Rosenfeld Decl. ¶¶ 38-46] But for this lawsuit, numerous specific documents of

18  great interest and historical importance would have remained hidden from public view. Rosenfeld's

19  declaration also includes detailed of descriptions of examples of specific records produced to him

20  regarding Ronald Reagan and the other subjects, and an explanation of how their release inures to

21  the public benefit. [8th Rosenfeld Decl. ¶¶ 94-175]

22       **2.    Commercial benefit and nature of complainant's interest in the records**

23       The second and third criteria, the commercial benefit and the plaintiff's interest, are often

24  considered together. <u>Tax Analysts v. Dep't of Justice</u>, 965 F.2d 1092, 1095 (D.C. Cir. 1992). As

25  with the first factor, these factors weigh in favor of entitlement if the FOIA requester intends to

26  publish the information received in a book or article. <u>Davy v. CIA</u>, 550 F.3d 1155, 1160 (D.C. Cir.

27  2008) (explaining that "news interests" should not be considered commercial interests); <u>Long v. IRS</u>,

28  932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a court "[sh]ould generally award fees if the

PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS     Case No. 3:07-cv-03240-EMC
#79750 v1 saf

complainant's interest in the information sought was scholarly or journalistic or public-oriented.") (quoting <u>Church of Scientology</u>, 700 F.2d at 492 n.6 (in turn quoting S. Rep. No. 93-854 at 19)). The fact that the FOIA requester may get paid for writing his book does not in and of itself weigh against entitlement to attorneys' fees. <u>Davy</u>, 550 F.3d at 1160 (reversing the district court's contrary conclusion because "surely every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award of attorney's fees under FOIA."); <u>Piper</u>, 339 F. Supp. 2d at 21-22 (noting that where both private and public interests exist, "[t]he fact that plaintiff will benefit commercially from potential sales of this book is not sufficient to tip the scale in favor of characterizing plaintiff solely as a commercial requester"). "[A] journalist who gathers information of potential interest to a segment of the public, uses [his] editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience" is to be "favorably treated under FOIA's fee provision." <u>Davy</u>, 550 F.3d at 1161-62 (internal quotation marks omitted).

These factors weigh strongly in favor of entitlement. As set forth above, Rosenfeld specifically requested the records in his role as a journalist who has spent decades researching and reporting on the FBI's activities in California. As he has made clear from the start of this lawsuit, these requests were made with the express purpose of providing material for his soon-to-be-published book on the relationship between Ronald Reagan and the FBI. And much of the information released to him had not previously been made public.[8th Rosenfeld Decl. ¶¶ 30-32]

### 3. Reasonableness of the agency's withholding

Even if there is an overriding private self-interest or pecuniary motivation for obtaining the records, a FOIA requester may nevertheless be entitled to attorneys' fees if the agency lacked a reasonable basis in law for withholding the records or has been "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." <u>Cazalas v. Dep't of Justice</u>, 709 F.2d 1051, 1054 (D.C. Cir. 1983) (quoting S. Rep. No. 93-854 at 19 (1974)). <u>See also</u> <u>Miller v. Dep't of State</u>, 779 F.2d 1378, 1390 (8th Cir. 1985) ("When a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under the Act to be reimbursed for the cost to which he has been put."). But this factor is not required; when the information obtained is in the public interest, a

journalist FOIA requester should ordinarily be entitled to fees "even where the government's defense had a reasonable basis in law." S. Rep. 93-854 at 171-72 (1974). The agency bears the burden of demonstrating the reasonableness of its positions. <u>Davy</u>, 550 F.3d at 1162-63.

The following are just a few noteworthy examples of the FBI's unreasonable positions and recalcitrance in this case:

As explained above, the FBI moved for summary judgment on statute of limitations grounds on the Ronald Reagan request. It did so, knowing that a win on this point would make no difference because Rosenfeld had renewed his Ronald Reagan request.

In support of this ineffectual statute of limitations argument, the FBI attested that it had completed processing the request on February 27, 1997, and disputed Rosenfeld's contention that the FBI continued to process the request until February 28, 2006. However, in a declaration filed by David Hardy in response to the Court's order on the first round of summary judgment motions, the FBI produced evidence that the Los Angeles field office had in fact continued to process the Ronald Reagan request from June 2004 through October 2005. [Docket #48 ¶¶ 15-18]

As detailed above, the FBI staunchly refused to even look for the records listed in the seven summary memos, even though the express purpose of the memos was to assist those looking for responsive records and even though the FBI had previously acknowledge that its indexing system is adequate because even if it does not include all responsive records, it points to places where non-indexed, but responsive, records might be found.

The FBI asserted privacy exemptions in numerous instances where it was eminently obvious that the individual's privacy interests were either sharply diminished or non-existent. Among many other examples, it redacted Edwin Meese's resume, the name of a person it reported as starring in a movie, and, from several documents, the name of Michael Reagan, who in addition to being Ronald Reagan's son is a public figure in his own right.

And despite agreeing to a sample <u>Vaughn</u> index procedure, the FBI then refused to apply the Court's representative rulings to any portion of the non-sampled records until specifically ordered to do so by the Court.

In sum, all factors weigh in favor of Rosenfeld's entitlement to attorneys' fees.

### C.   THE FEES ROSENFELD SEEKS ARE REASONABLE

Once a plaintiff has proven both eligibility for and entitlement to fees, the award must be given, and the Court has discretion only to determine the reasonableness of the amount sought. Long, 932 F.2d at 1314. Calculation of fees is based on a lodestar figure, which is the number of attorney hours reasonably spent on the matter multiplied by the lawyers' reasonably hourly rates. Hensley v. Eckhart, 461 U.S. 424, 433 (1983). An applicant for attorneys' fees is entitled to an award for "time reasonably expended." Nat'l Ass'n of Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1327 (D.C. Cir. 1982). If the Court finds that both the hours expended and the corresponding hourly rates are reasonable, there is a "strong presumption" that the lodestar represents a reasonable award. Long, 932 F.2d at 1314.

### 1.   The number of hours expended on this matter are reasonable

The number of hours expended by Rosenfeld's lawyers from the nonprofit organization First Amendment Project was reasonable, especially considering the volume of records at issue, the variety of issues raised, and the number of court proceedings required to resolve all disputed issues. The specific work performed over the five years this case was pending is detailed in the Declarations of James Wheaton ("Wheaton Decl.") and David Greene ("4th Greene Decl."), filed herewith, and the detailed time records attached thereto.[11] As the declarations make clear, these hours reflect only productive time or time expended on issues for which Rosenfeld ultimately prevailed. See Concerned Veterans, 675 F.2d at 1327. The evidence demonstrates that counsel on behalf of Rosenfeld's counsel worked efficiently and spent a reasonable amount of time on these tasks.

### 2.   The hourly rates of Rosenfeld's counsel are reasonable

The proper hourly rate is the rate "prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir. 1997) (examining hourly rate under § 1988). Evidence of the proper hourly rate can take the form of affidavits reciting precise fees that attorneys with similar qualifications have received in

---

[11] The material is presented in three phases. For Phase I, running from the inception of the case through January 31, 2011, reflecting the data that was previously compiled and presented to the FBI. Phase II includes the time from January 31, 2011 through March 5, 2012. Phase III includes only time spent on this fee motion.

similar cases, the rate the attorney had been awarded in prior litigation, and the rate the attorney charges to paying clients in her legal practice. <u>Concerned Veterans</u>, 675 F.2d at 1325-27.

As the evidence here makes clear, the hourly rates requested are reasonable and well within the prevailing hourly rates in the San Francisco Bay Area (the relevant legal market) for lawyers of comparable skill, experience, and reputation who handle matters of the type involved in this case.

Rosenfeld's counsel, First Amendment Project (FAP) is a non-profit organization providing direct legal representation on public interest free speech and free press matters. The hourly rates applied in this fee motion are the actual rates set forth in FAP's representation agreement with Mr. Rosenfeld. FAP sets its rate for its lawyers and interns based on the prevailing market rates for attorneys of similar experience and expertise using data obtained from fees awarded in other pro bono and contingency matters. [Wheaton Decl. ¶ 32-33; Declaration of Richard Pearl, filed herewith] FAP's fee rates have been approved of as reasonable by numerous courts in California, both federal and state. [Wheaton Decl. ¶ 24]

David Greene was Executive Director and Staff Counsel of FAP during the period from the commencement of this action through July 2011. Since August 2011, he has been counsel at Holme, Roberts & Owen LLP and its successor, Bryan Cave LLP. He is an experienced litigator with over 20 years of experience devoted mostly to First Amendment law. His hourly rate since 2011 has been $550 per hour. His 2009 rate of $500 per hour has been approved by California courts and was recently affirmed by the California Court of Appeal. [4th Greene Decl. ¶ 10] James Wheaton is the co-founder and Senior Counsel at FAP. He is an experienced litigator with 28 years of experience in public interest law, including First Amendment law for the last 21 years at the First Amendment Project. His standard hourly rate of $700 has been approved of as reasonable by other state and federal courts in California. [Wheaton Decl. ¶¶ 15-24] FAP staff attorney Maria Williams, who had 10 years of experience but none on FOIA or First Amendment issues, had a fee rate of $250 per hour. The remaining FAP staff attorneys all were first- or second-year lawyers and thus had billing rates of $200 per hour. First Amendment Project also found it efficient to use lower billing, that is, $100 per hour, student interns and summer associate from some tasks including document management and legal research and writing. [Wheaton Decl. ¶¶ 30-31]

### 3.   The total fee, in summary, is reasonable

The total fee requested is $**353,676.80**. The fee was calculated as follows:

| Phase 1 (inception to January 31, 2011) | | | |
|---|---|---|---|
| **Professional** | **Hours** | **Rates** | **Total** |
| David Greene | 410.20 | Various | $198,461.80 |
| Geoffrey King, Staff Atty | 33.27 | $200.00 | $6,654.00 |
| James Leonard, Staff Atty | 6.37 | $200.00 | $1,274.00 |
| Maria Williams, Staff Atty | 52.75 | $250.00 | $13,187.50 |
| Michael Gorman, Staff Atty | 43.5 | $200.00 | $8,700.00 |
| Benjamin Stein, Staff Atty | 119.8 | $200.00 | $23,960.00 |
| Student Legal Interns/Summer Associates | 383.67 | $100.00 | $38,367.00 |
| **Subtotal** | 1049.56 | | $290,604.30 |

| Phase 2 (January 31, 2011 to March 5, 2012) | | | |
|---|---|---|---|
| **Professional** | **Hours** | **Rates** | **Total** |
| James Wheaton | 52.35 | $700.00 | $36,645.00 |
| David Greene | 21.93 | $550.00 | $12,061.50 |
| Lowell Chow | 64.25 | $200.00 | $12,850.00 |
| Student Legal Interns | 15.16 | $100.00 | $1,516.00 |
| **Subtotal** | 153.69 | | $63,072.50 |
| **Total Fees** | | | **$353,676.80** |

///

///

PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS      Case No. 3:07-cv-03240-EMC

#79750 v1 saf

**D.    ROSENFELD IS ALSO ENTITLED TO FEES ON FEES**

Rosenfeld is also entitled to recover fees for the attorney time expended in preparing this fee motion. Brown v. Sullivan, 916 F.2d 492, 497 (9th Cir. 1990). Although additional time will be expended in preparing reply papers and preparing for and appearing at the hearing, the amount incurred through May 28, 2012 is as follows:

| Phase 3 (Fee Motion up to and including May 28, 2012) | | | |
|---|---|---|---|
| Professional | Hours | Rates | Total |
| James Wheaton | 36.35 | $700.00 | $25,445.00 |
| David Greene | 58.0 | $550.00 | $31,900.00 |
| Lowell Chow | 12.3 | $200.00 | $2,460.00 |
| **Subtotal** | 107.65 | | $59,805.00 |
| **Total Fees** | | | **$413,483.80** |

In addition, First Amendment Project has incurred costs on behalf of Mr. Rosenfeld of $3,668.82. [Wheaton Decl. ¶ 8]

**CONCLUSION**

For the foregoing reasons, Rosenfeld's motion for an award of attorneys' fees and costs in the amount of **$417,152.62**, plus the fees that will be incurred from May 29, 2012 forward, should be granted.

Dated: May 29, 2012

BRYAN CAVE LLP

By: _____
David A. Greene
Attorneys for Plaintiff Seth Rosenfeld

25