David A. Greene (CA State Bar No. 160107)
BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, CA 94105-2994
Telephone: (415) 268-2000
Facsimile: (415) 268-1999
david.greene@bryancave.com

James R. Wheaton, SBN 115230
Lowell Chow, SBN 273856
FIRST AMENDMENT PROJECT
California Building
1736 Franklin Street, Ninth Floor
Oakland, CA 94612
Phone: (510) 208-7744
Facsimile: (510) 208-4562
wheaton@thefirstamendment.org
lchow@thefirstamendment.org

Attorneys for Plaintiff
SETH ROSENFELD

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE et al.,<br><br>Defendant. | CASE NO. 3:07-CV-03240-EMC<br><br>**FOURTH DECLARATION OF DAVID GREENE, FILED IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br><br>Date: July 13, 2012<br>Time: 1:30 PM<br>Judge: The Hon. Edward M. Chen |

I, DAVID GREENE, hereby declare as follows:

1.     I am an attorney licensed to practice law in the state of California. I am currently counsel with Bryan Cave LLP. From 1999 through July 31, 2011, I was executive director and staff counsel of First Amendment Project ("FAP"). Effective August 1, 2011, I left First Amendment Project and joined Holme, Roberts & Owen LLP as senior counsel. Effective January 1, 2012, Holme Roberts & Owen LLP combined with Bryan Cave LLP. In these capacities, I have served as one of the

1

1   attorneys of record in this matter for defendant Seth Rosenfeld.

2   2.       This declaration is submitted in support of Mr. Rosenfeld's Motion for Attorneys' Fees and

3   Costs pursuant to 5 U.S.C. § 552(a)(4)(E)(i). I make this declaration from my own personal

4   knowledge and if called as a witness would competently testify to the facts stated herein.

5   3.       Aside for the preparation of the motions for attorneys' fees, my work on this case was

6   performed while I served as Executive Director and Staff Counsel of First Amendment Project.  As

7   Executive Director, I was responsible for reviewing all attorney and staff time records. I have

8   performed that task for the records pertaining to this matter for the time records up until January 31,

9   2011, which we have denoted as Phase I. These time records are attached to the Declaration of

10  James Wheaton, filed herewith. I have further reviewed all of the time records attached to Mr.

11  Wheaton's declaration to ensure that the records accurately reflect the time I an d those I supervised

12  devoted to this matter and are based on the contemporaneously-kept time and expense records

13  maintained by First Amendment Project. Together with Mr. Wheaton, I have further reviewed the

14  records for accuracy and exercised billing judgment to remove charges for duplicative or otherwise

15  nonchargeable work. Understanding the concerns for inefficiency in law student work, legal intern

16  and summer associate time is especially heavily scrutinized before it is included in a fee request to

17  make sure that the work was efficient, non-duplicative and contributed to the successful outcome of

18  the special motion to strike.

19  4.       Until my departure from First Amendment Project, I was the attorney primarily responsible

20  for representing Mr. Rosenfeld in this matter. I was the principal authors on all papers filed with the

21  court, I was the principal point of contact for communications with the Department of Justice and

22  counsel for the Federal Bureau of Investigation, and I supervised the FAP staff attorneys, law

23  student interns and administrative staff who assisted on this matter.

24  5.       The work performed by First Amendment Project fell into the following categories:

25         a.       Factual and background research on Rosenfeld's FOIA requests;

26         b.       Preparation of the Complaint and First Amended Complaint;

27         c.       Oral and written communications and negotiations with FBI counsel;

28         d.       Legal research regarding exhaustion of administrative remedies under FOIA;

2

1      e.      Legal research regarding the statute of limitations under FOIA;

2      f.      Legal research regarding adequacy of search under FOIA;

3      g.      Drafting of and hearing on first summary judgment motion;

4      h.      Legal research regarding FOIA law enforcement exemption;

5      i.      Legal research regarding legitimate law enforcement activities;

6      j.      Legal research regarding balancing of privacy and public interests under FOIA

7  exemptions;

8      k.      Drafting of and hearing on second summary judgment motion;

9      l.      Attendance at and preparation for numerous case management conferences;

10     m.      Drafting of opposition to third motion for summary judgment;

11     n.      Attendance at hearing on third summary judgment motion;

12     o.      Preparation for and participation in mandatory settlement conference;

13     p.      Drafting of and hearing on fourth summary judgment motions;

14     q.      Management of records received from FBI and other agencies; and,

15  6.      Because of my familiarity with the case, Bryan Cave has now associated back into the case

16  for the purposes of this fee motion. As of May 28, 2012, I have spent 58.0 hours drafting the fee

17  motion and reviewing Mr. Rosenfeld's declaration. A true and correct copy of my time records as of

18  May 28, 2012 are attached hereto as **Exhibit A**. I expect that I will spend additional time writing the

19  reply papers and arguing this fee motion. I will submit a supplemental declaration to the Court to

20  account for this time.

21  7.      I have over twenty years experience litigating First Amendment matters in state and federal

22  courts. I am a 1991 graduate of Duke University School of Law and clerked for the Hon. Allen T.

23  Compton of the Alaska Supreme Court. I practiced civil litigation with Hancock, Rothert &

24  Bunshoft from 1992 to 1997, litigating many First Amendment and other cases in both the trial and

25  appellate courts.  From 1997 to 1999, I was the Program Director for the National Campaign for

26  Freedom of Expression in Washington, D.C.  Among my duties there was to assist in the preparation

27  of amicus briefs to courts across the country in high profile First Amendment cases. I joined FAP in

28  1999, first as staff counsel and later also became executive director. During my tenure at FAP, I

3

FOURTH GREENE DECLARATION, IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
Case No. 3:07-cv-03240-EMC
#79758 v1 saf

litigated numerous First Amendment cases including civil liberties actions, SLAPPs, and public records suits. In 1993, I argued *DVD Copy Control Association v. Bunner* in the California Supreme Court. I have also briefed and argued several other cases before the Ninth Circuit and California Courts of Appeal, including FOIA and other public records cases, and co-wrote the highly influential brief on behalf of amicus curiae J.M. Coetzee et al. in *In re George T.*, 33 Cal. 4th 620 (2004).

8.      I am a frequent commentator on First Amendment issues on television, radio and in print and am recognized nationally as a leading expert on freedom of artistic expression. I have lectured frequently on this and other issues. I am an adjunct professor at the University of San Francisco School of Law and an instructor in the Journalism Department at San Francisco State University teaching mass communications law. I have also taught as an adjunct professor at Golden Gate University. I have published numerous scholarly and lay articles on First Amendment issues, including most recently *The Need for Expert Testimony to Prove Lack of Serious Artistic Value in Obscenity Cases*, 10 Nexus: A Journal of Opinion (2005); *Why Protect Political Art as "Political Speech"*, 27:2   Hastings Communications and Entertainment Law Journal; and *Trade Secrets, the First Amendment and the Challenges of the Internet Age*, 23:3   Hastings Communications and Entertainment Law Journal, and as a contributor to *Censorship: A World Encyclopedia* (London: Fitzroy-Dearborn 2002).

9.      I currently serve on several professional boards including the Society for Professional Journalists-Northern California Freedom of Information Committee, the steering committees of the Free Expression Network and the Free Expression Policy Project, the governing committee of the ABA Forum on Communications Law, and on the advisory boards of arts organizations across the country. In addition, I am a founding member of the Internet Free Expression Alliance. My current curriculum vitae is attached hereto as **Exhibit B**.

10.     My fee rate for this matter since January 1, 2011 has been $550 per hour. My previous rate of $525 per hour was in effect from June 1, 2010 through the end of that year. From January 1, 2009 through May 31, 2010, my fee rate was $500 per hour. My 2008 rate was $475 per hour. My 2007 rate was $460 per hour.

FOURTH GREENE DECLARATION, IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
Case No. 3:07-cv-03240-EMC
#79758 v1 saf

11.     My 2009 rate of $500 per hour was found to be reasonable by Judge Beth Labson Freeman in *Moreland LLC v. Old Republic Title Co.*, San Mateo Superior Court case no. civ-487714, and affirmed by the Court of Appeal in *Legacy Quest v. Rosen*, no. A129177 (Cal. Ct. App., January 27, 2012). That rate was previously conceded to be reasonable by the State of California in *Whyte v. Department of Justice*, Kern Superior Court case no. S-1500-CV-244826, SPC. My 2008 rate of $475 per hour was found to be reasonable by Judge Yvette Palazuelos in *5th St. Loft, LLC v. Jordan*, Los Angeles Superior Court case no. BC 392796. My 2005 rate of $375 was found to be reasonable by Judge Manuel Real in *Marina Point Development Associates v. United States*, and Judge Lisa Guy-Schall in *Gregory Canyon, Ltd. v. Pala Band of Mission Indians*, San Diego Superior Court no. GIN029059, and conceded to be reasonable by the City of San Francisco in *Waterkeepers v. City and County of San Francisco*, San Francisco Superior Court no. CPF-02-501511 and by the State of California in *Brown v. California Department of Transportation*. My prior rate of $280 per hour, charged in 2002, was found to be reasonable by Judge Irving Feffer in *Haneberg v. Dolinger*, Los Angeles Superior Court no. BC 256737; and by Judge Joe S. Gray in *Montague v. Moore*, Sacramento Superior Court no. 01AS06016, each in mid-2002.

12.     Attached hereto as **Exhibit C** is a true and correct copy of the letter I sent to Ellen Fitzgerald on November 21, 2008. Attached hereto as **Exhibit D** is a true and correct copy of the letter I sent to Ila Deiss on September 20, 2010.

I declare under the penalty of perjury according to the laws of the State of California that the foregoing is true and correct.

Dated: May, 29, 2012 in San Francisco, California.

_____
David A. Greene

FOURTH GREENE DECLARATION, IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES
Case No. 3:07-cv-03240-EMC
#79758 v1 saf

# Exhibit A

Bryan Cave HRO

May 29, 2012

First Amendment Project

| | |
|---|---|
| Page | 2 |
| Invoice No | 926119 |
| Client No.: | 58135 |
| Matter No.: | 00010 |

**Regarding:  FOIA Fee Motion**

### Itemized Services

| Date | Tkpr | Description | Hours | Value |
|------|------|-------------|-------|-------|
| 05/09/12 | DAG | Email corrspondence with Lowell Chow regarding fee motion. | 0.50 | $ 275.00 |
| 05/14/12 | DAG | Email correspondence with Seth Rosenfeld regarding declaration; telephone conference with Lowell Chow regarding fee mtion; review and revise draft fee motion. | 5.50 | 3,025.00 |
| 05/15/12 | DAG | Rosenfeld fees:  revise fee motion telephone conference with Seth Rosenfeld regarding declaration. | 4.50 | 2,475.00 |
| 05/16/12 | DAG | Legal research for and revisions to fee motion. | 5.50 | 3,025.00 |
| 05/17/12 | DAG | Further drafting of fee motion. | 7.00 | 3,850.00 |
| 05/18/12 | DAG | Draft fee motion. | 7.00 | 3,850.00 |
| 05/21/12 | DAG | Review past correspondence, court filings and hearing transcripts for fee motion. | 7.50 | 4,125.00 |
| 05/22/12 | DAG | Revise fee motion; conference with James Wheaton, Lowell Chow and Seth Rosenfled regarding fee motion and exhibits; reviewdraft Rosenfeld declaration. | 7.75 | 4,262.50 |
| 05/23/12 | DAG | Further revisions to fee motion; prepare declaration in support of fee motion; review revised draft Rosenfeld declaration;  finalize fee agreement. | 6.75 | 3,712.50 |
| 05/24/12 | DAG | Review Roseneld decalration; final revisions to fee motion; finalize Greene fee declaration. | 6.00 | 3,300.00 |

**Total Fees Through May 29, 2012:   58.00   $   31,900.00**

### Timekeeper Rate Summary

| Initials | Name | Rank | Rate | Hours | Value |
|----------|------|------|------|-------|-------|
| DAG | David A. Greene | Counsel | $550.00 | 58.00 | $ 31,900.00 |

**Total Fees:   58.00   $   31,900.00**

# Exhibit B

**DAVID GREENE**
BRYAN CAVE LLP
560 MISSION STREET, 25TH FLOOR
SAN FRANCISCO, CA 94105
415-268-2000
david.greene@bryancave.com

**EMPLOYMENT**

*BRYAN CAVE LLP*, San Francisco, CA (August 2011 to present)
**Counsel.** Represent and counsel clients on First Amendment, freedom of information, free press, and anti-SLAPP matters.

*FIRST AMENDMENT PROJECT*, Oakland, CA (July 1999 to July 2011)
**Executive Director/Lead Staff Counsel.** Provided direct legal representation to clients including trial and appellate litigation, including first chair bench trial experience in state and federal courts, extensive motion practice, and appellate advocacy before California Supreme Court and Courts of Appeal, and Ninth Circuit; managed staff attorneys, interns and volunteer attorneys; directed all functions of nonprofit organization promoting rights of free speech, free press and free petition for core constituency of activists, journalists and artists including development, program planning and administration, and organizational and financial management; planned and administered legal, educational and advocacy programs; managed relations with Board of Directors; oversaw compliance with legal requirements for nonprofit organizations; coordinated participation in national and local coalitions of civil liberties organizations; oversaw advice hotline; write scholarly and opinion pieces on freedom of expression issues; represented organization to print and broadcast media; managed office and staff.

*UNIVERSITY OF SAN FRANCISCO SCHOOL OF LAW*, San Francisco, CA (June 2005 to present)
**Adjunct Professor.** Teach "First Amendment Law"and "Law of Mass Communication and the Press"
**Visiting Professor**, East China University of Politics and Law (May 2011)

*SAN FRANCISCO STATE UNIVERSITY,* San Francisco, CA (August 2002 to present)
**Instructor.** Teach "Mass Communications Law" to undergraduate journalism students.

*GOLDEN GATE UNIVERSITY,* (San Francisco, CA) (April to August 2000)
**Adjunct Professor.** Developed curriculum and syllabus for and taught "Persuasion, Negotiation and Mediation."

*NATIONAL CAMPAIGN FOR FREEDOM OF EXPRESSION,* Washington, DC (May 1997 to Jan. 1999)
**Program Director.** Provided grass roots and media advocacy support to artists and arts organizations facing challenges to freedom of artistic expression; planned and administered educational programs; coordinated coalition building on national and local levels; served as primary author and general editor of *NCFE Quarterly* and *NCFE Handbook;* provided resources and expertise to attorneys litigating free speech cases; represented organization at conferences and panel discussions, and to print and broadcast media; oversaw organizational participation in national coalitions; managed office and staff; assisted executive director with organizational management, planning, and development.

*HANCOCK, ROTHERT & BUNSHOFT,* San Francisco, CA (Nov. 1992 to Apr. 1997)
**Attorney.** Practiced appellate and trial litigation in state and federal courts including First Amendment and civil rights, employment discrimination, general and products liability, maritime and environmental coverage law.

*ALASKA SUPREME COURT*, Anchorage, AK (Sept. 1991 to Sept. 1992)
**Law Clerk to Justice Allen T. Compton.**

**LEADERSHIP POSITIONS IN PROFESSIONAL AND VOLUNTEER ORGANIZATIONS**

*ABA FORUM ON COMMUNICATIONS LAW*, Governing Board; Chair, Teach Media Law Committee**;**
*FREE EXPRESSION NETWORK,* Steering Committee; *FREE EXPRESSION POLICY PROJECT*, Advisory Board;
*SOCIETY OF PROFESSIONAL JOURNALISTS, NOR. CAL. CHAPTER*, Freedom of Information Committee

**PROFESSIONAL HONORS**

**Certificate of Recognition, California State Senate (2011)**
**James Madison Freedom of Information Award, Legal Counsel (2007)**

**EDUCATION**

**DUKE UNIVERSITY SCHOOL OF LAW,** Durham, North Carolina                    J.D. with
high honors, Order of the Coif (1991)                    Notes Editor, *Alaska Law*
*Review*

**LEHIGH UNIVERSITY,** Bethlehem, Pennsylvania
B.S. Environmental Science & Resource Management, with high honors, Phi Beta Kappa (1987)


**PUBLICATIONS**

Legal

"The Need for Expert Testimony to Prove Lack of Serious Artistic Value in Obscenity Cases," 10 *NEXUS: A Journal of Opinion* (2005)

"Why Protect Political Art as 'Political Speech'?" 27:2 *Hastings Communications and Entertainment Law Journal* (Winter 2005)

"Trade Secrets, The First Amendment and the Challenges of the Internet Age," 23:3 *Hastings Communications and Entertainment Law Journal* (Spring 2001)

Book Review: "Not in Front of the Children: 'Indecency,' Censorship and the Innocence of Youth," 10 *Boston University Public Interest Law Journal* 360 (Spring 2001)

"Investigative Stops in Alaska: Can *Coleman* Survive a Multifactored Balance?" 7 *Alaska Law Review* 381 (December 1990)


Books and Collections

"Piss Christ," *Censorship: A World Encyclopedia* (London: Fitzroy Dearborn (2002))

"National Campaign for Freedom of Expression," *Censorship: A World Encyclopedia* (London: Fitzroy Dearborn (2002))

*NCFE Handbook to Understanding, Preparing for, and Responding to Challenges to Your Freedom of Artistic Expression* (Washington, DC: 1998) [principal author]

Foreword, *Banned Books: Literature Suppressed on Sexual Grounds* (New York: Facts on File, Inc. 1998)


Periodicals

"Artistic Expression: Freedom of Expression," *Vision Magazine* May 2005

*National Campaign for Freedom of Expression Quarterly* Summer 1997 through Winter 1998
[principal writer and general editor]

"NEA Four Decision Deconstructed," *FYI* Fall 1998 vol. 14 no.3

"Esperanza Sues to Regain San Antonio Funding, And Claims Retaliation After City Denies Funding For Second Consecutive Year," *MAIN: Media Arts Information Network* Fall 1998

"Out North not alone: The culture war is headed for the courts," *Anchorage Press* August 20- 26, 1998

**COLLEGE AND UNIVERSITY LECTURES**

University of San Francisco, San Francisco, CA (October 2009)
Lecture on Legal Issues Regarding the Teaching of Evolution to Evolution, Faith & Reason seminar

University of California, Hastings College of Law, San Francisco, California (March 2009)
Lecture on Contemporary Issues in Public Interest First Amendment Law to mass media law seminar

Golden Gate University School of Law, San Francisco, CA (March 2007)
Lecture on SLAPPs to Environmental Law & Justice Clinic class

California State University-East Bay, Hayward, California (May 2005)
Lecture on obscenity law to undergraduate media law class

San Francisco State University, San Francisco, California (October 2004)
Lecture on Privacy Law to Law and Regulation of Electronic Media class

San Francisco State University, San Francisco, California (August 2004)
Lecture on media law to student editors and advisors

Santa Clara University, Santa Clara, California (May 2004)
Lecture on obscenity law to undergraduate media law class

Santa Clara University School of Law, Santa Clara, California (April 2004)
Lecture on art censorship and FCC indecency regulation to advanced constitutional law seminar

Academy of Art University, San Francisco, California (February 2004)
Lecture on freedom of artistic expression to popular culture class

San Francisco State University, San Francisco, California (May 2002)
Lecture on freedom of expression of sexual material to human sexuality class

San Francisco State University, San Francisco, California (February 2002)
Lecture on free press rights to student publications editors, contributors and advisors

Santa Clara University, Santa Clara, California (November 2000)
Lecture on obscenity law to undergraduate media law class

Johnson State College, Johnson, Vermont (October 1998)
General audiences lecture, lectures to political science and sociology classes

Richard Stockton College, Pomona, New Jersey (May 1998)
Lectures to law, political science, and criminology classes

Lebanon Valley College, Lebanon, Pennsylvania (April 1998)
Lecture to philosophy class

Eastern Tennessee State University, Johnson City, Tennessee (February 1998)
General audiences lecture, lectures to art classes

Skagit Valley College, Mount Vernon, Washington (November 1997)
Lecture to art censorship class

## PANEL DISCUSSIONS AND SYMPOSIA

"Stand up. Sit down. Speak out! State of the First Amendment," Dominican University, San Rafael, CA (March 2012)

"Censorship in the Arts: A Trend or Just a Passing Fad," San Francisco, CA (February 2011)

Moderator, "Corporate Personhood: The First Amendment Rights of Corporations in the Wake of *Citizens United,*"USF Law Review Spring 2011 Symposium: "Democracy, Inc? Corporate Expenditures and the Future of Campaign Finance Law," San Francisco, CA (February 2011)

"Student Journalists and the Law," Society of Professional Journalists, Western Regional Conference (April 2010)

"Copyright in the Digital Age," FOTOVISION, Berkeley, CA (April 2009)

"Banned and Re-covered: Literary Works on Trial," African American Museum and Library And Museum at Oakland, Oakland, CA (November 2008)

"Freedom of Information and Environmental Law: Recent Developments and Future Controversies,"   2008 California State Bar Environmental Section, Environmental Law Institute at Yosemite, Fish Camp, CA (October 2008)

"Student Press Law Update" and "Protecting Confidential Sources," Associated Collegiate Press National College Newspaper Convention, San Francisco, CA (February 2008)

"The Legal Landscape of Street Shooting," FOTOVISION, Berkeley, CA (July 2007)

"Intellectual Freedom: A Panel Discussion on Censorship," Redwood City, CA (March 2007)

"What Journalists Can Learn From the Josh Wolf Case," City College of San Francisco (November 2006)

"Protecting Unpublished Materials," San Francisco State University (September 2006)

"Access to Public Meetings," California First Amendment Coalition Free Speech and Open Government Assembly, Berkeley, CA (September 2006)

"National Security and the Press," UC Hastings Con. L. Quarterly, San Francisco, CA (March 2006)

"Political Art During Times of War," UC Berkeley Extension, San Francisco, CA (November 2005)

"Provocation: An Evening Celebrating Artistic Freedom," Creative Coalition, San Francisco, CA (October 2005)

"Using the California Public Records Act in Environmental Litigation." 2005 Environmental Law Conference at Yosemite, Fish Camp, CA (October 2005)

"*Daily Journal Extra* State of the Law: The First Amendment," Los Angeles, California (May 2005)

"The First Amendment and Freedom of the Press," Los Medanos College, Pittsburg, California (April 2005)

"Vandals: Artworks addressing the interface between art and vandalism, censorship and first amendment rights," Thacher Gallery, University of San Francisco, San Francisco, California (January 2005)

"Regulation of Indecency on Television, Radio and the Internet," and "Freedom of Expression," Exotic Erotic Ball, San Francisco, California (October 2004)

"Freedom of Speech: What are the Limits in a Private, Independent School?"Academy of Art University, San Francisco, California (October 2004)

DAVID A. GREENE

[page 5]

## PANEL DISCUSSIONS AND SYMPOSIA (con't)

"Media Law Primer," California College Media Association Editors Workshop, San Francisco, California (September 2004)

"Lewd Electrons: A Disturbance in the Air: Decency Versus Freedom of Expression on the Airwaves," Family Farr Side, Woodside, California (August 2004)

Featured Speaker, "Beachhead: The Arts in Defense of Dissent," San Francisco, California (August 2004)

Featured Speaker, Radio& Television News Director Association (Northern California) Newsmaker Luncheon, San Francisco, California (July 2004)

"Indecency and the First Amendment: Has the FCC Gone Too Far?"  Commonwealth Club InFORUM, San Francisco, California (June 2004)

"SLAPP Me Silly: Does This Make Any Sense?" State Bar Education Foundation Environmental Law Section Private Enforcement Conference, Oakland, California (June 2004)

"Protecting Confidential Sources," Society of Professional Journalists-Northern California Salon, San Francisco, California (February 2004)

Keynote Address, "Celebrating the Brown Act," City College of San Francisco (November 2003)

What You Need to Know About Public Records and Open Meetings in California, San Jose, California (September 2003)

Uniting Privacy and the First Amendment in the 21st Century, Oakland, California (May 2003)

A Critical Analysis of War Coverage, CCSF Press Club, San Francisco, California (May 2003)

*Nike v. Kasky*, Northern California Independent Booksellers Association Spring Workshop, San Francisco, California (April 2003)

"The Right to Know," Ohlone College Contemporary Communications Conference, Fremont, California (March 2003)

Moderator, "Free Speech and Youth," OpenGov02 Conference, San Jose, California (October 2002)

Moderator/Panelist, "SLAPP Suit Basics: Protecting the Right of Public Participation," OpenGov02 Conference, San Jose, California (October 2002)

Moderator, "SLAPPed! Recent Developments in State and Federal SLAPP Cases and Tactics," 2001 Environmental Law Conference at Yosemite, Fish Camp, California (October 2001)

"Minors and Arts Censorship," Social Theory, Politics and the Arts Conference, San Francisco, California (October 2001)

"Rethinking the Social Impact of Digital Media," Cyber Arts X Conference, San Francisco, California (September 2001)

Moderator, "Dissecting the 'Harmful to Minors' Rationale," Commonwealth Club, San Francisco, California (June 2001)

"Artistic Freedom: Rights and Responsibilities," San Francisco Art Institute (August 2001)

DAVID A. GREENE

[page 6]

**PANEL DISCUSSIONS AND SYMPOSIA (con't)**

Moderator, "Gore, Blood & Guts: Free Speech Issues for Violence in Film," California First Amendment Coalition First Amendment Assembly, Fullerton, California (October 2000)

"Free Expression Issues in Arts and Technology," Santa Clara Law University School of Law (April 2000)

"Privacy Rights," World Affairs Conference Human Rights Symposium, Upper Canada College, Toronto, Canada (March 2000)

"Arts Activism, Censorship, and Freedom Of Expression," National Performance Network Annual Meeting, San Francisco, California (December 13, 1998)

"Censors Working Overtime," Institute of Contemporary Art, Boston, Massachusetts (November 12, 1998)

"Shouting Fire in the Theater and Other Art Spaces," Out North Contemporary Art House, Anchorage, Alaska (August 19, 1998)

"The Future of Arts Funding After the NEA 4," National Association of Artists' Organizations Conference, Chicago, Illinois (May 1, 1998)

"Who Chooses What You See?" Albany Center Galleries, Albany, New York (April 16, 1998)

"Contained/Controlled: A Dialogue on Censorship," Southeast College Art Committee Conference, Richmond, Virginia (October 23, 1997)

# Exhibit C

# FIRST AMENDMENT PROJECT

1736 Franklin St., 9th Floor, Oakland, CA 94612 □ phone: 510.208.7744 □ fax: 510.208.4562 □ www.thefirstamendment.org
David Greene                                                                                          James Wheaton
Executive Director/Staff Counsel                                                                      Senior Counsel

November 21, 2008

Ellen M. Fitzgerald
Assistant United States Attorney
450 Golden Gate Ave., 9th Floor
San Francisco, CA 94102-3495

    Re:    *Rosenfeld v. FBI*
           N.D. Cal. case number C 07-3240 MHP

Dear Ms. Fitzgerald:

    This letter concerns the statements in David Hardy's Fourth Declaration, filed as document 49, at pages 4 and 5, that the FBI is willing to comply at least in part with Mr. Rosenfeld's request for abstract records. In pertinent part, Mr. Hardy states at paragraph 6: "The FBI is willing to perform a reasonable search of the abstract card system based on an agreed upon number of case file numbers provided by the plaintiff."

    Mr. Rosenfeld appreciates the FBI is no longer contending that it would be impossible to search and produce abstract records.

    As you know, Mr. Rosenfeld believes that all abstracts responsive to his request are public records and should be released pursuant to the FOIA.

    Moreover, the FBI's assertion that Mr. Rosenfeld should tell the FBI which of its file numbers it should find abstracts for obviously places Mr. Rosenfeld in a Catch-22. Mr. Rosenfeld is only able to give the FBI those file numbers that the FBI has provided to him. As set forth in the FBI's own declarations, the FBI retrieves these file numbers in the normal course of complying with a FOIA request.

    Thus, the most practical way to proceed would be for Mr. Rosenfeld to give the FBI the names of the subjects of his request - which he already has - and for the FBI to then look up those subjects in its index to find the file numbers, which are the exact same numbers for the abstracts. Indeed, we believe the FBI should be doing this as a matter of routine, since abstracts are public records and are not categorically exempt.

    Nonetheless, Mr. Rosenfeld is open to future discussions with the FBI about the

possibility of narrowing his request for abstract records.

In the meantime, and without in any way waiving the above or other arguments, and in the interest of proceeding with his requests in an efficient manner, Mr. Rosenfeld herewith submits an initial list of file numbers and requests that the FBI proceed with processing the responsive abstracts. We note that Mr. Rosenfeld has received these file numbers from the FBI.

Ronald Reagan:
80-579 LA
80-518 SD
100-382196 HQ
80-990 SF

Alex Sherriffs:
80-928

Neil Reagan
100-7801 (Office is unclear as provided by FBI. Please check)

In addition, Mr. Rosenfeld requests all abstracts from the "author set" for Ronald Reagan. In this regard, I refer you to the Declaration of Debbie Anne O'Clair, footnote 2, page 4, which is document 50 filed September 22, 2008.

Please note that this is an initial list. Mr. Rosenfeld reserves the right to pursue his request for all abstracts responsive to his request.

We ask that the FBI proceed with processing the above listed abstracts expeditiously, as required by law.

Please contact me at your earliest convenience and confirm that the FBI will proceed with processing the abstracts for the above initial list of file numbers and subjects, and please provide a date when the FBI expects to release them.

Very truly yours,

David Greene

# Exhibit D

# FIRST AMENDMENT PROJECT

1736 Franklin St.,  9th Floor, Oakland, CA  94612  ◻ phone: 510.208.7744  ◻  fax: 510.208.4562  ◻  www.thefirstamendment.org
David Greene                                                                                                                James Wheaton
Executive Director/Staff Counsel                                                                                Senior Counsel

September 20, 2010

Ms. Ila C. Deiss
Assistant U.S. Attorney
U.S. Attorney's Office
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94103

Re:   *Rosenfeld v. Department of Justice*
       N.D. Cal. case no. 3:07-CV-03240-MHP

Dear Ms. Deiss:

I have now had the chance to review the transcript of the July 12, 2010 hearing on
the cross-motions for summary judgment, the Court's Order of September 1, 2010, and the
documents produced to Mr. Rosenfeld on September 3, 2010 (and received by us
September 7, 2010). I write here to set forth what we believe are the tasks that remain to be
completed in order for the FBI to fully and finally comply with its obligations under FOIA
as set forth in the Court's Order.

1.     Documents Listed in Summary Memos

Pursuant to the Court's Order at page 7, the FBI must search for, process and
produce the records specifically identified in the following summary memos: 80-579-2, 80-
579-3, 80-579-58, 80-579-59, 100-821-136, 100-8120-161, 116-70463-3.

2.     Files For Which it Could Not Be Determined Whether or Not the File Was
        Responsive

Pursuant to the Court's Order at page 8, the FBI was to reprocess 30 random files
labeled non-responsive and then release the files it withheld because it had insufficient
information to definitively determine that the file was non-responsive. Meeting and
conferring on this topic, Rosenfeld and the FBI agreed that, rather than a sample, the FBI
would comply with this by re-processing the 31 Ronald Reagan files specified in paragraph
107 of the Fifth Hardy Declaration.

Mr. Hardy states in his cover letter that the box of records we received on September 7, 2010 included 4 of these 31 files that were reviewed "as part of the non-responsive files chosen for re-review" and that the FBI had determined were in fact responsive to Ronald Reagan. Thank you for producing those.

Please advise us as to the status of the remaining 27 files. Pursuant to the Court's Order, the FBI must produce the files that upon re-review fall into the "insufficient information" category.

3.      Non-CRS Databases

Pursuant to the Court's Order at page 10, the FBI is to produce a declaration by October 1, 2010 listing any database which may contain responsive records that the FBI did not search, and to explain the burden and expense of searching each of those databases.

4.      Specific Exemptions Challenged

Pursuant to the Court's Order, the following records must be produced un-redacted: Ronald Reagan 5209-5210 (pages 15, 20); the names of individuals whose names were redacted from MPIC-22, 23, 26, and 29 (pages 17, 20); Ronald Reagan-5162, 5163, 449-50 (pages 18, 21).

With respect to the records for which the FBI claimed that the IRS directed the FBI to withhold information (Ronald Reagan-370-71, 1407, 1552, 1570), the Court ordered the FBI to produce a declaration by October 1, 2010 with sufficient detail such that the Court can determine whether the IRS appropriately directed the FBI to withhold information as subject to exemption (b)(3).

5.      Re-processing of Non-Sampled Records

In response to Rosenfeld's argument that the FBI must reprocess all of the responsive records because of the high error rate in the *Vaughn* sample, the Court ruled that the FBI's voluntary re-processing of the Ronald Reagan and SAG records was adequate at this time to address that concern (page 13).

Additionally, however, the Court issued its representative rulings on the *Vaughn* sample on the issues of legitimate law enforcement purpose for exemption (b)(7) (pages 14-18) and the balancing of privacy interests for exemption (b)(6) (pages19-21). Pursuant to the purpose of the *Vaughn* sample, all responsive records must now be re-processed applying

these holdings.[1] For example, since the court ordered the release of Ronald Reagan's associate in Ronald Reagan-5209-5210, the name should likewise be released elsewhere as in Ronald Reagan-4162.

We therefore expect to receive the two declarations (one regarding non-CRS databases, and one regarding exemption (b)(3)) by October 1, 2010. Please inform as to when we might expect the other remaining tasks to be completed.

Please let me know if you have any questions or if any of this is inconsistent with your understanding.

Very truly yours,

David Greene

David Greene

---

[1] The Court did, however, specifically indicate that its ruling with respect to the "80" and "100" file classifications was made only with respect to the specific records in the *Vaughn* sample and that it would be "premature" to extrapolate that specific holding to non-sampled records bearing the "80" and "100" file classifications (page 18).