David A. Greene (CA State Bar No. 160107)
Roger R. Myers (CA State Bar No. 146164)
BRYAN CAVE LLP
560 Mission Street, 25th Floor
San Francisco, CA  94105-2994
Telephone:   (415) 268-2000
Facsimile:     (415) 268-1999
roger.myers@bryancave.com
david.greene@bryancave.com

James R. Wheaton, (CA State Bar No. 115230)
Lowell Chow, (CA State Bar No. 273856)
FIRST AMENDMENT PROJECT
California Building
1736 Franklin Street, Ninth Floor
Oakland, CA 94612
Phone: (510) 208-7744
Facsimile: (510) 208-4562
wheaton@thefirstamendment.org
lchow@thefirstamendment.org

Attorneys for Plaintiff
SETH ROSENFELD

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD,<br><br>                    Plaintiff,<br><br>       v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE et al.,<br><br>                    Defendant. | CASE NO. 3:07-CV-03240-EMC<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**<br>[5 U.S.C. §552(a)(4)(E)(i)]<br><br>Date:   July 13, 2012<br>Time:  1:30 PM<br>Judge:  The Hon. Edward M. Chen<br>Courtroom 5, 17th Floor |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

ARGUMENT .................................................................................................................................2

    I.    THE FBI'S ERROR OF FACTS ................................................................................2

    II.    ROSENFELD IS ELIGIBLE FOR AN AWARD OF ATTORNEYS' FEES ...................7

    III.    ROSENFELD IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES ....................9

        A.    PUBLIC BENEFIT .........................................................................................9

        B.    COMMERCIAL BENEFIT AND NATURE OF PLAINTIFF'S INTEREST .........9

        C.    REASONABLENESS OF THE FBI'S WITHHOLDING .....................................10

    IV.    ROSENFELD SHOULD BE AWARDED THE FULL AMOUNT OF FEES SOUGHT ...............................................................................................................11

        A.    THE HOURS SPENT ARE REASONABLE AND WELL-DOCUMENTED .....12

        B.    THE RATES ARE REASONABLE ..............................................................14

        C.    NO REDUCTION IS APPROPRIATE IN EITHER THE MAIN FEE AWARD, THE FEES ON FEES, OR THE COSTS ...............................................15

        D.    ROSENFELD INCURRED ADDITIONAL FEES PREPARING THIS REPLY ..........................................................................................................15

CONCLUSION ............................................................................................................................15

i

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**    Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU v. Dep't of Homeland Sec.*,
　810 F. Supp. 2d 267 (D.D.C. 2011)..................................................................................7, 8, 10

*Buckhannon Board & Care Home, Inc. v. W. Va. Department of Health & Human Resources*,
　532 U.S. 597 (2001).........................................................................................................................2

*Camacho v. Birdgeport Finance*,
　523 F.3d 973 (9th Cir. 2008) ........................................................................................................11

*Carter v. Veterans Admin.*,
　780 F.2d 1479 (9th Cir. 1986) ........................................................................................................7

*Chesapeake Bay Found., Inc. v. Dep't of Agric.*,
　11 F.3d 211 (D.C. Cir. 1993)........................................................................................................10

*Church of Scientology of California v. Harris*,
　653 F.2d 584 (D.C. Cir. 1981)........................................................................................................8

*Citizens for Responsibility and Ethics in Washington v. Dep't of Justice*,
　825 F. Supp. 2d 226 (D.D.C. 2011).............................................................................................12

*Ctr. to Prevent Handgun Violence v. Dep't of Treasury*,
　49 F. Supp. 2d 3 (D.D.C 1999).....................................................................................................10

*Davy v. CIA*,
　550 F.3d 1155 (D.C. Cir. 2008)....................................................................................................10

*Deininger & Wingfield v. I.R.S.*,
　2009 WL 2241569 (E.D. Ark. July 24, 2009) ............................................................................10

*Des Moines Register & Tribune Co. v. FBI*,
　563 F. Supp. 82 (D.D.C. 1983)......................................................................................................7

*Exner v. FBI*,
　443 F. Supp. 1349 (S.D. Cal. 1978)...............................................................................................8

*Ferland v. Conrad Credit Corp.*,
　244 F.3d 1145 (9th Cir. 2001) ......................................................................................................11

*Fund for Const. Gov't v. Nat'l Archives & Records Serv.*,
　656 F.2d 856 (D.C. Cir. 1981)........................................................................................................7

*Judicial Watch v. Dep't of Commerce*,
    384 F. Supp. 2d 163 (D. D.C. 2005)..................................................................................8

*Judicial Watch v. Dep't of Commerce*,
    470 F.3d at 363, (D.C. Cir. 2006).................................................................................8, 15

*Long v. IRS*,
    932 F.2d 1309 (9th Cir. 1991).........................................................................................9

*Lytle v. Carl*,
    382 F.3d 978 (9th Cir. 2004)..........................................................................................12

*Md. Dep't of Human Res. v. Sullivan*,
    738 F. Supp. 555 (D.D.C. 1990)......................................................................................7

*Miller v. Dep't of State*,
    779 F.2d 1378 (8th Cir. 1985) ...............................................................................8, 9, 11

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).......................................................................................................14

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ............................................................................13, 14, 15

*Morley v. CIA*,
    828 F. Supp. 2d 257 (D.D.C. 2011)................................................................................10

*Nkihtaqmikon v. Bureau of Indian Affairs*,
    672 F. Supp. 2d 154 (D. Me. 2009).................................................................................8

*Oregon Natural Desert Ass'n v. Locke*,
    572 F.3d 610 (9th Cir. 2009) ...........................................................................................1

*Piper v. Dep't of Justice*,
    339 F. Supp. 2d 13 (D.D.C. 2004).................................................................................8, 9

*Polynesian Cultural Ctr., Inc. v. NLRB*,
    600 F.2d 1327 (9th Cir. 1979)........................................................................................10

*Prison Legal News v. Schwarzenegger*,
    608 F.3d 446 (9th Cir. 2010).........................................................................................14

*Richlin Sec. Serv. v. Chertoff*,
    553 U.S. 571 (2008).......................................................................................................14

*S.F. Baykeeper v.West Bay Sanitary District*,
    2011 WL 6012936 (N.D. Cal. Dec. 1, 2011).........................................................12, 13

*United Steelworkers v. Phelps Dodge,*
    896 F.2d 403 (9th Cir. 1990) ...................................................................................................14

*Williams v. Dep't of Army,*
    1993 WL 372245 (N.D. Cal. Sept. 13, 2005) ...........................................................................7

## LEGISLATIVE HISTORY

S. Rep. 93-854 at 171-72 (1974) ......................................................................................................10

## RULES

Local Rule 54-5(b)(2) ......................................................................................................................12

## OTHER

Richard Pearl, *California Attorney Fee Awards*,
    Section 9.118, (2012) ..............................................................................................................13

Richard Pearl, *California Attorney Fee Awards*,
    Section 9.122, (2012) ..............................................................................................................14

iv

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS'**
**FEES AND COSTS**                                                                     Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

**INTRODUCTION**

The FBI in opposing this fee motion seeks to re-write the heretofore undisputed history of this litigation. Among the fantasies now advanced by the FBI are the assertions that Rosenfeld received only a handful of records as a result of this litigation and that the public does not benefit from the disclosure of records that demonstrate the extent to which the FBI supported and worked to advance the unprecedented rise to power of a Hollywood actor and labor leader who would later become the 43rd President of the United States. And most ironically, woven into this inaccurate, unreasonable and obdurate opposition is the contention that the FBI has not taken any unreasonable or obdurate positions.

From a broader perspective, the FBI's opposition is disturbing because of its cramped view of the law of attorneys' fees under FOIA. According to the FBI, a FOIA plaintiff can only recover fees if the court orders the production of specific records that were withheld in bad faith. This exceedingly narrow interpretation of the law, which is even more narrow than the Buckhannon standard eliminated by the 2007 FOIA amendments,[1] is unsupported by authority and is contrary to the policies underlying the fee provisions of FOIA and the spirit and letter of FOIA itself.

As set forth in his opening memorandum, Rosenfeld is both eligible for and entitled to attorneys' fees. Moreover, his request for fees in the amount of $417,152.62, plus the additional fees incurred in writing this reply, is reasonable in light of the duration of the litigation, the volume of records produced and the number of court proceedings required to bring about a resolution to this case that was unquestionably in his favor in almost every respect. The amount of fess sought is in line with fee awards in cases of similar, and even lesser, scope. Rosenfeld should thus be awarded the full amount of fees sought.

---

[1] The 2007 OPEN Government Act amended FOIA in this respect restoring the catalyst theory of attorney fee recovery and rejecting the application to FOIA of Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 597, 604-05 (2001). The 2007 amendments were designed to address the concern that, under the then-current version of FOIA, "Federal agencies have an incentive to delay compliance with FOIA requests until just before a court decision is made that is favorable to a FOIA requester," at which point the agency would release the records "voluntarily," thus "preclud[ing] FOIA requesters from ever being eligible to recover attorneys' fees." Oregon Natural Desert Ass'n v. Locke, 572 F.3d 610, 615 (9th Cir. 2009).

1
**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS'
FEES AND COSTS**                                                                     Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

# ARGUMENT

## I. THE FBI'S ERROR OF FACTS

There are numerous false statements in the FBI's opposition that must be corrected.[2]

*FICTION #1: Judge Patel did not order the FBI to release any records in her ruling on the first cross-motions for summary judgment.*

Judge Patel did in fact order the production of records. As set forth in Rosenfeld's opening memorandum, Rosenfeld had argued that the FBI in processing cross-references had not produced enough pages from such records. Judge Patel agreed, rejecting the FBI's more limited approach, and ordered the FBI to produce specific pages from cross-references. [Docket #47 at 20] As a result, the FBI was required to produce pages from 44 cross-references that it had not previously released to Rosenfeld. [Eighth Declaration of Seth Rosenfeld, filed 5/29/12 (Docket #153) ("8th Rosenfeld Decl."), Exh. ZZ] Moreover, later in the litigation it was discovered that the FBI had failed to comply with the Court's order with respect to additional cross-references. The parties therefore agreed that the FBI would re-process certain additional cross-references. [Docket #73] That later effort to comply with Judge Patel's order resulted in a release of an additional 800 pages on January 24 and 29, 2010. [8th Rosenfeld Decl. Exh. ZZ]

Moreover, the FBI omits the fact that in responding to Rosenfeld's motion, it decided to re-process Ronald Reagan records that had previously been released to Rosenfeld in 1996 and 1997. [Docket #35 ¶ 17] In so doing, the FBI discovered "quite a mass of records" that had not originally been located or had been deemed non-responsive. [Docket #62 at 25:12-15] As a result, approximately 5,200 pages of records were produced. [8th Rosenfeld Decl. Exh. ZZ]

The FBI also omits the fact that it was compelled to search for and release numerous records because Judge Patel rejected its arguments that it had proven that it had adequately searched for responsive records. The declarations the FBI produced in response to the Court's order that it provide additional information so that the Court could more properly assess the adequacy of the

---

[2] Indeed, one must believe that the FBI would have filed a very different opposition had this fee motion been brought before Judge Patel who had first-hand knowledge of the proceedings.

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

1  searches undertaken by the FBI were contested as inadequate by Rosenfeld. [Docket #59 at 8-15]
2  The FBI then agreed, in exchange for Rosenfeld narrowing the scope of his request, to conduct a
3  page-by-page search of its Screen Actors Guild files for a five-year-period for records mentioning
4  Ronald Reagan. [Docket #62] The FBI conducted that search and identified and released 747 pages
5  of responsive records; this release was a direct result of Judge Patel having rejected the FBI's
6  argument that it need not, under any conditions, conduct a page-by-page search for responsive
7  records. [8th Rosenfeld Decl. Exh. WW] The FBI also agreed to conduct new and more thorough
8  searches for records pertaining to Neil Reagan and Alexander Sherriffs; such searches, again a direct
9  result of Judge Patel having rejected the FBI's contention that it had adequately searched its field
10 office files, resulted in a release of 264 pages. [8th Rosenfeld Decl. Exhs. PP, TT] The FBI similarly
11 released abstract cards corresponding to six serials after Judge Patel rejected the FBI's argument that
12 such records were impossible to retrieve. [8th Rosenfeld Decl.Exh. ZZ].

*FICTION #2: Judge Patel, ruling on the second cross-motions for summary judgment, ordered only that the FBI perform "a few additional searches."*

As set forth in Rosenfeld's opening fee memorandum, the second cross-motions for summary judgment focused primarily on exemption issues. However, the parties also addressed two remaining adequacy of search issues: whether the FBI had to search for and produce the records described in the summary memos, and whether the FBI had to produce records that had been indexed to Ronald Reagan and which, upon review, the FBI could not determine that the records did not actually pertain to Ronald Reagan. [Docket #85] Judge Patel rejected the FBI's unreasonable arguments as "strain[ing] credibility" and ordered it to search for and produce the records listed in the summary memos that had not been destroyed and re-process 30 of the files that had been labeled as "non-responsive." [Docket #98] Although this was perhaps just "a few additional searches," it was substantially all of the relief that Rosenfeld had sought. And after performing these "few additional searches," the FBI released 743 pages of records listed in the summary memos and 4 multi-page files previously deemed "non-responsive" as a result. [Docket #99-1 ¶¶ 9-10, 14; #99-2; #102 at 3]

///

///

3

*FICTION #3*: *Judge Patel, in ruling on the second cross-motions for summary judgment, held that the FBI had "inappropriately redacted or withheld information from release in only a small minority of documents at issue."*

This is perhaps the FBI's most chutzpah-laden assertion. The only reason that Judge Patel ruled on a "small minority of the documents at issue" was because the parties had agreed to a sample Vaughn process, whereby the Court's rulings on the "small minority of documents" at issue were to be extrapolated to all exemption claims. [Docket #98 at 12:17-19] Rosenfeld thus specifically challenged, and Judge Patel only ruled on, a "small minority of the documents at issue." The FBI's argument that Judge Patel's rulings on exemptions in these "small minority of the documents at issue" need not be extrapolated to other records was expressly rejected by Judge Patel in her ruling on the FBI's third motion for summary judgment, a proceeding which the FBI omits completely from its opposition papers. [Docket #115 at 6:16-21] The significance of Judge Patel's order was not just the release of the specific records, but also her general rulings that the FBI had improperly claimed Exemption 7 where the FBI had acted to advance Ronald Reagan's political career or to monitor mere membership in the Communist party and not for any legitimate law enforcement purpose, and had improperly applied Exemption 6 to withhold information concerning public officials, public figures, and those involved in public events. [Docket #98 at 15:6-9, 16:17-19, 20:10-21:10]

Moreover, the FBI omits all mention of the fact that in preparing its sample Vaughn index, it reversed its original decisions to withhold almost one-third of all the deletions it had claimed. Judge Patel agreed with Rosenfeld that this change in position could not reasonably be explained as the FBI merely exercising its discretion. [Docket #98 at 12-13] The only reason that Judge Patel did not order the FBI to reprocess all of its exemption claims was because the FBI, in its reply memorandum, indicated that it would, on its own accord, reprocess the exemptions in all of the Ronald Reagan and SAG records, approximately 6,000 to 8,000 pages of the 11,000 pages released. [Docket #91-1 ¶ 22; #98 at 13:9-14]

*FICTION #4*: *The FBI did not bring a third motion for summary judgment that was rejected on all counts by Judge Patel.*

As noted above, the FBI fails to make any mention of the fact that it brought, over Rosenfeld's objection that the FBI had failed to meet and confer first, and required Rosenfeld to

4

incur attorneys' fees to oppose, a third motion for summary judgment. [Docket #99] As set forth in Rosenfeld's opening fee memorandum, the FBI's motion was rejected on all counts. [Docket #115]

*FICTION #5: Rosenfeld did not prevail in full on his final motion for summary judgment.*

As discussed in Rosenfeld's opening fee memorandum, the fourth and final round of summary judgment motions were dedicated to the last remaining issues, namely Rosenfeld's contention that the FBI, even after all of the re-processing and re-re-processing, was still improperly claiming exemption 6 and 7 for deletions in four especially important documents. [Docket ##133, 137] As the FBI recognizes, it mooted the claims relating to three of these documents by releasing the previously redacted material "at their discretion."[3] [Opp. at 4:20-21] Thus, when this Court ordered the FBI to un-redact the remaining record, Rosenfeld prevailed on every issue before it.

*FICTION #6: Rosenfeld did not prevail in every aspect of this litigation.*

The FBI repeatedly asserts that Rosenfeld only "partially" or insubstantially prevailed in this litigation. Yet, it can point to only one example of Judge Patel or this Court having ruled in its favor and against Rosenfeld: Judge Patel rejected his argument that the FBI's exemption claims were improper because the FBI had agreed, but failed, to apply the redaction standards set forth in the Settlement Agreement from Rosenfeld's other FOIA litigation. And even that ruling was immaterial; the Settlement Agreement standards were merely an alternative argument. [Docket #85 at 20-22] Rosenfeld received substantially the same relief when Judge Patel found that the FBI had improperly applied the FOIA exemptions. This single adverse ruling thus did not result in the FBI being able to withhold any information that it was not otherwise ultimately required to disclose.

The only other basis for the FBI's belief that Rosenfeld did not substantially prevail is its incredulous assertion that it voluntarily gave Rosenfeld thousands of pages of records "not because of the litigation but rather because of additional information provided by Plaintiff." However, as detailed in Rosenfeld's opening fee memorandum, these "voluntary" and "discretionary" releases all, without exception, occurred during the course of the litigation, namely, as part of the FBI's

---

[3] Of course, had it exercised its "discretion" during the meet and confer process, rather than waiting for Rosenfeld to file a motion, the FBI may have avoided this round of summary judgment motions and the attendant fees altogether.

5

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

opposition to Rosenfeld's summary judgment motions, during the preparation of the various versions of its Vaughn index, or as part of compromises that followed Judge Patel's rulings adverse to the FBI's repeated attempts at summary judgment. Likewise, Rosenfeld provided the "additional information" during the course of this litigation, in his moving papers and declarations, as part of proving that the FBI had not complied with FOIA and that he, and not it, was entitled to summary judgment. Indeed, Rosenfeld's attempts to provide the FBI with such information before the litigation, through his various appeals and letters, were repeatedly ignored.

The FBI's statement that it acted when Rosenfeld "brought to the FBI's attention error rates in the FBI's prior searches," strains credibility to the point of bad faith and is wholly inconsistent with the explanation previously offered by the FBI. As explained above in Rosenfeld's opening fee memorandum, the FBI, after it prepared its draft sample Vaughn index, claimed to have decided, unrelated to the fact of the pending summary judgment motion, to exercise its discretion to retract almost one-third of the deletions it had previously sought to defend. Rosenfeld claimed that this was not a discretionary release, but rather just the FBI, after finally taking a close look at the redactions, realizing that many of its exemption claims were indefensible. The FBI denied that there had been any error, but claimed that it was merely undertaking "efforts to release additional information" and would thus re-process 8,000 pages of records, many of which had already been processed, improperly, two or three times. [Docket #91-1 ¶ 22] Judge Patel doubted the veracity of the FBI's claim that it was merely exercising its discretion, indicating that she would have ordered substantial re-processing had the FBI not "volunteered" to do it. [Docket #98 at 12:26-28] The FBI's claim here that it did not know of the error rate until Rosenfeld brought it to its attention is completely false.

*FICTION #7*: The FBI did not take unreasonable and obdurate positions.

The FBI remarkably claims, for the very first time in this litigation, notwithstanding the legal arguments presented in its four summary judgment motions and in opposition to Rosenfeld's three summary judgment motions, that it merely needed more time to process Rosenfeld's requests. [Opp. at 9:1-4] Although the FBI did ultimately release thousands of adequately processed pages to Rosenfeld, it did so only after Judge Patel rejected its repeated arguments that it had complied with FOIA, and accepted Rosenfeld's arguments that the FBI, despite its efforts, still failed to comply

6

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

1  with the law. That its decisions reflected "bureaucratic difficulty," rather than its recalcitrance in
2  refusing to comply with the law until confronted with having to defend its positions in response to
3  Rosenfeld's summary judgment motions, is not believable.
4        The FBI also falsely claims that its obdurate, inconsistent, and make-work positions
5  regarding the statute of limitations "are solely related to Rosenfeld's other FOIA litigation." [Opp. at
6  13-15] That statement is incorrect. The statute of limitations argument was raised by the FBI in its
7  first summary judgment motion in THIS litigation. [Docket #47 at 14:25-26; #83 ¶¶ 15-18]

## II. ROSENFELD IS ELIGIBLE FOR AN AWARD OF ATTORNEYS' FEES

      As set forth in Rosenfeld's opening fee memorandum, a FOIA plaintiff is eligible for attorneys' fees if the litigation was the "substantial cause" of the release of records. Fund for Const. Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 872 (D.C. Cir. 1981). A court order compelling disclosure is not required. Id. at 871. Rather, it is sufficient, that, as in this case, the litigation caused the agency to take a closer look at the adequacy of its searches and the merits of the exemptions claimed. Id. at 872. Thus, records released by an agency during the preparation of a Vaughn index or during summary judgment briefing, prior to a court actually ordering the releases, are substantially caused by the litigation. Id. at 872-73. See, e.g., ACLU v. Dep't of Homeland Sec., 810 F. Supp. 2d 267, 274-76 (D.D.C. 2011) (records released with Vaughn index prepared during summary judgment briefing); Des Moines Register & Tribune Co. v. FBI, 563 F. Supp. 82, 84 (D.D.C. 1983) (records released as part of court-ordered Vaughn process). And records produced as a result of a change of position announced during summary judgment briefing are considered, for fee motion purposes, to have been produced as a result of the summary judgment motion. See ACLU v. DHS, 810 F. Supp. 2d at 274-76. Similarly, a records production prompted by information supplied by the plaintiff in his summary judgment papers, is substantially caused by the litigation. Williams v. Dep't of Army, 1993 WL 372245, at *2 (N.D. Cal., Sept. 13, 2005).[4] The key factor is that the

---

[4] A fee request does not become moot merely because the agency had by its own action mooted the FOIA complaint. Carter v. Veterans Admin., 780 F.2d 1479, 1481 (9th Cir. 1986). An "agency cannot foreclose an award of attorneys' fees and costs by complying with a FOIA request during the pendency of litigation." Md. Dep't of Human Res. v. Sullivan, 738 F. Supp. 555, 562 (D.D.C. 1990).

7

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**     Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

litigation prodded the agency to take action, not that the agency acted in good faith after it was so prodded. Miller v. Dep't of State, 779 F.2d 1378, 1389 (8th Cir. 1985).

The FBI's assertion that a FOIA plaintiff may not recover fees incurred in obtaining a court order regarding the adequacy of search is also without merit. A FOIA plaintiff is eligible to recover fees if the litigation causes the agency to search for and identify records it had not previously found. See Church of Scientology of California v. Harris, 653 F.2d 584, 588 (D.C. Cir. 1981); ACLU v. DHS, 810 F. Supp. 2d at 277. See also Piper v. Dep't of Justice, 339 F. Supp. 2d 13, 18-19 (D.D.C. 2004), and Exner v. FBI, 443 F. Supp. 1349, 1353 (S.D. Cal. 1978) (each holding plaintiff eligible for fees based on order that merely reduced delay in processing request). Indeed, fees may be awarded even if the additional searches do not uncover additional records. See Judicial Watch v. Dep't of Commerce, 384 F. Supp. 2d 163, 167 (D. D.C. 2005) (holding that requestor was eligible for attorneys' fees based on court ordering a new search and further discovery regarding the adequacy of the searches performed even though requestor lost summary judgment after the new search was completed), *aff'd on this ground, rev'd on another ground by* 470 F.3d 363, 370-72 (D.C. Cir. 2006). The FBI's assertion that "court orders to perform additional searches do not qualify as relief" is thus incorrect.

As detailed above, the FBI's contention that it "did not change its position as a result of the pending litigation" is not believable. The FBI never alleged that Rosenfeld ran hastily to court before it had finished processing his requests. Without exception, every single "voluntary" and "discretionary" release was a direct result of and would not have occurred but for this litigation. Indeed, the vast majority of the 13,000 pages of records produced were produced as a direct result of Judge Patel's orders. The litigation caused the FBI to find "quite a mass" of Ronald Reagan records it had not previously identified. It caused the FBI to re-search its field offices and find hundreds of pages of records regarding Alexander Sheriffs and Neil Reagan. And it caused the FBI to unearth hundreds of pages of non-indexed records that otherwise would have remained buried in the FBI's files such as the Ronald Reagan records found in the SAG files, the records listed in the summary memos, and the abstracts. See Nkihtaqmikon v. Bureau of Indian Affairs, 672 F. Supp. 2d 154, 174 (D. Me. 2009) (authorizing attorneys' fees award where litigation "forced" the agency "to unearth

8

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

undisclosed documents buried within the agency").

### III. ROSENFELD IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES

As set forth in Rosenfeld's opening fee memorandum, Rosenfeld is also entitled to an award of attorneys' fees. Each "entitlement" factor weighs in favor of Rosenfeld. And even if each factor does not favor entitlement, the sum balance of all the factors strongly favors entitlement. The FBI raises several arguments to the contrary. But each must be rejected as based on an improper statement of the law, the facts, as set forth abve, or both.

#### A. PUBLIC BENEFIT

"Probably the most important consideration in determining entitlement to fees in a FOIA case is the benefit to the public which is to be derived from release of the information sought. The underlying purpose of FOIA is to ensure that government is conducted in the open." Miller, 779 F.2d at 1389. This includes ensuring that the FBI is subject to public scrutiny. "The FBI is a vital part of this nation's law enforcement structure and continues to be so. Allegations and evidence of possible misconduct by this national institution is relevant to the public's information fund. Disclosure of this information will assist the citizenry in making informed judgments and opinions about the FBI and how it is operating." Piper, 339 F. Supp. 2d at 21.

The FBI cannot seriously argue that the public does not benefit from obtaining information, for the first time, that further reveals the FBI's efforts to support Ronald Reagan's swift rise to power, and the extent of the FBI's illegal activities monitoring mere membership in the Communist Party. This information thus "is likely to add to the fund of information that citizens may use in making vital political choices." Id. at 20. The FBI's contention that Rosenfeld has failed to offer evidence that the specific records he obtained add to this "fund of information" must be rejected. Rosenfeld's declaration is replete with examples. [8th Rosenfeld Decl. ¶¶ 32, 34, 38-47, 95, 99-100, 103, 107, 110-12, 116-19, 122-23, 26, 139, 144, 152-53, 157-59, 163, 167, 173-75 & Exhs. G, H]

#### B. COMMERCIAL BENEFIT AND NATURE OF PLAINTIFF'S INTEREST

This factor weighs strongly in favor entitlement when the FOIA requester sought the records as a journalist. See Long v. IRS, 932 F.2d 1309, 1316 (9th Cir. 1991). The mere fact that a journalist might earn income from the publication of his work might weigh against entitlement is irrelevant.

1  See Davy v. CIA, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("[S]urely every journalist or scholar may
2  hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award
3  of attorney's fees under FOIA."). The sole authority cited by Defendants to the contrary, Morley v.
4  CIA, 828 F. Supp. 2d 257 (D.D.C. 2011), is inapposite. The court did deny fees to the plaintiff in
5  Morley partly on the ground that he had a private commercial interest. But the commercial interest
6  involved was not the proceeds from the sale of the book itself, but rather the author's desire to avoid
7  spending his own time and money to obtain the exact same documents from the public component of
8  the National Archives. Id. at 265. Unlike Morley, the documents sought here could only be obtained
9  from the FBI, and indeed, the FBI previously had denied access to these records when they were
10 sought by others who had written about Ronald Reagan. [8th Rosenfeld Decl. ¶¶ 27, 35, 41]

### C. REASONABLENESS OF THE FBI'S WITHHOLDING

Contrary to the FBI's assertion, a finding for the government on this fourth factor does not automatically foreclose a claim for fees or costs. Rather, "[t]he 'reasonable basis in law' factor . . . is *not* dispositive, and *can be outweighed* by the public benefit and commercial benefit to [the] plaintiff factors." Ctr. to Prevent Handgun Violence v. Dep't of Treasury, 49 F. Supp. 2d 3, 6 (D.D.C 1999) (emphasis added). See also ACLU v. DHS, 810 F. Supp. 2d at 277. The fourth factor is only dispositive if the government's position was found to be *correct as a matter of law*, not merely a colorable claim. Chesapeake Bay Found., Inc. v. Dep't of Agric., 11 F.3d 211, 216 (D.C. Cir. 1993). "If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." Id.[5]

Thus, if the agency's position was not found to be correct, the agency must prove that its legal position was nonetheless colorable. See Davy, 550 F.3d at 1159. When records are released

---

[5] As set forth in Rosenfeld's opening fee memorandum, a journalist who has obtained records for the public's benefit "will ordinarily be entitled to fees" even if the agency had a reasonable basis for withholding the records. See Deininger & Wingfield v. I.R.S., 2009 WL 2241569, at *6 (E.D. Ark. July 24, 2009) (quoting S. Rep. 93-854 at 171-72 (1974)). In each case cited by the FBI for its contrary rule, the court also found that the plaintiff had acted with a predominately commercial interest. See Polynesian Cultural Ctr., Inc. v. NLRB, 600 F.2d 1327, 1330 (9th Cir. 1979) (finding that none of the factors weighed in favor of entitlement); Morley, 828 F. Supp. 2d at 265. There was thus nothing to outweigh the agency's reasonableness.

1  "voluntarily" during the course of litigation, the agency must prove that it had a colorable *legal basis*
2  for withholding them in the first place. Miller, 779 F.2d at 1389. The court is not required to find bad
3  faith or implausibility for this factor to weigh in favor of entitlement; rather, in order for this factor
4  to weigh against entitlement, the court must find a reason for the government's action based in the
5  law. Id. (holding that administrative inefficiency and backlogs were practical explanations, not
6  colorable legal bases for withholding records).

As set forth above and in Rosenfeld's opening fee memorandum, the FBI in this case engaged in repeated obdurate and unreasonable behavior; it has not carried its burden of demonstrating that any of its positions were reasonable. As Judge Patel specifically found, the FBI never offered a credible explanation why it exercised its administrative discretion when it did, and not in its original response to the FOIA requests. [Docket #98 at 12:26-28] The FBI offers no further explanation in its opposition papers. With respect to its exemptions claims, Judge Patel rejected the FBI's assertion of exemption 7(c) because the FBI lacked a legitimate law enforcement objective in collecting the information it sought to protect. However, the FBI in its fee opposition now justifies the exemption as necessary to protect "the contents of ongoing law enforcement investigations." [Opp. at 10:12] This is the very first time in this litigation it has asserted that the historical records at issue were related to "ongoing" investigations. Judge Patel rejected the FBI's exemption 6 claims because the FBI had not properly balanced the strong public interest in disclosure against the diminished privacy interests of public officials, public figures and those involved in public events. Contrary to the FBI's claims, Rosenfeld, in this litigation, did not seek the names of undisclosed confidential informants. [Opp. at 10:6-7] As the specific examples noted in Rosenfeld's opening fee memorandum make clear, the FBI had no reasonable basis in law for claiming the exemptions.

**IV.     ROSENFELD SHOULD BE AWARDED THE FULL AMOUNT OF FEES SOUGHT**

"[T]he lodestar figure is presumptively a reasonable fee award," although the district court may adjust it as necessary. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). But "[t]he party opposing the fee application has the burden of rebuttal that *requires* submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." Camacho v. Birdgeport Fin., 523 F.3d 973, 980 (9th

11

Cir. 2008) (emphasis added). Thus, an opposing party cannot simply make general assertions about the hours spent, or dispute hourly rates, without providing the moving party and the Court with specific references and probative counter-evidence. Without these, the moving party and the court are left without any means to address the opponents' claims.

The FBI criticizes some general types of time entries and points to some examples, but largely does not indicate which specific entries should be struck. Indeed, in the end, the FBI simply un-tethers its opposition from any specific time entry or from the factors or calculations required to establish a lodestar and reasonable fee award, and instead simply conjures up a round number of $50,000. [Opp. at 1:14-15] There is no evidence, argument or logical basis for that number at all.

### A.  THE HOURS SPENT ARE REASONABLE AND WELL-DOCUMENTED

The FBI argues that the hours are unreasonable for a host of reasons, none meritorious.

It complains that some entries are "generic." [Opp. at 14:5] But there is nothing wrong with general descriptions. Indeed, Local Rule 54-5(b)(2) permits one seeking fees simply to file summaries of time spent by broad topic. And as this Court recently noted, "great detail" is not required; "general subject matter" and "minimal" descriptions are sufficient as long as "they establish that the time was spent on the matters for which the district court awarded attorneys' fees." S.F. Baykeeper v.West Bay Sanitary Dist., 2011 WL 6012936, at *11 (N.D. Cal. Dec. 1, 2011) (quoting Lytle v. Carl, 382 F.3d 978, 989 (9th Cir. 2004)).

The FBI also generally attacks fees related to emails, even when billed at the most minimal time increment. [Opp. at 14:5-11] But email is now the most common means of communication between co-counsel, opposing counsel, law clerks, clients and even the courts, including the transmission of e-filing notices. It is not uncommon for much of a lawyer's day to be taken up receiving, reviewing, forwarding, responding and composing emails. Surely, all email entries cannot be categorically excluded from an attorneys' fee award.

Defendants also contend, citing a line of cases in which the attorneys were themselves the FOIA requesters, that a plaintiff cannot recover attorneys' fees for time spent on review of the documents received. See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice, 825 F. Supp. 2d 226, 231 (D.D.C. 2011). [Opp. at 14:16-25] But Rosenfeld's counsel reviewed the

12

records solely for purposes of the litigation: to ensure that the agency has actually produced the records it has been ordered to produce; to prepare the motions for summary judgment; to provide evidence to the court on the adequacy of searches; to marshal evidence that the FBI was not properly processing the records to apply existing law and this court's orders on redactions. The specific time entry challenged, four hours on December 21, 2011, pertains to the review of documents conducted during the preparation of Rosenfeld's final summary judgment motion. [Second Declaration of James Wheaton, ("2d Wheaton Decl."), filed herewith, ¶ 7]

The FBI also generally alleges, without pointing to any specific time entries, that counsels' time was "unproductive, excessive or redundant." [Opp. at 14:27] Again, the FBI's complaint is non-specific — "more than one attorney to attend a meeting or hearing where only one attorney was needed" — without any citation to any specific meeting or hearing.[6] [Opp. at 15:6] The FBI also complains counsel cannot recover where "multiple attorneys attended a deposition" [Opp. at 15:22] when there were no depositions in this case and no such time entries presented.

The FBI also complains about plaintiffs' attorneys communicating among themselves, without taking exception to any specific time entries. [Opp. at 15:8-10] But collaboration is not "unproductive, excessive or redundant." As this Court has noted, "determining what is unnecessary is difficult as '[o]ne certainly expects *some* degree of duplication as an inherent part of the process.' Thus, '[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case.' " S.F. Baykeeper, 2011 WL 6012936, at *14 (quoting Moreno v. City of Sacramento, 534 F.3d 1106, 1112, 1114 (9th Cir. 2008)) (emphasis in original, internal citations omitted).

The FBI also challenges any request for "unpaid work of student interns," citing a case holding that a pro se litigant cannot be compensated for representing himself. [Opp. at 15:26-27] However, "[p]aralegal and law clerk time is compensable at prevailing market rates, even if it is volunteered." Richard Pearl, California Attorney Fee Awards, § 9.118, at 549 (2012) (citing

---

[6] The FBI twice makes the bizarre argument that because Mr. Rosenfeld is expert in FOIA matters any attorney time might have been unnecessary; and perhaps he should have done more of his own legal research and drafting. [Opp. at 15:13-14; 16:3-4]

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**   Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

1  Missouri v. Jenkins, 491 U.S. 274, 286 (1989); Richlin Sec. Serv. v. Chertoff, 553 U.S. 571 (2008)).

2  The FBI lastly attacks the fee request by equating attorney "administrative" time with
3  "clerical" work. [Opp. at 16:11-23] Lead counsel in any case, especially those with a non-profit
4  organization without paralegal or clerical employees, must necessarily spend some amount of time
5  on "administrative" tasks for a case. These time entries do not capture office overhead; rather they
6  are case management tasks such as conferring with co-counsel and the client on strategy, document
7  management, plus routine supervision of other legal personnel. These are all necessary and proper
8  and routinely billed to clients, and recovered in fee motions. See Prison Legal News v.
9  Schwarzenegger, 608 F.3d 446, 451-453 (9th Cir. 2010) (awarding fees for corresponding with
10  clients outside of actual work on motions or in court). There is no evidence that senior counsel were
11  performing rote clerical tasks.

### B. THE RATES ARE REASONABLE

The FBI claims that the hourly rates applied are unreasonable but fails to supply any evidence of what the proper hourly rate might be. Instead, they simply propose that the court use the "Laffey matrix" by placing an unattributed chart in its opposition memo but without actually submitting the matrix as evidence. [Opp. at 18:14-17] But "[i]f the opposing party does not submit evidence to contradict evidence of the moving party's rates, they are presumed reasonable. United Steelworkers v. Phelps Dodge, 896 F.2d 403, 407 (9th Cir 1990)." California Attorney Fee Awards, supra, § 9.122, at 548.6 (additional citations omitted).

This case thus presents no occasion to depart from the normal practice of considering evidence of the rates applied to attorneys of similar experience in the geographic area. See Moreno, 534 F.3d at 1111.[7] Here, Rosenfeld has supplied admissible evidence to establish the hourly rates,

---

[7] The Ninth Circuit recently cast doubt on the continued wisdom of using Laffey data outside of the District of Columbia, even if adjusted for regional cost of living variations. Prison Legal News, 608 F.3d at 454. The FBI cites a few instances of Laffey being used in this District, including one by this Court. [Oppo at 17] However, in each of those cases either plaintiff proposed using Laffey rates and defendant did not oppose, or there was no other evidence on local rates submitted. Neither is true here. Even the DOJ's own "Guide to the Freedom of Information Act" states that the Laffey matrix is standard only "[w]ithin the D.C. Circuit." Guide to the Freedom of Information Act, "Attorney Fees," at 860, available at http://www.justice.gov/oip/foia_guide09/attorneyfees.pdf.

14

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**                                                                                           Case No. 3:07-cv-03240-EMC
Fee Motion Reply (FINAL).DOCaf

rendering use of Laffey unnecessary. Indeed, Rosenfeld has submitted the most probative evidence available: evidence of the actual rates charged by the attorney at issue, [4th Greene Decl. (Docket #151); Wheaton Decl. (Docket #150)] an affidavit from an attorney in the region familiar with hourly rates, [Pearl Decl. (Docket #152)] and evidence of awards by courts in this area for attorneys of similar experience. [Pearl Decl.] There is no reason to displace this evidence of actual rates for these lawyers with rates from a different metropolitan area.[8]

### C. NO REDUCTION IS APPROPRIATE IN EITHER THE MAIN FEE AWARD, THE FEES ON FEES, OR THE COSTS

As set forth above, Rosenfeld has substantially prevailed in every aspect of this litigation. There is thus no basis for reducing either the fee award in chief or the award of fees incurred preparing this fee motion or any of the costs incurred.

### D. ROSENFELD INCURRED ADDITIONAL FEES PREPARING THIS REPLY

In addition to the fees set forth in the opening fee memorandum, since May 29, 2012, when the opening fee memorandum was filed, Rosenfeld's counsel have expended an additional $25,765 preparing this reply memorandum. [2d Wheaton Decl. ¶¶ 5-6; Fifth Declaration of David Greene, filed herewith, ¶¶ 6-8]

### CONCLUSION

For the foregoing reasons, Rosenfeld's motion for an award of attorneys' fees and costs in the amount of **$417,152.62**, plus **$25,765** incurred after May 29, 2012, should be granted.[9]

Dated: June 19, 2012

BRYAN CAVE LLP

By: /s/
David A. Greene
Attorneys for Plaintiff Seth Rosenfeld

---

[8] Moreover, the Laffey data presented in the FBI's opposition memo does not even address the rate for an attorney with Wheaton's 31 years of experience, much of it in FOIA and related fields.

[9] This amount is in line with fees awarded in FOIA cases of similar scope. See, e.g., Judicial Watch v. DOC, 470 F.3d at 365-74 (affirming in large part fee award of $897,000); Moreno, 534 F.3d 1106 (remanding to trial court to reconsider reduction of fee award from $704,858 to $428,053).