UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SETH ROSENFELD,

             Plaintiffs,

    v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

             Defendants.

_____/

No. C-07-3240 EMC

**ORDER GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

**(Docket No. 149)**

       Plaintiff Seth Rosenfeld filed a complaint on June 19, 2007, against Defendants United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), seeking the disclosure of certain government documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Compl ¶ 1. After multiple years of litigation, including three rounds of cross-motions for summary judgment, this Court entered a final order and judgment in favor of the Plaintiff on March 28, 2012. *See* Stipulation and Order to Enter Judgment (Docket No. 146), Entry of Judgment (Docket No. 147). Now before the Court is Plaintiff's Motion for an Award of Attorneys' Fees and Costs (Docket No. 149). For the reasons stated below, the Court **GRANTS** Plaintiff's Motion and awards Plaintiff a total of **$363,217.60** in fees and costs.

## I.    FACTUAL & PROCEDURAL BACKGROUND

       Seth Rosenfeld is a professional journalist. He has written numerous publications about the FBI's activities in connection with the University of California during the Cold War, and the impact those activities had on the "academic freedom and civil liberties" of American citizens. Eighth Decl. Of Seth Rosenfeld (Docket No. 153) ¶ 1. Much of his research and writing has drawn

United States District Court

For the Northern District of California

extensively from "FBI records released pursuant to the Freedom of Information Act."  *Id*. ¶ 5.  Over the course of his career, Plaintiff has used these records to publish articles about the FBI's activities at the University of California during nationally prominent events in the 1950s and 1960s, including the FBI's political surveillance of University of California students and faculty, and the FBI's attempts to oust Clark Kerr as president of the University.  *Id*. ¶ 2.  Plaintiff is currently writing a book about the FBI's activities in connection with the University that expands upon his published articles.  *Id*. ¶ 3.

Plaintiff's present case flows from a rather protracted dispute between Rosenfeld and the FBI over whether certain documents in the FBI's custody ought to be released under FOIA.  Plaintiff has, at various times, requested FBI records concerning former President Ronald Reagan "and the individuals who were closely associated with him during the Cold War period."  *Id*. ¶ 18.  His FOIA requests asked for FBI documents on Ronald Reagan from the date of the first record on file up to the year 1979.  *Id*. ¶ 19.  Rosenfeld maintains that the records he requested "shed light on the FBI's deep involvement with Ronald Reagan during this period, and are thus directly relevant to the FBI's relationship with him during his Governorship and in regards to FBI activities relative to UC [the University of California]."  *Id*. ¶ 18.

Plaintiff claims that Reagan was an FBI informant and that the FBI played an integral role in supporting Reagan's political career.  *See* Seventh Decl. of Seth Rosenfeld (Docket No. 138-1) ¶¶ 4, 6, 9.  Plaintiff seeks information about how the FBI's operations impacted Reagan's political career, his shaping of government policy while Governor of California, and the exercise of constitutionally protected activities by American citizens during this time period.  Eighth Rosenfeld Decl. ¶¶ 24-26.

On June 19, 2007, Rosenfeld filed a complaint alleging that the FBI failed to release all of the documents he requested under FOIA.  Compl. ¶ 1 (Docket No. 1); *see also* First Amended Compl. ¶ 13 (Docket No. 13).  In the five years following the filing of that complaint, the parties have gone through four separate rounds of summary judgment motions, three of which were cross-motions for summary judgment.  *See* Docket No. 27 (Defendants' First Motion for Summary Judgment); No. 82 (Defendants' Second Motion for Summary Judgment); No. 99 (Defendants' Third Motion for Summary Judgment); No. 133 (Plaintiff's Third Motion for Summary Judgment).

On each of these summary judgment rounds, Rosenfeld was largely the prevailing party.  *See* Docket No. 47 (Memorandum and Order on Cross-Motions for Summary Judgment); No.  98 (Memorandum and Order on Second Set of Cross-Motions for Summary Judgment); No. 115 (Memorandum and Order on Defendants' Third Motion for Summary Judgment); No. 143 (Redacted Order Granting Plaintiff's Motion for Summary Judgment).  This Court entered a final order and judgment in favor of the Plaintiff on March 28, 2012.  Stipulation and Order to Enter Judgment (Docket No. 146); Entry of Judgment (Docket No. 147).  The Plaintiff maintains that "at a minimum" this litigation led the FBI to release in excess of 3,398 pages of materials related to President Reagan, *see* Eighth Rosenfeld Decl. ¶ 89, in the course of what the court described as "the FBI's Herculean efforts at compliance with [its] FOIA obligations,"*see* Memorandum and Order on Second Set of Cross-Motions for Summary Judgment at 4.

Rosenfeld now moves for an award of attorneys' fees and costs under FOIA's fee-shifting provision.  In total, Plaintiff seeks an award of $442,917.62, which includes $85,570 in fees and costs incurred by counsel for Plaintiff in preparing the instant motion.  *See* Pl.'s Mot. for an Award of Fees and Costs (Docket No. 149) at 25; Pl.'s Reply Memorandum in Support of Mot. for Fees and Costs at 15 ("Pl.'s Reply Mem.") (Docket No. 156).  The FBI objects to Rosenfeld's fee motion and argues that attorneys' fees and costs should not be awarded in any amount for three reasons: (1) that Rosenfeld is ineligible to receive attorneys' fees because he did not substantially prevail in the litigation, (2) that Rosenfeld is not entitled to an award because the FBI made good faith efforts to respond to his FOIA requests, and (3) that his requested award amount greatly exceeds what is reasonable in a case of this type.  Opp. to Pl.'s Mot. for Award of Fees and Costs (Docket No. 155) ("Def.'s Response Brief").

## II.   DISCUSSION

A.   Legal Standard

The fee-shifting provision of FOIA states that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  "Substantially prevailed" in this context means that a "complainant has obtained relief through either . . . a judicial

3

United States District Court

For the Northern District of California

1    order, or an enforceable written agreement or consent decree; or . . . a voluntary or unilateral change

2    in position by the agency, if the complainant's claim is not insubstantial." *Id.* Fee and cost awards

3    are not automatically awarded to a prevailing party under FOIA. *See Church of Scientology of*

4    *California v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983). Rather, plaintiffs "must present

5    convincing evidence" that they are both *eligible* for an award of attorney's fees and that they are

6    *entitled* to such an award. *See id.*, 700 F.2d at 489, 492. *See also Long v. U.S. I.R.S.*, 932 F.2d

7    1309, 1313 (9th Cir. 1991) ("In order to receive an award of fees, a prevailing party in a FOIA

8    action must demonstrate both eligibility for and entitlement to such a recovery.").

9           The Ninth Circuit has crafted a two-step process for determining whether a party may be

10   awarded fees and costs under § 552(a)(4)(E). To be *eligible* for an award, a party must show both

11   that "(1) the filing of the action could reasonably have been regarded as *necessary* to obtain the

12   information," and that "(2) the filing of the action had a *substantial causative* effect on the delivery

13   of the information." *Church of Scientology of California*, 700 F.2d at 489 (emphasis in original).

14          Once a court deems a party eligible to recover fees and costs, it then exercises its "discretion

15   to determine whether the plaintiff is *entitled* to fees." *Oregon Natural Desert Ass'n v. Locke*, 572

16   F.3d 610, 614 (9th Cir. 2009) (emphasis added). Entitlement to an award of fees under FOIA is a

17   separate analysis; a "determination of eligibility does not automatically entitle the plaintiff to

18   attorney's fees." *Church of Scientology* at 489. To determine whether a party is entitled to fees, a

19   court must evaluate a number of equitable factors, including (1) the public benefit resulting from

20   FOIA disclosures in the case, (2) the commercial benefit to the party resulting from the disclosures,

21   (3) the nature of the party's interest in the disclosed records, and (4) whether the government's

22   rationale for withholding the records had a reasonable basis in law. *Long v. U.S. I.R.S.*, 932 F.2d

23   1309, 1313 (9th Cir. 1991). These "criteria are not exhaustive, however, and the court may take into

24   consideration whatever factors it deems relevant in determining whether an award of attorney's fees

25   is appropriate." *Long*, 932 F.2d at 1313 (internal quotation marks omitted). The Ninth Circuit has

26   made clear that "[t]he decision to award attorney's fees is left to the sound discretion of the trial

27   court." *Church of Scientology* at 492.

28

4

United States District Court

For the Northern District of California

If a court determines that a party is both eligible and entitled to receive fees, that party "must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Long* at 1313-14. If these two figures are reasonable in light of the difficulty of the case and the skill of the attorneys involved, there is a "strong presumption" that their product "represents a reasonable award." *Long* at 1314. A court may revise upward or downward the resulting "lodestar figure"[1] if "factors relating to the nature and difficulty of the case overcome this strong presumption and indicate that such an adjustment is necessary." *Id.*[2] However, once a party is deemed both eligible and entitled to fees, "the award must be given and the only room for discretion concerns the reasonableness of the amount requested."[3] *Id.* A

---

[1] Referring to this method of attorney fee award calculation as the "lodestar" approach may have originated with the Third Circuit's opinion in *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3rd Cir. 1973) ("the amount thus found to constitute reasonable compensation should be the *lodestar* of the court's fee determination") (emphasis added).

[2] The *Long* court cited with approval twelve factors that may be considered in revising a fee award. They are

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Long* at 1314 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). These factors may, however, overlap to some degree with the "lodestar figure" if they served as a basis for the calculation of that initial amount. *Long* at 1314, Fn. 4.

[3] A court may reduce the amount of hours used to calculate a fee award "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). *Chalmers* examined an award of fees and costs under the fee-shifting provision for civil rights actions provided by statute under 42 U.S.C. § 1988. The Ninth Circuit cites approvingly to *Chalmers* and other § 1988 cases in discussing the metrics of fee-shifting under FOIA. *See e.g. Long* at 1314. Indeed, *Rosenfeld v. United States*, 859 F.2d 717, 724 (9th Cir.1988) explicitly holds that FOIA and § 1988 are "comparable" where awards of attorney's fees are concerned.

United States District Court

For the Northern District of California

1    district court awarding fees and costs "should provide a detailed account of how it arrive[d] at

2    appropriate figures for the number of hours reasonably expended and a reasonable hourly rate." *Id.*

3    B.      Eligibility for Attorneys' Fees

4           The FBI contends "[t]he record here shows that Plaintiff has not demonstrated significant

5    relief though a judicial order nor a voluntary or unilateral change in position by the agency with

6    respect to a not insubstantial claim," and is, therefore, not eligible for an award of attorneys' fees.

7    Def.'s Response Brief at 6.  If anything, the record demonstrates quite the opposite.  A party has

8    "substantially prevailed" under FOIA, as noted above, when it obtains "relief through either...a

9    judicial order, or an enforceable written agreement or consent decree; or...a voluntary or unilateral

10   change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. §

11   552(a)(4)(E)(ii).  Thus, if a "sufficient causal nexus exists between [plaintiff's] litigation and the

12   release of the documents," that is enough to "warrant a determination that [plaintiff] is eligible for

13   attorney fees."  *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 872

14   (D.C. Cir. 1981).

15          The record demonstrates both that Rosenfeld's suit against the FBI resulted in his receiving

16   judicial orders granting the relief sought in his complaint, and that the suit acted as the "catalyst" in

17   prompting the FBI's "voluntary unilateral changes in position" that resulted in the disclosure of

18   documents he sought.  Plaintiff's First Amended Complaint ("FAC"), filed on October 22, 2007,

19   advanced five separate causes of action seeking the disclosure of certain records pertaining to (1)

20   former President Reagan, (2) former Alameda County prosecutor Herbert Ellingwood, (3) former

21   University of California Vice-Chancellor Alex Sherriffs, (4) former union official Roy M. Brewer,

22   and (5) the former President's older brother Neil Reagan.  *See* FAC (Docket No. 13) at 7-22.  The

23   FAC advanced three additional causes of action seeking the disclosure of (6) records from the FBI's

24   Field Office in Sacramento, California, carrying the "80" designation, (7) records pertaining to the

25   Motion Picture Industry Council, the Labor League of Hollywood Voters, and the Motion Picture

26   Alliance for the Preservation of American Ideals, and (8) certain additional records pertaining to

27   former President Reagan.  *Id.* at 22-30.  In the four years of litigation following Rosenfeld's filing of

28   the complaint, the FBI released approximately 7412 pages of materials to Plaintiff under FOIA, the

**United States District Court**
For the Northern District of California

1  last three pages of which were released pursuant to an order of this Court. *See* Eighth Rosenfeld

2  Decl. (Docket No. 153) Ex. ZZ (consisting of fifteen FBI cover letters detailing the release of

3  documents to Plaintiff). All of the materials released fell within the ambit of these eight causes of

4  action. *See id.*

5          The FBI claims that "no evidence beyond timing" shows that Rosenfeld's suit "had a

6  substantial causative effect on the delivery of information." Def.'s Response Brief at 7. This

7  argument overlooks the fact that "timing" can directly inform whether a "causal nexus exists

8  between the litigation and [defendant's] surrender of these documents." *Church of Scientology of*

9  *California v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981) (hereinafter "*Harris*"). In *Harris*, the

10 Court of Appeals for the District of Columbia Circuit reversed a district court's decision to deny an

11 award of attorney's fees under FOIA, in part, because the court failed to consider a release of

12 documents by the Attorney General – documents sought by the Church of Scientology in its lawsuit

13 – as part of its assessment of the Church's relative success in the case. The Court of Appeals

14 reasoned:

15             The initiation and prosecution of this litigation, however, was in our
               opinion the direct cause of their disclosure, for absent this litigation,
16             following the unsuccessful administrative request, the General
               Counsel's files would never have been searched, the 31 documents
17             would never have been identified as falling within the scope of
               Scientology's FOIA request, and the documents would never have
18             been evaluated to determine whether they should or could be released .
               . . The timing of the Attorney General's letter does not eliminate the
19             fact that if the litigation had never been brought the documents would
               never have been disclosed. It was the litigation that produced the 31
20             documents, not the letter.

21 *Harris*, 653 F.2d at 589.

22          The Ninth Circuit has adopted a similar position for assessing the causal connection between

23 a plaintiff's FOIA suit and the release of requested documents during litigation. "[T]he mere fact

24 that defendants have *voluntarily* released documents" during the pendency of a lawsuit "does not

25 preclude an award of attorney's fees to the plaintiff" under FOIA's fee-shifting provision. *Church*

26 *of Scientology of California*, 700 F.2d at 492 (citing *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C.

27 Cir.1977)). Where sought-after FOIA documents are released during litigation, a court must

28

7

**United States District Court**
For the Northern District of California

1   examine "(1) when the documents were released; and (2) what actually triggered the documents'

2   release" in assessing whether a plaintiff has "substantially prevailed" in his case. *Id.*

3        As in *Harris,* there is no indication in the record here that the Defendants would have

4   searched back through their files "or released any of the contents thereof in the absence of this

5   litigation." *Harris*, 653 F.2d at 588. Prior to filing suit, Rosenfeld timely appealed the FBI's

6   conclusion that it had released all the requested files as required under FOIA. *See* Memorandum and

7   Order on Cross-Motions for Summary Judgment (Docket No. 47) at 2-9. Up to that point, the FBI

8   had released 2,787 pages of responsive records related to Ronald Reagan, Compl. (Docket. No. 1) ¶¶

9   22, 24, 231 pages related to Roy Brewer, *id.* ¶ 69, and 49 pages related to the League of Hollywood

10  Voters, *id.* ¶ 113. The record indicates Rosenfeld had exhausted his administrative remedies and

11  received what amount to final determinations that the government had met its obligation under

12  FOIA. Memorandum and Order on Cross-Motions for Summary Judgment at 10-13; *see also* Eighth

13  Rosenfeld Decl. ¶¶ 60-73. Rosenfeld wrote numerous letters to the FBI setting forth instances in

14  which he believed the FBI had failed to release appropriate records, *see e.g.* Compl, Ex. H and I, but

15  his letters either received no substantive reply or were added to the government's "substantial"

16  backlog of FOIA appeals, *see* Compl, Ex. K. Among other things, Rosenfeld sought thousands of

17  pages of records identified as responsive that were referred out to other agencies for processing, as

18  well as responsive records awaiting a declassification review by the FBI. *See* Compl, Ex. H. Seeing

19  no alternative way of obtaining the documents, Rosenfeld turned to the courts for relief.

20       This is not a case where the FBI, "upon actual and reasonable notice, made a good faith

21  effort to search out material and to pass on whether it should be disclosed." *Harris* at 588 (citing

22  *Cox v. U.S. Dept. of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979)). Rather, it is much more analogous to a

23  situation where "the agency, upon actual and reasonable notice, decided to act upon an assumption

24  as to the nature of certain material and was then obliged to release most of that material when the

25  light of litigation exposed the error of its assumption." *Harris at* 588. Over the course of this

26  litigation, the FBI offered several reasons to support its decisions to withhold the materials

27  Rosenfeld requested, or to limit the scope of its search for responsive documents, such as by arguing

28  that Plaintiff had failed to exhaust his administrative remedies, *see* Defs.' Mot. for Summary

United States District Court
For the Northern District of California

1   Judgment (Docket No. 27), or that it had conducted adequate searches and already released all

2   responsive, non-exempt records, *id.; see also* Defs.' Second Mot. for Summary Judgment (Docket

3   No. 82). However, time and again it revised its earlier conclusions and opted to release materials to

4   Plaintiff in the face continued of litigation. The Defendants' own letters demonstrate how

5   Rosenfeld's initiation of suit on June 19, 2007, prompted the FBI to revisit its earlier denials of

6   Plaintiff's FOIA request and release additional material. *See e.g.* Eighth Rosenfeld Decl. (Docket

7   No. 153) Ex. ZZ.(containing FBI letter dated February 6, 2009, communicating the release of an

8   additional 911 pages of responsive materials, and noting that "[d]ocuments responsive to your

9   [2007] request continue to be processed and will be released to you"); *id.* Ex. ZZ.(containing FBI

10  letter dated January 29, 2010, communicating the release of an additional 44 pages of responsive

11  materials located and re-processed "[p]er agreement made between the FBI and plaintiff during the

12  pre-Case Management Conference meeting on November 2, 2009"). As noted, *supra*, over the span

13  of four years following Rosenfeld's filing of the complaint, the FBI released approximately 7412

14  pages of materials to Plaintiff under FOIA. *See* Eighth Rosenfeld Decl. (Docket No. 153) Ex. ZZ

15  (consisting of fifteen FBI cover letters detailing the release of documents to Plaintiff).

16          Viewing the litigation as a whole, the record demonstrates that "but for the institution and

17  prosecution of this suit, the documents ultimately obtained by [Plaintiff] . . . would never have been

18  released." *Harris at* 588. On these facts, "it is clear that the suit was necessary and causally linked

19  to the release of the documents obtained." *Id*. Thus, both the timing and circumstances of the FBI's

20  release of documents in this case indicate that Rosenfeld's FOIA lawsuit was, at root, "what actually

21  triggered the documents' release." *Church of Scientology of California* at  492. As such, he has

22  demonstrated that the "lawsuit was *reasonably necessary* and that it had a *substantial causative*

23  *effect* on the release of documents" at issue, and he is therefore is eligible to receive an award of

24  attorneys' fees under FOIA. *Id*. at 491 (emphasis in original).

25  C.      Entitlement to Attorneys' Fees

26          Having determined that Rosenfeld is eligible to receive a fee award, the Court next considers

27  whether he is also entitled to an award. The decision as to whether a party is entitled to an award of

28  fees and costs "is left to the discretion of the district court." *Church of Scientology* at 489. Courts

United States District Court

For the Northern District of California

1   look to the four factors described in *Long* as a guide to exercising their discretion, keeping in mind

2   "the basic policy of the FOIA to encourage the maximum feasible public access to government

3   information." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977); *see*

4   *also Church of Scientology* at 494.

5       Turning to the first *Long* factor – an examination of the public benefit resulting from FOIA

6   disclosures in this case – the Court notes that the FBI does not dispute that this factor weighs in

7   favor of a fee award. *See* Def.'s Response Brief at 11 (stating that Defendants "do not necessarily

8   contest that the information obtained through this FOIA request is of any benefit to the public").

9   Coupled with the court's prior recognition that "[t]he public maintains a significant interest in

10  knowing the extent of the FBI's involvement in furthering Reagan's political aspirations,"

11  Memorandum and Order on Second Set of Cross-Motions for Summary Judgment (Docket No. 98)

12  at 20, the Court finds that this factor weighs in favor of Rosenfeld's entitlement to fees and costs.

13      The next two factors – the commercial benefit to the party resulting from the disclosures and

14  the nature of the party's interest in the disclosed records – are closely related and often assessed

15  together. *See Church of Scientology* at 494; *Tax Analysts v. U.S. Dept. of Justice*, 965 F.2d 1092,

16  1095 (D.C. Cir. 1992). As a general matter, "if either commercial benefit will inure to the plaintiff

17  from the information" obtained, or "plaintiff intends to protect a private interest" through the use of

18  FOIA, "an award of attorney's fees is not recoverable." *Church of Scientology* at 494. In contrast,

19  "where plaintiff is indigent or a nonprofit public interest group, an award of attorney's fees furthers

20  the FOIA policy of expanding access to government information." *Id*. More specific to the case at

21  hand, Ninth Circuit precedent in this area teaches that courts assessing these two factors "[sh]ould

22  generally award fees if the complainant's interest in the information sought was scholarly or

23  journalistic or public-oriented." *Long* at 1316 (quoting *Church of Scientology* at 493, which quotes

24  in turn S.Rep. No. 854, 93d Cong., 2d Sess. at 19 (1974)).

25      As the facts described above note, Rosenfeld is a professional journalist who made his

26  underlying FOIA request to find supporting materials for a book he is readying for publication.

27  Eighth Rosenfeld Decl. ¶¶ 1, 30. The FBI asks this Court to depart from the general favorable

28  treatment afforded scholars and journalists under this prong of the entitlement analysis because

1    "Plaintiff has a financial incentive to pursue his [FOIA] request and litigation."  Def.'s Response

2    Brief at 11.  Pointing to *Morley v. U.S.C.I.A.*, 828 F. Supp. 2d 257 (D.D.C. 2011), where an author

3    and journalist was denied attorney's fees under FOIA, in part, because of his financial incentive to

4    use FOIA to acquire source documents for use in his book, the FBI argues that this Court should also

5    find that Rosenfeld's FOIA requests here "were primarily grounded in the commercial purpose of

6    the publication of a book on the FBI."  *Id.*  The court in *Morley*, however, focused heavily on the

7    fact that the plaintiff there sought "records from the CIA at little or no charge under FOIA *to avoid*

8    *expending his own time and money* to obtain the documents from NARA [the National Archives and

9    Records Administration]."  *Morley*, 828 F. Supp. 2d at 265 (emphasis added).  There is no evidence

10   in this case that Rosenfeld sought to obtain a similar pecuniary advantage through FOIA.  Nor has

11   the FBI shown the records sought were otherwise available elsewhere.

12        Further, the "mere intention to publish a book does not necessarily mean that the nature of

13   the plaintiff's interest is purely commercial."  *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008)

14   (internal quotation marks omitted).  "Surely," the *Davy* court held, "every journalist or scholar may

15   hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award

16   of attorney's fees under FOIA."  *Id.*  Given the unique treatment afforded journalists and scholars

17   under this prong of the entitlement test, the Court finds that both the commercial benefit and

18   plaintiff's interest factors in *Long* weigh in favor of Rosenfeld's entitlement to a fee award.

19        The final factor – whether the government's rationale for withholding the records had a

20   reasonable basis in law – directs a court to consider whether an agency's administrative denial of a

21   FOIA request had "a colorable basis in law," or whether the denial "appeared to be merely to avoid

22   embarrassment or to frustrate the requester."  *Church of Scientology of California* at 492, Fn. 6

23   (citing S.Rep. No. 93-854, 93rd Cong. 2nd Sess. 19 (1974)).  An agency denying a FOIA request

24   "must be careful not to read the request so strictly that the requester is denied information the agency

25   well knows exists in its files, albeit in a different form from that anticipated by the requester.  To

26   conclude otherwise would frustrate the central purpose of the Act."  *Hemenway v. Hughes*, 601 F.

27   Supp. 1002, 1005 (D.D.C. 1985).

28

The FBI argues that this factor weighs against an award of attorneys' fees here because "bureaucratic difficulty, not recalcitrant behavior, delayed the FBI's response to Plaintiff's requests." Def.'s Response Brief at 8. It maintains that, "although the Court's orders yielded the production of some [additional] documents or information, the FBI had a reasonable basis for its initial search and disclosures." *Id.* at 9. Further, "given the sheer volume of the information requested, the age of the records sought, the length and difficulty of the many searches conducted, and Plaintiff's frequent questions regarding the records," under the circumstances "[t]he actions taken by the FBI to process and release records [were] reasonable." *Id.* The court's orders in this matter do not support the FBI's assertion.

As mentioned above, the court issued four separate orders in this case on the parties' motions for summary judgment. The content of these orders reveals quite readily the unreasonableness of the government's rationale for withholding the records requested by Rosenfeld. On the first set of Cross-Motions for Summary Judgment, the Court rejected the FBI's administrative exhaustion argument noting that "[a] plain reading of the FOIA statute and the DOJ regulations do not support defendants' claim that Rosenfeld must appeal interim releases" of materials, and that the government's position amounted to attempts "to shield the disclosure of information by marshaling administrative technicalities." Memorandum and Order on Cross-Motions for Summary Judgment (Docket No. 47) at 12-13. As to the adequacy of the FBI's search for responsive documents, the Court directed the government to submit additional information because it "failed to provide sufficient evidence" in several areas "to enable the court to determine the reasonableness of [its] search." *Id.* at 17.

Similarly, in its Order on the second set of Cross-Motions for Summary Judgment, the Court rejected Defendant's contention that it had conducted a reasonable search for responsive documents. It found in some instances that the FBI was "unable to demonstrate that the documents identified . . . are non-existent, outside the scope of the request, or irrelevant," and in other instances the FBI's "failure to search for, let alone produce, specific, identified documents the existence of which are not disputed demonstrates that an adequate search was not performed." Memorandum and Order on Second Set of Cross-Motions for Summary Judgment (Docket No. 98) at 6, 7. Indeed, the Court

United States District Court

For the Northern District of California

12

United States District Court

For the Northern District of California

1   specifically noted how "[t]he FBI's current position, one favoring non-disclosure over disclosure,

2   goes against the dictates of FOIA" in that "FOIA favors disclosure." *Id*. at 8.  In the same Order, the

3   Court rejected the FBI's argument that certain of the requested Reagan-related documents were

4   exempt from disclosure for law enforcement purposes under 5 U.S.C. § 552(b)(7)(c), holding that

5   "[i]nformation regarding acts taken to protect or promote Reagan's political career, or acts done as

6   political favors to Reagan serve no legitimate law enforcement purpose" and "could not have been

7   undertaken for legitimate law enforcement investigations." *Id*. at 15.

8          In its Memorandum and Order on Defendants' Third Motion for Summary Judgment as Moot

9   (Docket No. 115), the Court granted and denied in part the FBI's summary judgment motion

10  because, although progress had been made in carrying out its FOIA responsibilities, the FBI had not

11  yet produced "a mutually acceptable subset of [] responsive documents" to Rosenfeld, and was

12  therefore ordered to "reprocess 1,300 randomly selected documents" from the pool of 13,000

13  responsive records and communicate the results to Rosenfeld. *Id*. at 8.  Finally, in this Court's

14  Redacted Order Granting Plaintiff's Motion for Summary Judgment (Docket No. 143), the Court

15  rejected the FBI's argument that a particular three-page document discussing "traffic violations of an

16  individual closely associated with Ronald Reagan" had to be released only in redacted form due to

17  privacy concerns and law enforcement purposes.  *Id*. at 5.

18         While it is true that "the FBI engaged in extensive efforts to respond to Plaintiff's FOIA

19  requests," and that the FBI prevailed on some of its claims in this case, on balance the record does

20  not support the FBI's argument that it "had a reasonable basis for its initial search and disclosures."

21  Def.'s Response Brief at 9.  For the most part, the FBI had no such reasonable basis.  Thus, this

22  fourth factor – whether the government's rationale for withholding the records had a reasonable

23  basis in law – also weighs in favor of the Plaintiff's entitlement to a fee award.  In sum, all four of

24  the *Long* criteria weigh in the Plaintiff's favor, and as such the Court finds that Rosenfeld is entitled

25  to an award of attorneys' fees under FOIA.

26  D.     Reasonableness of Amount Requested

27         Having concluded that "the plaintiff is both eligible for and entitled to recover fees, the

28  award must be given and the only room for discretion concerns the reasonableness of the amount

13

United States District Court

For the Northern District of California

requested." *Long* at 1314.  In assessing the reasonableness of the amount requested, the Court turns to the plaintiff's fee bill and scrutinizes the "reasonableness of (a) the number of hours expended and (b) the hourly fee claimed.  If these two figures are reasonable, then there is a 'strong presumption' that their product, the lodestar figure, represents a reasonable award." *Id*. at 1313-14 (internal quotation marks omitted).  The Ninth Circuit has instructed district courts to "provide a detailed account of how it arrives at appropriate figures for the number of hours reasonably expended and a reasonable hourly rate." *Id.* (internal citations and quotations omitted).

       1.     <u>Hourly Fee Claimed</u>

       In assessing a reasonable hourly rate for the lodestar figure, courts consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96, and Fn. 11 (1984).  The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  "The defendant may introduce rebuttal evidence in support of a lower hourly rate." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).

       The burden is on the fee applicant to produce satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 896.  Here, Rosenfeld claims that reasonable attorney rates for this case range from $100 to $700 per hour.  To support these claims, Plaintiff's attorneys James Wheaton and David Greene have submitted declarations indicating that the rates they claim as reasonable are, in fact, the rates they charged their clients over the relevant time period (the rates Greene bills have increased over the five years this case has been in litigation); they are not claiming their current billing rates for all hours.  Their declarations also cite recent cases where they received fee awards at or near the hourly rates claimed in this motion.  *See* Declaration of James Wheaton in Support of Plaintiff's Motion for [an] Award of Fees and Costs (Docket No.

**United States District Court**

For the Northern District of California

1   150) ("Wheaton Decl.") ¶ 24 (citing fee award of $700 per hour in *Environmental Law Foundation*

2   *v. Laidlaw Transit*, San Francisco Superior Court case no. CGC-06-451832); Fourth Declaration of

3   David Greene in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Costs (Docket

4   No. 151) ¶ 11 (citing fee award of $500 per hour in *Moreland LLC v. Old Republic Title Co.,* San

5   Mateo Superior Court case no. civ-487714). Greene requests that his hourly rate in this fee award be

6   set at $550 per hour despite receiving only $500 per hour in *Moreland.* This increase of $50 per

7   hour is not unreasonable, given that Greene has acquired three additional years of experience since

8   receiving his fee award in *Moreland* in 2009.

9          Plaintiff has also submitted a Declaration of Richard Pearl in Support of Plaintiff's Motion

10   for an Award of Attorneys' Fees and Costs. Pearl's declaration ("Pearl Declaration") (Docket No.

11   152) describes, *inter alia*, his experience with attorney's fees awarded by California courts and his

12   opinions regarding the bills of Rosenfeld's counsel in this case. Pearl's data on compensation rates

13   in this market confirms that Wheaton, an attorney with 28 years of experience, would likely

14   command an hourly billed rate between $640 and $875, based on hourly rates paid to litigators by

15   California law firms. *See* Pearl Decl. at 12-27. Similarly, Pearl's data confirms that Greene, who

16   has 21 years of experience, would command between $495 and $785 per hour. *Id.* The hourly rates

17   requested by Wheaton and Greene in this matter fit comfortably within those ranges.

18          Wheaton's declaration further states that the 'legal fellows' employed in his office are billed

19   at the fee rate of $200 per hour, and student interns are billed at $100 per hour. Wheaton Decl. ¶¶

20   26-27. Maria Williams, a former staff attorney in Wheaton's office with ten years of experience in

21   other areas of law, was billed at $250 per hour for her work on this case. *Id*. at 26. Plaintiff has not

22   produced any evidence of past fee awards supporting the hourly rates claimed for legal fellows,

23   student interns, or Ms. Williams. However, he has submitted a declaration from Richard Pearl

24   providing market data that generally supports the rates of compensation requested for all attorneys

25   and student workers in this case. Pearl's data shows that attorneys with ten years of experience,

26   such as Williams, bill at $430 to $600 per hour in this market, placing her requested billing rate of

27   $250 per hour for this motion well below typical market value. *See* Pearl Decl. at 12-27. Plaintiff's

28   requested rate of $200 per hour for Legal Fellows, who are the equivalent of entry-level associates,

1   falls just below Pearl's range of $225 to $395 per hour typically billed for first-year associates.  *Id.*

2   Plaintiff's requested rate of $100 per hour for student interns falls within the $100 to $260 range

3   typically billed for interns and law clerks.

4              In this Court's experience, the hourly rates requested here are in line with fee awards made in

5   other recent cases in the San Francisco area.  *See, e.g., Californians for Disability Rights v.*

6   *California Dept. of Transp.*, C 06-05125 SBA MEJ, 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010)

7   *report and recommendation adopted sub nom. Californians for Disability Rights, Inc. v. California*

8   *Dept. of Transp.*, C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (awarding hourly

9   rate of $730 for attorney with 26 years of experience; comparable to $700 per hour sought by

10  Wheaton in this motion; not comparable to $539.55 per hour set by *Laffey* matrix (described *infra*));

11  *Wren v. RGIS Inventory Specialists*, C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)

12  *supplemented,* C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (awarding hourly rate

13  of $650 for attorney with 17 years of experience; exceeding $550 per hour rate sought by Greene in

14  this motion; not comparable to $429 to $539.55 per hour rate set by *Laffey* matrix).

15              a.       *Laffey* Matrix

16              The FBI argues that the hourly rates suggested by Plaintiff are unreasonably high, and

17  proposes that the Court adopt hourly rates set forth in the "*Laffey*" matrix along with applicable

18  locality adjustments in order to set a more reasonable rate.  Def.'s Response Brief at 17.  The *Laffey*

19  matrix is "an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in

20  Washington, D.C."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)

21  (citations omitted).  Using this index for setting hourly rates, Plaintiff's attorneys would receive a

22  fee award based on an hourly rate falling somewhere between $236.50 and $539.55.  *See* Def.'s

23  Response Brief at 18.  While the *Laffey* matrix has been used to set rates for attorney fee awards by

24  courts in this district in the recent past, *see e.g. San Francisco Baykeeper v. W. Bay Sanitary Dist.*,

25  C-09-5676 EMC, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011); *Salinas v. Lavender Inv., Inc.*, C09-

26  04541 HRL, 2012 WL 368637 (N.D. Cal. Feb. 3, 2012), the Ninth Circuit recently questioned its

27  broader value as a tool for use in evaluating attorney's fees motions.

28

United States District Court

For the Northern District of California

1    In *Prison Legal News v. Schwarzenegger*, the Ninth Circuit rejected a defendant's argument

2    that a district court should have applied the *Laffey* matrix in fixing an attorney fee award; the court

3    held that "just because the *Laffey* matrix has been accepted in the District of Columbia does not

4    mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles

5    away.  It is questionable whether the matrix is a reliable measure of rates even in Alexandria,

6    Virginia, just across the river from the nation's capital." *Id*. at 454 (citing *Robinson v. Equifax Info.*

7    *Servs., LLC,* 560 F.3d 235, 245 (4th Cir.2009)).  Without a more substantial showing that the rates in

8    *Laffey* matrix would be "in line with those prevailing in the community for similar services by

9    lawyers of reasonably comparable skill, experience, and reputation," *Blum*, 465 U.S. at 896, this

10   Court declines Defendant's invitation to use the matrix.  This is especially so where, as here,

11   Plaintiff has submitted competent evidence showing market rates in this area (including those

12   awarded by courts) which substantially exceed the *Laffey* index.

13        The Court finds that Plaintiff has offered sufficient evidence to show that the proposed

14   hourly rates for inclusion in the lodestar figure accurately reflect the hourly rates these individuals

15   would likely receive in the San Francisco area legal market.  Other than arguments in support of

16   using the *Laffey* matrix, the government offers no rebuttal evidence to Plaintiff's proposed hourly

17   rates.

18        2.    Number of Hours Expended

19        For the purposes of calculating the 'lodestar' figure, the Court has discretion in determining

20   the number of hours reasonably expended on this case.  *See Chalmers v. City of Los Angeles*, 796

21   F.2d 1221; *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that a district court has

22   discretion in determining the amount of a fee award which is "appropriate in view of the district

23   court's superior understanding of the litigation and the desirability of avoiding frequent appellate

24   review of what essentially are factual matters").  The fee applicant bears the burden of

25   "documenting the appropriate hours expended" in the litigation and therefore must "submit evidence

26   supporting the hours worked." *Hensley*, 461 U.S. at 433, 437.  Reasonably expended time is

27   generally time that "could reasonably have been billed to a private client." *Moreno v. City of*

28   *Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  To this end, the applicant must exercise "sound

**United States District Court**
For the Northern District of California

1   billing judgment" regarding the number of hours worked, and a court should  exclude from a fee

2   applicant's initial fee calculation hours that were not "reasonably expended," such as those incurred

3   from overstaffing, or "hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461

4   U.S. at 433.

5        Plaintiff submits five declarations supporting his proposal for the number of hours

6   reasonably expended on this case.  *See* Docket Nos. 150-152, 153 Exs. 1 and 2.  The information

7   contained in the declarations can be summarized as follows:

| Charges Billed from Case Inception to January 31, 2011 | | | |
|---|---|---|---|
| Attorney/Staff Member | Hours Worked | Hourly Rate | Total |
| David Greene | 410.2 | $460 - $550 | $198,461.80 |
| Geoffrey King | 33.27 | $200.00 | $6,654.00 |
| James Leonard | 6.37 | $200.00 | $1,274.00 |
| Maria Williams | 52.75 | $250.00 | $13,187.50 |
| Michael Gorman | 43.5 | $200.00 | $8,700.00 |
| Benjamin Stein | 119.8 | $200.00 | $23,960.00 |
| Student Interns | 383.67 | $100.00 | $38,367.00 |
| **Subtotal** | **1049.56** | | **$290,604.30** |
| Charges Billed from January 31, 2011 to March 5, 2012 | | | |
| James Wheaton | 52.35 | $700.00 | $36,645.00 |
| David Greene | 21.93 | $550.00 | $12,061.50 |
| Lowell Chow | 64.25 | $200.00 | $12,850.00 |
| Student Interns | 15.16 | $100.00 | $1,516.00 |
| **Subtotal** | **153.69** | | **$63,072.50** |
| Charges Billed from March 5, 2012 to Present | | | |
| James Wheaton | 43.35 | $700.00 | $30,345 |
| David Greene | 92.3 | $550.00 | $50,765 |
| Lowell Chow | 22.3 | $200.00 | $4,460 |
| **Subtotal** | **157.95** | | **$85,570** |
| **Grand Total (All Fees & Hours)** | **1361.2** | | **$439,246.80** |

United States District Court

For the Northern District of California

1    Given the scope and length of this case, the number of court proceedings recorded in the docket, and

2    the detailed nature of the billing records submitted by Rosenfeld's counsel, the number of hours

3    proposed by Plaintiff for inclusion in the initial lodestar figure appear reasonable.  The record

4    clearly shows that the parties, through multiple years of litigation including four rounds of motions

5    for summary judgment, expended significant attorney time on this matter.  As a consequence, and in

6    light of the contested and protracted nature of this suit, the Court finds that the total number of

7    compensable hours incurred by Plaintiff is reasonable.

8                    a.       Defendant's Challenges

9            The FBI objects to Plaintiff's billing records and proposed hourly figures on five grounds:

10   (1) that they include unjustified hours (i.e. insufficiently documented), (2) that they include time

11   spent reviewing FOIA documents, (3) that they include duplicative or unnecessary billed time, (4)

12   that they include hours billed by unpaid legal interns, and (5) that they include "clerical" or

13   "administrative" time.  *See* Def.'s Response Brief at 12-16.

14           In support of the first objection, the FBI points to the declaration of James Wheaton and

15   suggests that he inexplicably shifted from billing 0.1 hours while reviewing automated ECF e-mails

16   from this Court to 0.2 hours during the course of this case.  *See* Def.'s Response Brief at 14.  Having

17   reviewed the declaration at issue – the Declaration of James Wheaton in Support of Plaintiff's

18   Motion for [an] Award of Fees and Costs (Docket No. 150), Ex H – the Court fails to detect any

19   such pattern.  The balance of the FBI's argument on this point fails to specify any other *particular*

20   discrepancy in the Plaintiff's documentation of hours worked on this case.  Mere generalized

21   allegations of unjustified billing not supported by specific citations to evidence in the record are

22   insufficient to warrant a reduction in the lodestar figure.  *Cf. Premier Med. Mgmt. Sys., Inc. v.*

23   *California Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008 ) (Under analogous California

24   law, a party challenging "fees as excessive because too many hours of work are claimed" must point

25   "to the specific items challenged, with a sufficient argument and citations to the evidence.  General

26   arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.").

27           To the extent that descriptions in Plaintiff's time records are general in nature, such

28   descriptions are sufficient to support a fee award if they describe the general subject matters upon

United States District Court

For the Northern District of California

1   which time was spent.  *See San Francisco Baykeeper v. W. Bay Sanitary Dist.*, C-09-5676 EMC,

2   2011 WL 6012936, at *11 (N.D. Cal. Dec. 1, 2011) ("[p]laintiff's counsel ... is not required to record

3   in great detail how each minute of his time was expended.  But at least counsel should identify the

4   general subject matter of his time expenditures.") (internal citations and quotations omitted).  The

5   descriptions here are sufficiently detailed to support an award.  For instance, David Greene's records

6   show entries which are all clearly related to this litigation.  *See e.g.* Declaration of James Wheaton,

7   Ex. H (4.15 hour time entry under "Ronald Reagan" subheading for David Greene on March 2,

8   2011, states "read and review defendants' settlement conference statement; draft settlement

9   conference statement; telephone conference with client re: settlement").  Further, placing Plaintiff's

10  attorneys' billing records in context of the history of this case helps illuminate what might otherwise

11  appear to be vague time entries.  "Basing the attorneys' fee award in part on reconstructed records

12  developed by reference to litigation files and other records" is an established practice in this circuit.

13  *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1473 (9th Cir.1983).  Defendant

14  does not take issue with any other *specific* aspect of Plaintiff's billing descriptions.  Therefore, no

15  deductions will be taken from the lodestar on account of Plaintiff's alleged billing discrepancies.

16          On the second objection – time spent reviewing FOIA documents – the FBI has failed to

17  provide any evidence that this time billed by Plaintiff's attorneys was not spent for the purpose of

18  litigating this case.  *See* Pl.'s Reply Brief at 13 (describing time at issue as spent to "ensure that the

19  agency had actually produced the records," to "prepare motions for summary judgment," to prepare

20  evidence on "adequacy of searches," etc.).  No time will be subtracted from the lodestar on account

21  of this challenge.

22          b.      Duplicative Time

23          On the third issue – the inclusion of duplicative or unnecessary billed time – the FBI makes

24  only specific mention of the fact that two attorneys spent approximately 205 hours in preparing the

25  Plaintiff's Second Motion for Summary Judgment.  *See* Def.'s Response Brief at 15.  As this Court

26  noted in last year in *Stonebrae v. Toll Bros*, "[w]hile it is not uncommon to have co-counsel in

27  litigation, and fees are commonly awarded to multiple attorneys, counsel seeking fee awards bear

28  the risk that the lodestar will be subject to scrutiny and possible reduction due to unreasonable

United States District Court

For the Northern District of California

1   inefficiencies and duplicative efforts engendered by multiple counsel." *Stonebrae v. Toll Bros.*, No.

2   C-08-0221 EMC, 2011 WL 1334444, at *12 (N.D. Cal. April 7, 2011).  Plaintiff has made no

3   counter-argument to this specific objection other than by citing to a prior decision of this Court for

4   the proposition that "by and large, the court should defer to the winning lawyer's professional

5   judgment as to how much time he was required to spend on the case."  Pl.'s Reply Brief at 13 (citing

6   *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, C-09-5676 EMC, 2011 WL 6012936, at * 9

7   (N.D. Cal. Dec. 1, 2011)).  While that may be true, relying on this sentiment alone and in isolation

8   does not, in the view of this Court, reflect an exercise of appropriate billing judgment.

9        "Hours that are not properly billed to one's client also are not properly billed to one's

10  adversary pursuant to statutory authority."  *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir.

11  1980).  The identification of "duplication of effort by the co-counsel assigned to [a] case . . .

12  necessitates some reduction of the hours claimed."  *Herrington v. County of Sonoma*, 883 F.2d 739,

13  747 (9th Cir. 1989).  While it is impossible to ascertain with precision the number of unnecessarily

14  duplicative and redundant hours spent resulting from multiple counsel performing overlapping work,

15  having reviewed the record the Court estimates that subtracting ten percent of the time claimed by

16  both attorneys on this motion constitutes an appropriate reduction.  The second set of cross-motions

17  for summary judgment were indeed complex in nature, but they were not so markedly different from

18  the other cross-motions in this case as to warrant these two counsel spending more than 15% of all

19  compensable time factored into the lodestar on this set of motions.  Plaintiff does himself a

20  disservice by failing to justify *with particularity* why this set of motions required a disproportionate

21  amount of attorney time.  As such, the initial lodestar figure shall be reduced by $8946.[4]

22              c.    Billing for Unpaid Workers and "Clerical" Time

23       The fourth objection raised by the FBI – the inclusion of hours billed by unpaid legal interns

24  – does not withstand scrutiny.  "If an attorney's fee [award] . . . is to yield the same level of

25

26       [4] This figure represents a reduction of 16.152 hours for David Greene at $500 per hour (his
    2009 billing rate), and a reduction of 4.35 hours for Michael Gorman at $200 per hour (his 2009
27  billing rate).  The FBI has pointed to no other specific instance of duplication.  The Court finds no
    other obvious overlap except for one instance where a student intern billed 3 hours for observing a
28  settlement conference ($300 charge), an issue that is addressed by the general billing judgment
    deduction taken herein.

United States District Court

For the Northern District of California

1    compensation that would be available from the market, the increasingly widespread custom of

2    separately billing for the services of paralegals and law students who serve as clerks, must be taken

3    into account." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989) (citing *Ramos v. Lamm,* 713

4    F.2d 546, 558 (10th Cir. 1983)) (internal quotations omitted).  That those law students and interns

5    worked without pay is of no consequence so long as the rates for which their work was billed is

6    "consistent with market rates and practices."  *Id.*  Further, as the Supreme Court noted in *Jenkins*,

7    "[b]y encouraging the use of lower cost [workers] rather than attorneys wherever possible,

8    permitting market-rate billing of [worker] hours encourages cost-effective delivery of legal services

9    and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil

10   rights statutes."  *Id.* at 288 (citing *Cameo Convalescent Center, Inc. v. Senn,* 738 F.2d 836, 846 (7th

11   Cir. 1984)) (internal quotation marks omitted).  Defendant has not shown that Plaintiff cannot

12   recover fees for unpaid workers *per se.*  Therefore, no time will be subtracted from the lodestar on

13   account of this challenge.

14            Finally, the FBI's objection to Plaintiff's attorneys' billing for "clerical" or "administrative"

15   time, as with many of its other objections, does not warrant a reduction in the hourly figures used to

16   calculate the lodestar.  The government's brief on this point is rather tentative, stating "it *seems*

17   *likely* that these fees would fall under 'general overhead.'"  *See* Def.'s Response Brief at 16

18   (emphasis added).  The FBI offers no evidence to show that this administrative time was, in fact,

19   spent as general overhead time needed to run a legal office, and the Plaintiff's attorneys'

20   clarification that entries of this kind refer to "case management tasks such as conferring with co-

21   counsel and the client on strategy, document management, plus routine supervision of other legal

22   personnel," all charges "routinely billed to clients," support its remaining in the lodestar figure.

23   Pl.'s Reply Brief at 14.  No deductions will be taken from the lodestar on account of Plaintiff's

24   billing for "clerical" or "administrative" time, as the time captured in these entries "could reasonably

25   have been billed to a private client."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.

26   2008).

27   ///

28   ///

d.    Unsuccessful Claims

"If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court should award only that amount of fees that is reasonable in relation to the results obtained." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (internal quotations and citations omitted).  The record reflects that Rosenfeld prevailed on the majority of his claims in this matter, but it cannot be said that he succeeded on every claim in every motion.  Notably, the Court's order on the second set of cross-motions for summary judgment shows that, while prevailing overall on the motion, Plaintiff received mixed results with the arguments he advanced, particularly his argument that the parties' 1996 settlement agreement ought to apply to this case.  *See* Memorandum and Order on Second Set of Cross-Motions for Summary Judgment (Docket No. 98).[5]  The Court recognizes that time spent on successful claims in this case is not easily segregable from time spent on unsuccessful claims.  Nevertheless, hours claimed may be adjusted based on the ultimate success of one's efforts; "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley* at 440.  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment." *Id.* at 436-37.  Therefore, to account for time spent on unsuccessful claims, the Court will deduct ten percent, or $13,688.15, from the time billed for work specifically on the second set of cross-motions for summary judgment.[6]

---

[5]  The Court finds that, generally, Rosenfeld lost on the extreme scope of his arguments in this motion regarding adequacy of the FBI's search, but won on challenges regarding the withholding of specific documents (*i.e.* improperly claimed exemptions).  For example, Plaintiff argued that the FBI had to search *all* of its record systems for responsive documents.  The Court rejected this, and said that only systems *likely to contain* responsive documents had to be searched (consistent with FOIA's requirements).  The Court applied the same rationale in denying Plaintiff's argument that *all* (not just likely responsive) files with designators '80' and '100' had to be re-processed.  He also lost on his argument that the release standards in the 1996 settlement agreement ought to apply to this case.

[6]  This figure represents ten percent of $136,881.50, the adjusted lodestar figure attributable to this motion after having deducted $8946 to account for duplicative hours.  *See* Declaration of James Wheaton in Support of Plaintiff's Motion for [an] Award of Fees and Costs (Docket No. 150), Ex A. (claiming an initial amount of $145,827.50 for this motion).

United States District Court
For the Northern District of California

e.      Overall Exercise of Billing Judgment

While the Court rejects most of the government's objections to Plaintiff's claimed hours in this matter, it notes that neither Plaintiff's fee motion nor his billing records demonstrate that he employed any overt or identifiable reduction in claimed hours to account for inefficiency, waste, and duplication.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckerhart*, 461 U.S. at 434.  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.  The applicant should exercise 'billing judgment' with respect to hours worked . . . " *Id*. at  437.  Having failed to demonstrate and document in the record that he exercised appropriate billing judgment to eliminate such inefficiencies, the Court will therefore reduce Plaintiff's final fee award by ten percent.  *See Walker v. U.S. Dept. of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment."); *see also In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009) ("We have recognized that . . . the district court has the authority to make across-the-board percentage cuts . . . in the number of hours claimed . . . as a practical means of trimming the fat from a fee application.") (internal quotation marks and citations omitted); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (a "district court can impose a small reduction, no greater than 10 percent – a "haircut" – based on its exercise of discretion and without a more specific explanation").  The application of this overall ten percent "haircut" to account for billing judgment, taken after factoring in all other deductions, amounts to a reduction of $41,661.27 from Plaintiff's initial lodestar calculations.

E.      Costs Incurred Bringing Fee Motion

In addition to work performed on the merits of this case, Plaintiff seeks a total of $85,570.00 in fees for his attorneys' time spent on this fee motion.  *See* Pl.'s Fee Mot. at 25; Pl.'s Reply Br. at 15 (denominated "Charges Billed from March 5, 2012 to Present" in table above).  In this Circuit, plaintiffs may recover attorney's fees for time reasonably expended on a motion for attorney fees

1   and costs.  *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990).  An inflated request for a "fees-on-

2   fees" award may be reduced to an amount deemed reasonable by the awarding court.  *See Jadwin v.*

3   *County of Kern*, 767 F. Supp. 2d 1069, 1140 (E.D. Cal. 2011) (denying attorney's motion for "fees-

4   on-fees" due to lack of a reasonable basis for such an award); *Serrano v. Unruh*, 32 Cal. 3d 621, 635

5   (1982) ("Prevailing parties are compensated for hours reasonably spent on fee-related issues.  A fee

6   request that appears unreasonably inflated is a special circumstance permitting the trial court to

7   reduce the award or deny one altogether.") (emphasis omitted).  The Court has reviewed Plaintiff's

8   request for fees-on-fees and finds that the requested award for fees is excessive.  The Court has

9   reviewed the record and finds a high degree of duplication and lack of specificity in describing the

10  activity.  The motion was not particularly complicated and does not warrant the hours spent which

11  comprise the $85,000 lodestar particularly in light of the expertise of these attorneys in these

12  matters.  In addition to the ten percent reduction for billing judgment described above, the Court cuts

13  20% (*i.e.*, $17,114) from the fees on fee.

14  F.      Lodestar Figure

15          Applying these rates to the hours claimed by Plaintiff results in an initial lodestar figure of

16  $439,246.80.  From this initial figure, the Court deducts $8946.00 for duplicative time, $13,688.15

17  to reflect Plaintiff's mixed success on the second cross-motion for summary judgment, and $17,114

18  from the fees on the fee motion.  This results in an adjusted lodestar figure of $399,498.65.

19  Subtracting a further ten percent from this adjusted figure to account for inefficiencies and the

20  exercise of billing judgment results in a final fee award of $359,548.78.  The Court also awards the

21  sum of $3,668.82 representing Plaintiff's full costs in this matter as they were reasonably incurred.

22  *See* Wheaton Decl. ¶ 8.  Having found that Rosenfeld substantially prevailed in this suit, and that the

23  government lacked a reasonable basis in law for withholding the records at issue, the Court rejects

24  the FBI's argument that costs incurred ought to be borne by each party respectively.

### III.   CONCLUSION

26          For the reasons stated above, the Court finds that Rosenfeld has demonstrated both eligibility

27  for and entitlement to an award of attorney's fees.  The record in this case demonstrates the presence

28  of a causal nexus between Rosenfeld's lawsuit and the FBI's release of the documents sought by

1   Plaintiff, and as such Plaintiff has "substantially prevailed" in prosecuting his FOIA claims.  Further,

2   all four *Long* factors considered by district courts in assessing entitlement to a fee award under

3   FOIA weigh in Rosenfeld's favor.  Together, these two findings establish Rosenfeld's eligibility and

4   entitlement to a fee award.  After scrutinizing Plaintiff's billing records, and adjusting the number of

5   hours claimed to account for duplicative time, unsuccessful claims, and inefficiency, the Court

6   **GRANTS** Plaintiff's Motion for an Award of Attorneys' Fees and Costs, and awards Plaintiff a total

7   of **$363,217.60** in fees and costs.

8          This order disposes of Docket No. 149.

9

10          IT IS SO ORDERED.

11

12   Dated:  October 17, 2012

13

14                                         _____
                                           EDWARD M. CHEN

15                                         United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28